# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

GIRAFA.COM, INC.,

        Plaintiff,

    v.

AMAZON WEB SERVICES, LLC,
AMAZON.COM, INC.,
ALEXA INTERNET, INC.,
IAC SEARCH & MEDIA, INC.,
SNAP TECHNOLOGIES INC.,
YAHOO! INC.,
SMARTDEVIL INC.,
EXALEAD INC., AND
EXALEAD SA.,

        Defendants.

C.A. No. 07-787-SLR

**REDACTED**
**PUBLIC VERSION**

---

**PLAINTIFF GIRAFA.COM, INC.'S**
**OPENING MEMORANDUM OF LAW IN SUPPORT OF ITS**
**MOTION FOR PRELIMINARY INJUNCTION**

<br>

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Of Counsel:*

William H. Mandir
John F. Rabena
Chandran B. Iyer
SUGHRUE MION, PLLC
2100 Pennsylvania Ave., N.W.
Washington D.C. 20037
(202) 293-7060

*Attorneys for Plaintiff Girafa.com Inc.*

Dated: March 13, 2008

00202035

## Table of Contents

Page

Table of Authorities ................................................................................................ iii

Index of Exhibits .................................................................................................... v

I.      PRELIMINARY STATEMENT ................................................................. 1

II.     STATEMENT OF FACTS ......................................................................... 2

A.      Plaintiff Girafa ......................................................................................... 2

B.      The '904 Patent ........................................................................................ 3

C.      The PI Defendants .................................................................................... 7

        1.      Smartdevil ...................................................................................... 7

        2.      Amazon/Alexa/AWS ..................................................................... 9

        3.      Snap ................................................................................................ 11

                a.      Snap's Classic Web Search ............................................. 11

                b.      Snap's Enhanced Web Search ......................................... 13

                c.      Snap Shots™ Browser Plug-in ....................................... 14

                d.      Snap Shots™ Website Customers .................................. 14

III.    ARGUMENT .............................................................................................. 14

A.      Preliminary Injunction Standard .............................................................. 14

B.      Likelihood of Success on the Merits ........................................................ 15

        1.      Claim Construction Standards ...................................................... 15

        2.      Properly Construed Claim Must be Applied to the Accused Products ...... 16

        3.      Patents are Presumed Valid .......................................................... 16

        4.      Infringement of the '904 Patent .................................................... 17

|  | a. | The Proper Construction of the '904 Patent ...................................17 |
|  | b. | Smartdevil, Alexa, AWS and Amazon Infringe the '904 Patent ...18 |
|  | c. | Snap Infringes the '904 Patent.........................................................23 |
|  | d. | The '904 Patent is Valid ...............................................................29 |
| C. | | Girafa Will Be Irreparably Harmed if Defendants Are Not Preliminarily Enjoined ........ 32 |
| D. | | The Balance of Hardships tips Strongly in Favor of Girafa ............................... 34 |
| E. | | It is in the Public Interest to Preliminarily Enjoin the Defendants ..................................... 35 |
| IV. | | CONCLUSION.............................................................................................37 |

# TABLE OF AUTHORITIES

**CASES**                                                                              **PAGE**

*A.K. Stamping, Inc. v. Instrument Specialties Co., Inc.,*
    106 F.Supp.2d 627 (D.N.J. 2000) ................................................................15, 16, 33, 35

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.,*
    239 F.3d 1343 (Fed. Cir. 2001)................................................................................17

*Canon Computer Sys., Inc. v. Nu-Kote Int'l, Inc.,*
    134 F.3d 1085 (Fed. Cir. 1998)..................................................................16, 29, 35

*Christiana Indus., Inc. v. Empire Elecs.,*
    2006 U.S. Dist. LEXIS 54210 (E.D. Mich. Aug. 6, 2006)...................................32

*eBay, Inc. v. Mercexchange, LLC,*
    126 S. Ct. 1837 (2006).................................................................................32, 33

*Hybritech, Inc. v. Abbott Labs.,*
    849 F.2d 1446 (Fed. Cir. 1988).................................................................15, 33, 34, 35

*Interactive Pictures Corp. v. Infinite Pictures, Inc.,*
    274 F.3d 1371 (Fed. Cir. 2001)..............................................................................16

*Jacobson v. Cox Paving Co.,*
    19 U.S.P.Q.2d 1641 (D. Ariz. 1991).......................................................................33

*Johnson Worldwide Assocs. v. Zebco Corp.,*
    175 F.3d 985 (Fed. Cir. 1999)................................................................................15

*MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.,*
    420 F.3d 1369 (Fed. Cir. 2005)..............................................................................27

*Metrologic Instruments, Inc. v. Symbol Techs., Inc.*
    460 F. Supp. 2d 571 (D.N.J. 2006) ........................................................................15

*Oakley, Inc. v. Sunglass Hut Int'l,*
    316 F.3d 1331 (Fed. Cir. 2003).................................................................15, 16, 17, 34

*Pfizer, Inc. v. Teva Pharms. USA, Inc.,*
    429 F.3d 1364 (Fed. Cir. 2005)..............................................................................33

*Purdue Pharma L.P. v. Boehringer Ingelheim GmbH,*
      237 F.3d 1359 (Fed. Cir. 2001)...............................................................16-17

*Renishaw PLC v. Marposs Societa' per Azioni,*
      158 F.3d 1243, 1248 (Fed. Cir. 1998)...........................................................15

*Sanofi-Synthelabo v. Apotex, Inc.,*
      470 F.3d 1368 (Fed. Cir. 2006).....................................................14, 15, 16, 33

*Smith Int'l, Inc. v. Hughes Tool Co.,*
      718 F.2d 1573 (Fed. Cir. 1983).......................................................................34

*Tate Access Floors, Inc. v. Interface Architectural Res., Inc.,*
      279 F.3d 1357 (Fed. Cir. 2002).......................................................................15

*Telebrands Direct Response Corp. v. Ovation Commc'ns, Inc.,*
      802 F. Supp. 1169, 1178 (D.N.J. 1992)......................................................33, 34

*TiVo Inc. v. EchoStar Comm'n Corp.,*
      446 F. Supp.2d 664 (E.D. Tex. 2006)...............................................................34

*Vitronics Corp. v. Conceptronic, Inc.,*
      90 F.3d 1576 (Fed. Cir. 1996)..........................................................................15

**STATUTES**

35 U.S.C. § 283......................................................................................................1

**RULES**

Fed. R. Civ. P. 65...................................................................................................1

## INDEX OF EXHIBITS

**Ran Declaration Exhibits**

Exhibit 1:      U.S. Patent No. 6,864,904
Exhibit 2:      Screenshot of internet article from PC Magazine dated June 11, 2002.
Exhibit 3:      Screenshot of internet article from CNET's Download.com dated December 6, 2002.
Exhibit 4:      Screenshot of internet article from ZDNET.com dated April 16, 2001.
Exhibit 5:      Email chain between Shirli Ran and Aaron Boyer of Idealab in 2004.
Exhibit 6:      Email from Jay Meattle of Compete.com to Shirli Ran dated August 8, 2007.

