## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| GIRAFA.COM, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | C.A. NO. 07-787 (SLR) |
| AMAZON WEB SERVICES LLC, | ) | |
| AMAZON.COM, INC., ALEXA | ) | |
| INTERNET, INC., IAC SEARCH & | ) | |
| MEDIA, INC., SNAP TECHNOLOGIES, | ) | |
| INC., YAHOO!, INC., EXALEAD S.A., | ) | |
| and EXALEAD, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## SNAP TECHNOLOGIES, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO

## GIRAFA.COM'S MOTION FOR PRELIMINARY INJUNCTION

Arthur G. Connolly, III (I.D. #2667)
CONNOLLY BOVE LODGE & HUTZ LLP
1007 N. Orange Street
P.O. Box 2207
Wilmington, DE  19899
Telephone: (302) 658-9141
Email: AConnollyIII@cblh.com

*Of Counsel*:
Daniel M. Cislo (admitted pro hac vice)
Mark D. Nielsen (admitted pro hac vice)
CISLO & THOMAS LLP
1333 2nd Street, Suite 500
Santa Monica, California 90401
Telephone: (310) 451-0647
Telefax: (310) 394-4477
Attorneys for Defendant/Counterclaim
Plaintiff Snap Technologies, Inc.

May 16, 2008

# TABLE OF CONTENTS

I.      NATURE AND STAGE OF PROCEEDINGS .................................................. 1

II.     SUMMARY OF ARGUMENT .................................................................. 1

III.    STATEMENT OF FACTS....................................................................... 2

        A.      Snap Technologies ............................................................... 2

        B.      United States Patent 6,864,904 .............................................. 4

IV.     ARGUMENT....................................................................................... 5

        A.      Standard for Motion for Preliminary Injunction...................... 5

        B.      Girafa.com Has Not Demonstrated a Likelihood of Success on the Merits ...... 6

                1.      Snap Does Not Literally Infringe the Asserted Claims of the '904
                        Patent........ .............................................................. 7

                        a.      Snap Enhanced Does Not Infringe the '904 Patent ................ 11

                        b.      Snap Classic Does Not Infringe the '904 Patent ................... 13

                        c.      Snap Shots Browser Plug-in and Snap Shots for
                                Publishers/Bloggers Do Not Infringe the '904 Patent ............. 15

                        d.      Conclusion – Snap Does Not Infringe the Asserted Claims ...... 17

                2.      Girafa Has Failed to Demonstrate That Snap Contributes to
                        Others' Infringement or That Snap Induces Others to Infringe ........... 17

                3.      The Claims of the '904 Patent Asserted Against Snap are Invalid
                        as Anticipated or Obvious and/or Unenforceable .......................... 19

                        a.      Legal Standard for Invalidity by Anticipation ..................... 19

                        b.      Legal Standard for Invalidity by Obviousness ..................... 19

                        c.      The Asserted Claims of the '904 Patent are Invalid ............... 21

                        d.      Girafa's Contentions Regarding Secondary Considerations
                                of Non-Obviousness are Unavailing ................................. 27

   e.  The '904 Patent May be Unenforceable Because of
     Inequitable Conduct by Girafa.........................................29

  C.  Girafa.com Has Failed to Demonstrate Irreparable Harm..........................30

  D.  Girafa.com Has Failed to Demonstrate that the Balance of Hardships
    Favors Granting a Preliminary Injunction ...............................................33

  E.  The Public Interest Favors Denial of a Preliminary Injunction ...................34

V.  THE COURT SHOULD REQUIRE PLAINTIFF TO POST BOND IN THE
  UNLIKELY EVENT THAT AN INJUNCTION ISSUES .................................35

VI.  CONCLUSION.............................................................................................35

## TABLE OF AUTHORITIES

### Cases

Abbott Laboratories v. Andrx Pharmaceuticals, Inc.,
  452 F.3d 1331 (Fed. Cir. 2006) ................................................................ 5, 6, 33, 34

Altana Pharma. AG v. Teva Pharmaceuticals USA, Inc.,
  532 F. Supp. 2d 666 (D.N.J. 2007) .................................................................. 32

Amazon.com, Inc. v. Barnesandnoble.com,
  239 F.3d 1343 (Fed. Cir. 2001) ................................................................. 5, 6, 19

Amoco Production Co. v. Village of Gambell,
  480 U.S. 531 (1987) ................................................................................. 30

Callaway Golf Co. v. Acushnet Co.,
  523 F. Supp. 2d 388 (D. Del. 2007) ................................................................. 7

Doran v. Salem Inn,
  422 U.S. 922 (1975) ................................................................................. 5

DSU Med. Corp. v. JMS Co.,
  471 F.3d 1293 (Fed. Cir. 2006) ...................................................................... 18

Dystar Textilfarben GMBH & Co. v. C.H. Patrick Co.,
  464 F.3d 1356 (Fed. Cir. 2006) ...................................................................... 20

eBay, Inc. v. MercExchange, LLC,
  547 U.S. 388, 126 S.Ct. 1837 (2006) ................................................................ 30

Eli Lilly and Co. v. American Cyanamid Co.,
  82 F.3d 1568 (Fed. Cir. 1996) ....................................................................... 32

Erico Int'l Corp. v. Vutec Corp.,
  516 F.3d 1350 (Fed. Cir. 2008) ................................................................. 5, 6, 19

Everpure, Inc. v. Cuno, Inc.,
  875 F.2d 300 (Fed. Cir. 1989) ....................................................................... 17

Graham v. John Deere Co.,
  383 U.S. 1 (1966) ................................................................................... 20

Greenberg v. Ethicon Endo-Surgery, Inc.,
   91 F.3d 1580 (Fed. Cir. 1996) ............................................................................10

Helifix Ltd. v. Blok-lok, Ltd.,
   208 F.3d 1339 (Fed. Cir. 2000)................................................................... 6, 19

High Tech Medical Instrumentation, Inc. v. New Image Industries, Inc.,
   49 F.3d 1551 (Fed. Cir. 1995) ...................................................................30, 31

In re GPAC Inc.,
   57 F.3d 1573 (Fed. Cir. 1995) ...................................................................20, 28

In re Nilssen,
   851 F.2d 1401 (Fed. Cir. 1988).........................................................................20

Instant Air Freight Co. v. C.F. Air Freight, Inc.,
   882 F.2d 797 (3d Cir. 1989) ................................................................................ 5

IPXL Holdings, L.L.C. v. Amazon.com, Inc.,
   430 F.3d 1377 (Fed. Cir. 2005)........................................................................19

Johnson Worldwide Associates, Inc. v. Zebco Corp.,
   175 F.3d 985 (Fed. Cir. 1999) ........................................................................... 7

Johnston v. IVAC Corp.,
   885 F.2d 1574 (Fed. Cir. 1989)......................................................................... 7

KSR International Co. v. Teleflex Inc.,
   127 S. Ct. 1727 (2007).....................................................................................20

Markman, Inc. v. Westview Instruments, Inc.,
   54 F.3d 967 (Fed. Cir. 1995)............................................................................. 7

Mas-Hamilton Group v. LaGard, Inc.,
   156 F.3d 1206 (Fed. Cir. 1988)......................................................................... 7

MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.,
   420 F.3d 1369 (Fed. Cir. 2005).......................................................................18

Met-Coil Systems Corp. v. Korners Unlimited, Inc.,
   803 F.2d 684 (Fed. Cir. 1986) .........................................................................17

Nutrition 21 v. U.S.,
   930 F.2d 867 (Fed. Cir. 1991) .........................................................................31

Pharmastem Therapeutics, Inc. v. Viacell, Inc.,

    491 F.3d 1342 (Fed. Cir. 2007)........................................................................18

PHG Technologies., LLC v. St. John Cos., Inc.,

    469 F.3d 1361 (Fed. Cir. 2006)....................................................................... 5

Phillips v. AWH Corp.,

    415 F.3d 1303 (Fed. Cir. 2005)....................................................................... 7

Richardson-Vicks, Inc. v. Upjohn Co.,

    122 F.3d 1476 (Fed. Cir. 1997)........................................................................20

Siemens Medical Solutions USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.,

