# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GIRAFA.COM, INC., | ) |
|       Plaintiff, | ) |
| v. | ) |
| | ) CASE NO. 07-787 (SLR) |
| AMAZON WEB SERVICES LLC, AMAZON.COM, INC., ALEXA INTERNET, INC., IAC SEARCH & MEDIA, INC., SNAP TECHNOLOGIES, INC., YAHOO!, INC., EXALEAD S.A., and EXALEAD, INC., | ) |
|       Defendants. | ) |

## DECLARATION OF THOMAS P. MCGOVERN JR. IN OPPOSITION TO GIRAFA.COM'S MOTION FOR PRELIMINARY INJUNCTION

I, Thomas P. McGovern Jr., declare:

1. I am over the age of eighteen years old and am not a party to this action. I make this declaration of my own personal knowledge or on information and belief where so stated. If called as a witness, I could and would competently testify to the truth of the matters asserted herein.

2. I am the Chief Executive Officer of Snap Technologies, Inc. ("Snap"). I have held the CEO position since October 2004. My regular job responsibilities include oversight of all of Snap's operations including product development, engineering, marketing and sales, administration, and investor relations.

1

3. It is my understanding that Girafa has filed a motion for preliminary injunction to ask the Court to order Snap to immediately cease using its Classic, Enhanced, Snap Shots browser Plug-in, and the Snap Shots for Publishers/Bloggers services.

4. Although it did not appear to be analyzed by Girafa's expert, Girafa claims in its Opening Memorandum of Law in Support of its Motion for Preliminary Injunction, that the Internet service Snap provides to other Internet website operators, known as Snap Shots for Publishers/Bloggers, is similar to Snap Classic and/or the Snap Shots Browser Plug-in and therefore allegedly infringes certain claims of Girafa's '904 Patent.

5. Snap initially launched its web site in approximately May of 2006, with its Snap Enhanced service. Snap launched its "Snap Shots" service in late 2006 with its Snap Shots for Publishers/Bloggers. Snap launched its Snap Shots Browser plug-in service in approximately March of 2007, and its Snap Classic search engine in approximately July of 2007.

6. Snap has services related to its technologies other than the four accused services (Snap Classic, Snap Enhanced, Snap Shots Browser plug-in, and Snap Shots for Publishers/Bloggers). Nonetheless, the allegedly infringing services make up the majority of Snap's commercial endeavors.

7. Snap offers its services, including those not at issue in the motion for preliminary injunction, free to users and Internet web site publishers to generate use and create advertising impressions that are sold to generate revenue.

8. To the best of my knowledge, neither Microsoft nor America Online (AOL) are, or have been, customers of any of Snap's services since Snap first launched its preview services in about May of 2006.

9.  Snap employs approximately thirty (30) individuals all which are based in the Unities States.

10. Snap has spent in excess of $15,000,000 since 2004 developing and implementing the commercial embodiments of its various technologies. Snap is an early stage company whereby it invests substantial amounts into developing and implementing its technologies and products. Further, as an early stage company, Snap's operating expenses far exceed its revenues and that shortfall has been financed by the company's venture capital investors.

11. If Snap is forced to shut down any of its services because of a preliminary injunction, it will substantially harm Snap in many ways. First, a preliminary injunction would result in Snap having fewer advertising impressions to sell and thereby suffer a decline in revenue and increase in financial losses, even for services that are not at issue in the motion for preliminary injunction.

12. Second, if Snap is forced to shut down any of the its services, it will negatively affect Snap's image with its existing and future potential advertising customers and publishers for *all* of its services further exacerbating the loss of revenue.

13. Third, a shutdown because of a preliminary injunction will likely result in job losses for some or most of our approximately thirty (30) employees.

14. Fourth, and perhaps most importantly, the granting of a preliminary injunction will *irreparably* injure Snap in its efforts to raise money to support the continuing development and implementation of aspects of its technologies that are not subject to the preliminary injunction motion. As an early stage company, court orders such as a preliminary injunction

tarnish a company's image and create substantial uncertainty over the viability of a company. In other words, it will significantly and adversely restrict Snap's ability to secure necessary ongoing financial support from venture capital investors, even for aspects of its technologies not subject to the preliminary injunction motion. Without ongoing financial support, Snap would cease operations creating losses in jobs, destroying the value of company and generating losses for Snap's investors of more than $15,000,000.

