## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

GIRAFA.COM, INC.            )
                                      )

          Plaintiff,            )
                                      )

          v.                      )    C.A. No. 07-787-SLR
                                      )

AMAZON WEB SERVICES LLC,    )    **JURY TRIAL DEMANDED**
AMAZON.COM, INC., ALEXA INTERNET, ) 
INC., IAC SEARCH & MEDIA, INC.,     )    **PUBLIC VERSION**
SNAP TECHNOLOGIES, INC., YAHOO! INC., )
SMARTDEVIL INC., EXALEAD, INC., and )
EXALEAD S.A.,                        )
                                      )

          Defendants.         )

### ANSWERING BRIEF OF DEFENDANTS AMAZON WEB SERVICES LLC, AMAZON.COM, INC., AND ALEXA INTERNET INC. IN OPPOSITION TO GIRAFA.COM, INC.'S MOTION FOR PRELIMINARY INJUNCTION

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19899
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

OF COUNSEL:

Thomas G. Pasternak
R. David Donoghue
DLA PIPER US LLP
203 N. LaSalle Street, Suite 1900
Chicago, IL 60601-1293
Tel: (312) 368-4000

M. Elizabeth Day
Gregory J. Lundell
DLA PIPER US LLP
2000 University Avenue
East Palo Alto, CA 94303-2248
Tel: (650) 833-2000

*Attorneys for Defendants*
*Amazon Web Services LLC, Amazon.com, Inc.,*
*and Alexa Internet, Inc.*

Dated: May 16, 2008
Public Version Dated: May 22, 2008

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   STATEMENT OF FACTS .................................................................................. 3

    A.    The Amazon Defendants.......................................................................... 3

    B.    The '904 Patent and the State of the Art at the End of the Twentieth
        Century...................................................................................................... 5

III.  ARGUMENT........................................................................................................ 6

    A.    A Preliminary Injunction Requires Strict Showing of Four Factors...................... 6

        1.    Likelihood of success on the merits.................................................. 7

            a.    Anticipation.......................................................................... 7

            b.    Obviousness ........................................................................ 8

        2.    Irreparable harm............................................................................... 9

        3.    Balance of hardships ...................................................................... 10

        4.    Public interest factor ...................................................................... 10

IV.   GIRAFA HAS NOT AND CANNOT MEET ITS PRELIMINARY
    INJUNCTION BURDEN. ................................................................................. 10

    A.    Girafa Cannot Show Likelihood of Success on the Merits................................. 10

    B.    The Asserted Claims of the '904 Patent are Invalid. ........................................ 11

        1.    Claim construction.......................................................................... 11

        2.    The asserted claims are anticipated and obvious. ...................... 11

            a.    "Web Representation with Dynamic Thumbnails" by
                Schmid ............................................................................... 13

            b.    United States Patent 7,177,948 to Kraft, et al............................. 13

            c.    United States Patent 6,271,840 to Finseth, et al. ........................ 14

            d.    United States Patent 6,613,100 to Miller .................................... 15

            e.    United States Patent 6,665,838 to Brown, et al. ......................... 15

            f.    United States Patent 6,486,895 to Robertson.............................. 16

            g.    Secondary Considerations............................................................. 16

    C.    The '904 Patent is also Unenforceable for Inequitable Conduct. ...................... 18

    D.    The '904 Patent is Not Infringed. ..................................................................... 21

    E.    Irreparable Harm ............................................................................................... 23

    F.    Improper Issuance of an Injunction Would Inflict Undue Hardship upon
        the Amazon Defendants....................................................................................... 26

i

**TABLE OF CONTENTS**
(continued)

Page

G.    Public interest factor ............................................................................. 27

V.    GIRAFA'S LACK OF EVIDENCE CANNOT BE CURED .......................................... 27

VI.   CONCLUSION ......................................................................................... 29

## TABLE OF AUTHORITIES

Page

**Cases**

*Abbott Labs. v. Andrx Pharms., Inc.,*
452 F.3d 1331 (Fed. Cir. 2006) .................................................................... 6, 7, 10, 23

*Advanced Display Sys. Inc. v. Kent State Univ.,*
212 F.3d 1272 (Fed. Cir. 2000) .................................................................... 8

*Altana Pharma AG v. Teva Pharms. USA, Inc.,*
532 F. Supp. 2d 666 (D.N.J. 2007) .............................................................. 24, 26

*Amazon.com, Inc. v. Barnesandnoble.com,*
239 F.3d 1343 (Fed. Cir. 2001) .................................................................... 6, 7, 10

*Biagro Western Sales, Inc. v. Helena Chem. Co.,*
160 F. Supp. 2d 1112 (E.D. Cal. 2001) ....................................................... 27

*Callaway Golf Co. v. Acushnet Co.,*
523 F. Supp. 2d 388 (D. Del. 2007) ............................................................. 8, 11

*Cargill, Inc. v. Canabra Foods, Ltd.,*
476 F.3d 1359 (Fed. Cir. 2007) .................................................................... 19

*Digene Corp. v. Ventana Med. Sys., Inc.,*
484 F. Supp. 2d 274 (D. Del. 2007) ............................................................. 9, 10, 26

*Doran v. Salem Inn,*
422 U.S. 922 (1975) ..................................................................................... 6

*DSU Med. Corp. v. JMS Co.,*
471 F.3d 1293 (Fed. Cir. 2006) (en banc) ................................................... 22

*Eaton Corp. v. Rockwell Int'l Corp.,*
C.A. No. 97-421-JJF, 1997 U.S. Dist. LEXIS 22674 (D. Del. Nov. 4, 1997),
*rev'd on other grounds,* 323 F.3d 1332 (FEd. Cir. 2003) ........................... 23

*eBay, Inc. v. MercExchange, L.L.C.,*
547 U.S. 388 (2006) ..................................................................................... 9

*Erico Int'l Corp. v. Vutec Corp.,*
516 F.3d 1350 (Fed. Cir. 2008) .................................................................... 6, 7, 9

*eSpeed, Inc. v. BrokerTec USA, Inc.,*
480 F.3d 1129 (Fed. Cir. 2007) .................................................................... 19

iii

*Everpure, Inc. v. Cuno, Inc.*,
   875 F.2d 300 (Fed. Cir. 1989) ............................................................................... 21

*Graham v. John Deere Co.*,
   383 U.S. 1 (1966) ..................................................................................................... 8

*Helifix Ltd. v. Blok-lok, Ltd.*,
   208 F.3d 1339 (Fed. Cir. 2000) ........................................................................... 7, 8

*High Tech Medical Instrumentation, Inc. v. New Image Industries, Inc.*,
   49 F.3d 1551 (Fed Cir. 1995) ............................................................................ 9, 23

*Hoffmann-La Roche, Inc. v. Promega Corp.*,
   323 F.3d 1354 (Fed. Cir. 2003) ........................................................................... 19

*Honeywell Int'l, Inc. v. Universal Avionics Systems Corp.*,
   488 F.3d 982 (Fed. Cir. 2007) ............................................................................. 18

*Illinois Tool Works, Inc. v. Grip-Pak, Inc.*,
   906 F.2d 679 (Fed. Cir. 1990) ............................................................................... 9

*In re Comiskey*,
   499 F.3d 1365 (Fed. Cir. 2007) ........................................................................... 18

*IPXL Holdings, LLC v. Amazon.com, Inc.*,
   430 F.3d 1377 (Fed. Cir. 2005) ....................................................................... 8, 15

*Jordan v. Bellinger*,
   C.A. No. 98-230-GMS, 2000 U.S. Dist. LEXIS 19233 (D. Del. April 28, 2000) ................... 27

*KSR Int'l Co. v. Teleflex Inc.*
   --- U.S. ----, 127 S. Ct. 1727 (2007) ..................................................................... 8

*Kyphon, Inc. v. Disc-O-Tech Med. Techs. Ltd.*,
   C.A. No. 04-204-JJF, 2004 U.S. Dist. LEXIS 25170 (D. Del. Dec. 10, 2004) ...................... 23

*Markman, Inc. v. Westview Instruments, Inc.*,
   52 F.3d 967 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996) ............................ 11

*MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*,
   420 F.3d 1369 (Fed. Cir. 2005) ........................................................................... 22

