IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| GIRAFA.COM, INC., | ) | **REDACTED** |
| | ) | **PUBLIC VERSION** |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 07-787-SLR |
| | ) | |
| AMAZON WEB SERVICES LLC, | ) | |
| AMAZON.COM, INC., ALEXA | ) | |
| INTERNET, INC., IAC SEARCH & | ) | |
| MEDIA, INC., SNAP TECHNOLOGIES, INC., | ) | |
| YAHOO! INC., SMARTDEVIL INC., | ) | |
| EXALEAD, INC., and EXALEAD S.A., | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF GIRAFA.COM, INC.'S REPLY BRIEF
## IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION

ASHBY & GEDDES
Steven J. Balick (I.D. # 2114)
John G. Day (I.D. # 2403)
Tiffany Geyer Lydon (I.D. # 3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Plaintiff Girafa.com Inc.*

*Of Counsel:*

William H. Mandir
John F. Rabena
Chandran B. Iyer
Trevor Hill
SUGHRUE MION, PLLC
2100 Pennsylvania Ave., N.W.
Washington D.C. 20037
(202) 293-7060

Dated: July 3, 2008

{00227299;v1}

# TABLE OF CONTENTS

Page

I.  PRELIMINARY STATEMENT ............................................................................................. 1

II.  INFRINGEMENT ............................................................................................................... 1

    A.   AMAZON DOES NOT CONTEST INFRINGEMENT ............................................................... 1
    B.   SNAP'S EXPERT CONCEDED INFRINGEMENT ................................................................... 2
           1.   *Snap Enhanced* ............................................................................................... 2
           2.   *Snap Classic and Snap Shots* ......................................................................... 5
    C.   INDIRECT INFRINGEMENT OF AMAZON AND SNAP ......................................................... 8

III.  VALIDITY ......................................................................................................................... 9

    A.   THE PI DEFENDANTS ASSERT INVALIDITY BASED ON REFERENCES THAT ARE NOT EVEN PRIOR ART ......... 10
    B.   THE PI DEFENDANTS' INVALIDITY ALLEGATIONS REQUIRE A CLAIM CONSTRUCTION THAT CONFLICTS WITH THE FILE HISTORY ......... 11
    C.   NONE OF THE ALLEGED COMBINATIONS TEACHES THE CLAIMED "HOME PAGE" REQUIREMENT ................... 11
    D.   NONE OF THE ALLEGED COMBINATIONS TEACHES USING SEPARATE IMAGE SERVERS FOR THUMBNAILS OF WEBPAGES ......... 13
    E.   THE PI DEFENDANTS' EXPERTS IGNORED SECONDARY CONSIDERATIONS ................................... 15

IV.  INEQUITABLE CONDUCT ............................................................................................... 16

V.  IRREPARABLE HARM ....................................................................................................... 17

    A.   GIRAFA DID NOT DELAY SEEKING A PRELIMINARY INJUNCTION ....................................... 17

VI.  BALANCE OF HARDSHIPS ............................................................................................. 18

    A.   AMAZON CANNOT COMPLAIN OF HARDSHIP IN LOSING $43,000 PER YEAR ......................... 18
    B.   SNAP HAS OTHER SOURCES OF INCOME AND FINANCIAL BACKING ..................................... 18

VII.  PUBLIC INTEREST ......................................................................................................... 19

VIII.  NO BOND IS REQUIRED .............................................................................................. 19

IX.  CONCLUSION .................................................................................................................. 20

## TABLE OF AUTHORITIES

**Cases**

*A.K. Stamping Co., Inc. v. Instrument Specialties Co., Inc.,*
106 F.Supp.2d 627, 655 (D.N.J. 2000)................................................................19

*Akzo N.V. v. U.S. Int'l Trade Comm'n,*
808 F.2d 1471, 1482 (Fed. Cir. 1986) *cert. denied,* 482 U.S. 909 (1987)........................16

*Basic Fun, Inc. v. X-Concepts, LLC,*
157 F. Supp. 2d 449, 452 (E.D. Pa. 2001) ..................................................................1

*Carella v. Starlight Archery & Pro Line Co.,*
804 F.2d 135 (Fed. Cir. 1986)................................................................11

*Crowley v. Local No. 82, Furniture & Piano,*
679 F.2d 978 (1st Cir. 1982), *rev'd on other grounds,* 467 U.S. 526 (1984)...................19

*High Tech Medical Instrumentation, Inc. v. New Image Industries, Inc.,*
49 F.3d 1551, 1557 (Fed. Cir. 1995) ................................................................17

*Local Union No. 98, IBEW v. Cableco, Inc.,*
1999 U.S. Dist. LEXIS 8830 (E.D. Pa. 1999)................................................................1

*Northern Telecom, In. v. Datapoint Corp.,*
908 F.2d 931, 938 (Fed. Cir.) *cert denied,* 498 U.S. 920 (1990) ....................................16

*PODS, Inc. v. Porta Stor, Inc.,*
484 F.3d 1359, 1367-68 (Fed. Cir. 2007) ................................................................13

*Prevue Interactive, Inc. at al., v. Starsight Telecast, Inc.,*
1999 U.S. Dist. LEXIS 1956, *25 (D. Ok. 1999) ................................................................16

*T.J. Smith et al.v. Nephew Ltd.,*
821 F.2d 646 (Fed. Cir. 1987)................................................................18

*Temple University v. John F. white, JR., et al.,*
941 F.2d 201, 220 (3d Cir. 1991) ................................................................19

## INDEX OF EXHIBITS

Reply Ex. 7:  Excerpts from the deposition of Gabriel Robins, Ph.D.

Reply Ex. 8:  Excerpts from the deposition of Joseph Hardin

Reply Ex. 9:  Excerpts from the deposition of Greger Orelind

Reply Ex. 10:  Excerpts from the deposition of Thomas McGovern

Reply Ex. 11:  Emails between Justin Wheeler and Shirli Ran

Reply Ex. 12:  Annotated copy of Robins Deposition Exhibit 5

Reply Ex. 13:  Excerpts from the deposition of Shirli Ran.

