IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GIRAFA.COM, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 07-787-SLR |
| | ) |
| AMAZON.COM, INC., et al, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM ORDER**

At Wilmington this 9th day of December, 2008, having reviewed plaintiff's motion for a preliminary injunction and the papers submitted in connection therewith; and having subject matter jurisdiction pursuant to 28 U.S.C. § 1338;

IT IS ORDERED that said motion (D.I. 41) is denied, for the reasons that follow:

1. **Standard of review.** The Patent Act provides that injunctions "may" issue "in accordance with the principles of equity." 35 U.S.C. § 283. "The decision to grant or deny . . . injunctive relief is an act of equitable discretion by the district court." *eBay, Inc. v. MercExchange, L.L.C.*, – U.S. –, 126 S. Ct. 1837, 1839 (2006). The grant of a preliminary injunction is considered "extraordinary relief." *Abbott Labs. v. Andrx Pharm., Inc.*, 452 F.3d 1331, 1335 (Fed. Cir. 2006).

2. As the party moving for injunctive relief, plaintiff Girafa.com, Inc. ("Girafa") must

> establish its right to a preliminary injunction in light of four factors:
> (1) the movant has some likelihood of success on the merits of the

underlying litigation; (2) immediate irreparable harm will result if the relief is not granted; (3) the balance of hardships to the parties weighs in the movant's favor; and (4) the public's interest is best served by granting the injunctive relief.

*Abbott Labs.*, 452 F.3d at 1334 (citation omitted).

a. **Likelihood of success on the merits.** In order to carry its burden at this stage of the proceedings, Girafa must demonstrate that it will "likely prove" that defendants[1] infringe U.S. Patent No. 6,864,904 ("the '904 patent"), and that its infringement claims "will likely withstand" defendants' challenges to the validity and enforceability of the '904 patent. *See Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001). "If [defendants] raise[ ] a substantial question concerning either infringement or validity, i.e., assert[s] an infringement or invalidity defense that the patentee cannot prove 'lacks substantial merit,' the preliminary injunction should not issue." *Id.* at 1350-52 (citation omitted).

b. **Irreparable harm.** If Girafa fails to demonstrate a likelihood of success on the merits, it must "clearly establish[ ] that monetary damages could not suffice." *Abbott Labs.*, 452 F.3d at 1348. Even if Girafa succeeds in demonstrating a likelihood of success on the merits, a presumption of irreparable harm does not follow. *See eBay, Inc.*, 126 S. Ct. at 1840-41. Therefore, it remains Girafa's burden to

---

[1]Of the multiple defendants sued by Girafa in the instant litigation, Girafa seeks injunctive relief only against the defendants "that directly compete with Girafa in a manner that erodes Girafa's market share" (D.I. 42 at 1, fn. 1), to wit: Snap Technologies, Inc. ("Snap"), Alexa Internet, Inc. ("Alexa"), Amazon Web Servies, LLC ("AWS"), and Amazon.com, Inc. ("Amazon") (collectively referred to for purposes of this proceeding as "defendants"). Although injunctive relief was sought as well against defendant Smartdevil, Inc., said defendant has defaulted in appearance (D.I. 67) and did not participate in the instant proceedings.

establish that monetary damages could not suffice.

      c. **The balance of hardships.**  Girafa and defendants must "quantify the hardship, if any, [they] will face if an injunction" is not entered (or incorrectly entered). *Abbott Labs.*, 452 F.3d at 1348.

      d. **Public interest factor.**  Absent any other relevant concerns, the public interest factor is generally bound to the likelihood of success on the merits, as it is in the public interest to enforce a valid and infringed patent.  Conversely, the public interest is best served by denying a preliminary injunction when a moving party has failed to establish that the patent is likely valid and infringed.

    3. **Background facts.**  The '904 patent claims priority to a provisional application dated December 6, 1999.  The inventors of the '904 patent intended to provide an improvement to user interfaces for search engine technology; instead of a standard search engine display consisting of a list of hyperlinks (known as the URL or "uniform resource locator" of a web page) and a brief description of the web page, the '904 patent describes a way of providing thumbnail visual images of the hyperlinked web pages along with the hyperlink. According to Girafa,

> [t]he '904 patent's visual search and web navigation technology makes sorting through search results and other hyperlinks more user-friendly and more effective, by allowing users to view thumbnail images of web sites listed on textual search result pages and other WWW hyperlinks instantaneously[. (D.I. 43 at ¶¶ 4-8)] This visual presentation increases users' success rates and efficiency, as they utilize visual recollection to identify relevant and familiar links, and eliminates redundant entries to unwanted web sites.  [(*Id.* at ¶ 7)]

