# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| GIRAFA.COM, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AMAZON WEB SERVICES LLC, | ) | C.A. NO. 07-787 (SLR) |
| AMAZON.COM, INC., ALEXA | ) | |
| INTERNET, INC., IAC SEARCH & | ) | **REDACTED -** |
| MEDIA, INC., SNAP TECHNOLOGIES, | ) | **PUBLIC VERSION** |
| INC., YAHOO!, INC., SMARTDEVIL, | ) | |
| INC., EXALEAD S.A., and EXALEAD, | ) | |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |

## SNAP TECHNOLOGIES, INC.'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY

## JUDGMENT OF NON-INFRINGEMENT

Arthur G. Connolly, III (I.D. #2667)
CONNOLLY BOVE LODGE & HUTZ LLP
1007 N. Orange Street
P.O. Box 2207
Wilmington, DE  19899
Telephone: (302) 658-9141
Email: AConnollyIII@cblh.com

*Of Counsel*:
Daniel M. Cislo
Mark D. Nielsen
Kelly W. Cunningham
CISLO & THOMAS LLP
1333 2nd Street, Suite 500
Santa Monica, California 90401
Telephone: (310) 451-0647
Telefax: (310) 394-4477
Attorneys for Defendant/Counterclaim
Plaintiff Snap Technologies, Inc.

June 8, 2009

## TABLE OF CONTENTS

I.  NATURE AND STAGE OF PROCEEDINGS ..................................................................1

II.  SUMMARY OF ARGUMENT ...............................................................................2

III.  STATEMENT OF UNDISPUTED FACTS .....................................................5

    A.  Snap Technologies and its Services.................................................................5

        1.  Snap's Services at Issue in This Case .............................................5

        2.  Snap's System for Generating and Storing Preview Images ......................8

    B.  The '904 Patent ...................................................................................9

IV.  ARGUMENT ........................................................................................11

    A.  Standard for Motion for Summary Judgment .........................................11

    B.  Standards for Direct Infringement ....................................................11

    C.  Girafa Cannot Prove That Snap is Liable for Direct Infringement......................14

        1.  Snap Does Not Literally Infringe the Asserted Claims of the '904 Patent  15

            a.  Home Page Substitution Claims – Claims 1 and 18 and Dependents....................................................................15

                i.  Snap Classic ................................................................15

                ii.  Snap Enhanced.............................................................16

            b.  Alternative Substitution Claims – Claims 35 and 46 and Dependants...................................................................18

                i.  Snap Classic ................................................................18

                ii.  Snap Enhanced.............................................................19

                iii.  Snap Shots Browser Add-on..............................................20

                iv.  Snap Shots for Publishers/Bloggers.....................................21

            c.  Database Claims – Claims 16 and 33 ............................................22

2.     Snap Does Not Infringe Any of the Asserted Claims of the '904 Patent Under the Doctrine of Equivalents ...................................................23

     a.     Snap Classic ..................................................................................23

     b.     Snap Enhanced...............................................................................25

     c.     Snap Shots Browser Add-on..........................................................27

     d.     Snap Shots for Publishers/Bloggers...............................................27

3.     Snap is not Liable for Joint Infringement of the '904 Patent....................27

D.     Girafa Cannot Prove That Snap is Liable for Indirect Infringement .....................29

     1.     Standards for Indirect Infringement...........................................................29

     2.     Snap is not Liable as an Active Inducer of Infringement ..........................31

     3.     Snap is not Liable for Contributory Infringement ....................................32

E.     Girafa Cannot Prove That Any Infringement by Snap was Willful......................35

     1.     Standard for Willful Infringement .............................................................35

     2.     If Snap Infringed at all, It was not Willful................................................36

     a.     Prior to the Service of the Complaint ...........................................36

     b.     After the Service of the Complaint ................................................38

V.     CONCLUSION...............................................................................................................40

## TABLE OF AUTHORITIES

### Cases

Akamai Technologies, Inc. v. Limelight Networks, Inc.,
  2009 WL 1164570 (D. Mass. Apr. 24, 2009) ........................................................ 14

American Permahedge, Inc. v. Barcana, Inc.,
  105 F.3d 1441 (Fed. Cir. 1997) ............................................................................ 26

Anderson v. Liberty Lobby,
  477 U.S. 242 (1986) ...................................................................................... 11, 35

Aro Manufacturing Co., Inc. v. Convertible Top Replacement Co., Inc.,
  377 U.S. 476 (1964) ...................................................................................... 30, 33

Bayer AG v. Elan Pharm. Research Corp.,
  212 F.3d 1241 (Fed. Cir. 2000) ............................................................................ 12

BMC Resources, Inc. v. Paymentech, L.P.,
  498 F.3d 1373 (Fed. Cir. 2007) ...................................................................... 13, 14

Builders Concrete, Inc. v. Bremerton Concrete Products Co.,
  757 F.2d 255 (Fed. Cir. 1985) ............................................................................. 26

Callaway Golf Co. v. Acushnet Co.,
  523 F. Supp. 2d 388 (D. Del. 2007) ..................................................................... 12

Celotex Corp. v. Catrett,
  477 U.S. 317 (1986) ............................................................................................. 11

Dawn Equipment Co. v. Kentucky Farms Inc.,
  140 F.3d 1009 (Fed. Cir. 1998) ........................................................................... 13

Emtel, Inc. v. Lipidlabs, Inc.,
  583 F. Supp. 2d 811 (S.D. Tex. 2008) ................................................................. 14

Exigent Technology, Inc. v. Atrana Solutions, Inc.,
  442 F.3d 1301 (Fed. Cir. 2006) ........................................................................... 11

Festo Corp. v. Shoketsu Kinzoku Kyogo Kabushiki Co. Ltd.,
  535 U.S. 722 (2002) ...................................................................................... 13, 25

Finisar Corp. v. DirecTV Group, Inc.,
  523 F.3d 1323 (Fed. Cir. 2008) ...................................................................... 31, 35

Global Patent Holdings, LLC v. Panthers BRHC LLC,

    586 F. Supp. 2d 1331 (S.D. Fla. 2008) .................................................................... 14

Graver Tank & Manufacturing Co. v. Linde Air Products Co.,

    229 U.S. 605 (1950)....................................................................................................... 13

Hewlett-Packard Co. v. Bausch & Lomb, Inc.,

    909 F.2d 1464 (Fed. Cir. 1990)................................................................................... 33

In re Seagate Technology, LLC,

    497 F.3d 1360 (Fed. Cir. 2007)................................................................................... 31

Kinetic Concepts, Inc. v. Blue Sky Medical Group, Inc.,

    554 F.3d 1010 (Fed. Cir. 2009)................................................................................... 30

Lucent Technologies, Inc. v. Gateway, Inc.,

    2007 U.S. Dist. LEXIS 95934 (S.D. Cal. Oct. 30,2007); ....................................... 35

Markman v. Westview Instruments, Inc.,

    52 F.3d 967 (Fed. Cir. 1995)....................................................................................... 12

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,

    475 U.S. 574 (1986)....................................................................................................... 11

Mentor H/S, Inc. v. Medical Device Alliance, Inc.,

    244 F.3d 1365 (Fed. Cir. 2001)................................................................................... 33

Muniauction, Inc. v. Thomson Corp.,

    532 F.3d 1318 (Fed. Cir. 2008)....................................................................... 13, 14, 28

Padcom, Inc. v. Netmotion Wireless, Inc.,

    2006 WL 416865 (D. Del. Feb. 22, 2006) ............................................................... 13

Panduit Corp. v. Dennison Mfg. Co.,

    836 F.2d 1329 (Fed. Cir. 1987)................................................................................... 12

Pharmastem Therapeutics, Inc. v. Viacell, Inc.,

    491 F.3d 1342 (Fed. Cir. 2007)............................................................................ 30, 34

Praxair, Inc. v. ATMI, Inc.,

    445 F. Supp. 2d 460 (D. Del. 2006)........................................................................... 22

Preemption Devices, Inc. v. Minnesota Mining & Manufacturing. Co.,

    803 F.2d 1170 (Fed. Cir. 1986)................................................................................... 33

Proctor & Gamble Co. v. McNeil-PPC, Inc.,

2009 U.S. Dist. LEXIS 40927 (W.D. Wis. May 12, 2009) ...................................................... 22

SmithKline Diagnostics, Inc. v. Helena Lab. Corp.,

    859 F.2d 878 (Fed. Cir. 1988)............................................................................................. 12

Wahpeton Canvas Co. v. Frontier, Inc.,

    870 F.2d 1546 (Fed. Cir. 1989)........................................................................................... 12

Warner-Jenkinson Co. v. Hilton Davis Chemical Co.,

    520 U.S. 17 (1997)............................................................................................................... 13

## Statutes

35 U.S.C. § 122(b) ....................................................................................................................... 37

35 U.S.C. § 271(a) ....................................................................................................................... 11

35 U.S.C. § 271(b) ....................................................................................................................... 29

35 U.S.C. § 271(c) .................................................................................................................. 29, 30

## Other Authorities

Manual of Patent Examining Procedure § 1120 ......................................................................... 37

## Rules

Fed. R. Civ. P. 56(c) ................................................................................................................... 11

Fed.R.Civ.P. 56(e) ...................................................................................................................... 11

## I.      NATURE AND STAGE OF PROCEEDINGS

Plaintiff Girafa.com, Inc. ("Plaintiff" or "Girafa") commenced this case on December 5, 2007. Shortly thereafter, Defendant Snap Technologies, Inc. ("Snap") answered the complaint. On March 13, 2008, Girafa filed a motion for preliminary injunction ("P.I. Motion") directed at Snap and the Amazon Defendants. Snap and the Amazon Defendants successfully opposed the motion (D.I. 242).

During the pendency of the P.I. Motion, and thereafter, the parties conducted a substantial amount of written discovery, as well as taking a number of depositions.

Expert discovery has also taken place. On February 13, 2009, Dr. Myers, submitted his expert report on infringement. On March 13, 2009, Snap's expert, Dr. Robins, submitted his rebuttal expert report on non-infringement. The deposition of Dr. Myers by Snap was taken on April 23, 2009, and the deposition of Dr. Robins by Girafa was taken on April 24, 2009.