**Myers Declaration Exhibits**

Exhibit A:      CV of Brad A. Myers, Ph.D.
Exhibit B:      List of cases where Brad A. Myers has testified
Exhibit C:      Excerpts from the file history of U.S. Patent No. 6,864,904.
Exhibit D:      Claim chart comparing the '904 patent to Snap Classic
Exhibit E:      Claim chart comparing the '904 patent to Snap Enhanced
Exhibit F:      Claim chart comparing the '904 patent to Snap Shots
Exhibit G:      Claim chart comparing the '904 patent to Smartdevil (Thumbshot) products
Exhibit H:      Claim chart comparing the '904 patent to Amazon/Alexa/AWS
Exhibit I:      Excerpts from Amazon/Alexa/AWS webpages
Exhibit J:      Excerpts from Snap webpages
Exhibit K:      Excerpts from Smartdevil (Thumbshots) webpages
Exhibit L:      Article entitled "Visual Relevance: the Affect of Ask's Preview Tool on Click Throughs" July 12, 2006
Exhibit M-1:   Screenshot of Snap.com's Classic search results
Exhibit M-2:   Screenshot of delawareontheweb.com/businesses/restaurants/Italian.htm
Exhibit M-3:   Screenshot of the Properties of Snap Classic thumbnail image
Exhibit M-4:   Screenshot of HTML code from Snap.com Classic
Exhibit M-5:   Screenshot of Snap.com's Enhanced search results
Exhibit M-6:   Screenshot of delawareontheweb.com/businesses/restaurants/Italian.htm
Exhibit M-7:   Screenshot of the Properties of Snap Enhanced thumbnail image
Exhibit M-8:   Screenshot of HTML code from Snap.com Enhanced
Exhibit M-9:   Screenshot of Google search results with Snap Shots installed
Exhibit M-10: Screenshot of the Properties of Snap Shots thumbnail image
Exhibit M-11: Screenshot of HTML code from Google web page with Snap Shots installed
Exhibit M-12: Screenshot of Thumbshots search results
Exhibit M-13: Screenshot of www.delawareontheweb.com/businesses/restaurants/chinese_japanese
Exhibit M-14: Screenshot of the Properties of Thumbshots thumbnail image
Exhibit M-15: Screenshot of HTML code from Thumbshots webpage
Exhibit M-16: Screenshot of Alexa search results
Exhibit M-17: Screenshot of www.delawareontheweb.com/businesses/restaurants/chinese_japanese
Exhibit M-18: Screenshot of the Properties of an Amazon thumbnail image
Exhibit M-19: Screenshot of HTML code from Alexa search results web page

# I.    PRELIMINARY STATEMENT

Plaintiff Girafa.com, Inc. ("Girafa" or "Plaintiff"), by its accompanying motion, pursuant to 35 U.S.C. § 283 and Fed. R. Civ. P. 65, respectfully seeks a preliminary injunction against Defendants Smartdevil, Inc. ("Smartdevil"), Snap Technologies, Inc. ("Snap"), Alexa Internet, Inc. ("Alexa"), Amazon Web Services, LLC. ("AWS") and Amazon.com, Inc. ("Amazon") (collectively referred to as the "PI Defendants"), all of whom use Girafa's patented technology.[1] Unless the PI Defendants are enjoined from infringing Girafa's U.S. Patent 6,864,904 ("'904 patent"), Girafa will suffer irreparable harm to its market share, business model, reputation, goodwill, and relationships, : **REDACTED**

The '904 patent relates to the use of thumbnail images[2] of internet web pages. After filing the '904 patent application in 1999, Girafa released its thumbnail services in 2000, and thereafter received rave reviews from industry press such as PC Magazine and CNET.com. Ran Decl. ¶¶ 15-16; Exs. 2-4.[3] For the first few years, Girafa enjoyed steady commercial success and growth. In fact, CNET rated Girafa's thumbnail toolbar as one of the fifty best downloads in 2003. Ran Decl. ¶¶ 16-17. **REDACTED**

---

[1] This motion is limited to only those defendants that directly compete with Girafa in a manner that erodes Girafa's market share. Thus this motion does not apply to Defendants IAC Search & Media, Inc., Yahoo! Inc., Exalead Inc., and Exalead SA., because Girafa has no information that these defendants are currently directly competing in this manner.

[2] A thumbnail image of an internet webpage is an image of that webpage that is smaller than the actual webpage. Myers Decl. ¶ 47.

[3] Exhibits to the Declaration of Shirli Ran are numbered (1-6); Exhibits to the Declaration of Brad A. Myers are lettered (A-M). For the Court's convenience, a list of all Exhibits is included herewith (*see* page v).

**REDACTED**

The PI Defendants directly infringe the '904 patent by using the claimed invention. They also induce and contribute to the direct infringement of their customers by selling and providing thumbnails and the enabling software code to customers, and instructing and encouraging these customers to use the thumbnails in an infringing manner. All tolled, each PI Defendant infringes at least twenty-five different claims of the '904 patent.

Each of these claims is separately entitled to a presumption of validity. This presumptive validity is further buttressed by secondary considerations of non-obviousness such as a long felt need and the failure of others to solve the long felt need, and by the commercial success and industry acclaim of Girafa's patented technology. Girafa is likely to succeed on the merits of the issues of infringement and validity.

Girafa therefore respectfully requests that this Court enjoin the PI Defendants from directly and indirectly infringing the '904 patent, pending final resolution of this dispute. More specifically, Girafa requests that this Court enjoin the PI Defendants from: (1) providing its customers with access to thumbnails stored on its image servers and the software code to manage the display of thumbnails; and (2) displaying thumbnail images in an infringing manner.

## II.    STATEMENT OF FACTS

### A. Plaintiff Girafa

Girafa was formed in 1999, and is based almost entirely on the technology protected by the '904 patent. Ran Decl ¶ 4. Girafa's patented thumbnail service technology allows internet users to preview a hyperlinked URL without leaving the page they are viewing and without

2

accessing or loading the hyperlinked page.  Ran Decl. ¶¶ 3, 6-7.  After releasing its thumbnail

services in 2000, Girafa quickly became an industry leader in revolutionizing the experience of

information search and Web navigation on the Internet.  Ran Decl., ¶ 3.  Girafa's patented

technology has won great accolades from various industry analysts, and has made the browsing

experience more user-friendly, productive and efficient.  Ran Decl., ¶¶ 15-16.

**REDACTED**

PI Defendants have recently begun to sell and also give away competing thumbnail

image services to other websites.  Ran Decl. ¶¶ 19-22.  .

**REDACTED**

**B.  The '904 Patent**

The '904 patent describes a way to manage and present thumbnail images of web pages

on another web page.[4]  For example, when an internet user performs a search on an internet

search engine, the results are typically displayed as a list of hyperlinks to other web pages.  The

'904 patented technology provides a mechanism to display thumbnail images of those

hyperlinked web pages along with the hyperlinks.  Myers Decl. ¶¶ 37-40.  This saves the user

---

[4] A "web page" is a page of a website, whereas a "homepage" is the front or main page of a website.
Myers Decl. ¶ 49.  For example, the website www.girafa.com includes many internal "web pages" and
a front or main page that is designated the "homepage."  The page at address www.girafa.com is the
homepage and internal pages such as www.girafa.com/faq.acr are internal web pages.

significant time in locating a desired web page, by allowing the user to get a preview of the web pages found by the search, without having to actually load those web pages.

The '904 patent's visual search and web navigation technology makes sorting through search results and other hyperlinks more user-friendly and more effective, by allowing users to view thumbnail images of web sites listed on textual search result pages and other WWW hyperlinks instantaneously, Ran Decl. ¶¶ 4-8. This visual presentation increases users' success rates and efficiency, as they utilize visual recollection to identify relevant and familiar links, and eliminates redundant entries to unwanted web sites. Ran Decl. ¶ 7.

There are at least three embodiments described in the '904 specification. Myers Decl. ¶ 37. The first embodiment is represented in FIG. 1 of the patent, and has the thumbnail pictures alongside the original web page. Myers Decl. ¶ 38. This embodiment is explained at col. 5, lines 61-65: "to provide to a user, via the web browser 100, an annotated web page 110, which preferably includes the web page 101 having alongside it images 112 of homepages linked with web page 101." *Id.*



FIG. 1

The second embodiment is represented in FIG. 2 of the patent, and has the thumbnail pictures included within the web page, by modifying the HTML[5] code of the original web page to include the thumbnails.  Myers Decl. ¶ 39.  This embodiment is described in the patent as follows:

> The visualization functionality 206 is operative to embed within a dynamically generated web page, such as an HTML page, commands to the web browser 200 to download via the image server 210 from the image database 212 images of web pages which are referenced in hyperlinks contained in a web page 213 and to provide to a user, via the web browser 200, the web page 213 annotated to include therewithin images 216 of homepages linked therewith.