    2008 U.S. Dist. LEXIS 1486 (D. Del. Jan. 8, 2008) ..........................................30, 31

Sinskey v. Pharmacia Ophthalmics, Inc.,

    982 F.2d 494 (Fed. Cir. 1992) ........................................................................20

Stratoflex, Inc. v. Aeroquip Corp.,

    713 F.2d 1530 (Fed. Cir. 1983)........................................................................20

Sun Optics, Inc. v. FGX International, Inc.,

    2007 U.S. Dist. LEXIS 56351 (D. Del. Aug. 2, 2007)............................................30

T.J. Smith & Nephew, Ltd. v. Consolidated Medical Equipment, Inc.,

    821 F.2d 646 (Fed. Cir. 1987) ........................................................................31

Watts v. XL Systems, Inc.,

    232 F.3d 877 (Fed. Cir. 2000) ........................................................................10

## Rules

District of Delaware Local Rule 7.1.3(c)(2) ...........................................................33

Fed.R.Civ.P. 65(c) .........................................................................................35

## I.     NATURE AND STAGE OF PROCEEDINGS

Plaintiff Girafa.com, Inc. ("Plaintiff" or "Girafa") commenced this case in early December of 2007.  Shortly thereafter, Defendant Snap Technologies, Inc. ("Snap"), among other Defendants, answered the complaint.  Approximately four months later, on or about March 13, 2008, Girafa filed a motion for preliminary injunction directed to Defendant Snap Technologies, Inc. ("Snap") among several other defendants claiming a need for extraordinary relief.  As set forth in greater detail below, Girafa's motion is baseless and should be denied.

## II.     SUMMARY OF ARGUMENT

1.     Girafa's motion for preliminary injunction should be denied because Snap does not infringe any of the asserted claims of the patent-in-suit.  Thus, Girafa cannot demonstrate a likelihood of success on the merits, as required for obtaining the extraordinary relief of a preliminary injunction.

2.     Even if Snap did infringe the asserted claims of the patent-in-suit, Snap, through joint invalidity expert, Professor Joseph Hardin, and based on its own invalidity arguments herein, has shown that the validity of the asserted claims of the patent-in-suit based on anticipation and obviousness, among other things, has been called into substantial question.   In other words, even if infringement occurred, Girafa cannot demonstrate that valid claims have been infringed.  Thus, a likelihood of success cannot be established.

3.     Even if Girafa demonstrated a likelihood of success on the merits, it nonetheless failed to demonstrate the existence of any irreparable harm, as required for a preliminary injunction.  Girafa has not shown why money damages are inadequate.

4.      Snap would suffer substantial hardship if an injunction were improperly granted. In fact, there is a substantial chance that the company could fail if a preliminary injunction is granted, resulting in lost jobs, and substantial losses for investors.  Girafa, on the other hand, has offered only conclusory allegations of how it would suffer without an injunction.  Thus, the balance of hardships favors denial of Girafa's motion.

5.      Finally, because of the overwhelming evidence of invalidity of the patent-in-suit, the public interest would not be served by granting an injunction and restraining free competition based on an invalid patent.  Thus, the public interest favors denial of Girafa's motion.

## III.    STATEMENT OF FACTS

### A.    Snap Technologies

Snap is a small, early-stage company located in Pasadena, California.  Snap offers services to publishers, website owners, and end users that combine content delivery with contextual advertising, and that present to internet users enhanced hyperlinks that display previews, text summaries, videos, stock charts, MP3s, product information, and more.  Snap's services allow users to preview web content, and allow website owners, publishers/bloggers to enhance their web content through previewing visually and textually enhanced windows associated with hyperlinks in a given web page.

In May 2006, Snap launched its website offering users an Internet search engine with a preview of a hyperlinked website delivered in the search results ("Snap Enhanced").  Declaration of Thomas P. McGovern, Jr. in Opposition to Girafa.com's Motion for

2

Preliminary Injunction ("McGovern Decl.") (submitted concurrently herewith) at ¶ 5. In late 2006, Snap launched a service now known as "Snap Shots" that allows third party Internet website operators to use aspects of Snap's technology on their websites ("Snap Shots for Publishers/Bloggers"). McGovern Decl. at ¶ 5. During 2007, Snap launched versions of "Snap Shots" that allow end users to use Snap's search engine that includes the Snap Shots service ("Snap Classic"), as well as a service that allows end users to install the Snap Shots service into a browser so that Snap Shots can be used on various websites ("Snap Shots Browser Plug-in" or "Snap Shots Browser Add-on"). McGovern Decl. at ¶ 5.

A "Snap Shot" is a small, separate window delivered to an end user when hovering the cursor over a hyperlink or small icon on a web page that enables the user to see a preview of a hyperlinked webpage. Declaration of Michael Agostino in Opposition to Girafa.com's Motion for Preliminary Injunction ("Agostino Decl.") (submitted concurrently herewith) at ¶ 6.

Thus, Snap has four embodiments of its technologies at issue in this case: (1) Snap Enhanced; (2) Snap Classic; (3) Snap Browser Plug-in; and, (4) Snap Shots for Publishers/Bloggers. Agostino Decl. at ¶¶ 5. **Snap Enhanced** is a web search service whereby a user enters a search query, then a search results page loads and a large preview for the first result is also shown. Previews are presented one-at-a-time to the right of the textual search results. The user must then click the mouse or keyboard to trigger previews for additional search results. Agostino Decl. at ¶ 9.

In addition to Snap Enhanced, the "Snap Shot" service is available in three distinct services: (1) **Snap Classic** - a search engine where the search results are formatted in manner typical of most search engines, and *after* the search results page is displayed the end user can

3

hover the cursor over a hyperlink and receive a Snap Shot; (2) **Snap Shots Browser Plug-in** - software that allows end users to install an application in their browser that allows the Snap Shot service to be used on various websites and viewed by the user on that specific computer; (3) **Snap Shots for Publishers/Bloggers** - a website operator can install software to enable the Snap Shots service on his/her web site.    Agostino Decl. at ¶ 8.  With the three Snap Shots services, the search results or other web pages containing hyperlinks do not contain any Snap previews.  At some later point after the search results load, the user can hover the cursor over a small icon or the hyperlink, which results in the transmission and display of the preview to the user.  Agostino Decl. at ¶ 8.

### B.      United States Patent 6,864,904

United States Patent 6,864,904 (the "'904 Patent") describes an alleged improvement to internet search technologies.  <u>See</u>, Declaration of Gabriel Robins ("Robins Decl.") (submitted concurrently herewith) at Exh. 4.  The '904 Patent claims priority to a sparse provisional application filed on December 6, 1999.  Briefly, a typical internet search would result in a list of hyperlinks consisting of the text of the URL of a web page or a title for a web page, and a brief description of the web page.  The '904 Patent claims to have added the idea of providing a thumbnail image of the home page of the web site associated with the linked web page, although the evidence submitted in connection Snap's opposition papers and the Amazon Defendants' opposition papers, particularly the Hardin Declaration[1], seriously call into

---

[1] Prof. Hardin served as a common invalidity expert for the Amazon Defendants and Snap.  To the extent the Amazon Defendants' brief and Prof. Hardin's declaration refer to claims of the

question whether the '904 Patent added anything to existing internet search methodologies.

## IV.    ARGUMENT

### A.    Standard for Motion for Preliminary Injunction

A preliminary injunction is a form of "extraordinary relief" that should only be applied in limited circumstances that clearly demand it.    Abbott Laboratories v. Andrx Pharmaceuticals, Inc., 452 F.3d 1331, 1335 (Fed. Cir. 2006); Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 800 (3d Cir. 1989).

A party moving for a preliminary injunction bears the burden of establishing that a preliminary injunction is appropriate based on the following factors: (1) a reasonable likelihood of success on the merits; (2) immediate irreparable harm that will result if the relief is not granted; (3) the balance of hardships weighs in the moving party's favor; and, (4) the public interest is best served by granting injunctive relief.    Abbott Laboratories, 452 F.3d at 1334; Erico Int'l Corp. v. Vutec Corp., 516 F.3d 1350, 1354 (Fed. Cir. 2008 (citing, PHG Technologies., LLC v. St. John Cos., Inc., 469 F.3d 1361, 1365 (Fed. Cir. 2006)). "'[Federal Circuit] case law and logic both require that a movant cannot be granted a preliminary injunction unless it establishes both of the first two factors, i.e., likelihood of success on the merits and irreparable harm.'"    PHG Technologies, 469 F.3d at 1365 (quoting, Amazon.com, 239 F.3d at 1350.