15. Finally, even if a preliminary injunction is granted, and ultimately dissolved later in the case, the damage to Snap will be irreparable, in part, because of the fast-paced nature of our field and our extreme dependence on relationships with third-party publishers. In other words, if Snap has to disable its existing services we would have to re-build those publisher relationships from scratch if we were later allowed to offer our services, which would put Snap at such a substantial competitive disadvantage such that we might be forced to cease operations.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 15th, 2008 at Pasadena, California.

Thomas P. McGovern Jr.

## CERTIFICATE OF SERVICE

I, Arthur G. Connolly, III, hereby certify that on May 16, 2008, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF which will send notification of such filing to the registered attorneys of record that the document has been filed and is available for viewing and downloading.

I further certify that on May 16, 2008, the foregoing document was served on the following persons as indicated below:

**Via Electronic Mail:**

| | |
|---|---|
| Steven J. Balick<br>John G. Day<br>Tiffany Geyer Lydon<br>ASHBY & GEDDES<br>500 Delaware Avenue, 8th Floor<br>P.O. Box 1150<br>Wilmington, DE 19899<br>Email: sbalick@ashby-geddes.com<br>*Attorneys for Plaintiff* | William H. Mandir<br>John F. Rabena<br>Trevor C. Hill<br>Chandran B. Iyer<br>SUGHRUE MION, PLLC<br>2100 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20037<br>Email: jrabena@sughrue.com<br>*Attorneys for Plaintiff* |
| Richard L. Horwitz<br>David E. Moore<br>POTTER ANDERSON & CORROON LLP<br>Hercules Plaza, 6th Floor<br>1313 N. Market Street<br>P.O. Box 951<br>Wilmington, DE 19899<br>Email: rhorwitz@potteranderson.com<br>*Attorneys for Defendants*<br>*Amazon Web Services LLC, Amazon.com, Inc., and Alexa Internet, Inc.* | Thomas G. Pasternak<br>R. David Donoghue<br>DLA PIPER US LLP<br>203 N. LaSalle Street, Suite 1900<br>Chicago, IL 60601<br>Email: tom.pasternak@dlapiper.com<br><br>M. Elizabeth Day<br>Gregory J. Lundell<br>DLA PIPER US LLP<br>2000 University Avenue<br>East Palo Alto, CA 94303<br>Email: elizabeth.day@dlapiper.com<br>*Attorneys for Defendants*<br>*Amazon Web Services LLC, Amazon.com, Inc., and Alexa Internet, Inc.* |

| | |
|---|---|
| Thomas C. Grimm (#1098)<br>MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br>1201 N. Market Street<br>P.O. Box 1347<br>Wilmington, DE 19899-1347<br>Email: tcgefiling@mnat.com<br>*Attorneys for Defendants Exalead, Inc.*<br>*and Exalead S.A.* | Scott A. Timmerman<br>Harold V. Johnson<br>NBC Tower, Suite 3600<br>455 North Cityfront Plaza Drive<br>Chicago, IL 60611-5599<br>Email: hjohnson@usebrinks.com<br>*Attorneys for Defendants Exalead, Inc.*<br>*and Exalead S.A.* |
| Jeffrey L. Moyer<br>Anne Shea Gaza<br>RICHARDS, LAYTON & FINGER, P.A.<br>One Rodney Square<br>920 N. King Street<br>Wilmington, DE 19801<br>Email: moyer@RLF.com<br>*Attorneys for Defendant*<br>*IAC Search & Media, Inc.* | Claude M. Stern<br>Jennifer A. Kash<br>Antonio R. Sistos<br>QUINN EMANUEL URQUHART OLIVER &<br>HEDGES, LLP<br>50 California Street, 22nd Floor<br>San Francisco, CA 94111<br>Email: jenniferkash@quinnemanuel.com<br>*Attorneys for Defendant*<br>*IAC Search & Media, Inc.* |
| Jack B. Blumenfeld<br>Rodger D. Smith II<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE 19899<br>Email: jblumenfeld@mnat.com<br>*Attorneys for Defendant*<br>*Yahoo! Inc.* | Matthew D. Powers<br>Douglas E. Lumish<br>WEIL, GOTSHAL & MANGES LLP<br>201 Redwood Shores Parkway<br>Redwood Shores, CA 94065<br>Email: matthew.powers@weil.com,<br>doug.lumish@weil.com<br>*Attorneys for Defendant*<br>*Yahoo! Inc.* |

/s/ Arthur G. Connolly, III
Arthur G. Connolly, III (#2667)