*Met-Coil Sys. Corp. v. Korners Unlimited, Inc.*,
   803 F.2d 684 (Fed. Cir. 1986) ............................................................................. 21

*Novo Nordisk A/S v. Pfizer, Inc.*,
   No. 06 Civ. 5819 (LBS), 2006 U.S. Dist. Lexis 90387 (S.D.N.Y Dec. 14, 2006) ................. 26

*Nutrition 21 v. United States,*
    930 F.2d 867 (Fed. Cir. 1991) ........................................................................... 10, 24

*Paragon Podiatry Lab., Inc. v. KLM Labs., Inc.,*
    984 F.2d 1182 (Fed. Cir. 1993) ............................................................................... 19

*Pharmastem Therapeutics, Inc. v. Viacell, Inc.,*
    491 F.3d 1342 (Fed. Cir. 2007) ............................................................................... 22

*PHG Techs., LLC v. St. John Cos., Inc.,*
    469 F.3d 1361 (Fed. Cir. 2006) ......................................................................... 6, 7, 23

*Rockwell Techs. LLC v. Spectra-Physics Lasers, Inc.,*
    C.A. No. 00-589-GMS, 2002 U.S. Dist. LEXIS 5180 (D. Del. Mar. 26, 2002) ...................... 27

*Siemens Med. Solutions USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.,*
    C.A. No. 07-190-SLR, 2008 U.S. Dist. LEXIS 1486 (D. Del. Jan. 8, 2008) ............................ 9

*Student Fin. Corp. v. Royal Indem. Co.,*
    C.A. No. 03-507-JJF, 2004 U.S. Dist. LEXIS 4952 (D. Del. Mar. 23, 2004) ......................... 27

*Sun Optics, Inc. v. FGX Int'l, Inc.,*
    C.A. No. 07-137-SLR, 2007 WL 2228569 (D. Del. Aug. 2, 2007) ................................... *passim*

*T.J. Smith & Nephew, Ltd. v. Consol. Med. Equip., Inc.,*
    821 F.2d 646 (Fed. Cir. 1987) ................................................................................. 9

*Takeda Pharmaceutical Co. Ltd. v. Teva Pharms. USA, Inc.,*
    C.A. No. 06-033-SLR, 2008 WL 839720 (D. Del. Mar. 31, 2008) ........................................... 8

**Statutes**

35 U.S.C. § 102 .......................................................................................................... *passim*

35 U.S.C. § 103 ............................................................................................................. 8, 10

D. Del. LR 7.1.3(c)(2) ......................................................................................................... 27

## I.    INTRODUCTION

Motions for preliminary injunctions are rarely granted in patent cases, and rarely will a court see a motion for preliminary injunction that is more baseless than this one. Indeed, Girafa's **three year delay** in seeking injunctive relief mandates an immediate denial of its motion. Girafa's U.S. Patent No. 6,864,904 (the "'904 patent") issued in March 2005, at a time when Alexa's accused activities had already been ongoing for three years. Yet Girafa did not commence this litigation until December 2007 and then waited three more months, until March 2008, before seeking preliminary injunctive relief. There is no urgency to Girafa's request and there can be no irreparable harm to Girafa if it is denied.

Likewise, Girafa cannot succeed on the merits because the '904 patent is invalid as anticipated and obvious, and is unenforceable due to inequitable conduct. Girafa's purported invention involves the visual presentation of small ("thumbnail") images of the homepages of websites found during an internet search, in order to make evaluation of the search results easier. The thumbnail images are provided via an "image server." But multiple references — including one that Girafa mischaracterized to the PTO during the prosecution of the '904 patent — confirm the widespread use of thumbnail visual images and image servers well before Ms. Ran, an Internet hobbyist, allegedly conceived of the Girafa invention in 1999. Indeed, the Amazon Defendants (collectively Amazon Web Services LLC; Amazon.com, Inc.; and Alexa Internet, Inc.) intend to seek to move for summary judgment of invalidity shortly, so that this Court need not expend any more resources on this case. It is telling that Ms. Ran herself publicly stated to the *Jerusalem Post* in 2004 that:

> the company's technology, which allows Internet search engines to display thumbnail pictures of the site in its directory, fills such an obvious need that it's a wonder no-one developed it before.

Declaration of R. David Donoghue in Support of Brief of Defendants Amazon Web Services

LLC, Amazon.Com, Inc., and Alexa Internet Inc. in Opposition to Girafa.Com, Inc.'s Motion for

Preliminary Injunction[1] ("Donoghue Decl.") Ex. C; ████████████████████████████

    This motion also falls short for yet another, independent reason: Girafa cannot establish

the requisite irreparable harm.  Girafa attempts to portray the Amazon Defendants' entry into the

thumbnail market as the catalyst for Girafa's alleged injury.  But this assertion is both: (1)

speculative and devoid of any evidentiary basis; and (2) belied by the fact that Girafa waited

several years before bringing this suit.  What the evidence ████████████████████ does

show is that:

-     Alexa has been providing thumbnails since 2002, has been charging for the use of

  its thumbnails since 2006, ██████████████████████████████████████

  ██████████████████████████████████████

  ██████████████████████████████████████

  ██████████████████████; and

- ██████████████████████████████████████

  ██████████████████████████████████████

  ████████ Moreover, regardless of any harm that Girafa may allegedly be

  suffering, monetary damages are more than adequate to compensate Girafa.

    Finally, although Girafa included Amazon.com, Inc. ("Amazon") and Amazon Web

Services LLC ("AWS") in its injunction motion, Girafa has not alleged that either Amazon or

AWS, as separate and distinct entities, actually infringe Girafa's patent, nor has Girafa provided

any evidence of such alleged infringement in its motion.  Girafa also has made no attempt to

---

[1] All declarations in support are filed contemporaneously herewith.

show, and it cannot show, that any of the Amazon Defendants directly infringe any of the asserted claims, which is a showstopper for its motion.

## II.    STATEMENT OF FACTS

### A.    The Amazon Defendants

Alexa and AWS are wholly-owned subsidiaries of Amazon. Of the Amazon Defendants, only Alexa offers a thumbnail service and only Alexa's service is accused of infringement by Girafa.

Since 1996, Alexa has been a meaningful contributor to the Internet. From its beginning, Alexa has provided Internet users with an intelligent and organized approach to the World Wide Web. Alexa's business focuses on collecting information about the Web and presenting that information in various forms to its website visitors and to Web developers. *See* Declaration of Greger Orelind in Support of Amazon Web Services LLC, Amazon.com, Inc., Alexa Internet, Inc.'s Opposition to Girafa's Motion for Preliminary Injunction ("Orelind Decl.") ¶¶ 2-5, 11. Alexa's Web Services are based on (a) its "crawling" of the Web to systematically and continually create an indexed archive of websites as well as (b) the activities of the Alexa Toolbar "community". Orelind Decl. ¶¶ 2-5. Alexa donated an early archive of the Web to the Library of Congress and continues to make its archive publicly available through the Internet Archive's "Wayback Machine."[2] Orelind Decl. ¶ 6. The online community recognized Alexa's contributions when Yahoo Internet Life Magazine named the Internet Archive the "Site of the Year." *Id.*

In 2002, Alexa began collecting and displaying thumbnails of web pages to make its website's presentation of information and metrics about websites more interesting. Orelind Decl.

---

[2] The Wayback Machine is an online, searchable archive of the Internet from 1996 to the present.

¶ 7.  From 2002 to 2006, owners of other websites incorporated Alexa's thumbnails into their own websites by linking directly to Alexa's thumbnails.  Orelind Decl. ¶¶ 7, 9-10.  Alexa charged no fees for this largely unauthorized use of its thumbnails or the processing power and bandwidth that were consumed by serving the thumbnails.  *Id.*  In 2006, Alexa started a pay-for-service that gave other website owners access to Alexa's thumbnails and prevented the further unauthorized (and uncompensated) use of Alexa's thumbnails and computing resources.  *Id.*  Alexa charges its customers a flat rate of $0.0002 per thumbnail, that is, $0.20 per 1000 thumbnails.  Orelind Decl. ¶ 12.  Alexa's price is, on average, approximately $0.05 per 1000 thumbnails higher than Girafa and Thumbshots' prices.  Orelind Decl. ¶ 13.