Reply Ex. 14:  Excerpt from the Manual of Patent Examination Procedure § 2128

## I.     PRELIMINARY STATEMENT

Girafa's motion for preliminary injunction should be granted with respect to each of the preliminary injunction defendants[1] ("the PI Defendants"), as none has raised any substantial challenge.  Snap and the Amazon defendants raised only smokescreen arguments that skirt the relevant issues.[2] Amazon does not substantively contest infringement, and Snap's expert conceded infringement when confronted at his deposition.

Although the PI Defendants raise a validity challenge, it is not substantial at all, as it 1) relies on documents that are not even prior art; 2) is based on claim constructions that directly conflict with the patent's intrinsic evidence; and 3) misreads the teachings of the documents that are prior art.  The PI Defendants' positions on irreparable harm, balance of hardships, and public interest fare no better as they ignore the plain fact      **REDACTED**

## II.     INFRINGEMENT

### A.     Amazon does not contest infringement

Amazon offers no substantive defense to infringement, and no supporting expert testimony.  Despite Dr. Myers's numerous claim charts detailing how the www.Alexa.com website directly infringes, Amazon has not asserted that any claim element is missing from www.Alexa.com.  Instead, Amazon pretends that Girafa never asserted direct infringement, and

---

[1] The three groups of PI Defendants are 1) Smartdevil Inc.  ("Smartdevil"), 2) Snap Technologies Inc. ("Snap"), and 3) Amazon Web Services, Amazon.com Inc., and Alexa Internet, Inc. (collectively referred to as "Amazon" or "the Amazon defendants").

[2] Smartdevil has not answered the Complaint and did not contest Girafa's motion at all, and therefore Girafa is entitled to a finding in its favor vis-à-vis Smartdevil, at least on the issues of infringement, irreparable harm, balance of hardships, and public interest. *Local Union No. 98, IBEW v. Cableco, Inc.*, 1999 U.S. Dist. LEXIS 8830 (E.D. Pa. 1999); *Basic Fun, Inc. v. X-Concepts, LLC*, 157 F. Supp. 2d 449, 452 (E.D. Pa. 2001)

skirts the issue of contributory and inducement of infringement. *See* Amazon Opp.[3] at 21. To be sure, Girafa's opening memorandum of law alleges that "[t]he PI Defendants directly infringe the '904 patent by using the claimed invention" (Girafa Mem.[4] at 2), and Professor Myers's claim charts explain the details of that allegation. *See* Ex. H.[5] Amazon has failed to rebut any of these details.

## B.    Snap's Expert Conceded Infringement

Snap raises two primary non-infringement arguments in its opposition: 1) that its Snap Enhanced "previews" are too big to be the claimed thumbnails; and 2) that its Snap Classic and Snap Shots modes do not meet the "providing …. at least partially concurrently" requirement of the independent claims. *See* Declaration of Gabriel Robins, Ph.D. (hereinafter "Robins Decl.") Section 8, ¶¶ 117-251. Snap's expert, Dr. Robins, however, conceded both of these points during his deposition.

### 1.    Snap Enhanced

For Snap's Enhanced mode, Snap relies primarily on its argument that its "preview" is too big to be the claimed "thumbnail visual image." E.g., Robins Decl. Section 8, ¶¶ 117-251. This is Snap's only noninfringement argument with respect to Snap Enhanced for claims 1, 4, 7, 12, 18, 21, 24, 29, 35, 38, 41, 46, 49, and 52.[6] For example, with respect to independent claim

---

[3] Answering Brief of Defendants Amazon Web Services LLC, Amazon.com, Inc. and Alexa Internet Inc. in Opposition to Girafa.com, Inc.'s Motion for Preliminary Injunction (hereinafter "Amazon Opp.").

[4] Plaintiff Girafa.com, Inc.'s Opening Memorandum of Law in Support of its Motion for Preliminary Injunction (hereinafter "Girafa Mem.")

[5] Unless otherwise indicated, all exhibits identified herein with a letter were attached to the Declaration of Dr. Brad A. Myers (hereinafter "Dr. Myers Declaration"), which was filed with Girafa's moving papers.

[6] The fact that Snap even raised this as a noninfringement argument in the first place, is specious, given that 1) in 2004 and again in 2006 when Snap was being established, they contacted Girafa seeking to buy what Snap referred to as "thumbnails" from Girafa that are the same size as the thumbnails Snap currently uses; *See* Ran Decl. Ex. 5 (Requesting pricing for two million "thumbnails"); Reply Ex. 11; Reply Ex. 10 at 39-40 and 56; and 2) Snap's Answer to the Complaint admits this element; D.I. 21 ¶

35, Dr. Robins explained:

**REDACTED**

*e.g.,* Reply Ex. 7 at 99:15-22; *See also* Robins Decl., ¶ 8.1-8.22.2, Reply Ex. 7 at 50-100. Dr. Robins made similar admissions for the remaining claims. *Id.*

But Snap's "too big" argument is no longer an issue. Both the Robins Declaration and Snap's Opposition brief explicitly adopt Girafa's definition of a "thumbnail visual image" as "an image that is a smaller version of a larger image." E.g., Robins Decl. ¶ 5.2. This adopted definition reads directly on the Snap Previews (Enhanced, Classic, and Snap Shots). Reply Ex. 7 at 127-130.

When confronted with this inconsistency at his deposition, Professor Robins initially attempted to backpedal, saying he actually disagreed with the definition, and only adopted it for "strategic reasons."[2] But, at the end of the day, Professor Robins admitted that this agreed upon definition literally covers Snap previews.

**REDACTED**

---

39 ("Snap admits that it makes, uses, and provides computer and/or computer-related products and/or services including displaying thumbnail images of other websites.")

[2] Apparently, Prof. Robins had reached his conclusion of noninfringement based on his initially proposed definition of "thumbnails" that required tiny images. For "strategic reasons" Snap's lawyers told Prof. Robins to use Girafa's definition of "thumbnail visual images" instead. Yet Snap and Prof. Robins still wanted it both ways and kept their noninfringement argument, despite admitting that the agreed upon definition reads on Snap's previews. *See* Reply Ex. 7 at 127-130.