(D.I. 42 at 3-4)

    4. There are at least three embodiments described in the specification of the

'904 patent. The first embodiment is represented by figure 1 of the patent, and has the thumbnail visual images alongside the original web page. (Col. 5, ll. 61-65) The second embodiment is represented by figure 2 of the patent, and has the thumbnail visual images included within the web page, by modifying the HTML[2] code of the original web page to include the thumbnail images. (Col. 6, ll. 26-32) A third embodiment has the thumbnail visual images pop-up on top of the image of the web page, so they appear to be hovering. (Col. 6, ll. 36-40)

5. Girafa was formed in 1999 in order to market the technology protected by the '904 patent. Girafa's sales of "thumbnail services" initially grew from $0 in 2000, to $11,000 in 2001, to $1 million in 2005. In 2006, Girafa lost its two primary customers, Microsoft and AOL, albeit not to any of its competitors. (D.I. 202, Ran dep'n at 221-225) Nevertheless, according to Girafa,

> [b]ecause Snap, Smartdevil, and Amazon/Alexa/AWS are using Girafa's patented technology, Girafa has lost and will continue to lose significant market share that cannot be replaced unless these defendants stop infringing the '904 patent. The loss of market share and customers is expected to continue and to increase, in part due to offerings from at least Snap and Smartdevil of Girafa's patented technology for free, i.e., without charging any service fees for its usage. This makes it extremely unlikely for Girafa to succeed in convincing customers to pay for a service they can receive for free elsewhere.

(D.I. 43 at ¶ 25)

6. Alexa has been providing thumbnail visual images since 2002 and, since 2006, has been charging for the use of such images. In May 2006, Snap launched its website offering users an Internet search engine with a preview of a hyperlinked

---

[2]"HTML" is short for HyperText Markup Language, and is a programming language used for web pages. (D.I. 44 at ¶ 37)

website delivered in the search results. There is evidence of record that Girafa had contemporaneous knowledge of the above conduct. (*See, e.g.,* D.I. 112, ex. 11) Girafa filed suit on December 5, 2007; the instant motion was filed on March 13, 2008.

7. **The accused products.**

   a. "Snap Enhanced" is a web search service whereby a user enters a search query and Snap Enhanced transmits the search results to the user whereby a search results page loads and a large preview for the first result is also shown to the right of the textual search results. Snap argues that the "preview" shown by Snap enhanced in association with the search results is "far too large to be considered a thumbnail visual image." (D.I. 74 at 12; D.I. 79 at ¶¶ 79-114 and exs. 15-30)

   b. "Snap Classic" is a web search service similar to Google or Yahoo search where a user enters his/her query in a box and Classic Search transmits the search results to the user. The search results transmitted to the user contain hyperlinks and textual summaries, but do not contain any previews. At some later point in time after the results load, the user may choose to hover the cursor over a small, generic icon, which results in a window containing links, logos, and the preview being transmitted to the user. Even assuming that Snap Classic displays thumbnail-sized images of hyperlinks, Snap argues that Snap Classic does not transmit and display the thumbnails at least partially concurrently with the transmission and display of the underlying web page containing the hyperlinks in that the user must hover the cursor over the hyperlink or icon associated therewith on the underlying web page to trigger the transmission and display of the alleged thumbnail. (D.I. 74 at 13-14; D.I. 79 at ¶¶ 34-39, 49, 118, 136, 155, 202 and exs. 6-8)

5

c. "Snap Shots Browser Plug-in" and "Snap Shots for Publishers/Bloggers" perform the same essential functions as Snap Classic. Therefore, consistent with Snap's arguments above, to the extent Snap Classic does not infringe the asserted claims of the '904 patent, neither would the products named in the instant paragraph. (D.I. 74 at 15)

d. According to Girafa,[3] the organic search results of a search conducted on the "Alexa Site Thumbnail" web service, which is sold through AWS on Amazon's website, are each "accompanied by a thumbnail;" "[t]he thumbnail shown for the first link is the image for the home page of the website that includes the internal hyperlink listed as a search result." (D.I. 42 at 10)