On April 20, 2009, just prior to Snap taking Dr. Myers' deposition on April 23, 2009, Girafa served a "revised" claim chart that included infringement contentions for one of Snap's services Snap Shots for Publishers/Bloggers ("SSPB") for which no claim chart or formal infringement contentions had ever been presented. Declaration of Mark D. Nielsen (submitted herewith) (hereafter "Nielsen Decl.") at ¶ 44 (A474). Dr. Myers admitted he knew about SSPB long before that time, and admitted he never provided a claim chart for SSPB, even in connection with the P.I. Motion. Myers Dep. at 698:15-700:12 (A441). These infringement contentions were provided over two (2) months after the deadline for initial expert reports, according to the Scheduling Order. See, D.I. 61 (at § 2(c)(1) therein).

Then, on May 14, 2009, three weeks *after* Dr. Myers had been deposed on his original report, Girafa served a supplemental expert report from Dr. Myers that contained numerous new

infringement contentions (including at least seven (7) new contentions under the doctrine of equivalents ("DOE")), new evidence, and other uninvited additions and revisions to his report. Nielsen Decl. at ¶ 45 (A475).   Dr. Myers claimed that new and different proposed claim constructions warranted the new report, but when examined closely, only one of the seventeen (17) terms he discussed in the new report was actually new.   Accordingly, there was no basis for him to re-opine on the other terms.   A motion requesting leave and to move to strike the untimely Myers Report has been, or will be, filed to address this issue, and Snap requests that Dr. Myers' revised claim chart served on April 20, 2009 also be addressed pursuant to the same motions. Snap does not address the revised claim chart or Second Supplemental Report herein, but reserves the right to do so should Defendants' motion for leave be denied.

## II.   <u>SUMMARY OF ARGUMENT</u>

1.      Snap's four systems – Snap Classic ("SC"), Snap Enhanced ("SE"), Snap Shots Browser Add-on ("SSB"), and Snap Shots for Publishers/Bloggers ("SSPB") do not infringe any of the claims of United States Patent 6,864,904 ("'904 Patent") either literally, under the DOE, under a theory of joint infringement, or by indirect infringement.

2.      The '904 Patent claims require a method or system that provides to a user a visual image of a web page containing at least one hyperlink and that provides, at least partially concurrently, a thumbnail visual image of: (a) the home page of the web site targeted by the hyperlink on the underlying web page (unless the hyperlink is to the home page); or, (b) a web page from the web site targeted by the hyperlink on the underlying web page, but different than that targeted by the hyperlink on the underlying web page.   Thus, the '904 Patent claims (i.e., claims 1, 18, 35, 46, and their dependents) require **substitution** of a home page, or a different web page, from the same web site for the web page specifically targeted by the hyperlink.

3.      SC does not infringe claims 1, 18, 35, or 46 (or their dependents) because it does not provide a visual image of the web page "at least partially concurrently" with a thumbnail visual image.  In addition, since June 4, 2008, SC has provided a preview image that is the same page as that targeted by the hyperlink, rather than a preview of a *substitute* page as required by claims 1, 18, 35, and 46 (and their dependents).

4.      SE does not infringe claims 1, 18, 35, or 46 (or their dependents) because it does not provide a thumbnail-sized image of a web page.  The preview images in SE are very large, and the size difference is so significant that Girafa cannot meet its burden to prove infringement either literally or under the DOE.  In addition, since June 4, 2008, SE has provided a preview image that is the same page as that targeted by the hyperlink, rather than a preview of a *substitute* page as required by claims 1, 18, 35, and 46 (and their dependents).

5.      SSB and SSPB do not infringe claims 1, 18, 35, or 46 (or their dependents) because they do not provide to a user a visual image of a web page.  The web page in these systems is provided by third parties unrelated to Snap, such as Google.  SSB and SSPB also do not infringe claims 1, 18, 35, or 46 (or their dependents) because they do not provide a thumbnail visual image "at least partially concurrently" with a thumbnail visual image of a web page.

6.      The '904 Patent also contains claims (16 and 33) directed to the generation of an image server database of thumbnail images.  These claims explicitly require the images, once created, to be supplied to a "database" for storage.  Snap's systems do not store images in a "database," but rather a file system, which is different from a "database."

7.      Girafa has not identified any evidence that would demonstrate that another party's actions in performing any part of the steps of the claims can be attributed to Snap, thus precluding a finding of joint infringement.  This is particularly applicable in connection with the

necessity of a web browser for claims 1, 18, 35, and 46, and their dependents, and as Girafa has admitted, Snap does not provide a web browser to anyone nor does it perform the functions of a web browser.  This is also particularly applicable in connection with SSB and SSPB where Snap does not provide a visual image of a web page containing hyperlinks.

8.      Snap lacks the requisite scienter to be liable for inducement of infringement or contributory infringement, and Girafa cannot meet its burden of proof on those issues.   In addition, Snap's systems are capable of substantial non-infringing uses either by providing previews of the exact page targeted by a hyperlink on a web page (rather than a ***substitute*** page), or by providing previews that do not contain images of web pages, but rather other content.

9.      Should Girafa somehow demonstrate that Snap has infringed the '904 Patent, such infringement was not, and is not, willful.  Snap did not know about the '904 Patent until this lawsuit was filed.  In the P.I. Motion denied by this Court, Snap demonstrated the existence of substantial questions as to infringement and validity, thus suggesting the absence of an objectively high risk of infringement of a valid patent by Snap.  Furthermore, Snap has made changes to its systems during the case to further eliminate the possibility of infringement.

These points, as described below, warrant a grant of summary judgment of non-infringement for all of Snap's services for all of the asserted claims of the '904 Patent.

10.      To the extent Snap has not presented herein additional grounds of non-infringement, Snap does not waive any such arguments, and expressly reserves the right to rely on any additional grounds for non-infringement in subsequent proceedings in this case.

### III.      STATEMENT OF UNDISPUTED FACTS

Unless otherwise noted, Snap believes all of the facts referenced herein to be undisputed.

### A.      Snap Technologies and its Services

Snap is a small, early-stage internet technology company located in Pasadena, California. Snap offers services to publishers, website owners, and end users that combine content delivery with contextual advertising, and that present to internet users enhanced hyperlinks that display previews, text summaries, videos, stock charts, MP3s, product information, and more.  D.I. 44 (at ¶ 54 and Exh. J-7 to J-8 therein); D.I. 76 (at ¶¶ 6-9 and Exh. A therein); D.I. 79 (at ¶¶ 87-99, 113 and Exhs. 10, 16, 18, 23-26 therein); D.I. 112 (at p. 18 therein); Declaration of Michael Agostino (submitted herewith) (hereafter "Agostino Decl.") at ¶¶ 7-22 (A478-482).   Snap's services allow users to preview web content, and allow website owners and publishers/bloggers to enhance their web content through previewing visually and textually enhanced windows associated with hyperlinks in a given web page.  Id.

### 1.      Snap's Services at Issue in This Case

Snap offers four services at issue: SC, SE, SSB, and SSPB.  In connection with SC, SSB, and SSPB, a small, separate window is delivered to an end user when hovering the cursor over a hyperlink or small icon on a web page, and the window enables the user to see a preview of the hyperlinked web page, or other content.  D.I. 76 (at ¶¶ 6-8 therein); D.I. 79 (at ¶¶ 79-114 and Exhs. 15-30 therein); D.I. 112 (at p. 18 therein).

**SC**, from the time Snap first received notice of Girafa's patent in early December of 2007 (McGovern Dep. at 237:3-6 (A187)) until on or about June 4, 2008, was a search engine where the search results were formatted in a manner typical of most search engines, and after the search results page was displayed to the user, the end user could hover the cursor over a hyperlink or

adjacent icon and receive a Snap Shot.  D.I. 76 (at ¶ 6 therein).  The preview contained in the Snap Shot window, during this time period was typically the home page[1] of the web site represented oftentimes by a non-home page hyperlink.  The home page preview, however, was the result of the search results "feed" Snap was receiving from its third party vendor, and not something Snap requested or desired (in fact, Snap had wanted the previews to be of the same page as the hyperlink).  McGovern Dep. at 109:22-115:8 (A132-133); Agostino Dep. at 42:16-45:12 (A137-138), 47:16-48:12 (A138), 49:13-50:7 (A139), 121:10-127:13 (A141-142).

On or about June 4, 2008, the search results "feed" Snap received from its third-party vendor was changed by the vendor so that the previews in SC show the same web page as that referenced, or targeted, by the hyperlink in the search results.  Agostino Dep. at 121:10-127:13 (A141-142).  Thus, there are two versions of SC to consider for purposes of non-infringement.  Notably, Girafa has not provided any assertions regarding the infringement of the revised version of SC.  Myers Report at Exh. D-1 (screenshot from January 31, **2008**) (A234).

**SE**, from the time Snap first received notice of Girafa's patent (McGovern Dep. at 237:3-6 (A187)) until on or about June 4, 2008, was a web search service whereby a user entered a search query, then a list of search results would be returned with a large preview (minimum size 400x256 pixels – Robins Report at ¶¶ 50, 97 (A304, 322)) for the first search result also shown.  Previews were presented one-at-a-time to the right of the textual search results.  The user then clicked the mouse or keyboard to trigger previews for additional search results.  D.I. 76 (at ¶ 9 therein).  In this version of SE, the preview, was typically the home page of the web site often represented by a non-home page hyperlink.  The home page preview, however, was the result of the search results "feed" Snap was receiving from its third party vendor, and not something Snap

---

[1] Typically, the preview image was of the top-level domain page regardless of the page targeted by the hyperlink.

requested or desired (in fact, Snap had wanted the previews to be of the same page as the hyperlink).  McGovern Dep. at 109:22-115:8 (A132-133); Agostino Dep. at 42:16-45:12, 47:16-48:12, 49:13-50:7, 121:10-127:13 (A137-139, 141-142).