Ex. 1, col. 6:26-32; Myers Decl. ¶ 39.

---

[5] HTML is short for HyperText Markup Language, and is a programming language used for web pages. Myers Decl. ¶ 37.

FIG. 2



A third embodiment has the thumbnail images pop-up on top of the image of the web page, so they appear to be hovering, like a pop-up window or pop-up menu. Myers Decl. ¶ 40.

> It is also appreciated that either or both of the embodiments FIGS. 1 and 2 may provide images of web pages which are referenced in hyperlinks contained in a web page, which images hover either over or alongside the hyperlinks."

Ex. 1, col. 6:32-40: Myers Decl. ¶ 40.

The patent explains that the thumbnail images are provided by an image server that is separate from the web server that runs the website. Myers Decl. ¶¶ 42-43. The separate image server is described in the specification at various places, including FIGS 1 and 2, and col. 5, lines 48-51: "The web browser 100 preferably includes visualization functionality 103 which interfaces, typically via the Internet, with an image server 104." Myers Decl. ¶ 42. By providing

6

the image server separate from the web server, the image provider can ensure that the image service and image demands do not interfere with the core web server operations, while also providing the image service to multiple website customers. Ran Decl. ¶ 10-13; *see also*, Myers Decl. ¶ 43, 69.

Some of the '904 claims (e.g., claim 1) also require that the thumbnail image is not an image of the web page which is the target of the hyperlink. Myers Decl. ¶ 44. Instead, the image is of the *home page* of the website that contains the target web page. Myers Decl. ¶ 44; Ex. 1, cols. 5:59-65, 6:64 – 7:62, 8:4-7. This allows the thumbnail provider to supply useful information without having to find, store, and maintain every internal page of every website.

### C.  **The PI Defendants**

1.  **Smartdevil**

PI Defendant Smartdevil provides thumbnail services to customers via its websites www.thumbshots.com and www.thumbshots.org, and showcases the value of thumbnail images in these websites as well as in its website www.thumbshots.net. Smartdevil explains to its customers:

> [t]humbshots are small screenshots of web pages. When placed alongside search results or directory listings, users are able to preview the site before visiting the link automatically improving user satisfaction and reducing the frustration associated with broken links, inappropriate contents and pop-up ads. Thumbshots eliminate the uncertainty from visiting unknown sites and increases user confidence.

Ex. K at 5. Curiously, Smartdevil uses Girafa's name on its own website, presumably to misdirect internet users who are actually searching for "girafa":

7

> Thumbshots.com serves thumbshots to over 1,000 sites every month. We provide thumbshots to the world's largest Web directories, portals and domain registrars. Whether you're searching for a car, flower, photo or **girafa**, thumbshots will help you find it quickly and accurately.

Ex. K at 2 (emphasis added).

Smartdevil encourages and instructs customers to use Smartdevil thumbnail images as demonstrated by www.thumbshots.net, and provides access to thumbnail images via Smartdevil's image servers as well as the necessary software code for downloading and displaying those thumbnail images. Myers Decl. ¶ 79. Smartdevil stores its thumbnail images on image servers that operate separately from its website host servers, and separately from its customers' website servers. Myers Decl. ¶ 79; Exs. G, K at 20.

When a user conducts a search at www.thumbshots.net, the results are displayed as a list of hyperlinked web pages, with thumbnail images displayed to the left of the hyperlinked results. Reproduced below in Fig. A, is a screenshot from a Thumbshots search result page. See also, Exs. K at 5 and M-12.



**Fig. A**

As shown in Fig. A and Ex. M-12, Smartdevil displays both the search results and a thumbnail of either the homepage of the found web page or the actual webpage found by the search engine.  Myers Decl. ¶ 59; *compare,* Exs. M-12 and M-13.

2.    **Amazon/Alexa/AWS**

Alexa is a wholly owned subsidiary of defendant Amazon.com, Inc.  In 2006, Alexa launched the Alexa Site Thumbnail web service, which is sold through Amazon Web Services LLC on Amazon.com's website. e.g., Myers Decl. ¶ 80; Ex. I at 8-12.

Conducting a search for "Delaware Chinese restaurants" on www.Alexa.com yields the following:

9



**Fig. B**

As is apparent from Fig. B above and Exhibit M-16, each of the organic search results is accompanied by a thumbnail. *See also*, Myers Decl. ¶ 61; Ex. H. The thumbnail shown for the first link is the image for the home page[6] of the website that includes the internal hyperlink listed as a search result.[7]

Alexa also sells thumbnail image services to other websites via Amazon.com's "Amazon Web Services, LLC." Myers Decl. ¶ 80; Ex. I. Amazon's thumbnail images are stored on image servers that operate separately from its website host servers and also separately from its customers' website servers. Myers Decl. ¶ 60; Ex. H.

---

[6] http://delawareontheweb.com/,

[7] (http://www.delawareontheweb.com/businesses/restaurants/chinese_japanese.htm

3.     **Snap**

PI Defendant Snap operates a website www.Snap.com.  When a user initially navigates to

www.Snap.com, that user is presented with two search options at the bottom left side of the page.

These two search options are entitled "Classic Web Search" and "Enhanced Web Search."

Myers Decl. ¶¶ 54-56.

### a.  Snap's Classic Web Search

The Classic Web Search returns a list of search results including hyperlinks, and when

the user points the cursor to a special Snap icon, a thumbnail appears hovering over the hyperlink.

Myers Decl. ¶ 55; Exs. D, M-1.

For example, if the user searches for "Delaware Italian restaurants" in the Classic Web

Search mode, the search results are displayed as hyperlinks. A small box to the right of the

hyperlinks is also shown.  When the user places the cursor over this box, a thumbnail of the

homepage www.deontheweb.com is displayed (See Fig. C).  Myers Decl. ¶ 55; Exs. D and M-1.

11



**Fig. C**

The displayed thumbnail is not an image of the internal webpage reflected by the hyperlinked search result,[8] but instead it is a thumbnail of the homepage[9] for the website that contains that internal hyperlinked search result. Myers Decl. ¶ 55; Ex. D; *compare*, Exs. M-1 and M-2.

Snap stores its thumbnail images on image servers that operate separately from the servers that host its website (www.snap.com) and also operate separately from the servers that host its customers' websites.  Ex. D, e.g., pp. 1-3.

---

[8] www.delawareontheweb.com/businesses/restaurants/italian.htm.

[9] www.deontheweb.com

**b.  Snap's Enhanced Web Search**

In Snap's Enhanced Web Search Mode, if a user searches for "Delaware Italian restaurants," a window containing the search results and a "Preview" button is shown. Myers Decl. ¶ 56; Exs. E, M-5. By clicking on the preview button for the second result, the screenshot of Fig. D (and Ex.                                                            M-5) is generated:



**Fig. D**

As can be seen from Fig. D (and Ex. M-5), the homepage for the website www.deontheweb.com is displayed as a thumbnail image on the right side of the screen, even though the hyperlinked search result is not a link to the homepage, but rather is a hyperlink to the internal webpage[10].  Myers Decl. ¶ 56; Ex. E; *compare* Exs. M-5 and M-6.

---

[10] http://delawareontheweb.com/businesses/restaurants/italian.htm

13

### c.  Snap Shots™ Browser Plug-in

Additionally, Snap provides users with software code in the form of a browser plug-in[11] referred to as Snap Shots™.  Myers Decl. ¶ 57. Once installed, the Snap Shots browser plug-in 'attaches' to the user's browser toolbar and works with the user's browser.  Myers Decl. ¶ 57; Ex. F.  After installing Snap Shots™, users can view thumbnail images from Snap image servers while visiting many non-Snap websites.  Myers Decl. ¶ 57; Exs. F and M-9.

### d.  Snap Shots™ Website Customers

Snap also provides other website owners with the Snap Shots™ thumbnail image service. This service provides thumbnail images from Snap's image servers and website code to allow those websites to utilize the thumbnail images in a manner similar to that of Snap's own use in the Classic Search mode on www.Snap.com.  Myers Decl. ¶¶ 54, 72-73; Ex. J.