This standard, to be applied in deciding whether a plaintiff is entitled to a preliminary injunction, is stringent.    Doran v. Salem Inn, 422 U.S. 922, 932 (1975).

---

'904 Patent asserted against Snap, Snap adopts such arguments and evidence and incorporates them herein by reference.

**B.      Girafa.com Has Not Demonstrated a Likelihood of Success on the Merits**

To demonstrate a likelihood of success on the merits, Girafa must show that it will likely prove infringement of the asserted claims, <u>and</u> that the asserted claims will likely withstand any invalidity or unenforceability challenge(s) raised by Snap (or the Amazon Defendants). <u>Amazon.com, Inc. v. Barnesandnoble.com</u>, 239 F.3d 1343, 1350 (Fed. Cir. 2001). If Snap (or the Amazon Defendants) raises a substantial question regarding infringement or validity/ enforceability, the Court should deny the motion for preliminary injunction. <u>Id</u>. at 1350-51. In other words, if Snap (or the Amazon Defendants) raises a substantial question as to the validity of the asserted patent claims that the moving party cannot establish "lacks substantial merit," then likelihood of success on the merits cannot be established. <u>Abbott Laboratories</u>, 452 F.3d at 1335; <u>Erico International Corp. v. Vutec Corp.</u>, 516 F.3d 1350, 1356 (Fed. Cir. 2008.

Furthermore, in opposing a motion for preliminary injunction, Snap (or the Amazon Defendants) need not prove invalidity (or unenforceability) by clear and convincing evidence, but need only show the "vulnerability" of the patent. <u>Id</u>. "A particular reference which did not on its face disclose all of the limitations of the claim in suit was argued to be anticipatory, even though there was a conflict in the testimony as to whether the reference would have taught one of ordinary skill in the art the claim limitations not expressly stated on the face of the reference. Although insufficient to demonstrate invalidity for purposes of the summary judgment motion, the reference was enough to prevent issuance of the preliminary injunction." <u>Amazon.com v. Barnesandnoble.com</u>, 239 F.3d 1343, 1358-59 (Fed. Cir. 2001) (<u>citing</u>, <u>Helifix Ltd. v. Blok-lok, Ltd.</u>, 208 F.3d 1339, 1351-52 (Fed. Cir. 2000)).

1.      **Snap Does Not Literally Infringe the Asserted Claims of the '904 Patent**[2]

The necessary first step in an infringement (or invalidity) analysis is claim construction, a process with which this Court is quite familiar.  See, e.g., Markman, Inc. v. Westview Instruments, Inc., 54 F.3d 967, 976 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370 (1996; Callaway Golf Co. v. Acushnet Co., 523 F. Supp. 2d 388, 399 (D. Del. 2007).

Briefly, to ascertain the meaning of a disputed claim term, "the words of a claim are generally given their ordinary and customary meaning," as would be understood by "a person of ordinary skill in the art in question at the time of the filing of the patent application in question." Phillips v. AWH Corp., 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc.  The person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification. Id  "Properly viewed, the 'ordinary meaning' of a claim term is its meaning to the ordinary artisan after reading the entire patent." Id. at 1321.

After claim construction, to determine whether a product literally infringes a claim of a patent, the court must compare the properly construed claims to the allegedly infringing device to determine, as a matter of fact, whether the accused device embodies every limitation of the asserted claim(s).  Johnson Worldwide Associates, Inc. v. Zebco Corp., 175 F.3d 985, 988 (Fed. Cir. 1999; Johnston v. IVAC Corp., 885 F.2d 1574, 1577 (Fed. Cir. 1989 (all elements rule); Mas-Hamilton Group v. LaGard, Inc., 156 F.3d 1206, 1211 (Fed. Cir. 1988.  A device product that does not have each and every element recited in the claim does not literally infringe the patent claim.  Johnson, 175 F.3d at 988.

---

[2] Girafa has not asserted infringement under the doctrine of equivalents in its motion.  As such, Snap does not address that issue in this opposition.

Here, none of Snap's four services at issue literally infringe any of the asserted claims of the '904 Patent. <u>See generally</u>, Robins Decl.

Snap accepted, wherever possible, Girafa's constructions of the claim terms for purposes of this motion because the '904 patent is invalid and/or non-infringed even using Girafa's proposed definitions. Snap, however, proposes several constructions of other terms in the '904 Patent to further demonstrate invalidity and/or non-infringement, something Girafa hoped to avoid by limiting their claim constructions to a few terms. Snap concurs that the claim sets starting with independent claims 18, 35, and 46 are largely redundant of the claim set starting with independent claim 1, which is the position Girafa appeared to take in its moving papers. Myers Decl. (submitted with Girafa's moving papers) at Exhs. D-F (note the frequent references back to the prior claims in the claim charts therein).

For purposes of this motion, Snap accepts the following constructions offered by Girafa. Robins Decl. at ¶¶ 20-23.

**Home Page**: A "Home Page" is the main or front page of a web site.

**Hovering Over**: When an image appears "Hovering Over" a web page, that image is displayed so that it looks like it is in a layer in front of the other content.

**Thumbnail Visual Image**: A "Thumbnail Visual Image" is an image that is a smaller version of a larger image.

**Visualization Functionality**: "Visualization Functionality" is software or hardware that provides one or more images to the user.

Snap does not agree with the following construction proposed by Girafa, and Snap proposes what it believes is the proper construction:

**Image Server**:  An "Image Server" is a server that stores and delivers images.

Girafa improperly attempted to import from the specification as an additional limitation that the image server must be separate from the web server, but claim 1, for instance, does not require such a construction.  Robins Decl. at ¶ 24.

Snap does not at this time take a position as to the proper construction of "hyperlink" or as to whether the term even requires construction.  For Snap's non-infringement arguments, the need for a construction of "hyperlink" does not seem to be pressing.

Snap proposes the following constructions for claim terms that Girafa has not construed:

**Providing**:  "Providing" means (a) transmitting, sending, or delivering and (b) displaying to a user.

Support for this construction can be found in Col. 1:39-41 of the '904 Patent ("The present invention seeks to provide a particularly beneficial methodology and system for displaying information received over the Internet"), in Col. 1, line 45 ("providing to a user a visual image of a web page"), and in the plain language of claims 1, 18, 35, and 46. Logically, both the web page with hyperlinks and the small, thumbnail images must be transmitted to a user as they reside on a remote server.  Robins Decl. at ¶¶ 28, 29.

**At Least Partially Concurrently**:  "At Least Partially Concurrently" based on its plain, ordinary, and customary meaning means "to some extent occurring at the same time," or "overlapping in time."  Robins Decl. at ¶¶ 26, 31-33.

**Within the Visual Image**:  "Within the Visual Image" means an element of the rendered web page.  Col. 6:30-31 ("a web page annotated to include therewithin images 216 of

homepages linked therewith"); Fig. 2 (reference number 213); Robins Decl. at ¶ 27, 50.

**Annotated Web Page**: "Annotated Web Page" means a web page modified to include thumbnail visual images.

Support for this construction can be found in the language in, for instance, claim 14 (stating that the annotated web page includes "the web page having within it thumbnail visual images of homepages of web sites referenced by hyperlinks contained in the web page"); Col. 5:63-65 (same); Col. 6:30-31 ("a web page annotated to include therewithin images 216 of homepages linked therewith"); Fig. 1 (reference number 110); Fig. 2 (reference number 213). Myers Depo. at 285:11-287:21 (attached to Declaration of Mark D. Nielsen in Opposition to Girafa.com's Motion for Preliminary Injunction ("Nielsen Decl.") (submitted concurrently herewith) at Exh. I); Myers Decl. at p. 8; Robins Decl. at ¶ 25

Finally, claims 18 and 46 (and their dependents) use the term "functionality" and recite a result of the functionality, but do not provide any meaningful structure for accomplishing the recited function. Where, as here, claim language recites a function without sufficient structure for carrying out the recited function, the claim language should be construed under 35 U.S.C. § 112 ¶ 6 even if the term "means" is absent. Watts v. XL Systems, Inc., 232 F.3d 877, 880 (Fed. Cir. 2000) (citing, Greenberg v. Ethicon Endo-Surgery, Inc., 91 F.3d 1580, 1583 (Fed. Cir. 1996)). Accordingly, Snap construes the following terms to be written in means-plus-function language:

**First functionality providing to a user a visual image of a web page**: The specification includes the following structure corresponding to this claim: Web browser 100 & 200 connected to web server 102 & 202, respectively, by the Internet. The function of this

claim is as follows:  providing a web page with at least one hyperlink.  '904 Patent at claims 18, 46; Col. 5:43-49; Col. 5:66-Col. 6:15; Robins Decl. at ¶¶ 67, 70.