Thumbnails are not presently, and have never been, part of Alexa's primary focus as an Internet company.  Orelind Decl. ¶ 11.  Although Alexa offers thumbnails as a Web Service, Alexa's primary focus remains on collecting and providing information about the Web.  *Id.*  To do this, Alexa's energies are largely spent on crawling the Web to download cached copies of every public website, developing search technology to access these websites, and processing data collected from the Alexa Toolbar users.  Orelind Decl. ¶¶ 2-5.  Alexa continuously crawls the Web to maintain a complete index of the publicly available Web.  Orelind Decl. ¶ 3.  On a daily basis, Alexa captures approximately 1 Terabyte of Web content.  *Id.*  Since its inception, Alexa has collected over 1 Petabyte of data (that is, 1000 Terabytes or 1 Quadrillion bytes).  Orelind Decl. ¶ 6.  From this cached information and its complementary tools, Alexa is able to derive and provide useful Web metrics such as traffic rankings and website relatedness.  Orelind Decl. ¶¶ 3-5.  This information is then presented through Alexa's Toolbar, Alexa's website and its Web Services.  Orelind Decl. ¶¶ 3-5.  It was in connection with presenting information through its own website that Alexa developed its thumbnails.  Orelind Decl. ¶ 7.  Today, 80% of the Alexa

4

thumbnails are served for Alexa's own use on its own website in connection with the presentation of Web search and metric information that comprises the heart of Alexa's business. Orelind Decl. ¶ 8. Alexa only generates about $43,000.00 per year from the for-pay Alexa Site Thumbnail Service. Orelind Decl. ¶ 18. Because the main focus of Alexa and Girafa differ so greatly, Alexa does not consider Girafa to be a direct competitor. Orelind Decl. ¶ 11.

**B.    The '904 Patent and the State of the Art at the End of the Twentieth Century**

The '904 patent is entitled "Framework For Providing Visual Context to WWW Hyperlinks" and names inventors Shirli Ran, Eldad Barnoon, and Yuval Yarom. Expert Declaration of Joseph Hardin on Invalidity of U.S. Patent No. 6,864,904 ("Hardin Decl.") Ex. A. The '904 patent claims priority to a provisional application dated December 6, 1999. The '904 patent's inventors apparently intended to provide an improvement to user interfaces for search engine technology. *See, e.g., id.* at Fig. 1 at 110 and Fig. 2 at 213. Instead of a standard search engine display consisting of a list of hyperlinks (known as the URL or "uniform resource locator" of a web page) and a brief description of the web page, the '904 patent purportedly added the idea of providing a thumbnail visual image of the home page of the web site associated with the linked web page. *Id.* at Abstract. The application that matured into the '904 patent claimed substantially more than thumbnail visual images of home pages, but thumbnail visual images had been in wide use since 1996. *See* Hardin Decl. ¶¶ 29-32. Recognizing this and relying upon a variety of prior art patents, the Examiner repeatedly rejected Plaintiff's claims until they were finally limited to thumbnail visual images of home pages provided using an image server. *See id.* ¶ 12. As described below, these features were well known and widely used in the prior art.

The starting point for the Amazon Defendants' invalidity analysis is the state of the art at the time of the invention, which, as Joseph Hardin's declaration makes clear, was replete with

the use of thumbnail visual images and image servers both in multiple stand alone fashions and in the same combined fashion as the supposed invention. *See generally* Hardin Decl. ¶¶ 15-34. This prior art makes it abundantly clear that the asserted claims of the '904 patent are anticipated and rendered obvious (by several references), including at least Schmid, Miller, Brown, Kraft, Finseth, and Robertson, which are discussed below and in the claim charts that accompany the Hardin Declaration. Hardin Decl. Exs. V, X, Z, and AB.

## III.    ARGUMENT

### A.    A Preliminary Injunction Requires A Strict Showing of Four Factors.

A preliminary injunction is "extraordinary relief" that should only be applied in limited circumstances. *Abbott Labs. v. Andrx Pharms., Inc.,* 452 F.3d 1331, 1335 (Fed. Cir. 2006); *Amazon.com, Inc. v. Barnesandnoble.com,* 239 F.3d 1343, 1359 (Fed. Cir. 2001); *Sun Optics, Inc. v. FGX Int'l, Inc.*, C.A. No. 07-137-SLR, 2007 WL 2228569, at *1 (D. Del. Aug. 2, 2007).

The movant must establish its right to a preliminary injunction in light of four factors: (1) the movant has a likelihood of success on the merits of the underlying litigation; (2) immediate irreparable harm will result if the relief is not granted; (3) the balance of hardships to the parties weighs in the movant's favor; and (4) the public interest is best served by granting the injunctive relief. *Erico Int'l Corp. v. Vutec Corp.*, 516 F.3d 1350, 1353-54 (Fed. Cir. 2008) (citing *PHG Techs., LLC v. St. John Cos., Inc.*, 469 F.3d 1361, 1365 (Fed. Cir. 2006)); *Abbott Labs.*, 452 F.3d at 1334; *Sun Optics*, 2007 WL 2228569, at *1. "'[Federal Circuit] case law and logic both require that a movant cannot be granted a preliminary injunction unless it establishes both of the first two factors, *i.e.*, likelihood of success on the merits and irreparable harm.'" *PHG Techs.*, 469 F.3d at 1365 (quoting *Amazon.com*, 239 F.3d at 1350). This standard, to be applied by the district court in deciding whether a plaintiff is entitled to a preliminary injunction, is stringent. *Doran v. Salem Inn*, 422 U.S. 922, 931 (1975).

### 1. Likelihood of success on the merits

To demonstrate a likelihood of success on the merits, the moving party must show that it will prove: (1) infringement of the asserted claims; and (2) that the asserted claims will likely withstand any invalidity or unenforceability challenge(s) raised by the non-moving party. *Erico*, 516 F.3d at 1354; *PHG Techs*, 469 F.3d at 1365; *Amazon.com*, 239 F.3d at 1350; *Sun Optics*, 2007 WL 2228569, at *1. If the non-moving party raises a substantial question regarding infringement or validity/enforceability, the court should deny the motion for preliminary injunction. *Erico*, 516 F.3d at 1354; *Amazon.com*, 239 F.3d at 1350-51; *Sun Optics*, 2007 WL 2228569, at *1.

Validity challenges during preliminary injunction proceedings can be successful on evidence that would not suffice to support a judgment of invalidity at trial. *Erico*, 516 F.3d at 1355-56. In other words, a defendant may prevail against a preliminary injunction motion without proving actual invalidity, but only needs to raise a substantial question as to the validity of the asserted patent claims. *Id.*; *Abbott Labs.*, 452 F.3d at 1335. The non-moving party's burden is met by showing the "vulnerability" of the patent at this stage of the proceedings. *Abbott Labs.*, 452 F.3d at 1335-36. The same piece of prior art that may not be sufficient to carry a motion for summary judgment on invalidity may nonetheless be sufficient to defeat a motion for a preliminary injunction. *See Amazon.com*, 239 F.3d at 1358-59 (noting that a reference that did not disclose all limitations of a claim was sufficient to defeat a preliminary injunction) (citing *Helifix Ltd. v. Blok-lok, Ltd.*, 208 F.3d 1339, 1351-52 (Fed. Cir. 2000)).

### a. Anticipation

Ordinarily, proving invalidity by anticipation "requires that the four corners of a single, prior art document describe every element of the claimed invention, either expressly or inherently, such that a person of ordinary skill in the art could practice the invention without

undue experimentation." *Callaway Golf Co. v. Acushnet Co.*, 523 F. Supp. 2d 388, 394 (D. Del. 2007) (citing *Advanced Display Sys. Inc. v. Kent State Univ.*, 212 F.3d 1272, 1282 (Fed. Cir. 2000)). However, in determining the merits of a preliminary injunction motion, it is enough to show anticipation by, for example, equivocal testimony or through "evidence. . . very much in equipoise." *Helifix*, 208 F.3d at 1351. A patent can be held invalid in view of a reference that was considered by the PTO during prosecution. *IPXL Holdings, LLC v. Amazon.com, Inc.*, 430 F.3d 1377, 1381, 1383 (Fed. Cir. 2005) (upholding summary judgment of invalidity in view of a reference that was before the Examiner.)