**REDACTED**

Reply Ex. 7 at 129:12-130:11 (emphasis added); *see also*, Reply Ex. 7 at 127-129.  Having

denounced its only non-infringement argument, Prof. Robins's testimony establishes

infringement of Snap Enhanced for at least claims 1, 4, 7, 12, 18, 21, 24, 29, 35, 38, 41, 46, 49,

and 52.

      Similarly, Prof. Robins does not deny Girafa's infringement allegation for the additional

limitations of dependent claims 44 and 55.  These claims add a requirement of splitting the

search result URL into portions and trimming off some of that URL.  This is how the '904 patent

teaches to identify the homepage of the target URL.  Ran Decl. Ex. 1 at Col. 7: 5-62.

**REDACTED**

      Yet, Prof. Robins admits that Snap's third party returns a shortened home page URL so

that Snap can display a thumbnail of the home page, even though the search result URL is a

longer URL that points to an internal web page.   Reply Ex. 7 at 107:3-9; 113:7-114:21.

Accordingly, Snap's home page thumbnail image is certainly the result of splitting and trimming

as recited in claims 44 and 55.  Prof. Robins's head-in-the-sand approach to the infringement

analysis does not adequately rebut Girafa's infringement evidence for claims 44 and 55.  Snap's

response of pointing to their third-party contractor that Snap controls, and saying "we don't

know what our contractor does" is inadequate to rebut the uncontroverted evidence that a

shortened home page URL is returned to Snap from a longer URL that points to an internal

webpage. Thus, the evidence of record demonstrates that claims 44 and 55 are infringed as well.

### 2.    Snap Classic and Snap Shots

All of the claims of the '904 patent require "providing to a user a visual image of a web

page... and at least partially concurrently providing a thumbnail visual image..." Ran. Decl. Ex.

1. Prof. Robins defines the claim language "at least partially concurrently providing" to require

both "transmitting and displaying" to the user. Robins Decl. ¶ 28. According to Prof. Robins,

the act of "providing" a thumbnail must "overlap" at some point in time with the providing of a

web page in order to be "at least partially concurrently." *Id.* ¶ 26.

At his deposition, Prof. Robins admitted that the "at least partially concurrently

providing" limitation was met by Snap Classic and Snap Shots,[8] even under his interpretation.

For example, Prof. Robins drew a timeline of a scenario that he initially said avoided

infringement. In this timeline, Prof. Robins drew a top line showing the time that the "Search

Result Web Page" was provided to the user (transmitted and displayed), and then two lower lines

showing the time that the Snap preview was provided to the user (transmitted and displayed), as

shown below.

---

[8] Prof. Robins and Snap do not raise this noninfringement argument for Snap Enhanced. See, e.g.,
Robins Decl. Section 8, ¶¶ 117-251.



Reply Ex. 12 (initially introduced at Robins's Depo. as Exhibit 5) (red emphasis added)

As clearly shown in his timeline Prof. Robins admitted that the two lines "overlap" in time, at least partially.

**REDACTED**

Reply Ex. 7 at 168:4-11 (emphasis added); Reply Ex. 12. Thus, even under Prof. Robins's interpretation, the claimed phrase is literally satisfied. This was the only non-infringement argument that Snap raised for Snap Classic and Snap Shots, with respect to independent claims 1 and 18. But as conceded by Snap's expert above, even under their own claim construction, Snap literally and directly infringes independent claims 1 and 18.

For independent claims 35 and 46, Snap adds that it does not provide "an annotated web page," because the phrase "annotated web page" requires "a web page modified to include thumbnail visual images." Snap and Prof. Robins argue that Snap Classic and Snap Shots do not

meet this element because the corresponding search results web page does not contain the thumbnails. See, e.g., Robins Decl. ¶¶ 62-65.

Prof. Robins's analysis is flawed for several reasons. First, Robins's analysis ignores the period of time when the thumbnails are actually displayed. See, e.g., Ex. M-1. When this period of time is considered, the search result web page is certainly an "annotated web page", even under Snap's definition. As shown in Ex. M-1, when the Snap thumbnail appears, the webpage is annotated with a thumbnail. Ex. M-1.

Second, Prof. Robins improperly adds claim limitations, as there is nothing in the language of claims 35 and 46 requiring the "annotations" to be thumbnails. While these claims require an annotated web page as well as the display of thumbnails, nothing limits the annotations to be only thumbnails, and Snap certainly includes "annotations". For example, after a Snap Classic search is conducted, Snap immediately annotates its search result web page with extra icons that indicate to the user that a Snap Shot preview is available. See, e.g., Ex. M-1 (icons to the right of hyperlinks). And the HTML code for the Snap web page is annotated with code to download the previews whenever the user points the cursor to the hyperlink. Myers Reply Decl. ¶ 10. Thus under any conceivable definition of "annotations", Snap Classic and Snap Shots infringe claims 35 and 46.

Snap also argues that Snap Classic and Snap Shots do not infringe dependent claims 4, 21, 38 and 49 because they do not display thumbnails "within the visual image of said web page." According to Snap, the "within" phrase requires the thumbnail visual image to be "an element of the rendered web page", and therefore there is no infringement because the Snap preview "is not part of the HTML code representing the Web page." Robins Decl. ¶ 50.

Snaps proposed claim construction does not help Snap. Apparently Prof. Robins did not review Snap's web page HTML code for Snap Classic or Snap Shots, as the Snap Shot preview

is in fact added to the HTML code that defines the web page. Myers Reply Decl. ¶ 16  Prof.

Robins offers no evidence or explanation to support his conclusory statement that the Snap

preview is not part of the Snap code, which is clearly incorrect in light of Prof. Myers's analysis

of the Snap code  Accordingly, using Snap's definition of the "within…" phrase, Snap Classic

and Snap Shots infringe claims 4  21  38, and 49.