8. **The prior art.** There is no dispute that thumbnail visual images were well known in the art by December 1999, as were image servers. (D.I. 83 at ¶¶ 29-32; D.I. 240 at 27) According to the prosecution history of the '904 patent, the two allegedly novel or inventive elements of the patent are: (a) using thumbnail visual images of a homepage of a linked-to web site, instead of a thumbnail visual image of the linked-to web page; and (b) providing the thumbnail visual images via an image server that is separate from a web server. (D.I. 83, ex. B)

9. **Claim construction.** In order to conduct both the infringement and invalidity analyses, the court must construe the claim limitations in dispute. Regardless of whether the parties have agreed to a certain construction for purposes of this or any

---

[3]The Amazon defendants did not provide a description of their accused product, instead arguing that Girafa had failed to properly allege direct infringement. (D.I. 80 at 21)

other proceeding, it remains the court's responsibility to construe the claims consistent with the principles announced by the Federal Circuit in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005).[4] Of course, claim construction in the context of a preliminary injunction motion is preliminary at best, especially where (as here) not all parties to the litigation are participating in the proceeding.

    a. "Thumbnail visual image." Girafa has offered a construction of "a smaller version of a larger image," citing to the specification, to wit, col. 2, ll. 53-54[5] and col. 9, ll. 24-25.[6] Giving a construction of a limitation in relative terms, however, is always problematic. Certainly one can make an image that is smaller than a larger image and not have a "thumbnail" visual image which, by common sense, should be closer to the actual size of a thumbnail. Indeed, just glancing at a few technical journals[7] convinces the court that the construction should be further limited in absolute terms, e.g.: "[a] **miniature** representation of a page or image that is used to identify a file by its contents;"[8] "**[m]iniature** image of a graphic or page that makes it easier to

---

[4] For this reason, the court grant's defendants' motions for leave to file surreply briefs. (D.I. 118, 119)

[5] "[C]ausing said thumbnail generator **to shrink** said rendered image of the web . . . ." (Emphasis added)

[6] "This snapshot is resized to a desired thumbnail size. . . ."

[7] In so doing, the court recognizes that these online journals do not pre-date December 1999. Nevertheless, the court finds such extrinsic evidence instructive and more consistent with the intrinsic record than is Girafa's proposed construction.

[8] PC Magazine online.

7

look at and manage a group of elements in a layout;"[9] "a **miniature** display of a[n] image or page."[10] The court, therefore, declines to adopt Girafa's construction of this limitation.

b. "Image server." Girafa has offered a construction of "a type of server that is specialized in delivering images;" the "image server is **separate** from the web server." (D.I. 83, ex. B) The problem with Girafa's construction is that it is unclear whether the word "separate" means physically separate, i.e., in a different "box," or whether separate means a functional or logical separation. Indeed, the record evidence offered by Girafa is inconsistent in this regard[11] and, consequently, the court declines to adopt Girafa's construction of this limitation.

c. "Hyperlinks." Girafa has offered a construction of "[a]n element on a web page that links to another place on that web page or to an entirely different web page." There is nothing in the above language that precludes the "hyperlink" from being the "home page" of a web site. Nevertheless, based on the prosecution history of the '904 patent, Girafa argues that the patent only encompasses the situation where the thumbnail visual image is of the home page that corresponds to a hyperlink where the hyperlink is not to the home page of a web site. (*See, e.g.,* D.I. 240 at 26) If the patent is so limited, it must be reflected in the claim construction, which Girafa has failed to do.

d. Given the fact that the court has not embraced Girafa's claim

---

[9] Businessdictionary.com.

[10] Computeruser.com.

[11] (*See, e.g.,* D.I. 203, Myers dep'n at 14-15; D.I. 113 at ¶ 55; D.I. 240 at 27-28)

construction, upon which its infringement and validity analyses are based, the court declines to formally construe the limitations of the asserted claims at this stage of the proceedings, where less than all of the defendants have had the opportunity to be heard.

10. **Analysis.** Consistent with the above conclusion, there are substantial questions concerning both infringement and validity. Therefore, the court concludes that Girafa has failed to carry its burden of demonstrating a likelihood of success on the merits. With respect to irreparable harm, Girafa has not demonstrated that its loss of business is clearly related to defendants' competitive conduct; therefore, Girafa has not clearly established irreparable harm. Finally, in weighing harms, the court notes that Girafa filed the instant motion in March 2008, several years after defendants began providing the accused services. While this delay certainly is not dispositive, it is a factor that weighs against, not for, the extraordinary relief sought by Girafa.

11. **Conclusion.** For the reasons stated, Girafa's motion for a preliminary injunction is denied.

_____
United States District Judge