On or about June 4, 2008, the search results "feed" Snap received from its third-party vendor was changed by the vendor in the same manner as described above for SC such that the preview shown is now the web page referenced, or targeted, by the hyperlink.  Notably, Girafa has not provided any assertions regarding the infringement of the revised version(s) of SE.

Furthermore, on or about August 4, 2008, Snap modified SE to add a service use guide that changed the service so that no preview is shown when the search results first appeared on the user's computer, but instead, the user is now required to click on a search result (or an adjacent "preview" button) to trigger the transmission from Snap and display by the user's browser and monitor of the previews.  Robins Report at ¶ 22 (A290).  Notably, Girafa has not provided any assertions regarding infringement by the two revised versions of SE.  Myers Report at Exh. E-16 (screenshot from January 31, **2008**) (A249).

**SSB** has remained the same throughout as it pertains to this litigation.  SSB is a service that allows end users to install software in their browsers that runs the Snap Shot service on various websites and viewed by the user on that specific computer.  D.I. 76 (at ¶ 7 therein).  The preview shown in the Snap Shot in SSB has been, and is, the exact page referenced by the hyperlink.  D.I. 76 (at p. 3 of Exh. A therein), D.I. 79 (at ¶ 59 therein), Robins Report at ¶ 57 (A307); Agostino Dep. at 46:7-49:21 (A138).  Accordingly, Girafa has not asserted that SSB infringes claims 1 or 18 (or their dependents) because these claims require a home page preview for a non-home page hyperlink, which Girafa admits is not covered by its patent.  Myers Report at ¶ 53 (A214); D.I. 299 (at p. 5 – stipulated definition of "thumbnail visual image of the home

page …").  Notably, SSB does <u>not</u> provide a visual image of a web page to a user.  Myers Report at Exhs. F-32, F-36 (A265, 269); Agostino 12/10 Dep. at 195:25-196:19 (A197).

**<u>SSPB</u>** has also remained the same throughout as it pertains to this litigation.  SSPB is a service that allows a website operator to install software to run the Snap Shots service on his/her web site.  D.I. 76 (at ¶ 8 therein).  The preview shown in the Snap Shot in SSB has been, and is, the exact page referenced by the hyperlink.  D.I. 79 (at ¶ 60 therein); Robins Report at ¶ 58 (A307).  Accordingly, Girafa has not asserted that SSPB infringes claims 1 or 18 (or their dependents) because these claims require a home page preview for a non-home page hyperlink, which Girafa admits is not covered by its patent.  Myers Report at ¶ 53 (A214); D.I. 299 (at p. 5 – stipulated definition of "thumbnail visual image of the home page…").  Also, SSPB does <u>not</u> provide a visual image of a web page to a user.  D.I. 76 (at ¶ 8 and page 4 of Exh. A therein).

With the three Snap Shots services (SC, SSB, and SSPB), the search results or other web pages containing hyperlinks do not contain any Snap previews when the search results or web page first appear to the user.  D.I. 76 (at ¶¶ 6-8 therein).  At some later point after the search results or web page load, the user can hover the cursor over a small icon or the hyperlink, which results in the transmission and display of the preview to the user.  D.I. 76 (at ¶¶ 6-8 therein).

A summary chart highlighting the aforementioned changes to Snap's systems during this litigation can be found at Agostino Decl. at Exh. A (A484-485).

### 2.    Snap's System for Generating and Storing Preview Images

Snap's preview images are created through a process involving a dispatcher that receives requests to "crawl" the Internet to find URLs for which images are needed (either new images or updated versions of existing images).  Agostino Dep. at 169:4-170:5 (A191).  The dispatcher will then bundle a series of URLs and dispatch them to a "preview generator" (aka "thumbnailer in

Agostino Decl. at Exh. B), which creates previews in the various sizes Snap uses in its services by downloading a web page and creating an image file from it.  Agostino Dep. at 172:2-13, 175:11-176:8 (A191-192).  Once the image file is created, it is copied to a cluster of machines known as the lighttpd/BOA machines ("BOA" machines for short), and deleted from the preview generator.  Agostino Dep. at 165:2-3, 174:25-175:10 (A190, 192).  The images are stored on the BOA machines using the Linux operating system's file system, which is not an application database such as the MySQL system identified as the image database in the '904 Patent.  Robins Report at ¶ 60, 64 (A308, 310); Robins Dep. at 375:16-377:16, 420:13-421:25 (A454-457); <u>see also</u>, '904 Patent at Cols. 5:54-58, 6:18-23 (A114).  A general schematic diagram of Snap's overall system can be found at Agostino Decl at Exh. B (A487).

## B. <u>The '904 Patent</u>

The '904 Patent describes an alleged improvement to internet search technologies.  D.I. 79 (at Exh. 4 therein), which includes a method and system for presenting Internet information to an Internet user wherein web pages containing one or more hyperlinks and thumbnail images are transferred from remote computers to a Internet user's computer, and ultimately displayed together on the user's computer through a web browser.  <u>See e.g.</u>, '904 Patent (A100-119) at claims 1, 18, 35, 46; Figs. 1, 2; Specification at Cols. 1:12-15, 2:1-5, 2:14-18, 5:44-47, 6:1-2; Myers Dep. at 716:12-21 (A443).

The '904 Patent contains three sets of claims, each set being alternately described as method and system claims.  First, independent claims 1 and 18, which may be referred to as the "home page substitution" claims, describe various aspects of a method and a system in which, in the context of browsing the Internet, a web page containing hyperlinks is provided to a user (by a web content provider) at least partially concurrently with thumbnail visual images of the home

pages corresponding to the hyperlinks on the underlying web page. These claims further indicate that the thumbnail visual images are provided from an image server.

Second, independent claims 35 and 46 are similar to claims 1 and 18, except that the thumbnail visual image of the web page need not be of a home page, but merely of a web page that is part of the same web site represented by the hyperlink, but of a different web page than referenced by the hyperlink. Myers Dep. at 499:6-19 (A424), 640:20-645:10 (A432-434). In addition, the file history supports this position.[2] Claims 35 and 46 further describe the image server as being separate from a web server that provides the web page containing the hyperlinks. For shorthand, these claims may be referred to as the "alternative substitution" claims.

Third, independent claims 16 and 33 are claims directed to creation of a "database" of thumbnail visual images of web pages. These claims may be referred to as the "database" claims. Specifically, they require the combined action of a multiplicity of downloaders, which retrieve from the Internet web pages and embedded objects for URLs of websites for which thumbnails are desired, and thumbnail generators separate from the downloaders, which renders and shrinks the retrieved web pages and transmits them to the image server "database." For additional discussion of claim terms, see Defendants' Claim Construction Brief.

These facts, as well as those below, in conjunction with applicable law, confirm that Snap's services at issue do not infringe the '904 Patent literally, jointly, under the DOE, or based on indirect infringement. Accordingly, summary judgment in Snap's favor should be granted.

---

[2] See, footnote 4, *infra*; see also, Defendants' Claim Construction Brief re: "thumbnail visual image of another web page … ."

## IV.   ARGUMENT

### A.   Standard for Motion for Summary Judgment

One of the major purposes of a motion for summary judgment is to isolate and dispose of factually unsupported claims.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-34 (1986).  A court shall grant summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R. Civ.P. 56(c).  The moving party bears the burden of proving that no genuine issue of material fact exists.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10 (1986).  Where a defendant moves for summary judgment on issues where the plaintiff has the burden of proof (e.g., infringement, willfulness), nothing more is needed than to show that the patentee has insufficient evidence to support its case.  Celotex, 477 U.S. at 325; Exigent Technology, Inc. v. Atrana Solutions, Inc., 442 F.3d 1301, 1309-1310 (Fed. Cir. 2006).

Once the moving party satisfies its burden, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings," but "must set forth specific facts admissible in evidence showing that there is a genuine issue for trial."  Fed.R.Civ.P. 56(e).  The evidence relied upon by the non-moving party to create an issue of material fact must be evidence upon which a reasonable jury could reasonably find in favor of the non-moving party.  Anderson v. Liberty Lobby, 477 U.S. 242, 252 (1986).  If it is not, summary judgment must be granted.  Fed.R.Civ.P. 56(e).

### B.   Standards for Direct Infringement

A patent is infringed when a person "without authority makes, uses or sells any patented invention, within the United States ... during the term of the patent." 35 U.S.C. § 271(a).  Courts

employ a two-step analysis in analyzing infringement.  Markman v. Westview Instruments, Inc., 52 F.3d 967, 976 (Fed. Cir. 1995).  The first step is claim construction.  See, e.g., Markman, Inc. v. Westview Instruments, Inc., 54 F.3d 967, 976 (Fed. Cir. 1995) (en banc); Callaway Golf Co. v. Acushnet Co., 523 F. Supp. 2d 388, 399 (D. Del. 2007).

Briefly, to ascertain the meaning of a disputed claim term, "the words of a claim are generally given their ordinary and customary meaning," as would be understood by "a person of ordinary skill in the art in question at the time of the filing of the patent application in question." Phillips v. AWH Corp., 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc).  The person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification.  Id.  "Properly viewed, the 'ordinary meaning' of a claim term is its meaning to the ordinary artisan after reading the entire patent."  Id. at 1321.

After claim construction, the trier of fact must compare the properly construed claims with the accused product.  Markman, 52 F.3d at 976.  Literal infringement occurs where each limitation of at least one claim of the patent is found exactly in the alleged infringer's product. Panduit Corp. v. Dennison Mfg. Co., 836 F.2d 1329, 1330 n.1 (Fed. Cir. 1987).  "If any claim limitation is absent from the accused device, there is no literal infringement as a matter of law." Bayer AG v. Elan Pharm. Research Corp., 212 F.3d 1241, 1247 (Fed. Cir. 2000).  If an accused product does not infringe an independent claim, it also does not infringe any claim depending thereon.  Wahpeton Canvas Co. v. Frontier, Inc., 870 F.2d 1546, 1553 (Fed. Cir. 1989).  The patent owner has the burden of proving infringement by a preponderance of the evidence. SmithKline Diagnostics, Inc. v. Helena Lab. Corp., 859 F.2d 878, 889 (Fed. Cir. 1988).