## III.    ARGUMENT

### A.  Preliminary Injunction Standard

A preliminary injunction is appropriate in a patent infringement action where the moving party demonstrates: (1) a reasonable likelihood of success on the merits; (2) irreparable harm if an injunction is not granted; (3) a balance of hardships tipping in its favor; and (4) that an injunction against the defendants will have a favorable impact on the public interest.  *See e.g., Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1374 (Fed. Cir. 2006) (affirming the grant of preliminary injunctive relief against the alleged infringer).

---

[11] A "browser plug-in" is software code that adds functionality to the user's web browser, such as a tool bar with specific capabilities.  Myers Decl. ¶ 57; Ex. F.

14

No one factor is determinative; rather, the court must balance each of these factors against one another and against the extent of the relief sought. *See Tate Access Floors, Inc. v. Interface Architectural Res., Inc.*, 279 F.3d 1357, 1365 (Fed. Cir. 2002); *Hybritech, Inc. v. Abbott Labs.*, 849 F.2d 1446, 1451 (Fed. Cir. 1988). Applying these factors here compels the grant of the requested preliminary injunction.

**B.  Likelihood of Success on the Merits**

In order to demonstrate a likelihood of success on the merits, a patentee must show that in light of the presumptions and burdens that will exist at a trial on the merits, (1) the defendant likely infringes the patent-in-suit and (2) the patentee's infringement claim will likely withstand the alleged infringer's challenges to the validity and enforceability of the patents-in-suit. *See Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1339 (Fed. Cir. 2003); *Sanofi-Synthelabo*, 470 F.3d 1368; *A.K. Stamping Co., Inc. v. Instrument Specialties Co., Inc.*, 106 F. Supp.2d 627 (D.N.J. 2000).

**1.    Claim Construction Standards**

"Claim interpretation begins, as always, with the language of the claims." *Tate*, 279 F.3d at 1370 (*citing Johnson Worldwide Assocs. v. Zebco Corp.*, 175 F.3d 985, 989 (Fed. Cir. 1999)). Further, the scope of a claim is not limited to a preferred embodiment. *Id.* at 992 (*citing Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998)). In construing claims, courts primarily look to the intrinsic evidence of record. *Metrologic Instruments, Inc. v. Symbol Techs., Inc.*, 460 F.Supp. 2d 571, 582-83 (D.N.J. 2006) (*citing Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)).

15

2.    **Properly Construed Claim Must be Applied to the Accused Products**

After the disputed claim terms have been properly construed, the claims must be

compared to the accused product to determine whether the accused product infringes the patents

at issue.  Patent infringement can be either literal or under the doctrine of equivalents.  *See, e.g.,*

*A.K. Stamping*, 106 F. Supp.2d at 639.  "To establish literal infringement, every limitation set

forth in a claim must be found in an accused product."  *A.K. Stamping*, 106 F. Supp.2d at 638

(citations omitted).  An accused product that does not literally infringe a patent can still be found

to infringe a patent under the doctrine of equivalents.  Under this doctrine, a patent is infringed

by an accused product if one of ordinary skill in the art would understand the difference to be

insubstantial or interchangeable. *Interactive Pictures Corp. v. Infinite Pictures, Inc.,* 274 F.3d

1371, 1382-3 (Fed. Cir. 2001).

3.    **Patents are Presumed Valid**

To obtain a preliminary injunction, a patentee also must demonstrate that the patentee's

infringement claim will likely withstand any challenge by the alleged infringer to the validity and

enforceability of the patent-in-suit.  *See, e.g., Oakley,* 316 F.3d at 1339.  It is well-settled that a

patent is presumed valid at each and every stage of litigation in a patent infringement action.  *See*

*Sanofi-Synthelabo*, 470 F.3d at 1374; *Canon Computer Sys., Inc. v. Nu-Kote Int'l, Inc.*, 134 F.3d

1085, 1088 (Fed. Cir. 1998)("a patent is presumed valid…at every stage of the litigation').  Thus,

"the burden of proving invalidity is with the party attacking validity." *Oakley,* 316 F.3d at 1339.

"[I]f [the alleged infringer] fails to identify any persuasive evidence of invalidity, the very

existence of the patent satisfies [the patentee's] burden on validity."  *Purdue Pharma L.P. v.*

16

*Boehringer Ingelheim GmbH*, 237 F.3d 1359, 1363-64 (Fed. Cir. 2001); *Canon Computer*, 134 F.3d at 1088.

Should the defendant against whom a preliminary injunction is sought challenge the validity of the patent by raising "substantial questions" of invalidity, the patentee is not required to establish the patent's validity "beyond question." *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1359 (Fed. Cir. 2001). Rather, the burden is to show that there is a "reasonable likelihood that the attack on its patent's validity would fail." *Oakley*, 316 F.3d at 1339. In other words, the patentee "must demonstrate that…at least one of [the] allegedly infringed claims will…likely withstand the validity challenges presented by the accused infringer." *Amazon.com*, 239 F.3d at 1351.

4.      **Infringement of the '904 Patent**

a.  <u>**The Proper Construction of the '904 Patent**</u>

The claims of the '904 patent that are at issue in the instant motion are unambiguous and, are used in the patent's intrinsic evidence (e.g., the specification and file history) in a manner that is consistent with their ordinary usage. For example, several of the claim terms are listed below as described in the '904 patent and the '904 patent's file history:

"hyperlink" -  An element on a webpage that links to another place on that webpage or to
                    an entirely different webpage. Ex. 1, col. 2:8.

"home page" - The main or front page of a web site. Ex. 1, Fig. 4, col. 6:64-7:62.

"thumbnail visual image" -   A smaller version of a larger image. Ex. 1, col. 2:53-54, col.
                    9:24-25

17

"image server" - An image server is a type of server that is specialized in delivering

images.  In the prosecution history of the '904 patent, the applicant

explained that the image server is separate from the web server.  Ex. 1,

Figs. 1 and 2, col. 2:7-8.

"hovering over" - A display format that makes an image appear to be in a layer in front of

the main content. Ex. 1, col. 6:32-40.

"visualization functionality" - Software and/or hardware that provides one or more

images to the user.  Ex. 1 at col. 5:59-65.

Based on this claim construction, Prof. Myers provides a claim chart showing the

infringement of each asserted claim.  Myers Decl. ¶¶ 53-61; Exs. D-H.  That infringement

analysis is summarized below.

### b.  <u>Smartdevil, Alexa, AWS and Amazon Infringe the '904 Patent</u>

Smartdevil, through its websites www.thumbshots.net, www.thumbshots.org, and

www.thumbshots.com, and Alexa, AWS and Amazon ("Amazon defendants"), through their

websites www.alexa.com and www.amazon.com, infringe at least claims 1, 4, 6, 7, 12, 13, 14, 18,

21, 23, 24, 29, 30, 31, 35, 38, 40, 41, 42, 44, 46, 49, 51, 52 and 53 in a similar manner.  Myers

Decl. ¶¶ 8, 9, 58-61; Exs. G-H.

Smartdevil uses its websites www.thumbshots.com and www.thumbshots.net to both sell

and give away access to thumbnail images of websites, as well as the computer source code to

use those thumbnails in an infringing manner.  Myers Decl. ¶¶ 58 and 74-79; Ex. K.  When a

customer uses the Smartdevil source code on its website, the website will display thumbnail

images of hyperlinked websites as demonstrated on www.thumbshots.net website.  Myers Decl.

¶ ¶ 58-59; Exs. G, K. These thumbnails are stored on Smartdevil's image servers. Myers Decl. ¶ 58; Exs. G, K at 20.

Amazon uses its www.alexa.com website to showcase its thumbnail technology for search results. Myers Decl. ¶ 61. The Amazon defendants also sell access to thumbnail images to other website owners, as well as the source code so that the customer can use the thumbnails in a manner that infringes these same claims. Ex. I at 8-12; Myers Decl. ¶ 80. Once a customer installs the Amazon defendants' source code, the customer's website will display thumbnails as does the www.alexa.com website. Myers Decl. ¶ 80; Ex. I at 8-12.