**Second functionality . . . providing a thumbnail visual image of the home page of at least one web site which is represented by said at least one hyperlink via the Internet by employing an image server that stores and provides said thumbnail visual image**: The specification includes the following structure corresponding to this claim:  image server 104 & 210, image database 106 & 212, web server 102 & 202, web browser 100 & 200, and visualization functionality 103 & 206.  The function of this claim is as follows: providing a thumbnail visual image of the home page of a web site represented by at least one hyperlink employing an image server via the Internet.  '904 Patent at claims 18, 46; Col. 5:43-Col. 6:48; Robins Decl. at ¶¶ 68, 71.

**Third functionality employing a web browser which interfaces via the Internet with a web server, separated from said image server, including visualization functionality**: The specification includes the following structure corresponding to this claim:  Web browser 100 & 200, visualization functionality 103 & 206, and image server 104 & 210, which are separate from the web servers 102 & 202.  The function of this claim is as follows:  employing a web browser interfacing via the Internet with a web server that is separate from said image server and which includes visualization functionality.  '904 Patent at claim 46; Col. 5:43-Col. 6:48; Robins Decl. at ¶ 72.

### a.     Snap Enhanced Does Not Infringe the '904 Patent

Snap Enhanced is a web search service whereby a user enters a search query and Snap

Enhanced transmits the search results to the user whereby a search results page loads and a large preview for the first result is also shown to the right of the textual search results. Agostino Decl. at ¶ 9.

Snap Enhanced does not literally infringe independent claims 1, 18, 35, or 46 of the '904 Patent.  Claims 1, 18, 35, and 46 of the '904 Patent each require, among other things, that a thumbnail visual image corresponding to a hyperlink in the underlying web page be transmitted and displayed to the user at least partially concurrently with the underlying web page (and the first functionality and second functionality claim language recited in claims 18 and 46 refer to functions that correspond to the "providing" limitations in claims 1 and 35). '904 Patent at claims 1, 18, 35, 46; Robins Decl. at ¶¶ 20, 79-114 and Exhs. 15-30.

The "preview" shown by Snap Enhanced in association with the search results is anything but a thumbnail-sized image; it is far too large to be considered a thumbnail visual image.  Agostino Decl. at ¶ 9; Robins Decl. at ¶¶ 79-114 and Exhs. 15-30; Girafa's Brief at 32.  Exhibit 29 to the Robins Decl., by way of example, demonstrates that the Snap Enhanced previews are simply much too large to be thumbnail visual images.  As such, Snap Enhanced does not literally infringe claims 1, 18, 35, and 46 of the '904 Patent.

Furthermore, because Snap Enhanced does not satisfy the thumbnail visual image limitation of each of the asserted independent claims of the '904 Patent, Snap Enhanced does not infringe any of the other asserted dependent claims of the '904 Patent, in particular, claims 4, 7, 12, 21, 24, 29, 38, 41, 44, 49, 52, and 55.  Robins Decl. at ¶¶ 124, 129, 132, 142, 147, 168, 181, 190, 215, 228, 237.

Finally, Snap Enhanced does not infringe dependent claims 44 and 55 of the '904

Patent because it does not perform the requisite splitting of URLs, trimming path components of URLs, or constructing new URLs that include a trimmed path component. '904 Patent at claims 44 and 55; Robins Decl. at ¶¶ 54-58, 191-194, 238-241; Agostino Decl. at ¶¶ 20-22.

### b.    Snap Classic Does Not Infringe the '904 Patent

Snap Classic is a web search service similar to Google or Yahoo search where a user enters his/her query in a box and Classic Search transmits the search results to the user. Agostino Decl. at ¶ 6. The search results transmitted to the user contain hyperlinks and textual summaries, but do not contain any previews. Id. At some later point in time after the results load, the user may choose to hover the cursor over a small, generic icon, which results in a window containing links, logos, and the preview being transmitted to the user. Id.

Snap Classic does not literally infringe independent claims 1, 18, 35, or 46 of the '904 Patent. Claims 1, 18, 35, and 46 of the '904 Patent each require, among other things, that a thumbnail visual image corresponding to a hyperlink in the underlying web page be transmitted and displayed to the user at least partially concurrently with the underlying web page (and the first functionality and second functionality claim language recited in claims 18 and 46 identify functions that correspond to the "providing" limitations in claims 1 and 35). '904 Patent at claims 1, 18, 35, 46; Robins Decl. at ¶¶ 26, 28, 29, 31-33, 67, 68, 71, 72.

Assuming *arguendo* that Snap Classic displays thumbnail-sized images of hyperlinks, Snap Classic does not transmit and display the thumbnails at least partially concurrently with the transmission and display of the underlying web page containing the hyperlinks in that the user must hover the cursor over the hyperlink or icon associated therewith on the underlying

web page to trigger the transmission and display of the preview (or alleged thumbnail). Agostino Decl. at ¶ 6; Robins Decl. at ¶¶ 34-39, 49, 118, 136, 155, 202 and Exhs 6-8. As such, Snap Classic does not literally infringe claims 1, 18, 35, and 46 of the '904 Patent.

In addition, Snap Classic does not infringe independent claims 35 and 46 of the '904 Patent because Snap Classic does not provide an annotated web page, that is "a web page modified to include thumbnail images." '904 Patent at claims 35, 46; Robins Decl. at ¶¶ 25, 62, 156, 203 and Exh. 6.

Furthermore, because Snap Classic does not satisfy the providing … at least partially concurrently and annotated web page limitations of the asserted independent claims of the '904 Patent, Snap Classic does not infringe any of the other asserted dependent claims of the '904 Patent, in particular, claims 4, 5, 7, 12, 15, 21, 22, 24, 29, 32, 38, 39, 41, 44, 45, 49, 50, 52, 55, and 56. Robins Decl. at ¶¶ 121, 126, 128, 131, 134, 139, 144, 149, 152, 165, 175, 180, 185, 197, 212, 222, 227, 232, 244.

In addition, Snap Classic does not infringe dependent claims 4, 21, 38, or 49 of the '904 Patent because the previews in Snap Classic are not displayed within the visual image of the underlying web page. '904 Patent at claims 4, 21, 38, 49; Robins Decl. at ¶¶ 27, 50, 53, 122, 140, 166, 213 and Exhs. 6-11.

Finally, Snap Classic does not infringe dependent claims 44 and 55 of the '904 Patent because it does not perform the requisite splitting of URLs, trimming path components of URLs, or constructing new URLs that include a trimmed path component. '904 Patent at claims 44 and 55; Robins Decl. at ¶¶ 54-58, 186-189, 233-236; Agostino Decl. at ¶¶ 20-22.

      c.      **Snap Shots Browser Plug-in and Snap Shots for Publishers/Bloggers**

                    **Do Not Infringe the '904 Patent**

From an end user's standpoint, Snap Shots Browser Plug-in and Snap Shots for Publishers/Bloggers perform the same essential functions as Snap Classic.  Girafa's Brief at 14, 26; Agostino Decl. at ¶¶ 6-8; Robins Decl. at ¶¶ 40, 47, 48, 115.  Thus, to the extent Snap Classic does not literally infringe the asserted claims of the '904 Patent, neither would Snap Shots Browser Plug-in and Snap Shots for Publishers/Bloggers.  Furthermore, it should be noted that Girafa assertions of contributory infringement, or the Snap is inducing others to infringe, are meritless, as described below.

Snap Shots Browser Plug-in and Snap Shots for Publishers/Bloggers do not literally and directly infringe independent claims 35 and 46 of the '904 Patent.  Claims 35 and 46 of the '904 Patent require, among other things, that a thumbnail visual image corresponding to a hyperlink in the underlying web page be transmitted and displayed to the user at least partially concurrently with the underlying web page (and the first functionality and second functionality claim language recited in claim 46 identifies functions that correspond to the "providing" limitations in claim 35).  '904 Patent at claims 35, 46; Robins Decl. at ¶¶ 26, 28, 29, 31-33, 67, 68, 71, 72.