### b.    Obviousness

Invalidity under 35 U.S.C. § 103 is subject to an equally low standard in the context of establishing likely success on the merits for purposes of a preliminary injunction motion. Ordinarily, § 103 requires that "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art." Obviousness is a question of law, which depends on several underlying factual inquiries. *Takeda Pharmaceutical Co. Ltd. v. Teva Pharms. USA, Inc.*, C.A. No. 06-033-SLR, 2008 WL 839720, at *12 (D. Del. Mar. 31, 2008).

> Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented.

*KSR Int'l Co. v. Teleflex Inc.*, --- U.S. ----, 127 S. Ct. 1727, 1734 (2007) (quoting *Graham v. John Deere Co.*, 383 U.S. 1, 17-18, 86 S. Ct. 684, 694 (1966)). However in the context of

determining the merits of a preliminary injunction motion, it is enough to demonstrate a substantial question of obviousness by, for example, relying on a witness' testimony that it would be reasonable to combine two separate references, ***notwithstanding*** a district court's finding that the secondary considerations associated with the alleged invention favored a finding of non-obviousness. *Erico,* 516 F.3d at 1357 (Fed. Cir. Feb. 19, 2008).

### 2.    Irreparable harm

Courts should deny injunctive relief in the absence of irreparable harm. Even if a patentee succeeds in showing a likelihood of success on the merits, it must still demonstrate why monetary damages would be insufficient — i.e., there is no presumption of irreparable harm based solely on a likelihood of success on the merits. *Sun Optics,* 2007 WL 2228569, at *1 (citing *eBay, Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 393-94 (2006)); *see also Siemens Med. Solutions USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.,* C.A. No. 07-190-SLR, 2008 U.S. Dist. LEXIS 1486, at *19 (D. Del. Jan. 8, 2008).

Delay in seeking injunctive relief significantly diminishes the moving party's argument for irreparable harm. *High Tech Medical Instrumentation, Inc. v. New Image Indus., Inc.,* 49 F.3d 1551, 1557 (Fed Cir. 1995) (stating that 17 months is a substantial delay that militates against the issuance of a preliminary injunction); *T.J. Smith & Nephew, Ltd. v. Consol. Med. Equip., Inc.,* 821 F.2d 646, 648 (Fed. Cir. 1987); *Digene Corp. v. Ventana Med. Sys., Inc.,* 484 F. Supp. 2d 274, 278 (D. Del. 2007). Additionally, it is not enough for the moving party to allege lost market share as a proxy for irreparable harm. *Siemens Med. Solutions,* 2008 U.S. Dist. LEXIS 1486, at *20 (citing *Illinois Tool Works, Inc. v. Grip-Pak, Inc.,* 906 F.2d 679, 683 (Fed. Cir. 1990) ("Application of a concept that every patentee is always irreparably harmed by an alleged infringer's pretrial sales would equally disserve the patent system.")). Indeed, "'reliance on possible market share loss would apply in every patent case where the patentee practices the

invention,' and is not justification for the extraordinary relief of a preliminary injunction." *Digene*, 484 F. Supp. 2d at 285 (quoting *Nutrition 21 v. Thorne Research, Inc.*, 930 F.2d 867, 871 (Fed. Cir. 1991)).

### 3. Balance of hardships

The moving party must demonstrate in quantifiable terms that the hardship it will suffer without issuance of an injunction outweighs the hardship on the non-moving party if an injunction is entered. *Abbott Labs.*, 452 F.3d at 1348; *Sun Optics*, 2007 WL 2228569, at *1.

### 4. Public interest factor

Finally, the moving party must succeed in showing that a preliminary injunction would have a favorable impact on the public interest. *Amazon.com*, 239 F.3d at 1350. Absent any other relevant concerns, the public interest factor is generally bound to the likelihood of success on the merits. *Sun Optics*, 2007 WL 2228569, at *2. As a result, granting a preliminary injunction based on a "vulnerable" patent does not serve the public interest. *See Abbott Labs.*, 452 F.3d at 1335, 1348 (public interest not served where non-moving party raised substantial question as to validity of asserted claims, and thus, moving party failed to demonstrate a likelihood of success on the merits); *Sun Optics*, 2007 WL 2228569, at *2.

## IV.    GIRAFA HAS NOT AND CANNOT MEET ITS PRELIMINARY INJUNCTION BURDEN.

### A.    Girafa Cannot Show A Likelihood of Success on the Merits.

In order to prevail on its motion, Girafa must show a likelihood of success on the merits. However, because all of the asserted claims of the '904 patent are either invalid under 35 U.S.C. §§ 102 or 103, or are not infringed, and because the '904 patent is likely unenforceable due to inequitable conduct, Girafa cannot meet that burden.

**B.**     **The Asserted Claims of the '904 Patent are Invalid.**

**1.**     **Claim construction**

The necessary first step in the invalidity analysis is claim construction, a process with which this Court is very familiar. *See, e.g., Markman, Inc. v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996); *Callaway Golf Co. v. Acushnet Co.*, 523 F. Supp. 2d 388, 399 (D. Del. 2007).

For purposes of this motion only, the Amazon Defendants accept Plaintiff's constructions of those claim terms set forth in Plaintiff's motion (thumbnail visual image, image server, home page, hyperlink, hovering over, and visualization functionality). Hardin Decl. ¶ 13. Under the current Scheduling Order, the parties will not exchange proposed claim terms until December 2008 and claim construction briefing will not begin until June 2009. The Amazon Defendants reserve their right to offer alternative constructions to Girafa's currently proposed constructions as well as additional constructions in accordance with the schedule for claim construction. The Amazon Defendants also reserve the right to offer additional non-infringement arguments during the regular pretrial phases of this case.

**2.**     **The asserted claims are anticipated and obvious.**

As described in Section II.B. above, the '904 patent is generally directed to making Internet search engine result web pages more user-friendly. It describes associating a thumbnail visual image of a home page of a linked-to web site, or the linked page itself in certain claims, with a hyperlink on the page. The '904 patent also teaches displaying the thumbnails in various ways, for example next to or appearing to hover over the hyperlink. Hardin Decl. ¶ 12. But according to the inventors during the prosecution of the patent and the Examiner's statements in his Reasons for Allowance, the two allegedly novel or inventive elements of the patent were: 1) using thumbnail visual images of a homepage of a linked-to web site, instead of a thumbnail of

11

the linked-to page; and 2) providing the thumbnail visual images via an image server that is separate from a web server (which stores the code that makes up a web page) either to the web server or directly to the web browser (which displays the web page for the user). Hardin Decl. ¶ 12 and Ex. B.

The Amazon Defendants are alleged to have infringed twenty five claims, including four independent claims — claims 1, 18, 35 and 46 — and twenty one dependent claims. Claim 1 is a method for displaying a web page with a hyperlink to a user and at least partially concurrently displaying a thumbnail visual image of the home page of the hyperlinked web site using an image server. Independent claims 18, 35 and 46 are slight variations of claim 1:

- Claim 18, although written differently, claims a system identical to the method described in claim 1.

- Claim 35 is a method identical to claim 1, except that it requires that the image server be separate from the web server and it does not require that the thumbnail visual image be of the linked-to web page's home page.

- Claim 46, although written differently and claiming a system instead of a method, is substantively identical to claim 35, with the addition of a requirement that the system employ visualization functionality to embed commands in the displayed web page to download the thumbnail visual image from the image server.

According to the logic of Plaintiff in its opening brief, because the independent claims are so similar, if claim 1 and its dependent claims are invalid, each of the remaining claims is also invalid. Pl.'s Opening Br. at 19. While the Amazon Defendants do not necessarily agree with this oversimplification, they will follow it for purposes of this motion, and in any case claims 18, 35 and 46 are, in fact, invalid for largely the same reasons that invalidate claim 1.

Even using Girafa's proposed constructions, as set forth in detail in the Hardin Declaration and accompanying claim charts, all of the asserted claims are subject to a substantial question of validity because they are either anticipated or rendered obvious by at least the following references.