## C.    Indirect Infringement of Amazon and Snap

Finally, both Amazon and Snap argue that they cannot be liable for contributory

infringement because they provide a service as opposed to a product.  Snap Opp. at 18; Amazon

Opp  at 22.  But they do in fact provide products; both provide thumbnail images (products) of

websites to customers, as well as the software (a product) to retrieve them from their respective

image servers and use them in an infringing manner.  *See  e.g.*, Amazon Opp  at 4 (selling

thumbnails for $.20/1000); Ex. I at 9 ("Where ever you want to include a thumbnail image

simply call the get  thumbnail  link function in the code that is generating your web page…"),

Myers Decl. ¶ 57;  Ex  J at 12 ("Implementing Snap Preview Anywhere is quick and easy as well

Publishers simply navigate to http.//www.snap.com/ bout/spa1B.php, put the code on their site

and Snap takes care of the rest - automatically."), Reply Ex. 10 at 40.  Moreover, Snap's Answer

admits that it provides thumbnail products. D.I. 21 ¶ 39 ("*Snap admits* that it makes, uses, and

provides computer and/or computer-related *products* and/or services including displaying

thumbnail images of other websites.")  Thumbnail images and the software that controls the

claimed steps that provide thumbnail images from the image server are critical components of

the '904 patent claims  E.g., Ran Decl. Ex. 1, claim 1

For both contributory and inducement, Snap and Amazon assert that there is no evidence

that they had any intent that their products will be used in an infringing manner  Snap Opp. at 18;

Amazon Opp. at 22.  Yet both noticeably fail to address the evidence from their own websites

8

that shows this intent. The websites demonstrate that Snap and Amazon encourage their customers to use the thumbnails exactly as the Girafa patent teaches and claims. See, e.g., Myers Decl. ¶ 72-73; Ex. J; Girafa Mem. at 19; Ex. I at 9. In addition, Snap has been aware of Girafa's technology as early as 2004, when it sought to buy millions of "thumbnails" from Girafa to start its own business as a third party "thumbnail" supplier. Ran Decl. Ex. 5 and Reply Ex. 11.[2] Snap was informed of the pending Girafa patent in 2004 (Ran Decl. ¶ 23), and has been specifically aware of the '904 patent at least since December 2007.

<strong>REDACTED</strong>

It is therefore remarkable that Amazon and Snap can make this assertion, while at the same time acquiescing to the infringement analysis of every one of the 20-plus claims asserted against them.

## III. <u>VALIDITY</u>

In their shotgun attack at the validity of the '904 patent, Snap and Amazon go so far as to rely on references that are not even prior art, and on claim constructions that flatly contradict the intrinsic evidence. The asserted prior art teaches no more than the art considered by the Patent Office Examiner during prosecution of the '904 patent. In fact, three (3) of the six (6) purportedly anticipatory references asserted were already considered by the Examiner;[10] the fourth, the Schmid paper, is not prior art; and the remaining two references teach nothing more than the art of record. The PI Defendants have not raised a substantial question of invalidity against *any* claim, despite their burden of doing so for *every* claim.

---

[2] No PI Defendant has argued that its thumbnails and associated software code for retrieving and displaying the thumbnails are staple items or have substantial non-infringing uses. Therefore, Girafa has not addressed these elements of contributory infringement in detail. Nevertheless, as shown in Dr. Myers's detailed claim charts and supporting exhibits, the PI Defendants' software code retrieves and displays their thumbnails exactly as recited in the '904 claims. Accordingly, there can be no non-infringing uses of the components that the PI Defendants supply.

[10] The Miller, Brown, and Robertson references were considered by the Examiner during the '904 prosecution. Ran Decl. Ex. 1.

**A.**     **The PI Defendants Assert Invalidity Based on References that are Not Even Prior Art**

The PI Defendants assert invalidity based on at least two references that are not even prior art. Hardin Exhibit N, entitled "WWW Interactive Progressive Local Image Transmission System," bears no publication date, yet cites to a document in its bibliography that was published in 2000. That dates the reference *no earlier than* 2000, two years *after* the critical date of the '904 patent. Reply Ex. 8 at 89-90. The reference fails to qualify as prior art under any section of 35 U.S.C. § 102, and therefore cannot possibly invalidate the asserted claims.

Similarly, the Schmid paper has no indication it was ever published, let alone a publication date. Hardin Ex. V. Instead, Snap offers Declarations of Snap's attorney and expert, asserting that the U.S. Patent Office cited *different*[11] Schmid papers in the file histories of third party patents, U.S. Patent Nos. 6,301,607, 6,349,330, and 7,032,171 (Hardin Exs. K, L, and M, respectively), and when doing so the Patent Office supposedly assigned those *other* Schmid papers dates of March and June 1998. Neilsen Decl. ¶ 3; Hardin Decl. ¶ 32. Of course, these other Schmid papers, which are not even in the record of this motion, are entirely irrelevant to the question of 'when did the *asserted* Schmid paper (Hardin Exhibit V) become publicly available. Moreover, even employing the U.S. Patent Office's standard of establishing prior art, the asserted Schmid paper (Hardin Exhibit V) would not have passed muster since this paper fails to include any date, let alone a publication or retrieval date. Reply Ex. 14, MPEP § 2128 ("..if the publication itself does not include a publication date (or retrieval date), it cannot be relied upon as prior art..."). In any event, there is no evidence that the asserted Schmid paper (Hardin Exhibit V) or the unnamed Hardin Exhibit N, were published prior to the filing of the

---

[11] The Schmid paper relied on by the PI Defendants is four pages long, yet the Schmid papers cited in Hardin Exhibits K and L are twenty-six and seventeen pages long, respectively. Hardin Exs. K and L. And contrary to Mr. Hardin's declaration, Exhibit M contains no citation to any Schmid paper. Hardin Ex. M.

'904 patent application, i.e., December 6, 1999.[12]  Consequently, as an evidentiary matter, the

Court should refuse to consider these documents as prior art under any section of 35 U.S.C. §

102.