If an accused product does not literally meet all of the claim requirements of a particular claim, a patentee can attempt to prove infringement under the DOE, but may prevail only if it can demonstrate that each element for which an equivalent is alleged performs substantially the same function in substantially the same way to achieve substantially the same result as the literally unmet claim requirement.[3] Warner-Jenkinson Co. v. Hilton Davis Chemical Co., 520 U.S. 17, 28, 41 (1997); Graver Tank & Manufacturing Co. v. Linde Air Products Co., 229 U.S. 605, 605 (1950); Dawn Equipment Co. v. Kentucky Farms Inc., 140 F.3d 1009, 1016 (Fed. Cir. 1998). Application of the doctrine of equivalents may be barred by prosecution history estoppel. Festo Corp. v. Shoketsu Kinzoku Kyogo Kabushiki Co. Ltd., 535 U.S. 722, 737-40 (2002) (narrowing claim amendments related to patentability presumably results in a disavowal of claim scope as to the broader subject matter).

Finally, with respect to method and process claims, a single party must perform all of the steps in order for a finding of direct infringement to be possible. BMC Resources, Inc. v. Paymentech, L.P., 498 F.3d 1373, 1379 (Fed. Cir. 2007). "[W]here the actions of multiple parties combine to perform every step of a claimed method, the claim is directly infringed only if one party exercises 'control or direction' over the entire process such that every step is attributable to the controlling party, i.e., the 'mastermind.'" Muniauction, Inc. v. Thomson Corp., 532 F.3d 1318, 1329 (Fed. Cir. 2008). "Control or direction" requires a showing that satisfies a traditional vicarious liability standard in order for liability for direct patent infringement to be imposed against a party that does not perform all of the steps of a method or

---

[3] In the context of software, this Court has indicated that whether a particular element is met under the DOE depends on whether the difference between a claim limitation and accused element are "insubstantial," and that insubstantiality can be determined by applying a function-way-result analysis. Padcom, Inc. v. Netmotion Wireless, Inc., 2006 WL 416865 at *10 (D. Del. Feb. 22, 2006). Girafa's expert, Dr. Myers, did not apply the function-way-result test at all in his expert report. Myers Report at ¶¶ 32, 33 (A206-207).

process claim.   Id. at 1330.   This standard in turn requires a showing that the liable party controlled the conduct of the secondary actor at each step of the patented process.   BMC Resources, 498 F.3d at 1379-80.

One district court applying BMC Resources and Muniauction stated that:

> for liability to attach, the 'mastermind' must so control the third party in its performance of the infringing steps that the third party does so as the defendant's agent.  The degree of control must be such that the defendant could be vicariously liable for the third party's performance. …
>
> Making information available to the third party, prompting the third party, instructing the third party, or facilitating or arranging for the third-party's involvement in the alleged infringement is not sufficient.

Emtel, Inc. v. Lipidlabs, Inc., 583 F. Supp. 2d 811, 839 (S.D. Tex. 2008); see also, Global Patent Holdings, LLC v. Panthers BRHC LLC, 586 F. Supp. 2d 1331, 1334-35 (S.D. Fla. 2008) (motion to dismiss for failure to state a claim of direct infringement granted where patent required a remote computer user and a website server to perform steps of a patent claim, and merely placing Javascript code on a remote user's computer is insufficient control over the remote computer user to establish joint infringement); Akamai Technologies, Inc. v. Limelight Networks, Inc., 2009 WL 1164570 (D. Mass. Apr. 24, 2009).

The Federal Circuit has stated that "[a] patentee can usually structure a claim to capture infringement by a single party," but added that "this court will not unilaterally restructure the claim or the standards for joint infringement to remedy these ill-conceived claims."   BMC Resources at 1381.

### C.      Girafa Cannot Prove That Snap is Liable for Direct Infringement

A listing of the patent claims Girafa has asserted against Snap's respective services are listed in paragraphs 6-8 of Dr. Myers Expert Report.  (A202-203).

With respect to SC and SE, however, Girafa has not provided any evidence or analysis with respect to the June 4, 2008 modifications, and should be barred from doing so now.  Girafa has been on notice of these changes since well before Dr. Myers prepared and submitted his initial infringement report in February of 2009.  Agostino Dep. at 121:10-127:13 (A141-142); Myers Report at ¶ 25 (A205) and Exh. C (A231-233).  Therefore, Girafa should be precluded from asserting the updated versions of SC and SE infringe at all, and as to the updated versions of SC and SE, summary judgment should be granted.

Furthermore, Girafa failed to provide any infringement contentions for SSPB until over two (2) months *after* its initial expert report was due.  It is undisputed that Girafa and Dr. Myers have known about SSPB (which was, and is, publicly available at www.snap.com), since the briefing stages of the P.I. Motion.  D.I. 76 (at ¶ 8 and p. 4 of Exh. A therein); Myers Report at ¶ 25 (A205) and Exh. C (A231-233).  Therefore, Girafa should be precluded from asserting the SSPB infringes at all, and as to SSPB, summary judgment should be granted.

1.      **Snap Does Not Literally Infringe the Asserted Claims of the '904 Patent**

a.      **Home Page Substitution Claims – Claims 1 and 18 and Dependents**

i.      **Snap Classic**

At all times relevant to this case, SC has not provided a visual image of a web page containing at least one hyperlink "at least partially concurrently" with a thumbnail visual image of the home page of a web site represented by at least one hyperlink on the underlying web page, as required by claims 1 and 18 (and their dependents).  Snap provides the code to allow the browser to display a visual image of a web page containing at least one hyperlink, but does not send a preview image until later in time when the user requests it by hovering the cursor over a hyperlink (or associated Snap icon).  Robins Report at ¶¶ 40-43 (A298-300), Exhs. 3, 9 (A394,

400); Agostino Dep. at 184:11-185:17, 188:8-189:6 (A194-196); Myers Report at Exh. D-6 (applying analysis of claim 1 to claim 18) (A239). Therefore, SC does not literally infringe claims 1 or 18 (or their dependents).

It should be noted that Girafa has conceded that claims 1 and 18 (and their dependents) do not cover a situation where the hyperlink is to a home page. D.I. 299 (at p. 5 therein – stipulated definition of "thumbnail visual image of the home page … ."); Myers Report at ¶ 53 (A214). Accordingly, to the extent any home page previews were shown in response to a home page hyperlink, there would likewise be no literal infringement.

On or about June 4, 2008, SC began to utilize previews of the exact web page targeted by the hyperlink on the underlying web page rather than a home page or alternate page. Agostino Dep. at 121:10-127:13 (A141-142). Girafa, through Dr. Myers, has not contraverted this fact, and has not even asserted that SC post-June 4, 2008 even infringes the '904 Patent. Accordingly, since June 4, 2008, SC has not provided a "thumbnail visual image of the home page of at least one web site which is represented by said at least one hyperlink" (except in situations where the link is to a home page, and Girafa has conceded that its claim does not cover that situation – Myers Report at ¶ 53 (A214)). Furthermore, the non-infringement arguments stated above for pre-June 4, 2008 SC apply to post-June 4, 2008 SC. Therefore, summary judgment in Snap's favor as to post-June 4, 2008 SC regarding claims 1 and 18 (and their dependents) is warranted.

### ii.    Snap Enhanced

SE does not literally infringe claims 1 or 18 (or their dependents) because, as consistently maintained by Snap throughout this case, SE does not provide a thumbnail, which the parties agree is a "miniature image of … a web page." D.I. 299 (at p. 3 therein – construction of "thumbnail visual image"); see also, D.I. 242 (at p. 7-8 therein re: thumbnail visual image). The

"preview" shown by SE in association with the search results is far too large to be considered a miniature image of a web page at least roughly corresponding to the size of one's thumbnail. D.I. 76 (at ¶ 9 therein); D.I. 79 (at ¶¶ 79-114, 119, 137, 158, 205 and Exhs. 15-30 therein); Robins Report at ¶¶ 50 (A304), 95-100 (A321-323), 132 (A330); D.I. 79 (at ¶ 113 therein); D.I. 242 (at p. 7-8 re: thumbnail visual image).   Exhibit 29 to the Robins Decl. (D.I. 79), by way of example, demonstrates that the SE previews are simply not miniature images of web pages.   As such, SE does not literally infringe claims 1 or 18 (or their dependents).

It should be noted that Girafa has conceded that claims 1 and 18 (and their dependents) do not cover a situation where the hyperlink is to a home page.   D.I. 299 (at p. 5 therein – stipulated definition of "thumbnail visual image of the home page … ."); Myers Report at ¶ 53 (A214).   Accordingly, to the extent any home page previews were shown in response to a home page hyperlink, there would likewise be no literal infringement.

On or about June 4, 2008, SE began to utilize previews of the same web page as targeted by the hyperlink on the underlying web page.   Agostino Dep. at 121:10-127:13 (A141-142). Girafa has not contravened this fact, and has not even asserted that SE since June 4, 2008 even infringes the '904 Patent.   Accordingly, since June 4, 2008, SE has not provided a "thumbnail visual image of the home page of at least one web site which is represented by said at least one hyperlink" (except in situations where the link is to a home page, which Girafa has conceded is not covered by claims 1 and 18 – Myers Report at ¶ 53 (A214); D.I. 299 (at p. 5 – stipulated definition of "thumbnail visual image of the home page…")).   In addition, the non-infringement arguments stated above for pre-June 4, 2008 SE apply to post-June 4, 2008 SE.   Furthermore, the August 4, 2008 change to SE (see, Part III.A.1, *supra*) eliminates partial concurrency in SE.

Therefore, the Court should grant Snap summary judgment as to SE with respect to claims 1 and 18 (and their dependents).

>   **b.**   **Alternative Substitution Claims – Claims 35 and 46 and Dependants**

>   **i.**   **Snap Classic**

With respect to claims 35 and 46 (and their dependents), the discussion above regarding claims 1 and 18 and the absence of partial concurrency in SC equally applies to claims 35 and 46 (and their dependents), and is incorporated herein by reference.