Claim 1 of the '904 patent provides:

A method for presenting Internet information to a user comprising:

providing to a user a visual image of a web page containing at least one hyperlink; and at least partially concurrently

providing a thumbnail visual image of the home page of at least one web site which is represented by said at least one hyperlink via the Internet by employing an image server that stores and provides said thumbnail visual image.

Independent claims 18, 35, and 46 include similar limitations and for the sake of brevity, are addressed together with claims 1.[12] The screen shots in Exhibits M-12 through M-14, show that the Thumbshots search engine infringes independent claims 1, 18, 35, and 46 of the '904 patent. The thumbnail images on the left show the home page[13] for the hyperlink on "Delaware Chinese Restaurants - Delaware Japanese Restaurants."[14] The image comes from the host http://simple.thumbshots.com, which is the image server (as explained above). Myers Decl. ¶¶

---

[12] The differences in the independent claims include, for example, a requirement that the displayed thumbnail be of the homepage (required in claims 1 and 18, but not claims 35 and 46).

[13] (http://www.delawareontheweb.com/)

[14] http://www.delawareontheweb.com/businesses/restaurants/chinese_japanese.htm

58-59; Ex. G; Ex. M-14.  The web browser uses the Internet to interface with
www.thumbshots.net (the web server), which is separate from the image server
http://simple.thumbshots.com.  *Id.*  The web server has embedded commands in the web page to
download the thumbnails. The screenshot shows the annotated web page.  Ex. M-12, Myers Decl.
¶¶ 58-59; Ex. G.  Accordingly, this display literally infringes claims 1, 18, 35, and 46 of the '904
patent.  Myers Decl. ¶¶ 8, 58-59; Ex. G.

     Similarly, the screen shots displayed in Exhibit M-16 through M-18 from
www.alexa.com, show that Alexa infringes independent claims 1, 18, 35, and 46 of the '904
patent.  For example, when a user searches for "delaware chinese restaurants" in the Alexa
system, the thumbnail images on the left show the home page[15] for the hyperlink on "Delaware
Chinese Restaurants - Delaware Japanese Restaurants."[16]  Myers Decl. ¶¶ 60-61; Ex. H.  The
image originates from the host http://ast.amazon.com, which is the image server.  *Id.*  The web
browser uses the Internet to interface with www.alexa.com (the web server), which is separate
from the image server http://ast.amazon.com.  *Id.*  The web server has embedded commands in
the web page to download the thumbnails. *Id.*  The screenshot shows the annotated web page.  *Id.*
For this reason, Alexa literally infringes claims 1, 18, 35, and 46 of the '904 patent.  Myers Decl.
¶ 9; Ex. H.

     Both Thumbshots and the Amazon defendants display the thumbnail within the visual
image of the webpage that contains the search results. Ex. M-12 (Thumbshots); Ex. M-16

---

[15] http://www.delawareontheweb.com/

[16] http://www.delawareontheweb.com/businesses/restaurants/chinese_japanese.htm

(Amazon); Myers Decl. ¶¶ 58-61; Exs. G-H.  For this reason, Smartdevil and the Amazon defendants infringe claims 4,[17] 14, 21, 31, 38, 42, and 53 of the '904 patent.  *Id.*

Claim 6 adds to claim 1, a "plurality of thumbnail visual images represented by at least one hyperlink are displayed simultaneously along with said visual image of a web page containing at least one hyperlink."  Claims 23, 40, and 51 add similar limitations to independent claims 18, 35, and 46, respectively.  The search results generated by www.thumbshots.net and Amazon's www.Alexa.com display multiple or "a plurality" of thumbnails.  *Id.*  For this reason, Smartdevil and the Amazon defendants infringe claims 6, 23, 40, and 51 of the '904 patent. Myers Decl. 8, 9; Exs. G, H.

Claim 7 provides, "[a] method according to claim 1 and wherein said web page comprises an HTML page."  Claims 24, 41, and 52 add similar language to their corresponding independent claims.  The Smartdevil and Amazon webpages that contain the search results and the corresponding hyperlinks comprise an HTML page. Exs. M-15 (Thumbshots) and M-19 (Alexa); Myers Decl. ¶ ¶ 58-61; Exs. G-H.  For this reason, Smartdevil and the Amazon defendants infringe claims 7, 24, 41, and 52. Myers Decl. ¶¶ 8, 9, 58-61; Exs. G-H.

Claim 12 provides, "[a] method according to claim 1 and wherein said providing a-thumbnail visual image comprises: employing a web browser which interfaces via the Internet with a web server including visualization functionality."  Both Thumbshots and Alexa thumbnail services are used with Web browsers, such as Internet Explorer, which connect to a web server over the Internet, and include visualization functionality on their servers to display the

---

[17] Claim 4 provides, "[a] method according to claim 1 and wherein said thumbnail visual image is displayed within the visual image of said web page."  Claims 14, 21, 31, 38, 42, and 53 add similar limitations.

thumbnails. Myers Decl. ¶ ¶ 58-61; Exs. G-H. Accordingly, Smartdevil and the Amazon

defendants infringe claim 12. *Id.*

Claim 13 provides:

[a] method according to claim 12 and wherein said visualization functionality is operative
to embed commands to the web browser to download, via said image server, thumbnail
visual images of web pages which represent hyperlinks contained in the web page and to
provide to a user, via the web browser, an annotated web page."

The Thumbshots and Alexa webservers contain embedded commands in their web pages

to download the thumbnails for each hyperlink from the image server having an address of

simple.thumbshots.com and http://ast.amazonaws.com, respectively.  Myers Decl. ¶ ¶ 58-61; Exs.

G-H.  For this reason, Smartdevil and the Amazon defendants infringe claim 13.  *Id.*

Claim 29 provides:

[a] system according to claim 18 and wherein said second functionality comprises fourth
functionality employing a web browser which interfaces via the Internet with a web
server including visualization functionality.

Smartdevil and the Amazon defendants display the thumbnails using web servers that

have the claimed visualization functionality and therefore infringe claim 29.  Myers Decl. ¶ ¶ 58-

61; Exs. G-H.

Claim 30 provides:

[a] system according to claim 29 and wherein said visualization functionality is operative
to embed commands to the web browser to download, via said image server, thumbnail
visual images of web pages which represent hyperlinks contained in the web page and to
provide to a user, via the web browser, an annotated web page.

When using Thumbshots' thumbnail image service, the webserver contains embedded

commands in the web page to download the thumbnails for each hyperlink from the image server

having an address of http://simple.thumbshots.com.  Similarly, the Alexa webserver contains

embedded commands in the web page to download the thumbnails for each hyperlink from the

22

image server having an address of http://ast.amazonaws.com. Accordingly, Smartdevil and the Amazon defendants infringe claim 30. Myers Decl. ¶¶ 58-61; Exs. G, H, M-14 (Thumbshots) and M-18 (Alexa).

Claim 44 provides,"[a] method according to claim 35 and wherein said visualization functionality comprises: receiving a list of hyperlinks; splitting a URL of each hyperlink into URL components including at least a path component and a host component; trimming a path component based on the consideration of finding the most representative image of a given web page; and constructing a new URL including a trimmed path component."

Thumbshots and the Amazon defendants infringe claim 44 by trimming the URL of the hyperlink - i.e., by removing the /businesses/restaurants/Chinese_japanese.htm portion of the address to find the home page. Ex. Myers Decl. ¶¶ 58-61; Exs. G-H.