Assuming *arguendo* that Snap Shots Browser Plug-in and Snap Shots for Publishers/Bloggers display thumbnail-sized images of hyperlinks, they do not transmit and display the thumbnails at least partially concurrently with the transmission and display of the underlying web page containing the hyperlinks in that the user must hover the cursor over the hyperlink or icon associated therewith on the underlying web page to trigger the transmission

and display of the preview (or alleged thumbnail). Agostino Decl. at ¶¶ 6-8; Robins Decl. at ¶¶ 34, 40-49, 159, 162, 206, 209 and Exhs 9, 10, 19. As such, Snap Shots Browser Plug-in and Snap Shots for Publishers/Bloggers do not literally and directly infringe claims 35 and 46 of the '904 Patent.

In addition, Snap Shots Browser Plug-in and Snap Shots for Publishers/Bloggers do not literally and directly infringe independent claims 35 and 46 of the '904 Patent because they do not provide an annotated web page, that is "a web page modified to include thumbnail images." '904 Patent at claims 35, 46; Robins Decl. at ¶¶ 25, 63, 64, 160, 162, 207, 209 and Exhs. 9, 14.

Furthermore, because Snap Shots Browser Plug-in and Snap Shots for Publishers/Bloggers do not satisfy the providing … at least partially concurrently and annotated web page limitations of the independent claims 35 and 46, they do not literally and directly infringe any of the other asserted dependent claims of the '904 Patent, in particular, claims 38, 39, 41, 45, 49, 50, 52, and 56. Robins Decl. at ¶¶ 169, 172, 176, 177, 182, 183, 198, 199, 216, 219, 223, 224, 229, 230, 245, 246.

Finally, Snap Shots Browser Plug-in and Snap Shots for Publishers/Bloggers do not literally and directly infringe dependent claims 38 and 49 of the '904 Patent because the previews in Snap Shots Browser Plug-in and Snap Shots for Publishers/Bloggers are not displayed within the visual image of the underlying web page. '904 Patent at claims 38, 49; Robins Decl. at ¶¶ 27, 50-53, 170, 172, 217, 219 and Exhs. 6-11, 19.

      **d.**      **Conclusion – Snap Does Not Infringe the Asserted Claims**

Notwithstanding the substantial evidence demonstrating the invalidity of all of the asserted claims in the '904 Patent (discussed below and in the Amazon Defendants' Brief, the latter of which Snap adopts as to the claims asserted against it), the foregoing bases for the absence of Snap's infringement of the asserted claims of the '904 Patent demonstrate that Girafa cannot show a likelihood of success on the merits with respect to Snap's services.

    **2.**      **Girafa Has Failed to Demonstrate That Snap Contributes to Others'
Infringement or That Snap Induces Others to Infringe**

At pages 14 and 27 of its brief, Girafa appears to contend that Snap is inducing or contributing to infringement by others through its Snap Shots services either through a browser plug-in, or as provided to website owners. Girafa's contentions are incorrect and unsupported and cannot support the grant of a preliminary injunction.

Initially, it should be noted that both contributory infringement and inducing infringement require direct infringement, which, as described above and in detail in the Robins Declaration, is missing here with respect to each of Snap's services that are claimed by Girafa to infringe. Everpure, Inc. v. Cuno, Inc., 875 F.2d 300, 302 (Fed. Cir. 1989); Met-Coil Systems Corp. v. Korners Unlimited, Inc., 803 F.2d 684, 687 (Fed. Cir. 1986) (absent direct infringement of the patent claims, there can be neither contributory nor inducement of infringement). Therefore, any theory of vicarious liability for patent infringement by Snap itself must fail.

In addition, "[i]n order to succeed on a claim of inducement, the patentee must show,

first that there has been direct infringement," and "second, that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp., 420 F.3d 1369, 1378 (Fed. Cir. 2005).  The specific intent necessary to induce infringement "requires more than just intent to cause the acts that produce direct infringement. ... [T]he inducer must have an affirmative intent to cause direct infringement." DSU Med. Corp. v. JMS Co., 471 F.3d 1293, 1306 (Fed. Cir. 2006) (en banc).  Thus, "inducement requires evidence of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities." Id.

Here, aside from the fact that Girafa failed to demonstrate a likelihood of success on the merits regarding infringement of the '904 Patent by Snap Classic, Snap Shots Browser Plug-in, or Snap Shots for Publishers/Bloggers as shown above, Girafa has entirely failed to even address the requirement of affirmative intent to cause infringement, as required by law. Therefore, Girafa cannot demonstrate a likelihood of success on its inducement claim.

Girafa's contention regarding contributory infringement is even more unavailing because contributory infringement cannot be solely based on the provision of a service, but instead requires "the sale of a product of some sort." Pharmastem Therapeutics, Inc. v. Viacell, Inc., 491 F.3d 1342, 1357-58 (Fed. Cir. 2007) (reversing contributory infringement verdict because defendant merely sold a service, but not a product to the alleged direct infringer).  Here, Snap is not selling a product, but a service.  McGovern Decl. at ¶ 5.  Thus, it cannot be liable for contributory infringement.

3.    **The Claims of the '904 Patent Asserted Against Snap are Invalid[3] as Anticipated or Obvious and/or Unenforceable**

In addition to the evidence demonstrating that Snap does not infringe on any of the asserted claims, there are substantial questions as to the validity of all of the asserted claims. Furthermore, Snap (or the Amazon Defendants) need not prove actual invalidity to defeat this motion, but only the "vulnerability" of the patent claims at this stage of the proceedings. Erico International Corp. v. Vutec Corp., 516 F.3d 1350, 1356 (Fed. Cir. 2008); Amazon.com v. Barnesandnoble.com, 239 F.3d 1343, 1358-59 (Fed. Cir. 2001) (citing, Helifix Ltd. v. Blok-lok, Ltd., 208 F.3d 1339, 1351-52 (Fed. Cir. 2000)).

a.    **Legal Standard for Invalidity by Anticipation**

A patent claim is anticipated under 35 U.S.C. § 102 if every claim limitation is found either expressly or inherently in a single prior art reference. IPXL Holdings, L.L.C. v. Amazon.com, Inc., 430 F.3d 1377, 1381 (Fed. Cir. 2005). In determining the merits of a motion for preliminary injunction, however, equivocal testimony or "evidence . . .very much in equipoise" is sufficient for purposes of anticipation to warrant denial of a motion for preliminary injunction. Helifix, 208 F.3d at 1351-52.

b.    **Legal Standard for Invalidity by Obviousness**

Obviousness is ultimately an issue of law, but courts are instructed to consider (1) the

---

[3] The Expert Report of Joseph Hardin on Invalidity of U.S. Patent No. 6,864,904 was prepared for the Amazon Defendants and Snap, as indicated in the initial paragraph of the report. In addition to the arguments Snap raises herein, Snap adopts those arguments presented by Prof. Hardin's report and discussed in the Amazon Defendants' opposition brief.

scope and content of the prior art; (2) the differences between the prior art and the claimed invention; (3) the level of ordinary skill in the art; and, (4) objective evidence of secondary considerations that may bear on the obviousness inquiry. Richardson-Vicks, Inc. v. Upjohn Co., 122 F.3d 1476, 1479 (Fed. Cir. 1997); Graham v. John Deere Co., 383 U.S. 1, 17-18 (1966); see also, KSR International Co. v. Teleflex Inc., 127 S. Ct. 1727, 1739-43 (2007).

The person of ordinary skill in the art is deemed to be aware of all pertinent prior art. In re Nilssen, 851 F.2d 1401, 1403 (Fed. Cir. 1988).

If multiple references are relied upon to demonstrate obviousness, there should be articulated some reason for combining references, such as statements in the prior art, the knowledge of one of ordinary skill in the art, the nature of the problem to be solved, concepts implicit from the prior art as a whole, common knowledge, common sense, or in some cases, no evidence at all.  Dystar Textilfarben GMBH & Co. v. C.H. Patrick Co., 464 F.3d 1356, 1364-70 (Fed. Cir. 2006).