### a. "Web Representation with Dynamic Thumbnails" by Schmid

The asserted claims of the '904 patent are invalid in light of Schmid, which is prior art pursuant to 35 U.S.C. §§ 102(a), 102(b), and 102(e)(2), as it was a publicly available printed publication since July of 1998, more than one year before the date of invention and/or filing of the '904 Patent. *See* Hardin Decl. ¶ 40 and Exs. U and V. Schmid discloses displaying, upon request by a browser, thumbnail visual images of hyperlinked web pages within the displayed web page. *See id.* at Ex. V, Schmid at Sections 1, 3.1, and 5; Figs. 2 and 3. The thumbnail visual images are stored in a "thumbnail server," separate from the web server, and are provided to the user via the internet. *See id.* at Ex. V, Schmid at Section 3; Fig. 2. Schmid also suggests thumbnail visual images of homepages of the hyperlinks in that it teaches the use of thumbnails of "any Web pages," which covers homepages. As set forth in greater detail in the Hardin Declaration and the attached claim charts, the asserted claims of the '904 Patent are invalid in light of Schmid. Hardin Decl. ¶ 40 and Ex. U. Claims 35, 38, 40, 41, 46, 49, 51, 52, and 53 are anticipated and Claims 1, 4, 5, 6, 7, 12, 13, 14, 15, 18, 21, 22, 23, 24, 29, 30, 31, 32, 39, 42, 44, 45, 50, 55, and 56, those including thumbnail visual images of home pages of target links and thumbnail visual images that hover over the hyperlinks, are obvious. *Id.*

### b. United States Patent 7,177,948 to Kraft, et al.

The asserted claims of the '904 patent are invalid in light of Kraft, which is prior art pursuant to 35 U.S.C. § 102(e)(2), as it was filed before the date of invention of the '904 Patent. *See* Hardin Decl. ¶ 1 and Exs. W and X. The invention described in Kraft enhances internet

searching by providing visual abstracts for a list of search results with hyperlinks (e.g., an annotated web page) at least partially concurrently with the underlying web page containing the search results with hyperlinks. *See id.* at Ex. X, Kraft at Col. 4:13-67; Fig. 1. The user may then hover his or her cursor over the visual abstract and a medium-sized visual abstract image then appears hovering over the main content of the underlying search results. *See id.* at Ex. X, Kraft at Col. 5:14-18; Fig. 2. As set forth in greater detail in the Hardin Declaration and the attached claim charts, the asserted claims of the '904 Patent are invalid in light of Kraft. Hardin Decl. ¶ 1 and Ex. W. Claims 1, 4, 5, 6, 7, 12, 13, 14, 15, 18, 21, 22, 23, 24, 29, 30, 31, 32, 35, 38, 39, 40, 41, 42, 45, 46, 49, 50, 51, 52, 53, and 56 are anticipated and Claims 44 and 45, those including URL parsing algorithms, are obvious.

### c. United States Patent 6,271,840 to Finseth, et al.

The asserted claims of the '904 patent are invalid in light of Finseth, which is prior art pursuant to 35 U.S.C. §§ 102(a) and 102(e)(2). *See* Hardin Decl. ¶ 2 and Exs. Y and Z. Finseth discloses a method of providing from a server reduced images, or thumbnails, of web pages corresponding to hyperlinks in a web page at least partially concurrently with the web page containing the hyperlinks, thus allowing for faster perusal of search engine output by the user in that the hyperlinks do not have to be activated in order to view their content. *See id.* at Ex. Z, Finseth at Abstract; Col. 1:8-11; Col. 2:27-31, 41-45, 57-61; Col. 3:8-25; Figs. 1-4; Fig. 7). As set forth in greater detail in the Hardin Declaration and the attached claim charts, the asserted claims of the '904 Patent are invalid in light of Finseth. Hardin Decl. ¶ 42 and Ex. Y. Claims 21, 22, 23, 24, 29, 30, 31, 32, 35, 38, 40, 41, 46, 49, 51, 52, and 53 are anticipated and Claims 1, 4, 5, 6, 7, 12, 13, 14, 15, 18, 39, 42, 44, 45, 50, 55, and 56, those including thumbnail visual images of home pages of target links, URL parsing algorithms, and thumbnail visual images that hover over the hyperlinks, are obvious. *Id.*

14

### d.   United States Patent 6,613,100 to Miller

Although Miller was considered by the PTO Examiner during prosecution of the '904 patent, a patent can be held invalid in view of such a previously-considered reference. *See, e.g., IPXL Holdings, LLC v. Amazon.com, Inc.,* 430 F.3d 1377, 1383 (Fed. Cir. 2005) (upholding summary judgment of invalidity in view of a reference that was before the Examiner). Moreover, as discussed below (*See* Section IV. C), Girafa misrepresented Miller to the Examiner during prosecution. The asserted claims of the '904 patent are invalid in light of Miller, which is prior art pursuant to 35 U.S.C. §§ 102(a) and 102(e)(2) as it was filed more than one year before the date of invention of the '904 patent. *See* Hardin Decl. ¶ 3 and Exs. AA and AB. Miller, like the '904 patent, discloses a graphical depiction of thumbnail images of web pages that correspond to links contained in an underlying web page at least partially concurrently with the underlying web page itself. *See id.* at Ex. AB, Miller at Col. 2:65-Col. 3:3; Col. 8:8-21, 49-52 (especially "Children" in the table); Fig. 5. The thumbnail images of web pages depicted in Miller may be the home pages of particular web sites. Donoghue Decl. Ex. B, Myers Dep. 304:2-17. As set forth in greater detail in the Hardin Declaration and the attached claim charts, the asserted claims of the '904 patent are invalid in light of Miller. Hardin Decl. ¶ 43 and Ex. AA. Claims 1, 6, 7, 12, 18, 23, 24, 29, 51, 52 are anticipated and Claims 4, 5, 13, 14, 15, 21, 22, 30, 31, 35, 38, 39, 40, 41, 42, 44, 45, 46, 49, 50, 53, 55, and 56, those including thumbnail visual images that hover over the hyperlinks and URL parsing algorithms, are obvious. *Id.*

### e.   United States Patent 6,665,838 to Brown, et al.

The Brown reference was likewise considered by the Examiner but still can invalidate a patent. The asserted claims of the '904 patent are nevertheless invalid in light of Brown, which is prior art pursuant to 35 U.S.C. § 102(e)(2) as it was filed before the date of invention of the '904 patent. *See* Hardin Decl. ¶44 and Exs. AC and AD. Brown, like the '904 patent, discloses

15

the display of thumbnail images of web pages represented by hyperlinks in an underlying web page at least partially concurrently with the underlying web page itself (i.e., an annotated web page) as a means for efficiently searching and surfing the internet. *See id.* at Ex. AD, Brown at Col. 2:15-17, 23-31; Col 4:13-28; Col. 6:19-32; Col. 7:8-20; Figs. 6 and 8. Brown also discloses the generation and display of the underlying web page with hyperlinks and thumbnails of such hyperlinks through a visualization functionality that can be resident in a web server or web browser. *See id.* at Ex. AD, Brown at Col. 6:7-18; Fig. 5. As set forth in greater detail in the Hardin Declaration and the attached claim charts, the asserted claims of the '904 patent are invalid in light of Brown. *See id.* at Ex. AC. Claims 35, 38, 40, 41, 46, 49, 51, and 52 are anticipated and Claims 1, 4, 5, 6, 7, 12, 13, 14, 15, 18, 21, 22, 23, 24, 29, 30, 31, 32, 39, 42, 44, 45, 50, 53, 55, and 56 are obvious. *Id.*

### f.    United States Patent 6,486,895 to Robertson

Finally, the asserted claims of the '904 patent are invalid in light of Robertson, which is prior art pursuant to 35 U.S.C. §§ 102(a) and 102(e)(2). *See* Hardin Decl. ¶ 45 and Exs. AE and AF. Robertson discloses a system for displaying lists of hyperlinked documents, such as web pages, including using thumbnail images of the hyperlinked web pages. *See id.* at Ex. AF, Robertson at Fig. 15 and Col. 2:14-36. As set forth in greater detail in the Hardin Declaration and the attached claim charts, the asserted claims of the '904 Patent are invalid in light of Robertson. Hardin Decl. ¶44 and Ex. AE. All of the asserted claims of the '904 patent, those including thumbnail visual images of home pages of target links and URL parsing algorithms, are obvious. *Id.*

### g.    Secondary Considerations

Girafa attempts to establish the validity of the '904 patent by relying on conclusory arguments by its expert regarding a long-felt need for, and commercial success of, the supposed

invention.  These efforts cannot save the '904 Patent from a finding of invalidity because they have no basis.