**B.**    **The PI Defendants' invalidity allegations require a claim construction that conflicts with the file history**

Amazon's and Snap's invalidity contentions are also based on claim constructions that

contradict the intrinsic evidence, and should be rejected as a matter of law.  For example,

Defendants' invalidity expert, Prof. Joseph Hardin, notes that the prosecution history specifically

identifies "two novel and inventive elements," but then in his analysis of the asserted prior art,

Prof. Hardin ignores both of these elements.

In his Declaration, Prof. Hardin describes the "two novel and inventive elements" as:

> 1) "using thumbnail visual images of a homepage of a linked to web site, instead of a thumbnail of the linked to page;" and
> 2) "providing the thumbnails to the web browser or web server using an image server separate from a web server."

Hardin Decl. ¶ 12, *citing* Hardin Ex. B at 16, 18.    The patent applicant focused on these two

elements to distinguish over the applied art during prosecution, and the Examiner allowed the

claims because of these claimed elements.  *See* Myers Decl. ¶ 41; Ex. C.  Yet Defendants and Mr.

Hardin ignore both of these elements when comparing the claims to the prior art.

**C.**    **None of the alleged combinations teaches the claimed "home page" requirement**

At least claims 1-15, 18-32, 42, and 53 recite what Prof. Hardin refers to as the first

"novel and inventive element" according to the file history, namely "using thumbnail visual

---

[12] Defendants chose not to submit the other Schmid papers in opposition to this motion.  Nevertheless, the Patent Office is an administrative agency that can accept assumptions about publication dates.  The fact that the Patent Office listed those references with 1998 dates does not alleviate the burden upon a defendant to prove that an asserted reference was publicly accessible prior to the critical date.  *Carella v. Starlight Archery & Pro Line Co.*, 804 F.2d 135, 138 (Fed. Cir. 1986).  For example, the PI Defendants offer no evidence that the Patent Office obtained these papers prior to the critical date, and no evidence of where these other Schmid papers were allegedly published in 1998.

images of a homepage of a linked to web site, instead of a thumbnail of the linked to page."
Hardin Decl ¶ 12.

Prof. Hardin initially opined that the Kraft and Miller references anticipated all of these claims that require thumbnail images of home pages. Hardin Exs W and AA. He also opined that the CNN Siteseer printout (Hardin Ex C) and a website printout from www.tricone c m (Hardin Ex G) displayed thumbnails of website homepages.

But when pressed during his deposition, he admitted that none of these references except Miller, teaches the first "novel and inventive element" that he describes as "using thumbnail visual images of a homepage of a linked to web site instead of a thumbnail of the linked to page" Hardin Decl. ¶ 12.

> Q    So I'm looking for art that teaches a link to a non-home page where the
>       thumbnail displayed is to a home page, and you've identified -- you just
>       said Miller. I'm looking for any others that teach that aspect.
> A    Not that I can think of, no

Reply Ex. 8 at 82:7-12; *See also* Myers Reply Decl. ¶¶ 23, 25, 30, 35, 42-44, 52, 59, 66, and 70-75.

As for the one remaining reference Miller, this reference was not only 'of record' in the file history but it is the exact reference that the inventors and the Patent Examiner agreed failed to teach this novel aspect of the claims Hardin Ex B at 16 ("Miller displays thumbnails of linked pages and does not show or suggest displaying thumbnails of **the home pages of the linked pages**, as recited in amended claims 1 and 21") (emphasis original) *See also* Myers Reply Decl. ¶¶ 42-44.

The PI Defendants' invalidity position (as well as their inequitable conduct position) requires the Court to construe the 'home page' claims[13] so that the 'linked pages' are home pages. But such a construction is inconsistent with the intrinsic evidence as the file history

---

[13] E.g. Claims 1-15 18-32, 42, 53.

12

makes it clear that the Examiner and inventors understood the linked pages to *not* be home pages. Myers Reply Decl. ¶¶ 22-23. Ex. C.[14] Thus, the PI Defendants request this Court to commit legal error by adopting a claim construction that can only be arrived at by ignoring the specification and the entire discussion in the file history. *See PODS, Inc. v. Porta Stor, Inc.*, 484 F.3d 1359, 1367-68 (Fed. Cir. 2007) (reversing a district claim construction that ignored arguments made during patent prosecution).

Moreover, it makes no sense to construe these claims to cover links that happen to be home pages. The file history distinguishes over prior art for failing to show "thumbnails of the home pages of the linked pages". Myers Decl. ¶ 45 and Ex. C at 88. Thus the inventor and the Examiner drew a distinction between home pages and the linked pages; the two cannot be the same page according to the intrinsic evidence.

Snap's Opposition Brief adds other references (e.g., Nielsen Decl.,[15] Exs. F. (Kopetsky) and Ex. H. (Kriegsman)), but despite having retained two experts to support its Opposition, Snap does not offer any expert analysis or opinion on these references. And for good reason, as Dr. Myers explains how Snap's lawyers misunderstand what was taught by both Kopetsky and Kriegsman, and how these references are irrelevant to the '904 patent claims. Myers Reply Decl. ¶¶ 66-70 and 80.

**D.** **None of the alleged combinations teaches using separate image servers for thumbnails of webpages**

At least claims 35-56 expressly require that the "image server" is "separate" from the "web server." None of the asserted prior art, alone or in combination, teaches this feature, and

---

[14] The '904 specification also provides a detailed explanation of a preferred way to trim the URL of the hyperlink in order to get the thumbnail of the home page. E.g., Ran Decl. Ex. 1 at cols. 5:59-65; 6:64-7:62.

[15] Declaration of Mark D. Nielsen in Opposition to Girafa.com's Motion for Preliminary Injunction, ("Nielsen Decl.").

none of this prior art is any more relevant than the prior art of record in the '904 patent file history. *See* Myers Reply Decl. ¶¶ 26, 31-32, 36-38, 45-46, 53-55, 60-61, 67, 80-87.

First, the only references that discuss multiple separate servers in general, have nothing to do with thumbnail images of webpages. The Leighton, Hanson, Blumberg, and Borealis references merely disclose images of other types of documents, such as photographs; Prof. Hardin admits that these references are not related to thumbnail visual images of webpages. Reply Ex. 8 at 85-86; Hardin Decl. Exs. D, E, F, I, and J.