On or about June 4, 2008, SC began to provide previews of the exact web page as that targeted by the hyperlink on the underlying web page. Agostino Dep. at 121:10-127:13 (A141-142). Girafa has not contravened this fact, and has not even asserted that SC post-June 4, 2008 even infringes the '904 Patent.

Nonetheless, since June 4, 2008, SC has not provided a "thumbnail visual image of another web page of at least one web site which is represented by said at least one hyperlink" as that term is properly construed to require that the thumbnail image be of a substitute or different web page than the web page targeted by the hyperlink, but still part of the same web *site* as the hyperlink. In other words, like claim 1, which requires substitution of a home page thumbnail for a non-home page hyperlink, claim 35 requires ***substitution*** as well. Myers Dep. at 499:6-19 (A424), 640:20-645:10 (A432-434).[4] Claim 35, however, does not necessarily substitute the

---

[4] The "another web page …" language in claims 35 and 46 describes the relationship between the thumbnail image and the hyperlink (not between the thumbnail image and the web page *containing* the hyperlink). Original claims 1 and 21 required the second visual image (later amended to be called the "thumbnail visual image" (A32, 35) to be "a visual image of another web page of at least one web site represented by said at least one hyperlink." (A5, 8). These claims were amended (A56, 60) in response to the March 2004 Office Action (A42-54) to require the image to be a thumbnail of "the home page of at least one web site represented by said at least one hyperlink." There is no dispute that the "home page" limitation in claims 1 and 18 (original claims 1 and 21) of the '904 Patent refers to the home page relative to the hyperlink,

home page for the page targeted by hyperlink, but rather, it uses a different page from the hyperlink, but one within the same web site as the hyperlink.  Furthermore, the non-infringement arguments stated above for pre-June 4, 2008 SC apply to post-June 4, 2008 SC.  Therefore, the Court should grant Snap summary judgment as to post-June 4, 2008 SC with respect to claims 35 and 46 (and their dependents).

### ii.     Snap Enhanced

With respect to claims 35 and 46 (and their dependents), the discussion above regarding claims 1 and 18 and the absence of a thumbnail visual image in SE equally applies to claims 35 and 46 (and their dependents), and is incorporated herein by reference.

On or about June 4, 2008, SE began to provide previews of the same web page as that targeted by the hyperlink on the underlying web page.  Agostino Dep. at 121:10-127:13 (A141-142).  Girafa has not contravened this fact, and has not even asserted that SE post-June 4, 2008 infringes the '904 Patent.

Nonetheless, since June 4, 2008, SE has not provided a "thumbnail visual image of another web page of at least one web site which is represented by said at least one hyperlink" as that term is properly construed to require that the thumbnail image be of a substitute or different web page (but part of the same larger web site) than the web page targeted by the hyperlink.  In

---

not the web page containing the hyperlink.  D.I. 299 (at p. 5 – stipulated definition of "thumbnail visual image of the home page …").  In addition, there is nothing in the file history suggesting that the amendment from "another web" to "the home" (A56, 60) changed what the thumbnail image was keyed to – i.e., from the web page containing the hyperlink to the hyperlink itself. Finally, what are now claims 35 and 46 were added by amendment (A63, 66) and incorporated the same language as claims 1 and 21 (i.e., "thumbnail visual image of another web page…"), and Girafa admitted that they were "similar in scope" to certain of the original claims that depended from original claims 1 and 21 (A71).  Therefore, "another" in the "thumbnail visual image of another web page …" clause cannot reasonably be construed to create a relationship between the thumbnail image and the web page containing the hyperlink, but rather, it must be construed to describe the relationship between the thumbnail and the hyperlink itself.

other words, claim 35 requires ***substitution*** as well, only not necessarily substitution of the home page for the target page.  In addition, the non-infringement arguments stated above for pre-June 4, 2008 SE apply to post-June 4, 2008 SE.  Furthermore, the August 4, 2008 change to SE (see, Part III.A.1, *supra*) eliminates partial concurrency in SE. Therefore, the Court should grant Snap summary judgment as to SE with respect to claims 35 and 46 (and their dependents).

### iii.    Snap Shots Browser Add-on

As with SC, SSB does not provide a visual image of a web page containing hyperlinks "at least partially concurrently" with a thumbnail visual image of another web page of a web site represented by at least one hyperlink on the underlying web page, as required by claims 35 and 46 (and their dependents).  When SSB is used, the HTML code for a visual image of a web page containing at least one hyperlink is provided to a user by a third party (Myers Report at Exhs. F-32, F.36 – showing Google page (A265, 269)), but a preview image is not sent until later in time when the user requests it by hovering the cursor over a hyperlink (or associated Snap icon). Robins Report at ¶¶ 57, 58 (A307) (referencing D.I. 79 at ¶¶ 44-48); Agostino Dep. at 193:19-195:15 (A197).  Therefore, SSB does not literally infringe claims 35 or 46 (or their dependents).

SSB does not literally infringe claims 35 or 46 (or their dependents), properly construed, because those claims require, at least in part, that a web page containing at least one hyperlink be provided to the user at least partially concurrently with a "thumbnail visual image of another web page of at least one web site which is represented by said at least one hyperlink."  As indicated in the Defendants' claim construction brief, this means that the thumbnail visual image must be of a web page from within the same web site as that represented by the hyperlink, but it <u>cannot</u> be the same page as that targeted by the hyperlink.

SSB does not provide a preview of a substitute or different web page than that targeted by the hyperlink, but rather, SSB's preview is of the exact web page targeted by the hyperlink. Myers Report at Exh. F-32, 36 (preview image is "of the target web page") (A265, 269). Therefore, as to claims 35 and 46 (and their dependents), summary judgment of non-infringement should be granted with respect to SSB.

In addition, the HTML code that the user's browser renders into the "visual image of a web page containing at least one hyperlink" in SSB is provided by a third party web site, not Snap.[5]  Myers Claim Chart Exh. F-32 (google.com) (A265); Agostino Dep. at 195:25-196:19 (A197).  Thus, Snap is not performing each of the steps of the method of claim 35 (and its dependents), nor does it have a system that performs each of the steps of claim 46 (and its dependants).   Therefore, as to claims 35 and 46 (and their dependents), summary judgment of non-infringement should be granted with respect to SSB.

### iv.    Snap Shots for Publishers/Bloggers

In his initial expert report on February 12, 2009, Dr. Myers did not opine at all on SSPB. He admitted as much during his deposition.  Myers Dep. at 695:5-700:11 (A440-441).  This Court's Scheduling Order (D.I. 61 at § 2(c)(1) therein) required the plaintiff to submit its initial expert report on infringement by February 13, 2009.   Instead, Dr. Myers' infringement contentions as to SSPB were not provided until April 20, 2009, in violation of the Scheduling Order.   Nielsen Decl. at ¶ 44 (A474).   Girafa never sought leave to submit additional (not supplemental) infringement contentions through its expert, and accordingly, Dr. Myers' "revised" Exhibit F should be stricken, or excluded, from evidence.   See, Praxair, Inc. v. ATMI,

---

[5] This basis for non-infringement should have been abundantly clear to Girafa from the inception of this lawsuit, but Girafa has continued to press its case despite the frivolity of claiming that Snap is performing the step of providing Google search results (or performing the step of providing a third party web page in SSPB).

Inc., 445 F. Supp. 2d 460, 470-71 (D. Del. 2006); Proctor & Gamble Co. v. McNeil-PPC, Inc., 2009 U.S. Dist. LEXIS 40927 at *8-14 (W.D. Wis. May 12, 2009).

Even if Girafa should be permitted to make this argument despite its failure to timely provide an expert report concerning its infringement contentions for SSPB, the same arguments above for SSB apply equally to SSPB.  SSPB does not provide the web page containing hyperlinks and the preview image at least partially concurrently.  SSPB does not provide a preview of a substitute or different web page than that targeted by the hyperlink, but rather, Snap's preview is of the same web page as targeted by the hyperlink.  D.I. 79 (at ¶ 60 therein); Robins Report at ¶ 58 (A307).

In addition, the HTML code that is rendered into the "visual image of a web page containing at least one hyperlink" in SSPB is provided by a publisher or blogger, not Snap.  D.I. 76 (at ¶ 8 and page 4 of Exh. A therein).  Accordingly, Snap is not performing each of the steps of the method of claim 35 (and its dependents), nor does it have a system that performs each of the steps of claim 46 (and its dependants).  Therefore, as to claims 35 and 46 (and their dependents), summary judgment of non-infringement should be granted with respect to SSPB.

     **c.**     **Database Claims – Claims 16 and 33**

Girafa has failed to meet its burden of demonstrating that Snap meets the limitations of claims 16 and 33.  In his report, Dr. Myers addressed claims 16 and 33 as equivalent.  Myers Report at Exhs. D-9 (A242), E-23 (A256), F-31 (A264).  He admitted as much during his deposition.  Myers Dep. at 656:11-16 (A435).  The literal language of both claims 16 and 33 require an "image server database" in the method/system recited by those claims.  Dr. Myers, however, failed to identify in his claim charts anything in Snap's system that is an "image server database."  With reference to claim 16, Dr. Myers states that Snap's BOA machines are "the

image server" (Myers Report at Exhs. D-5 (A238), E-20 (A253), F-30 (A263)), and adopts the same position as to claim 33 (D-9 (A242), E-23 (A256), F-31 (A264)).   By contending that Snap's BOA machines are merely image servers, and not "image server databases," Girafa has failed to demonstrate that Snap meets all of the limitations of claim 33.

Furthermore, Snap's BOA machines do not store images in a database (as indicated by the '904 Patent at Cols. 5:54-58, 6:18-23 (A114)), but rather in a file system, and the two are distinct.   Robins Report at ¶ 60, 64 (A308, 310); Robins Dep. at 375:16-377:16 , 420:13-421:25 (A454-457); Myers Dep. at 212:13-214:22 (A418-419); U.S. Patent 6,401,118 (at Fig. 1 and Col. 4:51-53 (A88) (referenced in the '904 Patent).   Thus, even if Dr. Myers asserted that Snap's BOA machines were "image server *databases*," he would be incorrect.   For these reasons, summary judgment should be granted as to claims 16 and 33 (and their dependents).