As can be seen from Exs. M-12 and M-16, Thumbshots and Alexa allow a user to view thumbnails in the same page where the search results are displayed. *Id.* For this reason, Smartdevil and the Amazon defendants infringe claim 49 of the patent. *Id.*

### c.  Snap Infringes the '904 Patent

Snap infringes claims 1, 4, 7, 12, 15, 18, 21, 22, 24, 29, 32, 35, 38, 39, 41, 44, 45, 46, 49, 50, 52, 55 and 56 of the '904 patent, in at least the following manner:

| Snap Classic: | claims 1, 4, 5, 7, 12, 15, 18, 21, 22, 24, 29, 32, 35, 38, 39, 41, 44, 45, 46, 49, 50, 52, 55, and 56. |
| Snap Enhanced: | claims 1, 4, 7, 12, 18, 21, 24, 29, 35, 38, 41, 44, 46, 49, 52, and 55 |
| Snap Shots: | claims 35, 38, 39, 41, 45, 46, 49, 50, 52, and 56 |

Myers Decl. ¶¶ 5-7, 54-57; Exs. D-F.

### (1) Snap Classic and Enhanced Modes Infringe the '904 Patent

The screen shots in Exhibits M-1 and M-5 from www.snap.com show that Snap's Classic Web Search and Enhanced Web Search infringe claims 1, 18, 35, and 46 of the '904 patent. Myers Decl. ¶¶ 5-6; Exs. D, E, M-1, M-5.

For example, when a user enters the search "Delaware Italian restaurants" in the Classic Web Search, that user is presented with a web page containing all of the search results and their hyperlinks. Myers Decl. ¶ 55; Exs D, M-1. When the user places the cursor on the small box to the right of the hyperlink, a thumbnail visual image of the homepage is displayed. Myers Decl. ¶ 55; Ex. D. Ex. M-3 shows that Snap's thumbnails are stored on an image server that operates separately from the www.snap.com website server. Exs. D, M-3. In addition, when Snap provides thumbnails to its customers, those thumbnails are still stored on Snap's image servers at http://shots.snap.com/, not on the customer's website servers. For this reason, Snap's Classic Web Search infringes claims 1, 18, 35, and 46. Myers Decl. ¶¶ 5-7, 55; Exs. D, M-1 through M-3.

Likewise, the Enhanced Web Search feature also infringes claims 1, 18, 35, and 46. When a user enters the search "Delaware Italian restaurants" in the Enhanced Web Search, that user is presented with a screen where the search results are contained on a frame on the left side of the screen and the home page is displayed on a frame on the right side of the screen. Myers Decl. ¶ 56; Exs. E, M-5. Snap's thumbnails are stored on an image server that is separate from the www.snap.com website server. Myers Decl. ¶ 56; Exs. E and M-7. Snap's Enhanced Web Search, therefore, literally infringes claims 1, 18, 35, and 46 of the '904 patent. Myers Decl. ¶ 5-7, 56; Exs. E, M-5 through M-7.

24

Snap displays the thumbnail within the visual image of the webpage that contains the search results in both the Classic Web Search and Enhanced Web Search. Myers Decl. ¶¶ 55-56; Exs. D-E. For this reason, Snap's Classic Web Search and Enhanced Web Search infringes claims 4, 14, 21, 31, 38, 42, and 53 of the '904 patent. *Id.*

Claim 5 provides, "[a] method according to claim 4 and wherein said thumbnail visual image appears hovering over said hyperlink." In the Snap Classic mode, the thumbnail hovers over the hyperlink. Ex. M-1. For this reason, Snap's Classic Web Search infringes claims 5, 15, 22, 32, 39, 45, 50, and 56 of the '904 patent. Myers Decl. ¶ 55; Ex. D.

It cannot be disputed that the webpage containing the search results and the corresponding hyperlinks comprise an HTML page. For this reason, Snap's Classic Web Search and Enhanced Web Search infringe claims 7, 24, 41, and 52. Myers Decl. ¶¶ 55-56; Exs. D-E, M-4, M-8.

Claim 12 provides, "[a] method according to claim 1 and wherein said providing a-thumbnail visual image comprises: employing a web browser which interfaces via the Internet with a web server including visualization functionality." Snap displays the thumbnails using a web server that has a visualization functionality. Accordingly, Snap's Classic Web Search and Enhanced Web Search infringe claim 12. Myers Decl. ¶ 55-56; Exs. D-E.

Claim 29 provides, "[a] system according to claim 18 and wherein said second functionality comprises fourth functionality employing a web browser which interfaces via the Internet with a web server including visualization functionality." Snap displays the thumbnails using a web server that has a visualization functionality. Accordingly, Snap's Classic Web Search and Enhanced Web Search infringe claim 29. Myers Decl. ¶ 55-56; Exs. D-E.

25

Claim 44 is infringed by Snap Classic and Snap Enhanced because both trim the URL of the hyperlink - i.e., by removing the /businesses/restaurants/italian.htm portion of the address. Myers Decl. ¶ 55-56; Exs. D-E.

Claim 49 provides, "[a] system according to claim 46 and wherein said thumbnail visual image is displayed within the visual image of said web page." Snap's Classic Web Search and Enhanced Web Search allow a user to view thumbnails in the same page where the search results are displayed. On this basis, Classic Web Search and Enhanced Web Search infringe claim 49 of the patent. Myers Decl. ¶ 55-56; Exs. D-E.

Claim 55 provides:

> [a] system according to claim 46 and wherein said visualization functionality comprises: receiving a list of hyperlinks; splitting a URL of each hyperlink into URL components including at least a path component and a host component; trimming a path component based on the consideration of finding the most representative image of a given web page; and constructing a new URL including a trimmed path component.

Snap's Classic Web Search and Enhanced Web Search infringe claim 55 because both trim the URL of the hyperlink - i.e., by removing the /businesses/restaurants/italian.htm portion of the address. Myers Decl. ¶ 55-56; Exs. D-E.

### (2) Snap Shots[TM] Infringes the '904 Patent

Snap offers its Snap Shots[TM] service to individual users as well as organizations that operate websites. Myers Decl. ¶¶ 57, 72-73; Exs. F, M-9, J. When a user installs the Snap Shots[TM] browser plug-in, or a website installs the Snap Shots[TM] website code, the Snap Shots[TM] service adds an icon to search results. Myers Decl. ¶¶ 57, 72-73; Exs. F, M-9, J. If a user points the cursor to that Snap icon, a thumbnail of the web page is displayed. Myers Decl. ¶¶ 57, 72-73; Exs. F, M-9, J.

The Snap Shots™ browser plug-in and Snap Shots™ website services infringe at least claims 35, 38, 39, 41, 45, 46, 49, 50, 52, and 56. Ex. F.  By advertising, providing, and supporting these services, Snap directly infringes, and induces and contributes to the direct infringement by its individual and website customers.  *See, e.g., MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1379-1380 (Fed. Cir. 2005).

Claim 35 provides:

A method for presenting Internet information to a user comprising:

providing to a user a visual image of a web page containing at least one hyperlink; and at least partially concurrently

providing a thumbnail visual image of another web page of at least one web site which is represented by said at least one hyperlink via the Internet by employing an image server that stores and provides said thumbnail visual image,

said providing a thumbnail visual image comprising employing a web browser which interfaces via the Internet with a web server, separated from said image server, including visualization functionality, said visualization functionality being operative to embed commands to the web browser to download, via said image server, thumbnail visual images of web pages which represent hyperlinks contained in the web page and to provide to a user, via the web browser, an annotated web page.

As can be seen from Exhibits M-9 and M-10, this claim is infringed by the Snap Shots™ user and website services, in a manner similar to claims 1 and 18.  Myers Decl. ¶ 57; Exs. F, M-9, M-10.

Claim 38 provides, "[a] method according to claim 35 and wherein said thumbnail visual image is displayed within the visual image of said web page."  Claim 49 adds a similar limitation. As can be seen from Exhibit M-9, Snap displays the thumbnail within the visual image of the webpage that contains the search results in the web page displaying search results after Snap Shots™ is installed. Myers Decl. ¶ 57; Ex. F.  For this reason, Snap Shots™ infringes claims 38 and 49 of the '904 patent.  *Id.*

27

Claim 39 provides, "[a] method according to claim 38 and wherein said thumbnail visual image appears hovering over said hyperlink." Claims 45, 50, and 56 add similar limitations. As shown in Ex. M-9, the Snap Shots™ thumbnail hovers over the hyperlink in the web page displaying search results after Snap Shots™ is installed. For this reason, Snap Shots™ meets the additional limitations of claims 39, 45, 50, and 56 of the '904 patent. Myers Decl. ¶ 57; Exs. F, M-9.