Once the challenger has made out a prima facie case of obviousness, the patentee must prove non-obviousness through persuasive evidence and cannot rely on the presumption of validity.  Stratoflex, Inc. v. Aeroquip Corp., 713 F.2d 1530, 1534 and n. 3 therein (Fed. Cir. 1983); see also, Sinskey v. Pharmacia Ophthalmics, Inc., 982 F.2d 494, 498-99 (Fed. Cir. 1992).   A patentee relying on secondary considerations to prove non-obviousness must demonstrate a nexus between the objective evidence of secondary considerations offered and the claimed aspects of the invention.  In re GPAC Inc., 57 F.3d 1573, 1580 (Fed. Cir. 1995).

### c.    The Asserted Claims of the '904 Patent are Invalid

In addition to the invalidity arguments proffered through joint invalidity expert Prof. Hardin, and articulated by the Amazon Defendants in their brief, Snap offers the following grounds for invalidity of the asserted claims of the '904 Patent.

**Schmid & Praitis**

Schmid, published in March of 1998, and prior art under 35 U.S.C. §§ 102(a) and 102(b), teaches a Thumbnail Server Architecture for presenting thumbnail images of web pages, thereby enabling users to preview web pages. See, Schmid (attached to Nielsen Decl. as Exh. B) at Section 3 (¶ 1 therein). The thumbnail images are presented as part of a web page (which suggests HTML pages) including a hyperlink and other textual information about the linked page that the hyperlink represents. Id. at Fig. 2 and Sections 1 & 5. The web page transmitted to the user includes embedded commands that enable a recipient's web browser to request and retrieve a thumbnail image from Schmid's Image Server, which is separate from his web server. Id. at Section 3.2 and Fig. 2. Schmid does not restrict the thumbnail images for web pages to any particular type of web page, thus Schmid applies to homepages and other deeper web pages organized under that homepage. The thumbnails are within the web page along with the associated hyperlink, thus forming the annotated web page as claimed in the '904 Patent. Thus, at least claims 1, 4, 7, 12, 18, 21, 24, 29, 35, 38, 41, 46, 49, and 52 of the '904 Patent are anticipated as Schmid teaches all of the elements of each of these claims.

Although Schmid teaches that the thumbnails are within the web page (claims 4, 21, 38, 49), other prior art thumbnail preview systems such as Kraft (U.S. Patent 7,177,948, attached

to Nielsen Decl. at Exh. C) and Mernyk (United States Patent 6,496,206, attached to Nielsen Decl. at Exh. D) disclose that the technique for presenting thumbnails alongside or hovering over the underlying page was known and is therefore a mere design choice available to those skilled in the art. Both Kraft and Mernyk are prior art – Kraft under 35 U.S.C. § 102(e) and Mernyk under 35 U.S.C. § 102(b). Thus, claims 5, 15, 22, 32, 39, 45, 50, and 56 would have been obvious to a person of ordinary skill in the art based on the combination of Schmid and either Kraft or Mernyk.

If, for some reason, Schmid's teaching of images of neighboring pages in Section 4 does not suggest modifying of a Uniform Resource Locator (URL) as used in claims 44 and 55 to present, for example, a homepage, a second reference, Praitis[4] (U.S. Patent 6,594,697, attached to Nielsen Decl. at Exh. E) teaches modifying the URL to identify and display the homepage where the requested web page is not available. Id. at Col. 13:21-32. To identify the homepage, Praitis removes the URL's path component (e.g. the names of folders in which a file is found) from the right-hand side of the URL, thereby leaving the URL to the main page of a website, for example. Id. at Col. 13:33-48.

A person of ordinary skill in the art would have been motivated by Praitis to substitute a thumbnail image of a homepage in place of a thumbnail of the actual linked page when this thumbnail is not available in order to prevent the user from seeing an error message. Error messages, such as "deadlink link" symbols for example, are avoided because they tend to intimidate users. Id. at Col. 2:2-6. Thus, if not anticipated by Schmid, claims 44 and 55 of the '904 Patent are invalid as obvious in light of Schmid and Praitis.

---

[4] Praitis is prior art pursuant to 35 U.S.C. §§ 102(a) and 102(e).

**Kopetzky & Praitis**

Kopetzky, published in May of 1999, and prior art under 35 U.S.C. § 102(a), teaches a visual link preview system for enabling users to view a thumbnail of a web page before navigating to it. See, Kopetzky (attached to Nielsen Decl. at Exh. F). Kopetzky displays a web page (which suggests HTML pages) with a hyperlink as well as a thumbnail image representing the hyperlink when the user places the mouse pointer over the hyperlink. Id. at Fig. 5 and Section 2.1 (¶¶ 2, 3 therein). The web page includes HTML commands that instruct the browser to download the thumbnail from one of various servers via the Internet. Id. at Section 3 (last bullet point therein) and Section 3.1 (steps 3-5 therein). The thumbnail images are within the web page so as to appear hovering over the hyperlink. Id. at Fig. 5 and Sections 2.2 & 2.3. In particular, when the user's mouse pointer passes over the hyperlink, the thumbnail image appears to above the web page in a manner that hides part of the underlying web page. Id. at Sections 2.3 and 4.1 (¶ 1 therein). A plurality of thumbnail images may be displayed simultaneously with the web page to enable user a preview of linked web pages. Id. at Fig. 9.

Kopetzky further teaches that the thumbnail image is that of a homepage. Id. at Section 2.1 (¶ 2 and first bulleted paragraph therein). As an example, Kopetzky suggests using the thumbnail image for the URL www.tk.uni-linz.ac.at/, which is the homepage of the Department of Telecooperation at the University of Linz in Austria.

Kopetzky further teaches the use of an image server, separate from the web server, which stores and provides the thumbnail images. In particular, Kopetzky suggests that the thumbnail image may be retrieved from whichever server has already fetched the thumbnail

23

image, thereby avoiding the need to fetch and store the image again.  Id. at Section 3 (last bulleted paragraph therein).

Based on the foregoing, claims 1, 4, 5, 7, 12, 15, 18, 21, 22, 24, 29, 32, 35, 38, 39, 41, 45, 46, 49, 50, 52, and 56 of the '904 Patent are invalid as anticipated as Kopetzky teaches all of the elements of each of these claims.  If claims 4, 21, 38, and 49 (thumbnail visual image "displayed within" the underlying web page) are not anticipated by Kopetzky, they would have been obvious to a person of ordinary skill in the art based on the combination of Kopetzky and Kraft or Mernyk, as being the result of a design choice, as discussed above.

To the extent Kopetzky does not suggest modifying a URL, Praitis (attached to Nielsen Decl. at Exhibit E) suggests this modifying function as described above in combination with Schmid.  A reason to combine Kopetzky with the teachings of Praitis can be found in Col. 2:2-6 of Praitis.  Thus, claims 44 and 55 would have been obvious to a person of ordinary skill in the art based on the combination of Kopetzky and Praitis.


**Kraft & Leighton and Praitis**

Kraft (United States Patent 7,177,948, attached to Nielsen Decl. at Exh. C) teaches an online searching system enhanced with thumbnail images, which are also referred to as visual abstracts.  Id. at Abstract.  In response to a user query, a set of search results relevant to the query are identified by the search engine and incorporated into a web page (which suggests HTML pages) as hyperlinks.  Id. at Col. 2:36-50 and Col. 4:63-65.  These visual abstracts (thumbnail images) are placed alongside the associated hyperlink where they augment the textual abstracts returned from the search engine.  Id. at Col. 3:18-31 and Fig. 1.  In addition

to the smaller thumbnail images incorporated into the search results web page, what Kraft refers to as a medium sized thumbnail image is presented to the user when a cursor is hovered over the smaller thumbnail image. Id. at Col. 5:3-18. When triggered by the user, the medium sized thumbnail image is presented with the search results web page so as to appear hovering adjacent to the associated hyperlink. Id. at Fig. 2. These two types of thumbnail images enable the user to preview a web page represented in the search results before navigating to the web page.

Kraft further teaches providing a thumbnail visual image of the home page of at least one website represented by at least one hyperlink. Id. at Fig. 1. As an example, Kraft teaches a search results web page with a hyperlink to the www.infoseek.com web page (homepage of InfoSeek) to the left and the associated thumbnail image of the web page to the right.

Kraft further teaches that the thumbnail images of web pages are stored and provided by an image server. Id. at Col. 6:6-21 and Fig. 4. This image server, which includes an image processor, is configured to perform a special purpose that is clearly separate from a web server, as indicated by Prof. Hardin in his report.