With regard to the commercial success analysis, Dr. Myers admitted:

- "I didn't have any particular instruction on how commercially successful is defined." [120:21-22]

- "So I just generally used whether the Defendants themselves seemed to be saying they were [commercially successful]." [121:2-8]

- That he had no knowledge of Defendants' actual financials. [121:18-21]

- That he did no analysis of the commercial success of Girafa's own product. [122:16-18]

- That he has no business training. [123:3-4]

- That some other expert would have been more appropriate to opine on the issue of commercial success; and [124:13-19]

- That it would have been nice to have more evidence, and that the only evidence he relied on was Defendants' own statements. [121:2-17]

*See* Donoghue Decl. Ex. B. Myers Dep. 120:1-124:22.  Given these admissions, it is clear that Dr. Myers' views regarding the alleged commercial success are no more than uninformed, speculative lay opinions that should not be credited by this Court.

Second, Dr. Myers' analysis of the alleged long-felt but unsolved need is nonsensical. Dr. Myers identified the allegedly unmet need as providing "thumbnails for web pages."  Myers Decl. ¶ 70 (D.I. 44).  He confirmed this view unequivocally in his deposition:

> Q:    So the long-felt need you're referring to is getting thumbnails?
>
> A:    Well, the advantage of having *thumbnails for web pages in particular.*
>
> Q:    So I'm clear, the long-felt need is having thumbnails for web pages.
>
> A:    Right.

Donoghue Decl. Ex. B, Myers Dep. 127 (emphasis added). However, as discussed earlier in section II.B., the '904 patent's putative contribution to the art is not nearly as broad as providing "thumbnails for web pages." The general notion of providing "thumbnails for web pages" was already well-known in the art. Hardin Decl. ¶¶ 16 and 29. During prosecution of the '904, the applicant's claims were repeatedly rejected until they were finally limited to thumbnails of *home pages* provided using an image server. Hardin Decl. Ex. B 16 and 18 ('904 patent prosecution history). Dr. Myers' opinions on long-felt need are therefore flawed, because he has failed to address whether there was a need for the specific inventive contribution of the '904 patent claims. Secondary considerations must be tied to the specific subject matter of the claims to be worthy of consideration in the obviousness analysis. *See In re Comiskey*, 499 F.3d 1365, 1380 (Fed. Cir. 2007) (rejecting evidence of long-felt need that did not relate to the specific combination of elements found in the claimed invention). They are also flawed because his alleged long-felt need is, apparently, for something that was already there.

### C.    The '904 Patent is also Unenforceable for Inequitable Conduct.

In addition to being invalid for the reasons set forth above, compelling evidence supports the conclusion that the '904 patent is unenforceable. In the course of prosecuting the '904 patent before the PTO, Girafa made inaccurate representations regarding the prior art Miller patent, raising a substantial question as to whether Girafa committed inequitable conduct. This is yet another, independent basis to deny this motion.[3]

Patent applicants "have a duty to prosecute patent applications in the Patent Office with candor, good faith, and honesty." *Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*, 488 F.3d 982, 999 (Fed. Cir. 2007). To establish inequitable conduct, a party must demonstrate that

the patentee: (1) either made an affirmative misrepresentation of material fact, failed to disclose material information, or submitted false material information, and (2) intended to deceive the Patent Office. *Cargill, Inc. v. Canabra Foods, Ltd.*, 476 F.3d 1359, 1363 (Fed. Cir. 2007).

Information is material when "a reasonable examiner would consider it important in deciding whether to allow the application to issue as a patent." *eSpeed, Inc. v. BrokerTec USA, Inc.*, 480 F.3d 1129, 1136 (Fed. Cir. 2007). Affirmative misrepresentations, in contrast to misleading omissions, are more likely to be regarded as material. *Hoffmann-La Roche, Inc. v. Promega Corp.*, 323 F.3d 1354, 1367 n.2 (Fed. Cir. 2003). Intent need not be proven by direct evidence. Direct proof of wrongful intent is rarely available but may be inferred from clear and convincing evidence of the surrounding circumstances. *Paragon Podiatry Lab., Inc. v. KLM Labs., Inc.*, 984 F.2d 1182, 1189-90 (Fed. Cir. 1993).

Here, Girafa's conduct in affirmatively misrepresenting Miller gives rise to a strong likelihood of a finding of inequitable conduct. Specifically, in a March 11, 2004 Office Action (Myers Decl. Ex. C, 55, 59-60), the Examiner rejected a number of claims of the Girafa application on obviousness grounds, based in part on Miller. The Examiner found that one reference (Brown) did not disclose thumbnail visual images of home pages, but determined regarding Miller that "it is clear that the web page is referring to the main page or home page." Myers Decl. Ex. C, 60.

An interview between Girafa and the Examiner took place on June 3, 2004, in which Miller was specifically discussed. Myers Decl. Ex. C, 60-69, 88-89. To avoid what it suggested were the disclosures of Miller, Girafa amended a number of its claims to restrict "thumbnail

---

[3] The Amazon Defendants will be seeking leave to file an amended answer and counterclaim shortly.

visual image" to the "home page" of a given web site. Myers Decl. Ex. C, 74, 96 (claim 1) and

78, 99-100 (claim 21). In amending its claims, Girafa remarked:

> While the applicant agrees that Miller teaches displaying
> thumbnails of documents, the applicant respectfully submits that
> Miller displays thumbnails of linked pages and does not show or
> suggest displaying thumbnails of **the home pages of the linked
> pages**, as recited in amended claims 1 and 21. Neither Brown nor
> Miller show or suggest "providing to a user a visual concurrently
> providing a thumbnail visual image of **the home** image of a web
> page containing at least one hyperlink and at least partially **page** of
> at least one web site which is represented by said at least one
> hyperlink" as recited in amended claims 1 and 21.

Myers Decl. Ex. C, 88 and 110. Based at least in part on the above misrepresentation, Girafa's

patent was allowed. Myers Decl. Ex. C, 115.

Contrary to Girafa's representations to the Patent and Trademark Office, however, Miller

does indeed suggest thumbnail visual images of the home page. *See* Hardin Decl. ¶ 43; Ex. AA,

Miller at Col. 8:12-18:

> The thumbnails 270 appearing on each of the selection panels 220-
> 250 of the GUI 200 could be representative of alternative web
> pages for selections by the user. (i.e., the thumbnail 270 is a
> miniaturized picture of the actual web page that it represents).
> Each thumbnail 270 is essentially a "link" to an alternative web
> page, and , when selected by the user, causes the web browser 100
> to display the selected web page on the web browser's display
> section.

*See also,* Col. 8, Chart references to "CHILDREN" links (contemplating "alternative web

pages" having a parent-child relationship). The logical implication of the parent-child language

in Miller is using thumbnail visual images of a home page (parent) as well as a linked-to web

page (child). *Id.* And this is not just attorney argument, Girafa's own expert, in his deposition,

plainly and unhesitatingly admitted that Miller did indeed teach the display of thumbnail visual

images of home pages:

Q:    Now, somebody who was – someone like Miller, using his system to display thumbnails of linked pages, what if one of those links was to a home page, wouldn't it be displaying a home page as a thumbnail?

A:    The Miller system shrinks every page, so if the – what he calls the Children page, if one Children page was a home page, then it would shrink it, sure.

Q:    So, theoretically – not even theoretically – in reality, Miller at times will display thumbnail images of home pages; is that correct?

A:    Sure. To the extent any of the actual target pages reference a home page, then it's going to shrink it.

Donoghue Decl., Ex. B, Myers Dep. 304:1-17.

Girafa did not deal in candor, good faith, and honesty with the Patent Office in addressing the Miller reference, and in failing to do so, Girafa created a basis for patentability where none existed. A substantial question as to the enforceability of the '904 Patent exists that warrants denial of Girafa's motion for preliminary injunction in its entirety.