And all of the asserted references dealing with thumbnails of webpages consistently teach using a single server, not the two separate servers required by these claims.[16]   Because internet webpages were known to change frequently, the evidence shows a prevalent approach at the time to generate a thumbnail image dynamically, or 'on-the-fly', to ensure an up-to-date thumbnail image was displayed.[17]

As explained by Dr. Myers, changing the existing setups as proposed by the PI Defendants was contrary to the thinking at the time. Myers Reply Decl. ¶ 80.  For example, the PI Defendants propose combining the thumbnail system of Kraft with the server systems of Leighton or Kriegsman to develop the invention of claim 35.   Kraft is much like the Brown reference that was distinguished during prosecution, in that it uses a single server and a cache memory to handle web serving and thumbnail functions, and expressly teaches an advantage to keeping all of its functionality in a single server. Ex. X at col. 6:6-13 ("The server-side components *interact closely together* to achieve the desired result.")  This touted advantage of

---

[16] *See, e.g.*, Myers Reply Decl. ¶¶ 26 (discussing Schmid, Hardin Ex. V), 31-32 (discussing Kraft, Hardin Ex. X), 36-38 (discussing Finseth, Hardin Ex. Z), 45-46 (discussing Miller, Hardin Ex. AB), 53-55 (discussing Brown, Hardin Ex. AD), 60-61 (discussing Robertson, Hardin Ex. AF), and 67 (discussing Kopetzky, Nielsen Ex. F).

[17] *See* Finesth, Hardin Ex. Z (discussing thumbnails generated "on the fly"); Kraft, Hardin Ex. X (discussing thumbnails generated "on the fly"), Schmid, Hardin Ex. V (discussing "dynamic" thumbnails), and Brown (discussing "on the fly" generation of thumbnails).

Kraft is exactly the opposite of the approach taken by the '904 inventors. The claimed separate servers was also the basis for distinguishing the cited prior art. In explaining the importance of the "separate" image server and web server of claim 35 during prosecution, the inventors stated:

> The system and method of the present invention, as recited in claims 41 and 52,[18] provide a separate web server and image server. According to the prior art method, wherein the image server and web server are combined, the web server and image server are each limited by the limitations of the other. Additionally, an image server provider would be required to adapt his technology to every web server.

Myers Ex. C at 112. Thus Kraft teaches away from separating the server functions as claimed, and suffers from the same problems as the art of record. *See also* Myers Reply Decl. ¶ 80.

The Leighton and Kriegsman references do not suggest separate image servers for thumbnail systems as alleged by the PI Defendants. Rather, as Dr. Myers explains, these references teach putting all content (i.e., web pages, images, and everything else) on 'proxy' or 'ghost' servers. *Id.* Thus, even if combined, these references fail to teach the claimed concept of *separate* servers for images and web hosting. *Id.*

### E.    The PI Defendants' experts ignored secondary considerations

Both of the PI Defendants' experts are entirely silent on secondary considerations of non-obviousness. In its opening brief, Girafa explained the long felt need and commercial success of the '904 patent, supported by an expert declaration from Dr. Myers, a factual declaration from Ms. Ran, and contemporaneous exhibits such as the prior art showing a long felt need, and the magazine articles showing industry acclaim for Girafa's patented technology. Not one of the PI Defendants' experts has addressed any of this evidence.

Instead, the PI Defendants simply offer attorney argument, without supporting evidence, that Girafa's evidence should be ignored. For example, Dr. Myers pointed to press releases and website statements from the PI Defendants, touting 'their' technology, including the claimed use

---

[18] Application claims 41 and 52 became claims 35 and 46 of the '904 patent, respectively.

of home page thumbnails, and separate servers for thumbnails images of websites. *E.g.*, Exs. J,

K, L and l. The best they can offer in rebuttal is *attorney argument* that these admissions were

"puffery" (Snap Opp. at 28); the weakness of the PI Defendants' position is telling.

## IV.     INEQUITABLE CONDUCT

The PI Defendants' assertion of inequitable conduct should be dismissed out-of-hand.

First, it relies on prior art that was already considered by the Examiner; this defense is meritless

as a matter of law. *Prevue Interactive, Inc. at al., v. Starsight Telecast, Inc.*, 1999 U.S. Dist.

LEXIS 1956, *25 (D. Ok. 1999)("Where the Examiner is fully apprised of the prior art reference

in question, the patentee's efforts to distinguish that prior art from the pending claims cannot, as

a matter of law, constitute a material misrepresentation"); citing *Northern Telecom, In. v.

Datapoint Corp.*, 908 F.2d 931, 938 (Fed. Cir.) *cert denied*, 498 U.S. 920 (1990); *Akzo N.V. v.

U.S. Int'l Trade Comm'n*, 808 F.2d 1471, 1482 (Fed. Cir. 1986) *cert. denied*, 482 U.S. 909

(1987).

The alleged inequitable conduct is also entirely based on the PI Defendants' claim

construction, which as discussed above improperly ignores the intrinsic evidence. Finally, as

Amazon points out, the Examiner fully recognized that the Miller reference can display a

thumbnail of a homepage if the target link happens to be a link to a home page. Amazon Opp. at

19-21, citing Amazon Opp Ex. B at 304:1-17 ("To the extent any of the *actual target pages*

reference a home page, then its going to shrink it."). Thus, the Examiner was in no way mislead.

The Examiner properly found that the Miller reference is not relevant to the patented

technology. The PI Defendants continue to gloss over the main difference in the Miller reference

- Miller does not teach displaying thumbnails of home pages instead of the linked pages. This is

the distinction that the Examiner found over Miller, and the 'home page' claims should properly

be interpreted based on the intrinsic evidence so that there is a difference between the linked page and the home page.

## V.      IRREPARABLE HARM

### A.      Girafa did not delay seeking a Preliminary Injunction

Snap and Amazon misstate both the law and facts in arguing that Girafa cannot be irreparably harmed because Girafa delayed seeking a preliminary injunction. First, Girafa did not delay filing this motion once it recognized the potential for irreparable harm.