**2.     Snap Does Not Infringe Any of the Asserted Claims of the '904 Patent Under the Doctrine of Equivalents**

**a.     Snap Classic**

Girafa, through Dr. Myers, contends that if SC does not literally meet the limitation in claims 1, 18, 35, and 46 that it provide a visual image of a web page containing at least one hyperlink "at least partially concurrently" with a thumbnail visual image of the home page …, then Snap still infringes this limitation under DOE because, as Dr. Myers said, "the browser transmits the visual image of the thumbnail to the user at least partially concurrently as the web page."   Myers Report at Exh. D-2, 7, 11, and 13 (A235, 240, 244, 246).   Snap, as agreed by Dr. Myers, does not provide the user a browser and does not function as a browser, or the equivalent of a browser, such that Snap can be deemed to be functioning as a browser.   Myers Dep. at 720:12-721:20 (A444-445), 729:17-732:9 (A447), 750:11-751:2 (A449), 752:16-754:3 (A450);

Robins Report at ¶ 74 (A314).  Accordingly, Girafa cannot meet its burden of demonstrating that Snap infringes claims 1, 18, 35, or 46 (or their dependents) under the DOE.

Girafa, through Dr. Myers, also suggested that SC infringes the "providing … at least partially concurrently …" limitation of claims 1, 18, 35, and 46 under the DOE.  Dr. Myers' contended that if the claim refers to transmission of the web page containing hyperlinks and the thumbnail images from servers to the user's computer, then there is no substantial difference because the claim is to be interpreted from the user's perspective, and from the user's perspective, there is no substantial difference when the transmission takes place.  Myers Report at D-2, 3, 7, 11, 13 (A235, 236, 240, 244, 246).

Dr. Myers, and thus Girafa, failed to meet their burden for several reasons.  **First**, the claim is to be interpreted from the perspective of a person of ordinary skill in the art, not the user.  Thus, Dr. Myers' frame of reference for claiming an insubstantial difference is erroneous.

**Second**, Dr. Myers's assertion that the claim is "directed to the user's perspective" is simply inaccurate because the methods/systems in the '904 Patent pertain to a web service company providing a service, not how a user is interacting with a computer.  Robins Report at ¶¶ 71, 72 (A313-314).  Also, by asserting that the user does not care when transmission takes place, Dr. Myers reads the partial concurrency requirement out of the claims, which violates the all-elements rule.  Warner-Jenkinson Co. v. Hilton Davis Chemical Co., 520 U.S. 17, 29 (1997).

**Third**, SC provides the preview in series with the web page with hyperlinks, which is in contrast to the '904 Patent, which requires the thumbnail to be provided in parallel with the web page with hyperlinks.  Providing images in series is not performing this step the same way as if the images were provided in parallel.  Robins Report at ¶¶ 72, 73 (A313-314).  Back in 1999 or 2000 when the alleged invention claimed in the '904 Patent was allegedly conceived, providing

images in parallel rather than in series would have required more powerful computing resources and Internet bandwidth to achieve comparable performance.  Id.

**Fourth**, the result in SC differs from the partial concurrency in the '904 Patent claims. The claims of the '904 Patent allow the user to receive the thumbnail and the web page with hyperlinks at approximately the same time.  In SC, however, there is delay not only because of the in-series transmission, but also because the user must manually hover the cursor over the link/icon to request each individual preview.  D.I. 76 (at ¶ 6 therein).  This may degrade the resulting user experience in a manner that would not seem to occur in Girafa's system.

Therefore, Girafa has failed to show that SC infringes the "providing … at least partially concurrently" limitation of claims 1, 18, 35, and 46 (and their dependents) under the DOE.

> **b.** **Snap Enhanced**

Girafa, through Dr. Myers, contended that if SE does not literally meet the limitation in claims 1, 18, 35, and 46 that it provide a "miniature image of a web page" (Girafa's proposed construction for "thumbnail visual image" – see, D.I. 299), that it nonetheless contains a miniature image of a web page under the doctrine of equivalents.  Snap disagrees.

Girafa should be estopped from asserting DOE as to "thumbnail" because designating this second web page as a "thumbnail" in originally numbered claims 1 and 21 were the product of a narrowing amendment related to patentability.  Office Action (A12-25); Amendment to Claims 1, 21 (A32, 35).  Festo Corp. v. Shoketsu Kinzoku Kyogo Kabushiki Co. Ltd., 535 U.S. 722, 737-40 (2002).  The claims previously required merely a "visual image of a web page." (A5, 8).  The amended claim language that included "thumbnail" was incorporated into claims 35 and 46 when they were added by amendment to the application for the '904 Patent, and the same estoppel should apply to them as well.  (A63, 66).  American Permahedge, Inc. v. Barcana,

Inc., 105 F.3d 1441, 1446 (Fed. Cir. 1997); Builders Concrete, Inc. v. Bremerton Concrete Products Co., 757 F.2d 255, 260 (Fed. Cir. 1985).

Even if Girafa is not barred by prosecution history estoppel from asserting DOE as to "thumbnail visual image," there are substantial differences between a miniature image of a web page and the much larger image of a web page provided by SE, including differences in user experience, differences in amount of storage space for larger versus smaller images, and differences in transmission time for larger versus smaller images.  Myers Dep. at 678:21-679:19 (A437) (one of the advantages of Girafa's alleged invention is to reduce the amount of storage space needed for thumbnails, and this advantage is furthered by using home pages rather than exact pages, and using smaller-sized images), 684:22-686:12 (A438-439) (the size of the images in SE would not foster a minimization of storage space); Ran Dep. at 245:22-250:9 (A183-184) (transmission time was important to Girafa and larger images tend to slow transmission time); McGovern Dep. at 65:6-66:5, 68:17-69:18, 72:20-76:8 (A127-129); Robins Report at ¶¶ 50, 94-100, 132, 178-183, 207-208 (A304, 321-323, 330-331, 343-345, 352).

These differences are substantial, and demonstrate that the function of streamlining web surfing (D.I. 43 at ¶¶ 6, 7 therein) would not be met in a system with substantially larger preview images developed in 1999 or 2000.  Robins Report at ¶¶ 95-100, 178-183 (A321-323, 343-345). Furthermore, the result would be substantially different in that web surfing would not be streamlined, but slowed down.  Id.  Accordingly, the preview sizes in Snap Enhanced are equivalent to the thumbnails referenced in the claims of the '904 Patent.

### c.      Snap Shots Browser Add-on

Girafa failed to demonstrate that the "providing at least partially concurrently" requirement in claims 1, 18, 35, and 46 (and their dependents) is satisfied by SSB under the doctrine of equivalents.  The reason is the same as stated above for SC at pages 23-25, *supra*.

### d.      Snap Shots for Publishers/Bloggers

Should the Court decide to consider the contentions in Dr. Myers' belated claim chart for SSPB, Girafa still failed to demonstrate that the "providing at least partially concurrently" requirement in claims 1, 18, 35, and 46 (and their dependents) is satisfied by SSPB under the doctrine of equivalents.  The reason is the same as stated for SC at pages 23-25, *supra*.

### 3.      Snap is not Liable for Joint Infringement of the '904 Patent

Neither Girafa nor Dr. Myers have articulated any basis for Snap being liable as a joint infringer of the '904 Patent.  Accordingly, summary judgment should be granted on this issue for all of Snap's services.

Girafa admitted that a web browser is required for the "first functionality" in claims 18 and 46 (D.I. 299 at p. 5 therein – stipulated definition of "first functionality"), and Dr. Myers has largely equated claim 1 with claim 18, and claim 35 with claim 46 (Myers Report at Exh. D-6, D-13, E-21, E-28, F-36) (A239, 246, 254, 261, 269).   In deposition, Dr. Myers admitted that claims 1, 18, 35, and 46 require a browser so that the Internet information can be displayed to a user, and also that Snap does not function as, or supply, a browser to Internet users.  Myers Dep. at 84:14-88:19 (A414-415) (browser required for claim 1; Snap not providing browser to users), 102:7-103:22 (A417) (browser required for claims 18, 35, and 46; Snap not providing browser to users); 601:8-602.5 (A431); 687:3-16 (A439) (none of Snap's systems provide all the technology to perform methods of claims 1 or 35); Myers Dep. at 720:12-721:20 (A444-445) (browser in

user's computer; Snap's services are not browsers); 729:17-732:9 (A447) (Snap not performing functions of a browser); 750:11-751:2 (A449) (SE not a browser; user responsible for obtaining own browser); 752:16-754:3 (A450) (User uses browser to view web pages; Snap does not provide browser to users).

Thus, to practice claims 1, 18, 35, and 46 (and their dependents), an entity that supplies a browser and performs the functions of a browser is required, *and that entity is not Snap*. Neither Girafa nor Dr. Myers presented any evidence suggesting that Snap controls browser companies such as Microsoft or Apple, or users of browsers, to support a finding of joint infringement against Snap. Muniauction, Inc. v. Thomson Corp., 532 F.3d 1318, 1329 (Fed. Cir. 2008) ("where the actions of multiple parties combine to perform every step of a claimed method, the claim is directly infringed only if one party exercises 'control or direction' over the entire process such that every step is attributable to the controlling party, i.e., the 'mastermind.'").[6]

In addition to these points regarding Snap not supplying a browser, performing the functions of a browser, or triggering the transmission of the preview images for each of Snap's systems, Snap, in SSB and SSPB, also does not provide a "visual image of a web page containing at least one hyperlink" as required by claims 1, 18, 35, and 46 (and their dependents).

In his claim chart for SSB submitted with his February 12, 2009 report (A265), Dr. Myers shows in each a Google search results web page in association with claims 35 and 46

---

[6]  Another example of a third party action Girafa attempts, without evidence, to attribute to Snap is the end user triggering the transmission of Snap's preview images from Snap's servers to the user's computer. Myers Dep. at 667:14-668:7 (A436A) ((referencing SC), 669:4-8 (A436B) (referencing SC), 758:13-759:5 (A451) (referencing SSB and SSPB); Robins Report at ¶¶ 22, 46-49, 85, 133, 166, 195 (A290, 301-304, 318, 331, 339, 349) (referencing SE).[6]  In other words, Snap's systems will not transmit, or provide, a preview image to a user's browser for display by the browser without the end user requesting the preview image by hovering his or her cursor over a hyperlink/icon (SC, SSB, SSPB) or by clicking a button (post-August 4, 2008 SE).