Claim 41 provides, "[a] method according to claim 35 and wherein said web page comprises an HTML page." Claim 52 adds similar limitations. It cannot be disputed that the webpage containing the search results and the corresponding hyperlinks comprise an HTML page. For this reason, Snap Shots™ infringes claims 41 and 52. Myers Decl. ¶ 57; Exs. F, M-11.

Claim 46 provides:

A system for presenting Internet information to a user comprising:

first functionality providing to a user a visual image of a web page containing at least one hyperlink; and

second functionality operative at least partially concurrently with said first functionality for providing a thumbnail visual image of another web page of at least one web site which is represented by said at least one hyperlink via the Internet by employing an image server that stores and provides said thumbnail visual image, said second functionality comprising third functionality employing a web browser which interfaces via the Internet with a web server, separated from said image server, including visualization functionality, said visualization functionality being operative to embed commands to the web browser to download, via said image server, thumbnail visual images of web pages which represent hyperlinks contained in the web page and to provide to a user, via the web browser, an annotated web page.

In addition to providing a thumbnail of a web page located via a search, the visualization functionality of provided by www.snap.com and Snap Shots™ embeds commands to the web browser to download thumbnails via an image server. Myers Decl. ¶ 57; Exs. F, M-11. For this reason, Snap Shots™ infringes claim 46 of the '904 patent. *Id.*

For the foregoing reasons, the PI Defendants literally infringe numerous claims of Girafa's '904 patent.

### d. The '904 Patent is Valid

The '904 patent is presumed valid. *Canon Computer Sys., Inc. v. Nu-Kote Int'l, Inc.*, 134 F.3d 1085, 1088 (Fed. Cir. 1998). Prof. Myers conducted an in-depth analysis of the prior art of record and agrees with the Patent Office that the claims are valid. Myers Decl. ¶ 62. In addition, secondary considerations of non-obviousness such as a long felt but unsolved need, the failure of others, and the commercial success of the patented invention, weigh heavily towards a conclusion that any obviousness attack on the '904 claims would fail. Myers Decl. ¶ 70-81.

For example, the '904 invention was conceived after many others failed to develop a commercially practical solution. Myers Decl. ¶ 70-71. Once implemented, the '904 patented approach spawned an entire industry of thumbnail supply to third-party websites, and achieved accolades across the computer industry. Ran Decl. ¶¶ 3, 12, 16. In recent years, the PI Defendants and independent analysts have consistently touted the advantages of this technology. Exs. I-L at Myers Decl. ¶¶ 72-81.

> ... Snap Preview Anywhere, the fastest-growing website enhancement service that delivers instant site previews, is now immediately available to all members of the Xanga.com weblog community. With Snap Preview Anywhere, visitors to a Xanga weblog now have access to instant previews of linked sites, adding to Xanga's already highly-customizable, user-generated community.
>
> "Our users have really embraced Snap Previews." said Bob Hiler, VP of Advertising at Xanga.com. "The response has been tremendous - less than 0.1% of our millions of users have opted-out of having Snap Previews on their Xanga sites."
>
> Snap Preview Anywhere gives website owners, bloggers and web publishers the ability to leverage Snap.com's award-winning visual search technology and massive library of webpage images for use on their own sites. By rolling over

any link on a site that contains the Snap Preview Anywhere code, users instantly see a floating window with a visual preview of the corresponding webpage. This allows users to quickly decide if a site is worth visiting before actually clicking on the link.

Since its introduction in November, Snap Preview Anywhere has seen rapid adoption, serving more than 350 million previews on more than 700,000 websites, and continues to ***grow exponentially every day***. ...

**About Snap Preview Anywhere**
Snap Preview Anywhere gives website owners, bloggers and web publishers the ability to leverage Snap.com's award-winning visual search technology and ***massive library of webpage images for use on their own sites***. By rolling over any link on a site that contains the Snap Preview Anywhere code, users ***instantly see a floating window with a visual preview of the corresponding webpage.*** This allows users to quickly decide if a site is worth visiting before actually clicking on the link.

Ex. J at pp. 11-12 (emphasis original and added)

**A Picture Is Worth A Thousand Words**
... Thumbshots emphasize visual cues for content retrieval. Our preview technology embeds a tiny screenshot alongside the search results or directory listings will improve the information retrieval process. Thumbshots increase your productivity and improve user satisfaction because users are able to find the results they want faster and accurately. Users feel empowered because they know what to expect when clicking to a site. After all, searching shouldn't be a guessing game!

Studies from Microsoft Research show search performance is significantly improved using thumbshot images. According to University of Calgary, users are extremely enthusiastic about the preview functionality because it helps locate web sites easier and faster.

Ex. K, p. 7.

Thumbshots improve user satisfaction by locating the information users want easily and removing the frustrations associated with searching. Studies confirm, thumbshots help reduce failed searches and increase user satisfaction:

Microsoft Research: We examined the contribution of the thumbnail image to the speed and success of finding the target web page [...] We observed an initial significant slowdown in retrieval times when the thumbnail images were not available for inspection. It is clear that the significant drop in performance

was due to the thumbnail cueing condition only." On average, subjects ranked the thumbnail images as the most helpful.

University of Calgary: Five of the seven subjects were enthusiastic about the system, three of them extremely so, making statements such as "It'd be great to have a system like this."

Ex. K, p. 11.

Tuscany-Tuscany.org's team monitors the number of clicks each listing receives. Since the directory integrated thumbshots in December 2004, the team noticed a *visible percentage increase in the number of clicks for listings with thumbshots receive in comparison to those without screenshots by up to 5 times*. Thumbshots are screenshots of web pages in thumbnail sizes providing users a preview of the sites before they click on any of them.

Ex. K, p. 25 (emphasis added); *See also*, Ex. L.

The ability to supply images from separate servers has been significant in spawning this new industry. Girafa, Snap, Smartdevil, and Amazon all use separate image servers to provide thumbnail images to their customers. Myers Decl. ¶¶ 78-81. For example, having an image server is advertised as an important feature by Smartdevil in the FAQ (frequently asked questions) for Thumbshots:

**Who will host the thumbshots?**

We take care of everything. You do not need to add any machine or bandwidth. There is no change to your backend system. You continue to host your web pages as before. Thumbshots are pulled from our servers directly by the end users.

Ex. K, p. 20.

Alexa also advertises the advantages of using its image servers for providing thumbnail images for the home pages for web pages that come from separate web servers:

31

The Alexa Site Thumbnail web service provides developers with programmatic access to thumbnail images for the home pages of web sites. It offers access to Alexa's large and growing collection of images, gathered from its comprehensive web crawl.

This web service enables developers to enhance web sites, search results, web directories, blog entries, and other web real estate with Alexa thumbnail images. Including web site thumbnails improves user experience by allowing end users to preview sites before clicking on the thumbnail's associated link.

**Service Highlights**

- **Ease of use** - Retrieve up to twenty thumbnail images at once by adding a single line of code to your web pages

- **Broad and expanding image collection** - retrieve thumbnails for home pages of web sites including all of the top sites on the Internet, all of the web sites in the DMOZ directory, with more becoming available daily.

- **Responsive** - If a requested thumbnail image does not yet exist, it will be automatically generated within 24 hours.

- **Multi-size access** - Thumbnail images are available in large (147x201 pixels) and small (82x111 pixels) sizes.

Ex. I, page 11. (emphasis original)

Given the significant commercial success of the '904 technology, any obviousness attack on the at least twenty-five asserted claims will likely fail.  Myers Decl. ¶¶ 70-81.