Based on the foregoing, at least claims 1, 4, 5, 7, 12, 15, 18, 21, 22, 24, 29, 32, 35, 38, 39, 41, 45, 46, 49, 50, 52, and 56 of the '904 Patent are invalid as anticipated as Kraft teaches all of the elements of each of these claims.

If, for some reason, Kraft's teaching of a logically/functionally separate image server does not satisfy the separate server limitation of independent claims 35 and 46 (and their dependents), U.S. Patent 6,108,703 to Leighton (attached to Nielsen Decl. at Exh. G) and U.S. Patent 5,991,809 to Kriegsman (attached to Nielsen Decl. at Exh. H), specifically teach

the use of an image server physically separate from the web server.  Leighton and Kriegsman represent prior art under 35 U.S.C. §§ 102(a) and/or 102(e).

In Leighton, for example, a web server generates a web page having image tags that cause the user's browser to download an image from a second server (referred to as a "host" or "ghost" server).  See, Leighton (attached to Nielsen Decl. at Exh. G) at Abstract, Col. 8:4-12, Fig. 5, Col. 12:25-39, and Fig. 5.  One of ordinary skill in the art would be motivated to employ the image server in Leighton in order to balance the load imposed on the web server, scale up the size of the network, and/or make the network fault tolerant, among other reasons.  Id. at Col. 14:51-61 and Col 15:4-13.

Kriegsman teaches the use of a primary web server to serve web pages and other dynamic content, and a secondary image server to store and serve image data and other static content.  See, Kriegsman (attached to Nielsen Decl. at Exh. H) at Col. 5:51-65.  One of ordinary skill in the art would be motivated to use the separate primary and secondary servers in Kriegsman in order to reduce the latency with which files are produced to the user and the cost of the network system. Id. at Col. 3:55-67.

As such, claims 35, 38, 39, 41, 45, 46, 49, 50, 52, and 56, if not anticipated by Kraft, would have been obvious to a person of ordinary skill in the art based on the combination of Kraft and either Leighton or Kreigsman.

Although Kraft may not suggest the use of "trimming" of a URL, Praitis, as described above teaches modifying the URL to identify and display the homepage where the requested web page is not available.  See, Praitis at Col. 13:21-48.  A reason to combine Kraft with the teachings of Praitis can be found in Col. 2:2-6 of Praitis.  Thus, claims 44 and 55 would have

been obvious to a person of ordinary skill in the art.

For these reasons, the '904 Patent is vulnerable, and there are substantial questions concerning its validity, thus demonstrating that Girafa has not proven a likelihood of success on the merits.

### d.    Girafa's Contentions Regarding Secondary Considerations of Non-Obviousness are Unavailing

Girafa was apparently so concerned that the '904 Patent would be invalidated on obviousness grounds that before it even learned what Snap or the Amazon Defendants were going to argue in opposition to this motion, Girafa had its technical expert to opine on several secondary considerations of non-obviousness, including commercial success, to save its patent from invalidity.    Girafa's showing regarding secondary considerations of non-obviousness, however, is unpersuasive and unavailing, and does not save its patent from invalidation.

**First**, the contention in ¶¶ 70-71 of Prof. Myers' declaration that Girafa's claimed invention satisfied a long-felt but unsolved need and succeeded where others failed is squarely rebutted by all of the prior art cited above in the portion of this brief concerning invalidity, as well as in the Hardin Declaration/Report.    Girafa did not invent anything novel or non-obvious because whatever it claims to have invented already existed before Girafa invented and/or released its claimed invention.    Thus, there was no long-felt but unsolved need, or failure of others.

In fact, there is no evidence in the record documenting any "need" that existed and that was solved by Girafa's claimed invention, or even any type of analysis to determine the

existence of any such "need."

Furthermore, assuming that Girafa did invent something that satisfied a long-felt but previously unsolved need, there is nothing in the record to demonstrate any nexus between the novel or non-obvious features of Girafa's invention and the need solved, as required by Federal Circuit law. In re GPAC Inc., 57 F.3d 1573, 1580 (Fed. Cir. 1995. Thus, Girafa's contentions on this point fail.

**Second**, and strangely, Girafa attempted to proffer evidence of commercial success through its technical expert, Prof. Myers. The only evidence Prof. Myers proffered, however, were several public statements about the various PI Defendants' services, which is simply unavailing. These statements are intended to paint the companies in a positive light and may contain elements of puffery. They do not demonstrate commercial success at all.

In addition, there is no evidence concerning the size of the market for thumbnail visual images of home pages of hyperlinks contained in web pages where the thumbnails and web pages are served from separate services, no analysis of Girafa's financials (which were clearly available to Prof. Myers when he prepared his declaration), or anyone else's. Prof. Myers' contentions in ¶¶ 78-80 of his declaration are the product of speculation, conjecture, equivocation, and nothing more:

> The ability to supply images from separate servers, and to be able to substitute home pages for the target pages, **seems to have** spawned a new industry of **apparently** commercially-successful companies.

Myers Decl. at ¶ 78 (emphasis added).

Furthermore, the fact that in 2006 Girafa lost two of its largest customers of its service, and neither of said customers subsequently commencing use of an allegedly infringing service with one of the defendants in this case, Ran Depo. at 135:16-22; 220:16-221:20 275:4-276:5 (attached to Nielsen Decl. at Exh. J – filed under seal), demonstrates that Girafa's claims of commercial success are overblown, if not completely incorrect.  In fact, Snap itself is operating at a loss.  McGovern Decl. at ¶ 10.  Simply put, there is no evidence of commercial success in the record.

Finally, the section of Prof. Myers' declaration beginning on page 22 and encompassing paragraphs 72-77 is entitled "Commercial Success of Thumbnails in General." The title alone illustrates that ¶¶ 72-77 of Prof. Myers' declaration are irrelevant.  It is not the success of thumbnails in general that is important to a showing of commercial success, but the success of services within the scope of Girafa's invention, and Girafa has not made any showing in that regard to satisfy the requirement of a nexus between commercial success and the claimed invention.

For these reasons, Girafa has failed to demonstrate the existence of evidence of secondary considerations to overcome the prima facie cases of obviousness made by Snap and the Amazon Defendants.

> ### e.    The '904 Patent May be Unenforceable Because of Inequitable Conduct by Girafa

Girafa also cannot demonstrate a likelihood of success on the merits because there is a substantial question as to whether the '904 Patent is unenforceable because of inequitable

conduct regarding Girafa's representations concerning the prior art patent to Miller in a response to an Office Action. The details of this argument are presented in the Amazon Defendants' opposition papers, and Snap hereby adopts the Amazon Defendants' argument in this regard.

### C.    Girafa.com Has Failed to Demonstrate Irreparable Harm

Girafa has failed to demonstrate the existence of any irreparable harm, and has not made any showing to indicate that the harm it claims to have suffered could not be compensated by monetary damages alone. As such, Girafa's motion must fail as a matter of law.

Even if a patentee succeeds in showing a likelihood of success on the merits, it must still demonstrate why monetary damages would be insufficient – i.e., there is no presumption of irreparable harm based on a likelihood of success on the merits. Sun Optics, Inc. v. FGX International, Inc., 2007 U.S. Dist. LEXIS 56351 at *3, 9-10 (D. Del. Aug. 2, 2007) (citing, eBay, Inc. v. MercExchange, LLC, 547 U.S. 388, 393-94, 126 S.Ct. 1837, 1841 (2006)); see also, Siemens Medical Solutions USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc., 2008 U.S. Dist. LEXIS 1486 at *19 (D. Del. Jan. 8, 2008). Courts should deny injunctive relief where there is no showing of irreparable harm. See, Amoco Production Co. v. Village of Gambell, 480 U.S. 531, 545-46 (1987).

Typically, irreparable harm is shown by demonstrating that money damages will not sufficiently remedy the harm. High Tech Medical Instrumentation, Inc. v. New Image Industries, Inc., 49 F.3d 1551, 1557 (Fed. Cir. 1995). Should the moving party rely upon

alleged loss of market share to show irreparable harm, it must make provide a compelling reason why monetary damages would be insufficient to compensate for the alleged loss in market share, because even a probably loss of market share, without more, does not amount to irreparable harm. <u>Nutrition 21 v. U.S.</u>, 930 F.2d 867, 871-72 (Fed. Cir. 1991); <u>Siemens Medical Solutions</u>, 2008 U.S. Dist. LEXIS 1486 at *20 (citing cases). Finally, delay in seeking injunctive relief argues against a finding of irreparable harm. <u>T.J. Smith & Nephew, Ltd. v. Consolidated Medical Equipment, Inc.</u>, 821 F.2d 646, 648 (Fed. Cir. 1987).