**D.    The '904 Patent is Not Infringed.**

For purposes for this motion, the Amazon Defendants have not made all of the non-infringement arguments that they will make during this litigation. However, Girafa appears to be contending that the Amazon Defendants are inducing or contributing to infringement by others. Girafa's broad infringement contentions cannot support a motion for preliminary injunction and serve as another reason for denying this motion.

First, both contributory infringement and inducement of infringement require proof of direct infringement, which has not been properly alleged with respect to the Amazon Defendants. All of the asserted claims require "providing" a webpage and a thumbnail visual image to a user, which is done by a web server interacting with a user's web browser and computer. *See* Hardin Decl. Ex. A, Claims 1, 8, 35, and 46. None of the Amazon Defendants do that. *Everpure, Inc. v. Cuno, Inc.*, 875 F.2d 300, 302 (Fed. Cir. 1989); *Met-Coil Sys. Corp. v. Korners Unlimited, Inc.*,

803 F.2d 684, 687 (Fed. Cir. 1986) (absent direct infringement of the patent claims, there can be neither contributory nor inducement of infringement).    Therefore, any theory of vicarious liability for patent infringement by the Amazon Defendants must fail.

In addition, "[i]n order to succeed on a claim of inducement, the patentee must show, first that there has been direct infringement," and "second, that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1378 (Fed. Cir. 2005).  The specific intent necessary to induce infringement "requires more than just intent to cause the acts that produce direct infringement. . . .  [T]he inducer must have an affirmative intent to cause direct infringement." *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (en banc).  Thus, "inducement requires evidence of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities." *Id.*

Here, aside from the fact that Girafa failed to demonstrate a likelihood of success on the merits regarding direct infringement of the '904 Patent by the Amazon Defendants, Girafa has entirely failed to even address the issue of affirmative intent to cause inducement, as required by law.  Therefore, Girafa cannot demonstrate a likelihood of success on its inducement claim.

Girafa's contentions regarding contributory infringement are likewise unavailing, if not more so, because contributory infringement cannot be solely based on the provision of a service, but instead requires "the sale of a product of some sort." *Pharmastem Therapeutics, Inc. v. Viacell, Inc.*, 491 F.3d 1342, 1357-58 (Fed. Cir. 2007) (reversing contributory infringement verdict because defendant merely sold a service, but not a product to the alleged direct infringer).

22

Here, because Alexa is not selling a product, but a service, they cannot be liable for contributory infringement. Orelind Decl. ¶ 5.

### E.    Irreparable Harm

To show itself entitled to the extraordinary remedy of a preliminary injunction, Girafa must demonstrate that it would suffer irreparable harm if an injunction were not granted — that is, that whatever harm it incurs as a result of the Amazon Defendants' alleged infringement could not be compensated by monetary damages alone. *Sun Optics,* 2007 WL 2228569, at *1 (citing *Abbott Labs.*, 452 F.3d at 1348). Without a showing of irreparable harm, Girafa's motion for a preliminary injunction must fail. *PHG Techs.,* 469 F.3d at 1365 (holding that irreparable harm is required to support a preliminary injunction).

Girafa should not be rewarded with an injunction given its delay in seeking such relief. Alexa has been providing thumbnails since 2002 and charging for such thumbnails since 2006. The '904 Patent issued in March 2005. Girafa did not commence this litigation until December 2007 and did not seek preliminary injunctive relief until March 2008. A delay in seeking a preliminary injunction militates against granting the injunction because it demonstrates that there is no apparent urgency to the request. *High Tech Med. Instrumentation*, 49 F.3d 1551, 1557 (Fed. Cir. 1995) (stating that 17 months is a substantial period of delay that militates against the issuance of a preliminary injunction); *Eaton Corp. v. Rockwell Int'l Corp.*, C.A. No. 97-421-JJF, 1997 U.S. Dist. LEXIS 22674 (D. Del. Nov. 4, 1997), *rev'd on other grounds*, 323 F.3d 1332 (Fed. Cir. 2003); *Kyphon, Inc. v. Disc-O-Tech Med. Techs. Ltd.*, C.A. No. 04-204-JJF, 2004 U.S. Dist. LEXIS 25170 (D. Del. Dec. 10, 2004). On this basis alone, Girafa's motion should be denied.

Moreover, not a single instance of alleged irreparable harm articulated by Girafa applies to or was caused by the Amazon Defendants. Girafa primarily identifies three components of its

alleged irreparable harm:  (1) having to compete with "free" services; (2) an erosion of its market share; and (3) its inability to continue to acquire new paying customers.  Girafa Br. at 32-34. However, as discussed below, Alexa charges nearly the same price as (if not more than) Girafa for thumbnails.  Girafa has provided no evidence of what its market share is or that it has in fact lost any market share or actual customers to Alexa or the Amazon Defendants.  And even if a customer had switched from Girafa to Alexa (and there is no evidence that any have), Girafa could still be compensated for that loss with monetary damages.

Since 2006, Alexa has been charging its customers to use its thumbnail images.  Oreland Decl. ¶ 10.  By charging for the use of its thumbnails, Alexa continues to make the thumbnails available for customers that truly want them, and, at the same time, recoup some of the overhead required to provide the thumbnails.  Presently, Alexa charges $0.20 for access to 1000 thumbnails.  Orelind Decl. ¶ 12.  This revenue structure actually results in Alexa's thumbnails being more expensive than to Girafa's.  Orelind Decl. ¶¶ 12-17.  Based on this rate, Alexa's revenue from its thumbnail service from November 2006 to November 2007 was $43,364. Orelind Decl. ¶ 18.

Because Alexa charges for its thumbnail services it cannot be held accountable for: (1) Girafa's loss of market share based on the existence of free thumbnails; or (2) irreversible price erosion.  Girafa has offered no evidence that Alexa (or any of the Amazon Defendants) is responsible for taking any of Girafa's customers or potential customers.

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████  However, speculative evidence cannot support the extraordinary remedy of a preliminary injunction.  *See, e.g., Altana Pharma AG v. Teva*

*Pharms. USA, Inc.*, 532 F. Supp. 2d 666, 683 (D.N.J. 2007) (citing *Nutrition 21 v. United States*,

930 F.2d 867, 871 (Fed. Cir. 1991).  Moreover, Girafa offers no evidence that any of Girafa's

past or potential customers are using Alexa for thumbnails.



As a related matter, Girafa ignores the fact that its harm, if proved, could easily be compensated with monetary damages. It is not enough to simply rely on a suspected loss of market share. *See, e.g., Digene*, 484 F. Supp. 2d at 285. A preliminary injunction is inappropriate where damages are calculable and the accused defendants have the ability to pay any damages award. *See, e.g., Altana Pharma.* 532 F. Supp. 2d 666 at 683 (citing *Eli Lilly and Co. v. Am. Cyanamid Co.*, 82 F.3d 1568, 1578 (Fed. Cir. 1996)). Here, both Girafa and Alexa charge for the use of their respective thumbnail services based on the number of thumbnails a customer uses. *See* Orelind Decl. ¶¶ 12-17. Because each access to a thumbnail must be tracked to allow for accurate billing, damages could be calculated based on the number of thumbnails provided. Furthermore, Girafa offered no evidence that the Amazon Defendants could not pay any damages award. *See Novo Nordisk A/S v. Pfizer, Inc.*, No. 06 Civ. 5819 (LBS), 2006 U.S. Dist. LEXIS 90387, at *15-17 (S.D.N.Y Dec. 14, 2006) (denying motion for preliminary injunction for lack of irreparable harm based on findings that money damages were easily ascertainable from records and that the defendant could pay any future judgment). Accordingly, Girafa's Motion should fail.

**F.      Improper Issuance of an Injunction Would Inflict Undue Hardship upon the Amazon Defendants.**

Girafa provides no quantifiable analysis of how failure to enter an injunction against the Amazon Defendants, in particular, would result in hardship to Girafa. Plaintiff Girafa.com, Inc.'s Opening Memorandum of Law in Support of Its Motion for Preliminary Injunction, 35. Indeed, Alexa's pricing structure is higher than Girafa's. Orelind Decl. ¶ 13. Alexa cannot, therefore, be responsible for undercutting Girafa's sales based on price or for eroding the price of thumbnails in the market. Girafa identified no other basis supporting a finding that failure to enjoin any of the Amazon Defendants would result in an undue hardship to Girafa.