## REDACTED

Nevertheless, delay is but one of many factors to be considered. In fact, the very case relied upon by the PI defendants, makes that clear:

> While the period of delay may not have been enough, standing alone, to demonstrate the absence of irreparable harm, it did not stand alone in this case.

*High Tech Medical Instrumentation, Inc. v. New Image Industries, Inc.*, 49 F.3d 1551, 1557 (Fed. Cir. 1995). In that case, the Federal Circuit went on to list the other factors that warranted a finding of no irreparable harm, including:

> 1) "the evidence of HTMI's inactivity in the market," *Id.*
> 2) "HTMI's apparent willingness to grant a license under its patent to New Image," *Id.*

3) "the absence of any indication that money damages would be unavailable to remedy any loss suffered by HTMI," *Id.* and

4) "the absence of any suggestion by HTMI as to why relief pendente lite is needed in this case, all suggest that HTMI has no compelling need for interim equitable relief." *Id*[19].

Each of the factors considered by the Federal Circuit in the *High Tech Medical* and *T.J.*

*Smith* cases, including the "delay" factor, support a finding of irreparable harm in the instant case.

Unlike HTMI, Girafa is highly active in the market and in fact founded the market; unlike HTMI,

Girafa has not offered the PI Defendants licenses; and unlike HTMI,

## REDACTED

## VI.  **BALANCE OF HARDSHIPS**

### A.    Amazon cannot complain of hardship in losing $43,000 per year

The Amazon defendants are collectively worth billions of dollars per year in revenue, and

they admit that their thumbnail business is not their core business.

## REDACTED

An injunction will not make a dent in

Amazon's profits or business; nor will it cause them any hardship.

### B.    Snap has other sources of income and financial backing

Unlike Girafa, Snap has income-generating business other than thumbnails of web pages.

Snap provides 11 different types of Snap Shots; only one of those types, the Snap Shots of web

pages, is relevant to this lawsuit. Ex. J at 10.  If an injunction issues, Snap would be free to

provide the remaining 10 types (e.g., RSS Shot™, MovieShot™, StockShot™) to its customers.

Also unlike Girafa, Snap is backed by significant investors, including its parent 'incubator'

company Idealab.  Reply Ex. 10 at 31.  Therefore, Snap is in a much better position than Girafa

to weather the hardship of any lost business during the pendency of this lawsuit.

---

[19] Similarly, the other case relied upon by PI Defendants, *T.J. Smith et al.v. Nephew Ltd.*, 821 F.2d 646 (Fed. Cir. 1987), listed six factors considered in finding no irreparable harm. *Id.* at 648.

## VII.    PUBLIC INTEREST

The public interest is served by enforcing the intellectual property that founded the industry of third party thumbnail providers. *A.K. Stamping Co., Inc. v. Instrument Specialties Co., Inc.*, 106 F.Supp.2d 627, 655 (D.N.J. 2000) ("no public interest is served by allowing patent infringement."). The only argument Snap and Amazon raise vis-à-vis public interest is that they have challenged the validity of the '904 patent. But a validity challenge that relies on claim constructions that directly contradict the intrinsic evidence, and asserted references that are not even prior art, is not a legitimate challenge that supports the public interest.

Girafa founded this industry based on the technology in its '904 patent in 2001, and received widespread industry acclaim. Ran Decl. Exs. 2-4. In 2004, Snap began deceptively obtaining information from Girafa, with the express intent of developing their own competing third-party thumbnail service. Ran Decl. Ex 5 and Reply Ex. 11. Similarly, the Amazon defendants have been aware of the '904 patent since Spring 2006, but entered this market anyway, despite their inability to put forth a single non-infringement argument. Reply Ex. 9 at 82-83. And Smartdevil is *still* using Girafa's technology and *name* on its own homepage to take customers from Girafa, despite its refusal to participate in this lawsuit. Tolerating blatant infringement is not in the public interest,

### REDACTED

## VIII.    NO BOND IS REQUIRED

Snap requests that Girafa post a bond, but when the plaintiff has limited means, as does Girafa, no bond should be required. See, e.g., *Temple University v. John F. white, JR., et al.*, 941 F.2d 201, 220 (3d Cir. 1991)(finding a plaintiff should not be required to post a bond when it is incapable of doing so); *Crowley v. Local No. 82, Furniture & Piano*, 679 F.2d 978 (1st Cir. 1982), *rev'd on other grounds*, 467 U.S. 526 (1984) (upholding the denial of bond where the party

19

would have had financial difficulty posting it and where defendants faced low burden from absence of security).

**REDACTED**

For these reasons,

Girafa should not be required to post a bond.

**IX.    CONCLUSION**

For the above reasons, Girafa requests that the Court GRANT its motion for preliminary injunction.

ASHBY & GEDDES

/s/ *Tiffany Geyer Lydon*

_____

Steven J. Balick (I.D. # 2114)
John G. Day (I.D. # 2403)
Tiffany Geyer Lydon (I.D. # 3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Plaintiff Girafa.com Inc.*

*Of Counsel:*

William H. Mandir
John F. Rabena
Chandran B. Iyer
Trevor Hill
SUGHRUE MION, PLLC
2100 Pennsylvania Ave., N.W.
Washington D.C. 20037
(202) 293-7060

Dated: July 3, 2008

# EXHIBIT 7

**REDACTED**

# EXHIBIT 8

**REDACTED**

# EXHIBIT 9

**REDACTED**

# EXHIBIT 10

# REDACTED

# EXHIBIT 11

| | |
|---|---|
| **From:** | Shirli Ran [shirli@girafa.com] |
| **Sent:** | Tuesday, March 21, 2006 1:20 PM |
| **To:** | Yuval Yarom; Eldad Barnoon |
| **Subject:** | Fw: Girafa - your inquiry |

Spoke to him.
Gave him a range of 50K-150K per month x 24 months (where capture is done over the period of 1 month).
Told him it would take 1-2 month to launch.
And that I will need a better understanding of recapture frequency and whether it is a one time service or a 24 months service - so that we can determines cost and provide them with the best quote.