(A265, 269).[7]   Presumably, this was to demonstrate that a visual image of a web page was provided to the end user.   Dr. Myers in both cases, however, ignores the fact that it was Google, **not Snap**, who served that web page to the end user, as required by claims 35 and 46 (and their dependents).   Dr. Myers and Girafa also fail to provide any information or evidence that would even remotely suggest that Snap has the type of "control or direction" over Google that would support a finding of joint infringement against Snap.   Accordingly, Girafa cannot meet its burden to demonstrate that SSB infringes claims 35 and 46 (or their dependents), and thus, summary judgment in Snap's favor should be granted.

### D.   Girafa Cannot Prove That Snap is Liable for Indirect Infringement

Girafa has not offered anything other than conjecture and speculation regarding indirect infringement, and it has failed to produce any documents identifying a direct infringer to support its allegations for inducing infringement or contributory infringement.   (A147-149 – Reqs. 12-15).   Furthermore, Dr. Myers did not opine on indirect infringement in his February 12, 2009 Report.   Therefore, and as set forth below, summary judgment in Snap's favor is warranted as to Girafa's indirect infringement claims.

### 1.   Standards for Indirect Infringement

To establish indirect infringement, a patentee may assert active inducement of infringement and contributory infringement.   35 U.S.C. §§ 271(b), 271(c).   "In order to succeed on a claim of inducement, the patentee must show, first that there has been direct infringement," and "second, that the alleged infringer possess a "specific intent to encourage another's infringement."   Kinetic Concepts, Inc. v. Blue Sky Medical Group, Inc., 554 F.3d 1010, 1024

---

[7] Even though Google is not a blog, the web pages with hyperlinks in SSPB come from third party web publishers, not Snap.  D.I. 76 (at ¶ 8 and page 4 of Exh. A therein).  Thus, the point is the same.

(Fed. Cir. 2009).  The specific intent necessary to induce infringement "requires more than just intent to cause the acts that produce direct infringement. … [T]he inducer must have an affirmative intent to cause direct infringement."  DSU Medical Corp. v. JMS Co., 471 F.3d 1293, 1306 (Fed. Cir. 2006) (en banc).  Thus, "inducement requires evidence of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities."  Id.

To establish contributory infringement, aside from the predicate act of direct infringement by a single party, the patentee must show that the defendant offers to sell or sells "a component of a patented machine, manufacture, combination or composition … constituting a material part of the invention, **knowing** the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use."  35 U.S.C. § 271(c) (emphasis added).  The Legislative History for this statute suggests that the statute should be "confined to its plain terms."  Pharmastem Therapeutics, Inc. v. Viacell, Inc., 491 F.3d 1342, 1357-58 (Fed. Cir. 2007).

The Supreme Court stated that § 271(c) "require[s] a showing that the alleged contributory infringer knew that the combination for which his component was especially designed was both patented and infringing."  Aro Manufacturing Co., Inc. v. Convertible Top Replacement Co., Inc., 377 U.S. 476, 488 (1964).

Finally, contributory infringement cannot be solely based on the provision of a service, but instead requires "the sale of a product of some sort."  Pharmastem, 491 F.3d at 1357-58 (reversing contributory infringement verdict because defendant merely sold a service, but not a product to the alleged direct infringer).

2.      **Snap is not Liable as an Active Inducer of Infringement**

Girafa cannot meet its burden of proof to show that Snap at any time pertinent to this case possessed an affirmative intent to cause anyone to directly infringe the '904 Patent.

Initially, it should be noted that the intent that another directly infringe a patent requires that the inducer know of the patent and know that another's actions are, in fact, infringing a valid patent.  These principles emerge from recent patent cases discussing scienter, including as In re Seagate Technology, LLC, 497 F.3d 1360, 1371 (Fed. Cir. 2007) and Finisar Corp. v. DirecTV Group, Inc., 523 F.3d 1323, 1339 (Fed. Cir. 2008), as well as DSU Medical, *supra*.

Here, Girafa has not identified any *evidence* whatsoever of the required intent.  It has not produced any documents to support its allegations of inducement, including the existence of a direct infringer.  (A147 – Reqs. 12-13).  It has not identified any specific information in its responses to interrogatories as to any affirmative intent on the part of anyone at Snap to cause anyone to directly infringe the '904 Patent.  (A161-163 – Rog. 14; A177-178 – Rog. 15).  It admitted it never sent Snap a cease and desist letter.  (A157 – Req. 82).  It never even notified Snap of its patent until it served this lawsuit.  McGovern Dep. at 237:3-6 (A187).  Thus, Girafa has no evidence that could even support a finding that Snap, prior to this litigation, was capable of formulating an intent that another infringe the '904 Patent.

Girafa' reliance upon several miscellaneous communications between Ms. Ran and Messrs. Boyer and Wheeler in 2004 and 2006, the notion that these communications placed Snap on notice of the '904 Patent such that it could have formed an intent to infringe, or to cause others to infringe, is debunked in Part IV.E, *infra*, regarding willfulness.

Once this litigation commenced, Girafa likewise had no evidence  that Snap intended others to infringe the '904 Patent.  The discovery responses referenced above are the product of

unsupported extrapolation and do not provide any documents or information (with a proper foundation and not the product of speculation) regarding intent.   As discussed above in Part III.A.1, *supra*, Snap modified SC and SE in June of 2008 (and again modified SE in August of 2008) to further avoid the '904 Patent.   In particular, Snap (as to SC and SE) eliminated previews of home pages where the hyperlinks targeted non-home pages.   McGovern Dep. at 109:22-115:8 (A132-133); Agostino Dep. at 38:15-39:10 (A136), 47:16-48:12 (A138), 49:13-50:7(A139), 121:10-127:13 (A141-142).   As to SE, Snap eliminated the preview for the first search result appearing at the same time the search results appeared to the user, and instead modified SE to require the user to trigger the transmission and display of the preview.   Robins Report at ¶ 22 (A290).[8]  Thus, Snap's intent was to avoid infringement by a wide margin, not cause it.

Furthermore, in its Order denying Girafa's P.I. Motion, the Court determined that this case presented substantial questions as to infringement and validity.   D.I. 242 (at p. 9 therein). Thus, even for times after it was served with the Complaint, Girafa has no evidence that Snap knew its services were infringed a valid '904 Patent, or that Snap was affirmatively causing others to infringe a valid '904 Patent.   For the aforementioned reasons, Snap's motion for summary judgment as to Girafa's inducement claim should be granted.

### 3.      Snap is not Liable for Contributory Infringement

Girafa, likewise, has no evidence such that a reasonable jury could find that Snap is liable as a contributory infringer.   To prove contributory infringement, Girafa must not only prove the existence of direct infringement, but it must also prove that the accused contributory infringer: (1) sells or offers to sell a component of a product or process; (2) that the only substantial use for the

---

[8] In SE (since August of 2008), as with SC, SSB, and SSPB at all times relevant to this case, Snap does not affirmatively cause the user to trigger the appearance of the preview – that is an action solely within the user's control and prerogative.  Myers Report at Exhs. D-1 (A234) and F-32 (A265) (referencing moving the cursor over the hyperlink, which is an end user action).

component is in a product or process that is covered by the patent such that the product or process in question has no substantial, non-infringing use; <u>and,</u> (3) the accused contributory infringer was aware of the patent and knew that the product or process for which the component has no other substantial use infringes the patent.  35 U.S.C. § 271(c); <u>Aro Manufacturing</u>, 377 U.S. 476, 488 (1964); <u>Mentor H/S, Inc. v. Medical Device Alliance, Inc.</u>, 244 F.3d 1365 (Fed. Cir. 2001); <u>Hewlett-Packard Co. v. Bausch & Lomb, Inc.</u>, 909 F.2d 1464, 1469 (Fed. Cir. 1990); <u>Preemption Devices, Inc. v. Minnesota Mining & Manufacturing. Co.</u>, 803 F.2d 1170, 1174 (Fed. Cir. 1986).

**First**, Girafa admitted it lacked documents responsive to requests seeking documents that identify a direct infringer to support its contributory infringement allegations.  (A148-149 – Reqs. 14, 15).  Without a direct infringer, there can be no contributory infringement.

**Second**, Girafa has not provided any evidence that Snap offers to sell or sells "a component of a patented machine, manufacture, combination, or composition … constituting a material part of the invention."  35 U.S.C. § 271(c).

**Third**, Girafa has not provided any evidence related to Snap's *knowledge* that the component it is allegedly offering to sell or selling is especially made or adapted for use in infringing the '904 Patent.  Girafa's interrogatory response is devoid of any evidence of scienter on the part of Snap.  (A161-163 – Rog. 14).  In addition, as stated in Part IV.E, *infra*, regarding willfulness, Snap did not even know of the '904 Patent until it was served with the Complaint in this action.  Thus, even if Snap had such knowledge, it would not have existed before December of 2007.  Furthermore, Girafa failed to demonstrate that any of Snap's services were infringing a valid '904 Patent inasmuch as the results of Girafa's P.I. Motion were that substantial questions as to infringement and validity existed.  D.I. 242 (at p. 9 therein).  Therefore, Girafa has not, and

cannot meet its burden to establish that Snap *knew* that the component it is allegedly offering to sell or selling is especially made or adapted for use in infringing the '904 Patent.

**Fourth**, Girafa admitted that Snap's Snap Shots services (SC, SSB, and SSPB) have numerous and substantial non-infringing uses.  Specifically, in its reply brief for the P.I. Motion, Girafa stated:

> Snap provides 11 different types of Snap Shots; only one of those types, the Snap Shots of web pages, is relevant to this lawsuit. … If an injunction issues, Snap would be free to provide the remaining 10 types (e.g., RSS Shot[TM], MovieShot[TM], StockShot[TM]) to its customers.