### C.  Girafa Will Be Irreparably Harmed if Defendants Are Not Preliminarily Enjoined

The second factor that a patentee seeking a preliminary injunction must show, is that it will suffer irreparable harm if the injunction is not granted.[18]  Injunctive relief preserves the legal

---

[18] In *eBay, Inc. v. Mercexchange, LLC*, 126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006), the Supreme Court addressed the proper analysis for *permanent* injunctive relief. Courts are now interpreting what impact *eBay* has in granting preliminary injunctive relief in patent infringement actions.  At least one district court has held that the Supreme court in *eBay* did not invalidate the presumption of irreparable harm for preliminary injunctions upon a showing of validity and infringement. *Christiana Indus., Inc. v. Empire Elecs.*, Case No. 06-12568, 2006 U.S. Dist. LEXIS 54210, at *5 (E.D. Mich. August 6, 2006) (denying a motion to reconsider the Order granting a preliminary injunction against the alleged infringer).

interests of the parties against "future infringement which may have market effects never fully compensable in money." *Hybritech*, 849 F.2d at 1457; *Telebrands Direct Response Corp. v. Ovation Commc'ns, Inc.*, 802 F. Supp. 1169, 1178 (D.N.J. 1992).

A strong showing of likelihood of success on the merits, in particular coupled with other forms of irreparable harm, suffice to demonstrate irreparable harm. *Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1381 (Fed. Cir. 2006). The Federal Circuit has consistently held that "a district court should presume that a patent owner will be irreparably harmed when, as here, a patent owner establishes a strong showing of likely infringement of a valid and enforceable patent." *Pfizer, Inc. v. Teva Pharms. USA, Inc.*, 429 F.3d 1364, 1381 (Fed. Cir. 2005). Irreparable harm is more likely when the patentee also sells a product that is claimed in the patent. *eBay, Inc. v. Merc Exchange, L.L.C.*, 126 S.Ct. 1837, 1841-42 (2006).

Various "economic" considerations, such as lost market share, the dollar amount expended on product development and reduced profits, are "specifically among the factors that courts consider" in holding that a patentee will suffer irreparable harm. *A.K. Stamping Co.*, 106 F.Supp.2d at 655; *see also, Hybritech*, 849 F.2d at 1457 (enumerating various factors); *Jacobson v. Cox Paving Co.*, 19 U.S.P.Q.2d 1641, 1659 (D. Ariz. 1991).

The court in *Sanofi-Synthelabo* provides valuable guidance on the various ways in which a party may be irreparably harmed. *Id.* at 1381. Among these types of irreparable harm is irreversible price erosion, *id.*, which is likely to occur here. Ran Decl. ¶ 25. Courts following the *eBay* decision have also highlighted the importance of injunctive relief when the parties are in competition with each other and the potential customers in the market are "sticky customers," in other words customers tend to select a supplier and then remain customers of that supplier.

33

*See, e.g, TiVo Inc. v. EchoStar Comm'n Corp.,* 446 F. Supp.2d 664, 669-70 (E.D. Tex. 2006).
Both of these factors are present here. Ran Decl. ¶¶ 24-28.

      PI Defendants' continued infringement of Girafa's patents immediately and irreparably
has harmed Girafa in several ways. While Girafa's main revenue source is direct charges for
accessing thumbnails stored on its server, PI Defendants have been selling and also giving away
thumbnail access free of charge.

**REDACTED**

**D. The Balance of Hardships tips Strongly in Favor of Girafa**

      The third factor in a preliminary injunction analysis is the balance of hardships, where the
threatened injury to the patentee should the injunction be denied is weighed against the injury to
the accused infringer if the preliminary injunction is granted. *See Oakley, Inc. v. Sunglass Hut
Int'l,* 316 F.3d 1331, 1346 (Fed. Cir. 2003); *see also Hybritech Inc. v. Abbott Labs.,* 849 F.2d
1446, 1457 (Fed. Cir. 1988). In patent infringement actions, the balance of hardships does not
favor a defendant who "took a calculated risk that it might infringe [plaintiff's] patents." *Smith
Int'l, Inc. v. Hughes Tool Co.,* 718 F.2d 1573, 1581 (Fed. Cir. 1983). "One who elects to build a
business on a product found to infringe cannot be heard to complain if an injunction against a
continuing infringement destroys the business so elected." *Telebrands,* 802 F.Supp. at 1179 (the
defendant's "plea of hardship" was rejected since it was aware of the risks of its "legally
precarious business venture").

34

Here, the PI Defendants were aware of Girafa's innovative achievements in thumbnail technology at least since the filing of the Complaint. PI Defendant Snap has been aware of Girafa's technology since 2004 and was informed at that time that the technology was the subject of a pending patent. Ran Decl. ¶ 23. Snap then made a calculated decision to ignore Girafa's patent rights. PI Defendant Smartdevil was clearly aware of Girafa's technology. Smartdevil even cleverly embedded the world "girafa" in its own website presumably to misdirect potential customers who search for "Girafa." Ex. K at 2.

In order to limit the hardship to the Defendants named in this action, Girafa has limited this motion to only those Defendants that are directly competing in a way that erodes the market price and Girafa's market share. Certainly any hardship to the enjoined unlawful competitors, many of whom are giving away the patented technology for free, cannot outweigh the hardship of Girafa, t        **REDACTED**

### E. It is in the Public Interest to Preliminarily Enjoin the Defendants

The final factor concerns the impact that injunctive relief would have on the public interest and focuses on whether there exists some "critical public interest" that would be harmed by the grant of injunctive relief. *See Hybritech*, 849 F.2d at 1458 (citations omitted). There is simply no public interest that is served by permitting patent infringement. *A.K. Stamping Co., Inc. v. Instrument Specialties Co., Inc.*, 106 F. Supp.2d 627, 655 (D.N.J. 2000) ("no public interest is served by allowing patent infringement"). Accordingly, "[t]here is a strong public interest in ensuring that valid patents are enforced." *Canon, Inc. v. GCC Int'l Ltd.*, 450 F.

Supp.2d 243, 257 (S.D.N.Y. 2006). Moreover, customers of enjoined PI Defendants can easily be serviced by Girafa. Ran Decl. ¶ 27.

As Girafa has demonstrated a likelihood of infringement and has met the remaining factors necessary for a preliminary injunction, the public interest is best served by preliminarily enjoining the defendants from continuing to infringe Girafa's patent. *See Lawman*, 2002 U.S.Dist. LEXIS 1431, at *55 ("Where a likelihood of infringement has been shown, the public interest is almost always served by vindicating the patentee's rights."). This is especially true here where the PI Defendants are giving away Girafa's patented technology for free, and/or misdirecting Internet users to their website when the users are actually looking for Girafa's website. In sum, the public interest is best served by encouraging those who are willing to take risks in the pursuit of innovation, and by affording them the protections and the benefits that are at the core of what the patent laws are meant to provide. In a public interest analysis concerning the impact of injunctive relief, the benefit of protecting such innovators simply cannot be outweighed by the harm to the infringers who will be denied the profits to which they never were entitled in the first place.

## IV.    <u>CONCLUSION</u>

The PI Defendants infringe at least twenty-five claims of the '904 patent, a patent which has essentially spawned an industry of third-party thumbnail image services. Girafa's evidence of likelihood of success and irreparable harm is overwhelming. Moreover, the balance of hardships and public interest factors favor Girafa. Girafa thus respectfully requests that this Court enter an Order preliminarily enjoining the PI Defendants from continuing to infringe Girafa's patent, both directly and indirectly, during the pendency of this case.

ASHBY & GEDDES

*/s/ Tiffany Geyer Lydon*

Steven J. Balick (I.D. # 2114)
John G. Day (I.D. # 2403)
Tiffany G. Lydon (I.D. #3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Plaintiff Girafa.com Inc.*

*Of Counsel:*

William H. Mandir
John F. Rabena
Chandran B. Iyer
SUGHRUE MION, PLLC
2100 Pennsylvania Ave., N.W.
Washington D.C. 20037
(202) 293-7060
wmandir@sughrue.com
jrabena@sughrue.com
cbiyer@sughrue.com

Dated: March 13, 2008

37