Aside from Girafa's abject failure to demonstrate why money damages would be insufficient, additional reasons support a determination that no irreparable harm to Girafa exists in this case. **First**, at least one of Snap's allegedly infringing services, Snap Enhanced, has been publicly available for two years (McGovern Decl. at ¶ 5), yet Girafa waited 18 months to file this case and nearly two years before filing this motion. <u>High Tech Medical</u>, 49 F.3d at 1557 ("17 months is a substantial period of delay that militates against the issuance of a preliminary injunction."). For this reason alone, Girafa's motion should be denied.

**Second**, the evidence demonstrates that this alleged loss in revenue experienced by Girafa beginning in 2006 (Ran Decl. at ¶ 24) was caused primarily, if not exclusively, by Girafa's loss of two major customers. Ran Depo. at 135:16-22; 220:16-221:20 275:4-276:5 (attached to Nielsen Decl. at Exh. J - filed under seal). Notably, however, neither of these former Girafa customers became customers of Snap. McGovern Decl. at ¶ 8; Ran Depo. at 220:16-221:20; 275:4-276:5 (attached to Nielsen Decl. at Exh. J – filed under seal). In other words, these two major customers simply dropped Girafa's service; they did not drop Girafa's

service in order to use Snap's services.[5]  Thus, Girafa's alleged loss of revenue starting in

2006 cannot be blamed on Snap to any degree.

**Third**, Girafa's alleged bases of irreparable harm suffer from the same fatal flaws –

they lack evidence and foundation, and are the product of speculation – and, speculative

evidence cannot support the extraordinary remedy of a preliminary injunction.  Altana Pharma.

AG v. Teva Pharmaceuticals USA, Inc., 532 F. Supp. 2d 666, 683 (D.N.J. 2007) (citing, Eli

Lilly and Co. v. American Cyanamid Co., 82 F.3d 1568, 1578 (Fed. Cir. 1996)).  Girafa has

not proffered any evidence regarding pricing of its services, let alone any price erosion; Girafa

identified one customer of Snap that Girafa unsuccessfully attempted to solicit, but that does

not translate to irreparable harm; and, Girafa has failed to make any showing regarding market

share.  Simply put, Girafa's showing on this factor is woefully insufficient.

**Fourth**, Girafa's claim that it has not acquired new paying customers is a massive

overstatement that lacks foundation, and fails to meet the stringent evidentiary requirements

needed to support granting the extraordinary relief of a preliminary injunction.  In fact,

Girafa's contention appears contrary to Ms. Ran's testimony at her deposition that Girafa

obtains new paying customers every day.  Ran Depo. at 254:8-256:12 (attached to Nielsen

Decl. at Exh. J – filed under seal).

**Fifth**, Girafa claims that it has suffered irreparable harm at the hands of the PI

Defendants, but Girafa in no way attempted to particularize or apportion in any meaningful

way the allegedly irreparable harm that each particular PI Defendant allegedly caused.  Which

PI Defendant is responsible for what amount of lost market share?    While a precise

---

[5]  In fact, in connection with its claim of market share loss, Girafa appears to have
misrepresented and/or failed to disclose these pertinent facts to the Court.

determination of such apportionment may be difficult at this stage of the case, that does not excuse a complete failure to provide any evidence of apportioned irreparable harm. Girafa's abysmal showing in this regard leaves only one conclusion - the allegedly irreparable harm Girafa claims to have suffered simply does not exist.[6]

Because Girafa has failed to demonstrate the existence of irreparable harm, and that money damages would not be sufficient to compensate it for the alleged harm suffered, it is not entitled to a preliminary injunction.

**D.      Girafa.com Has Failed to Demonstrate that the Balance of Hardships Favors Granting a Preliminary Injunction**

The hardship to Snap will be substantial if an injunction is improperly granted. Regarding the balance of hardships, the moving party is required to quantify the hardship it contends it will suffer without issuance of an injunction (and the non-moving party is required to make a similar showing with respect to an injunction improperly entered). Abbott Laboratories, 452 F.3d at 1348.

Girafa provides no quantitative analysis of how failure to enter an injunction against the PI Defendants would result in hardship to Girafa. Girafa's Brief at 35. Notwithstanding Girafa's failure to offer proof on this factor, an improper injunction against Snap's services would amount to undue hardship because an improper grant on a preliminary injunction would

---

[6] And, Girafa should not be permitted to attempt to cure its major evidentiary deficiencies on this factor, or another other factor in support of its motion, in its reply papers, where doing so would violate Local Rule 7.1.3(c)(2). Girafa's financials, customer lists, etc. have been available to Girafa throughout the pendency of this case, and Girafa should not be permitted to include in its reply papers that information that it should have, and could have, included in its moving papers.

essentially, if not completely, destroy Snap as a company. McGovern Decl. at ¶¶ 10-15. Thus, an improperly granted injunction would impose a massive hardship on Snap and its investors. As stated above, Girafa has failed to quantify or assess the hardship it would suffer without an injunction, and it has failed to demonstrate any loss of revenue caused by Snap. Thus, the balance of hardships strongly weighs in favor of denial of Girafa's motion.

Girafa's contention that Snap has known about Girafa's technology since 2004 and was informed at the time that the technology was the subject of a pending patent that Snap chose to ignore is simply unproven. Ms. Ran appears to have communicated with a Mr. Boyer of Idealab, which is presently associated with Snap, but Ms. Ran could not confirm that she verbally informed Mr. Boyer of Girafa's patent application (and the only written communications between Ms. Ran and Mr. Boyer do not reference a patent application or otherwise). Ran Depo. at 133:18-135:8 (attached to Nielsen Decl. at Exh. J – filed under seal); Ran Decl. at ¶ 23 and Exh. 5. Thus, Girafa's assertions in this regard are unpersuasive.

### E.    The Public Interest Favors Denial of a Preliminary Injunction

Regarding the public interest, granting a preliminary injunction based on a "vulnerable" patent does not serve the public interest. Abbott Laboratories, 452 F.3d at 1335, 1348 (public interest not served where non-moving party raised substantial question as to validity of asserted claims, and thus, moving party failed to demonstrate a likelihood of success on the merits).

Here, the public interest is not served by granting a preliminary injunction and restraining free competition based on a patent the validity of which has been called into substantial question both herein and by Prof. Hardin.

V.    **THE COURT SHOULD REQUIRE PLAINTIFF TO POST BOND IN THE**

**UNLIKELY EVENT THAT AN INJUNCTION ISSUES**

The Court should require Plaintiff to post bond in an amount sufficient to compensate

Snap should the injunction later be found to be unjustified.  Fed.R.Civ.P. 65(c).


VI.    **CONCLUSION**

Girafa's motion for preliminary injunction should be denied for the simple reason that it

fails miserably on all four of the preliminary injunction factors.  Girafa has not demonstrated

that it is likely to prove infringement of a valid claim, and both Snap and the Amazon

Defendants have demonstrated substantial questions as to the validity of all the asserted claims

in the '904 Patent.  Girafa has also failed to demonstrate irreparable harm.  Furthermore, both

the balance of hardships and public interest strongly favor denial of Girafa's motion.  For these

reasons, Girafa's motion for preliminary injunction should be denied.


Dated:  May 16, 2008                    By:    s/Arthur G. Connolly, III
                                                Arthur G. Connolly, III (#2667)
                                                CONNOLLY BOVE LODGE &
                                                HUTZ LLP
                                                1007 N. Orange Street
                                                P.O. Box 2207
                                                Wilmington, DE  19899
                                                Tel: (302) 658-9141
                                                Email: AConnollyIII@cblh.com

*Of Counsel*:
Daniel M. Cislo (admitted pro hac vice)
Mark D. Nielsen (admitted pro hac vice)
Kelly W. Cunningham
CISLO & THOMAS LLP
1333 2nd Street, Suite 500
Santa Monica, California 90401
Telephone: (310) 451-0647
Telefax: (310) 394-4477
Attorneys for Defendant/Counterclaim
Plaintiff Snap Technologies, Inc.

T:\07-20490\Snap's Brief in Opposition to PI Motion final.DOC