Notwithstanding Girafa's failure to offer proof on this factor, an improper injunction against Alexa's thumbnail service would amount to undue hardship to Alexa insofar as it would cause disruption of its service to customers and force the redesign of its own website. Orelind Decl. ¶¶ 5 and 7-8. The balance of the hardships weighs against granting the motion for preliminary injunction.

### G.    Public interest factor

The public interest does not weigh in favor of granting the motion. The Amazon Defendants agree with Girafa that the only public interest factor at issue in this case is the proper application of the patent law. *See, e.g., Sun Optics*, 2007 WL 2228569, at *2. However, as discussed above, the Amazon Defendants disagree with Girafa's conclusions that this is a "cut and dry" instance of infringement of a valid patent. Indeed, it has been observed that "the public interest is not served by enjoining parties when the patent in suit is of questionable efficacy." *Biagro Western Sales, Inc. v. Helena Chem. Co.*, 160 F. Supp. 2d 1112, 1136 (E.D. Cal. 2001). As discussed above, the validity of the '904 Patent is in serious question. Since it is equally important that likely invalid patents are not enforced against non-infringers, this factor supports denying Girafa's motion.

## V.    GIRAFA'S LACK OF EVIDENCE CANNOT BE CURED

Girafa cannot cure its lack of evidence in support of its Motion with respect to the Amazon Defendants in its Reply Brief. D. Del. LR 7.1.3(c)(2). Delaware Local Rule 7.1.3(c)(2) provides, in pertinent part, "the party filing the opening brief shall not reserve material for the reply brief which should have been included in a full and fair opening brief." *Id.* "'The practice of reserving arguments for reply briefs 'amounts to impermissible sandbagging.'" *Student Fin. Corp. v. Royal Indem. Co.*, C.A. No. 03-507-JJF, 2004 U.S. Dist. LEXIS 4952, at *9, n.4 (D. Del. Mar. 23, 2004) (citing *Rockwell Techs. LLC v. Spectra-Physics Lasers, Inc.*, C.A. No. 00-

589-GMS, 2002 U.S. Dist. LEXIS 5180, at *8 (D. Del. Mar. 26, 2002)(quoting *Jordan v. Bellinger*, C.A. No. 98-230-GMS, 2000 U.S. Dist. LEXIS 19233, at *18 n.7 (D. Del. April 28, 2000))).

As noted above, Girafa has provided no evidence that Alexa is responsible for: (1) forcing Girafa to compete with "free" services; (2) eroding the price Girafa can charge; or (3) preventing Girafa from gaining any new customers.  It has provided no evidence of any reason for its long delay in bringing this motion.  Nor has Girafa provided evidence of direct or indirect infringement vis-à-vis the Amazon Defendants.  Girafa should not now be allowed to resurrect its claim of infringement or irreparable harm against the Amazon Defendants, should it attempt to do so, in its reply brief.

## VI.    CONCLUSION

Each of the four factors governing the issuance of a preliminary injunction favors the Amazon Defendants. Girafa's delay in bringing this motion by itself mandates its denial. It is unlikely that the '904 patent is valid, enforceable or infringed by any of the Amazon Defendants. Even if that were not the case, Girafa can be compensated with monetary damages for any alleged harm. Improperly issuing an injunction would force Alexa to face an exponentially greater burden with respect to a tangential aspect of its business. This is not an instance that warrants an injunction. The Court should deny Girafa's Motion.

OF COUNSEL:

Thomas G. Pasternak
R. David Donoghue
DLA PIPER US LLP
203 N. LaSalle Street, Suite 1900
Chicago, IL 60601-1293
Tel: (312) 368-4000

M. Elizabeth Day
Gregory J. Lundell
DLA PIPER US LLP
2000 University Avenue
East Palo Alto, CA 94303-2248
Tel: (650) 833-2000

Dated: May 16, 2008
Public Version Dated: May 22, 2008
865577 / 32639

POTTER ANDERSON & CORROON LLP

By:  */s/ David E. Moore*
      Richard L. Horwitz (#2246)
      David E. Moore (#3983)
      Hercules Plaza, 6th Floor
      1313 N. Market Street
      Wilmington, DE 19899
      Tel: (302) 984-6000
      rhorwitz@potteranderson.com
      dmoore@potteranderson.com

*Attorneys for Defendants*
*Amazon Web Services LLC, Amazon.com, Inc.,*
*and Alexa Internet, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### <u>CERTIFICATE OF SERVICE</u>

I, David E. Moore, hereby certify that on May 22, 2008, the attached document was

electronically filed with the Clerk of the Court using CM/ECF which will send notification to the

registered attorney(s) of record that the document has been filed and is available for viewing and

downloading.

I further certify that on May 22, 2008, the attached document was Electronically Mailed

to the following person(s):

| | |
|---|---|
| Steven J. Balick | William H. Mandir |
| John G. Day | John F. Rabena |
| Tiffany Geyer Lydon | Trevor C. Hill |
| ASHBY & GEDDES | Chandran B. Iyer |
| 500 Delaware Avenue, 8th Floor | SUGHRUE MION, PLLC |
| Wilmington, DE 19899 | 2100 Pennsylvania Ave., N.W. |
| sbalick@ashby-geddes.com | Washington, D.C. 20037 |
| jday@ashby-geddes.com | wmandir@sughrue.com |
| tlydon@ashby-geddes.com | jrabena@sughrue.com |
| *Attorneys for Plaintiff Girafa.com, Inc.* | thill@sughrue.com |
| | cbiyer@sughrue.com |
| | *Attorneys for Plaintiff Girafa.com, Inc.* |
| Anne Shea Gaza | Antonio R. Sistos |
| RICHARDS, LAYTON & FINGER | Jennifer A. Kash |
| One Rodney Square | QUINN EMANUEL URQUHART OLIVER & |
| P.O. Box 551 | HEDGES, LLP |
| Wilmington, DE 19899 | 50 California Street 22nd Floor |
| gaza@rlf.com | San Francisco, CA 94111 |
| *Attorneys for Defendant IAC Search &* | antoniosistos@quinnemanuel.com |
| *Media Inc.* | jenniferkash@quinnemanuel.com |
| | *Attorneys for Defendant IAC Search &* |
| | *Media Inc.* |

Claude M. Stern
QUINN EMANUEL URQUHART OLIVER &
HEDGES, LLP
555 Twin Dolphin Dr., Suite 560
Redwood Shores, CA 94065
claudestern@quinnemanuel.com
*Attorneys for Defendant IAC Search &
Media Inc.*

Arthur G. Connolly, III
CONNOLLY, BOVE, LODGE & HUTZ
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899
aconnollyIII@cblh.com
*Attorneys for Snap Technologies Inc.*

Daniel M. Cislo
Mark D. Nielsen
CISLO & THOMAS LLP
1333 2nd Street, Suite 500
Santa Monica, CA 90401
dan@cislo.com
mnielsen@cislo.com
*Attorneys for Snap Technologies Inc.*

Thomas C. Grimm
MORRIS, NICHOLS, ARSHT & TUNNELL
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
tgrimm@mnat.com
*Attorneys for Defendants Exalead Inc. and
Exalead S.A.*

Harold V. Johnson
Scott A. Timmerman
BRINKS HOFER GILSON & LIONE
NBC Tower, Suite 3600
455 North Cityfront Plaza Drive
Chicago, IL 60611-5599
hjohnson@usebrinks.com
stimmerman@usebrinks.com
*Attorneys for Defendants Exalead Inc.
and Exalead S.A.*

Justin Lim
2156
Montreal, Quebec H8N 1K7
Canada
jhlim@smartdevil.com
*Attorneys for Defendant Smartdevil Inc.*

Jack B. Blumenfeld
Rodger D. Smith II
MORRIS, NICHOLS, ARSHT & TUNNELL
1201 North Market Street
Wilmington, DE 19899-1347
jblumenfeld@nmat.com
rsmith@mnat.com
*Attorneys for Defendant Yahoo! Inc.*

Matthew D. Powers
Douglas E. Lumish
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
matthew.powers@weil.com
doug.lumish@weil.com
*Attorneys for Defendant Yahoo! Inc.*

*/s/ David E. Moore*
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE  19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

842506 / 32639