I also updated him about homepage mode and using the service based on the number of daily image requests. Sent him to sign up...

He said he will talk to the tech team and get back to me.

He didn't blink or sound surprised/disturbed when he heard the prices. But that may be cause he is not incharge of the budget.

S

----- Original Message -----
**From:** Justin Wheeler
**To:** shirli@girafa.com
**Sent:** Tuesday, March 21, 2006 5:24 PM
**Subject:** RE: Girafa - your inquiry

Shirli,

Thanks for your quick response.  We're looking to capture thumbnails of approximately 100 million URLs (which we'd provide) in the following sizes/aspect ratio.  We'd want to capture these thumbnails one time to begin with, and we would store the images here on our servers to be served up with our search results.

Can you give me some idea of 1) Cost and 2) How quickly Girafa can help us accomplish this task?  We have a fairly tight schedule we're trying to meet in gathering these thumbnails.

Thank you,

Justin Wheeler
Market Analyst
Perfect Market Technologies, Inc.
626-229-7854

- Aspect ratio is landscape
- Sizes:
  - Small: 400x300
  - Medium: 640x480
  - Large: 760x570

**From:** Shirli Ran [mailto:shirli@girafa.com]
**Sent:** Tuesday, March 21, 2006 5:41 AM
**To:** Justin Wheeler
**Subject:** Girafa - your inquiry

Hi Justin,

Thank you for contacting us at Girafa.
Based on our core technology, we will be happy offer you a solution that is tailored according to your specific needs and requirements.

I will call you in the morning (PST) in order to get a better understanding of what your service needs are.

Thanks,
Shirli

------------------------
Shirli Ran
COO
Girafa.com
Office +972-3-7515530 ext.107
_____
Search and See!
http://www.girafa.com

-----------------------------------------------------------------
The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential material.  Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient is prohibited.   If you received this in error, please contact the sender and delete the material from any computer.

# EXHIBIT 12

Search Result web page

TRANSMIT TIME

TIME DISPLAYED BUT NOT TRANSMITTED

PREVIEW TRANSMIT TIME

PREVIEW DISPLAY TIME

TIME

EXHIBIT
Robins 5
5-30-08 TC

Period of "overlap" according to Prof. Robins

# EXHIBIT 13

# REDACTED

# EXHIBIT 14

*Date of Availability*

Prior art disclosures on the Internet or on an online database are considered to be publicly available as of the date the item was publicly posted. If the publication does not include a publication date (or retrieval date), it cannot be relied upon as prior art under 35 U.S.C. 102(a) or (b), although it may be relied upon to provide evidence regarding the state of the art. Examiners may ask the Scientific and Technical Information Center to find the earliest date of publication. See MPEP § 901.06(a), paragraph IV. G.

*Extent of Teachings Relied Upon*

An electronic publication, like any publication, may be relied upon for all that it would have reasonably suggested to one having ordinary skill in the art. See MPEP § 2121.01 and § 2123. Note, however, that if an electronic document which is the abstract of a patent or printed publication is relied upon in a rejection under 35 U.S.C. 102 or 103, only the text of the abstract (and not the underlying document) may be relied upon to support the rejection. In situations where the electronic version and the published paper version of the same or a corresponding patent or printed publication differ appreciably, each may need to be cited and relied upon as independent references based on what they disclose.

*Internet Usage Policy*

See MPEP § 904.02(c) for the portions of the Internet Usage Policy pertaining to Internet searching and documenting search strategies. See MPEP § 707.05 for the proper citation of electronic documents.

**EXAMINER NEED NOT PROVE ANYONE ACTUALLY LOOKED AT THE DOCUMENT**

One need not prove someone actually looked at a publication when that publication is accessible to the public through a library or patent office. See *In re Wyer*, 655 F.2d 221, 210 USPQ 790 (CCPA 1981); *In re Hall*, 781 F.2d 897, 228 USPQ 453 (Fed. Cir. 1986).

## 2128.01  Level of Public Accessibility Required [R-2]

>

### I.    <A THESIS PLACED IN A UNIVERSITY LIBRARY MAY BE PRIOR ART IF SUFFICIENTLY ACCESSIBLE TO THE PUBLIC

A doctoral thesis indexed and shelved in a library is sufficiently accessible to the public to constitute prior art as a "printed publication." *In re Hall*, 781 F.2d 897, 228 USPQ 453 (Fed. Cir. 1986). Even if access to the library is restricted, a reference will constitute a "printed publication" as long as a presumption is raised that the portion of the public concerned with the art would know of the invention. *In re Bayer*, 568 F.2d 1357, 196 USPQ 670 (CCPA 1978).

In *In re Hall*, general library cataloging and shelving practices showed that a doctoral thesis deposited in university library would have been indexed, cataloged and shelved and thus available to the public before the critical date. Compare *In re Cronyn*, 890 F.2d 1158, 13 USPQ2d 1070 (Fed. Cir. 1989) wherein doctoral theses were shelved and indexed by index cards filed alphabetically by student name and kept in a shoe box in the chemistry library. The index cards only listed the student name and title of the thesis. Two of three judges held that the students' theses were not accessible to the public. The court reasoned that the theses had not been either cataloged or indexed in a meaningful way since thesis could only be found if the researcher's name was known, but the name bears no relationship to the subject of the thesis. One judge, however, held that the fact that the theses were shelved in the library was enough to make them sufficiently accessible to the public. The nature of the index was not determinative. This judge relied on prior Board decisions (*Gulliksen v. Halberg*, 75 USPQ 252, 257 (Bd. App. 1937) and *Ex parte Hershberger*, 96 USPQ 54, 56 (Bd. App. 1952)), which held that shelving a single copy in a public library makes the work a "printed publication." It should be noted that these Board decisions have not been expressly overruled but have been criticized in other decisions. See *In re Tenney*, 254 F.2d 619, 117 USPQ 348 (CCPA 1958) (concurring opinion by *J.Rich*) (A document, of which there is but one copy, whether it be