D.I. 112 (at p. 18 therein); see also, D.I. 79 (at ¶¶ 79-114 and Exhs. 15-30 therein).

Accordingly, Girafa admitted that Snap's Snap Shots service has 10 uses (out of 11 total) that are non-infringing.  Girafa's admission is fatal to its contributory infringement claim.[9]

Furthermore, as detailed elsewhere herein, since June 4, 2008, SC and SE no longer provide home page previews for non-home page hyperlinks, but rather exact page previews. This constitutes additional evidence of a substantial non-infringing use for these services.

**Fifth**, in response to an interrogatory seeking information regarding Girafa's contributory infringement allegations, Girafa did not provide any information concerning SE.  (A161-163 – Rog. 14).  Thus, SE cannot serve as the basis for Girafa's contributory infringement allegations.

**Sixth**, Girafa's contention regarding contributory infringement is even more unavailing because contributory infringement cannot be solely based on the provision of a service, but instead requires "the sale of a product of some sort."  Pharmastem Therapeutics, Inc. v. Viacell, Inc., 491 F.3d 1342, 1357-58 (Fed. Cir. 2007) (reversing contributory infringement verdict because defendant merely sold a service, but not a product to the alleged direct infringer).  Here,

---

[9] Snap Shots operates in essentially the same manner whether Snap is serving Shots containing previews of web pages or other types of Shot content.  Agostino Decl. at ¶¶ 7-22 (A478-482).

Snap is not offering to sell or selling a component, material, or apparatus, but is offering a service that supplies digital data.  Thus, it cannot be liable for contributory infringement.

For these reasons, summary judgment should be granted because Girafa cannot meet its burden of proving that Snap can be held liable for contributory infringement.

    **E.**        **Girafa Cannot Prove That Any Infringement by Snap was Willful**

    **1.**        **Standard for Willful Infringement**

According to the Federal Circuit in In re Seagate Technology, LLC:

> [T]o establish willful infringement, a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent.  [citation omitted]  The state of mind of the accused infringer is not relevant to this test.

In re Seagate Technology, LLC, 497 F.3d 1360, 1371 (Fed. Cir. 2007).

The "infringement of a valid patent" language above requires the patentee to show that the accused infringer was objectively reckless as to **both** infringement and validity.  If an accused infringer has a reasonable basis for concluding that patent claims are either not infringed **or** are invalid, its behavior is not reckless.  Finisar Corp. v. DirecTV Group, Inc., 523 F.3d 1323, 1339 (Fed. Cir. 2008).

Accordingly, to prevail on summary judgment on the issue of willfulness, an accused infringer need only show that the patentee cannot show by clear and convincing evidence that a reasonable jury could find that "there was an objectively high risk of infringement." Lucent Technologies, Inc. v. Gateway, Inc., 2007 U.S. Dist. LEXIS 95934 at *20-22 (S.D. Cal. Oct. 30,2007); see also, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  Only if a patentee presents sufficient evidence to show by clear and convincing evidence that a reasonable

jury could find that there was an objectively high risk of infringement does the alleged

infringer's state of mind even become relevant:

> If this threshold objective standard is satisfied, the patentee must
> also demonstrate that this objectively-defined risk (determined by
> the record developed in the infringement proceeding) was either
> known or so obvious that it should have been known to the accused
> infringer.

In re Seagate, 497 F.3d at 1371.

Therefore, even if the first prong of the In re Seagate analysis is met, the patentee must

also demonstrate by clear and convincing evidence that a reasonable jury could find that the

accused infringer knew or clearly should have known that it was proceeding despite an

objectively high risk of infringing a valid patent.

### 2.       If Snap Infringed at all, It was not Willful

#### a.       Prior to the Service of the Complaint

Snap is not a willful infringer.  Snap did not know of the '904 Patent until it was served

with the complaint in this action in early December of 2007.  McGovern Dep. at 237:3-6 (A187).

Girafa did not send a cease and desist letter to Snap in advance of the lawsuit.  (A157 – Req. 82).

Nor has Girafa pointed to a single document to show that it provided notice of the '904 Patent to

Snap before it served Snap with this lawsuit.

Instead, Girafa relies on its highly speculative and even erroneous contents of its response

to an interrogatory from Snap.  (A171-174 – Rog. 13).  In this interrogatory response, Girafa

references April 2004 communications between Shirli Ran and Aaron Boyer.  Girafa admitted

that Aaron Boyer was not even a Snap employee.  Girafa claims *without any foundational*

*evidence whatsoever* that Mr. Boyer's obtained "actual knowledge" of "the '904 Patent" in 2004

(even though the patent was not issued until March of 2005), and that his purpose was to "create and develop Snap's products and services."

In her P.I. Motion Declaration (D.I. 43), Ms. Ran contends that she

## REDACTED

D.I. 43 (at ¶ 23 therein).  In her April 9, 2008 deposition, Ms. Ran testified that Exh. 5 to her P.I. Declaration (D.I. 43 (at Exh. 5 therein)) was                                                                                                 (Ran Dep. at 130:5-20 (A122)),

# REDACTED

Ran Dep. at 133:2-135:8 (A123).  Girafa, in the interrogatory response referenced above, also quotes Ms. Ran's deposition testimony, but purposely truncated the question immediately after Ms. Ran indicated she believed

Notably, in April of 2004, Girafa's patent had not issued (nor was it published[10]), and all of the claims in its pending application stood finally rejected.  (A42-43).  Thus, not only did Girafa not have a patent in April of 2004, but *it did not even have one allowed patent claim*.

Furthermore, Girafa's website (as of March 31, 2004 according to www.archive.org) did not even indicate that Girafa had a patent pending at that time.  (A99).

---

[10] Patent applications filed prior to November 29, 2000 (as was the application for the '904 Patent) were not automatically published after 18 months.  35 U.S.C. § 122(b); Manual of Patent Examining Procedure § 1120 (A461).  Thus, even if all of Girafa's other assertions were true, Mr. Boyer was not given, and did not have access to, Girafa's pending application.  Snap, likewise, did not see Girafa's pending patent application.

Finally, in the same interrogatory response referenced above, Girafa referenced communications in March of 2006 between Ms. Ran and Justin Wheeler of Snap. Girafa, in its response, did not contend that Ms. Ran informed Mr. Wheeler of the '904 Patent either orally or in writing. Accordingly, these communications are of no consequence to willfulness.

In summary, Girafa's claim that, prior to the service of the Complaint, Snap's alleged infringement was willful cannot be sustained. Girafa's informing of a low-level employee *of Idealab*, not Snap, of the existence of an unpublished pending patent application the claims of which were all finally rejected at the time, is not the type of evidence that remotely supports a finding that Snap is a willful infringer under In re Seagate. Accordingly, prior to the filing of this lawsuit, Snap could not have acted contrary to a known, objectively high risk of infringement of a valid patent where it did not even know of the '904 Patent.

### b.      After the Service of the Complaint

Once Snap learned of the '904 Patent in December of 2007, it likewise did not act contrary to a known, objectively high risk of infringement of a valid patent because it demonstrated to the Court in the P.I. Motion that there were "substantial questions concerning both infringement and validity." D.I. 242 (at p. 9 therein). Thus, during the pendency of this case, Snap did not proceed with its actions in the face of a known, objectively high risk of infringement of a valid patent.

In the same interrogatory response as referenced above, Girafa, in support of its far-fetched claim of willfulness, stated that Snap: "failed to exercise the necessary due care to avoid infringing the '904 Patent, has not presented a substantial defense to infringement, thereby effectively conceding the issue of infringement, and has taken no steps to cease this ongoing infringement." Girafa's assertions are meritless.

**First**, necessary due care is no longer the standard for willfulness under In re Seagate. Thus, Girafa's statement appears inapposite.

**Second**, this Court, in connection with the P.I. Motion, found that Snap presented a sufficient defense to infringement such that Snap raised substantial questions as to infringement and validity.   D.I. 242 (at p. 9 therein).   Thus, Snap presented a substantial defense to infringement during this case, and has absolutely not conceded infringement.

**Third**, Snap has made changes to its services to further distance themselves from the claims of the '904 Patent.  The June 4, 2008 changes to SC and SE (see, Part III.A.1, *supra*) eliminated any possibility that SC and SE infringed claims 1-15, 18-32, and 35-56 of the '904 Patent.  In addition, Snap made a change to SE that required a user to trigger the "providing" of the previews for a given hyperlink.  Thus, Girafa's statement that Snap "has taken no steps to cease this ongoing infringement" is simply Girafa burying its head in the sand.

The foregoing undisputed facts demonstrate the Girafa will not be able to prove that Snap, to the extent it infringed at all, was a willful infringer under In re Seagate.  Thus, summary judgment in Snap's favor on the issue of willfulness should be granted.

## V.     <u>CONCLUSION</u>

Summary judgment in Snap's favor should be granted on all of the issues presented herein.  Girafa has not met, and cannot meet, its burden to demonstrate that a reasonable jury could find that Snap infringes (let alone willfully infringes) any of the claims of the '904 Patent either literally, under the DOE, by joint infringement, or by indirect infringement.   For the reasons set forth herein, the Court should grant summary judgment on non-infringement.


Dated: June 1, 2009                            By:     <u>/s/Arthur G. Connolly, III</u>
                                                        Arthur G. Connolly, III (#2667)
                                                        CONNOLLY BOVE LODGE &
                                                        HUTZ LLP
                                                        1007 N. Orange Street
                                                        P.O. Box 2207
                                                        Wilmington, DE  19899
                                                        Tel: (302) 658-9141
                                                        Email: AConnollyIII@cblh.com

                                                        *Of Counsel*:
                                                        Daniel M. Cislo
                                                        Mark D. Nielsen
                                                        Kelly W. Cunningham
                                                        CISLO & THOMAS LLP
                                                        1333 2nd Street, Suite 500
                                                        Santa Monica, California 90401
                                                        Telephone: (310) 451-0647
                                                        Attorneys for Defendant/Counterclaim
                                                        Plaintiff Snap Technologies, Inc.

T:\07-20490\Snap's Brief in Support of Motion for Summary Judgment final.DOC