IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| GIRAFA.COM, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | C.A. No. 07-787 (SLR) |
| AMAZON WEB SERVICES LLC, | ) | |
| AMAZON.COM, INC., ALEXA | ) | |
| INTERNET, INC., IAC SEARCH & | ) | |
| MEDIA, INC., SNAP TECHNOLOGIES, | ) | |
| INC., YAHOO! INC., SMARTDEVIL INC., | ) | |
| EXALEAD, INC. AND EXALEAD S.A., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR PARTIAL
SUMMARY JUDGMENT OF INVALIDITY UNDER 35 U.S.C. § 112, ¶ 2 OF
CLAIMS 1, 4, 7, 12-15, 18, 21-24, 29-31, 42, 44, 53, and 55**

Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 351-9291
jblumenfeld@mnat.com
rsmith@mnat.com

*Attorneys for Defendant Yahoo! Inc.*

Of Counsel:
Douglas E. Lumish
Yen P. Nguyen
Christy M. von der Ahe
Weil, Gotshal & Manges, LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
doug.lumish@weil.com
titi.nguyen@weil.com
christy.vonderahe@weil.com

Jeffrey L. Moyer (# 3309)
Anne Shea Gaza(# 4093)
RICHARDS, LAYTON & FINGER
One Rodney Square
920 N. King Street
Wilmington, DE 19801
(302) 651-7539
moyer@rlf.com
gaza@rlf.com

*Attorneys for Defendant
IAC Search & Media, Inc.*

Of Counsel:
Claude M. Stern
QUINN EMANUEL URQUHART OLIVER &
HEDGES, LLP
555 Twin Dolphin Dr., Suite 560
Redwood Shores, CA 94065
claudestern@quinnemanuel.com

Arthur G. Connolly, III (#2667)
CONNOLLY, BOVE, LODGE & HUTZ
1007 N. Orange St.
PO Box 2207
Wilmington, DE 19899
(302) 658-9141
aconnollyIII@cblh.com

*Attorneys for Defendant*
*Snap Technologies, Inc.*

Of Counsel:
Daniel M. Cislo
Mark D. Nielsen
CISLO & THOMAS LLP
1333 2nd Street, Suite 500
Santa Monica, CA 90401
dan@cislo.com
mnielsen@cislo.com

Jennifer A. Kash
Alison Monahan
QUINN EMANUEL URQUHART OLIVER &
HEDGES, LLP
50 California Street 22nd Floor
San Francisco, CA 94111
jenniferkash@quinnemanuel.com
alisonmonahan@quinnemanuel.com

July 20, 2009

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ........................................................................................................... 1

II. "HOME PAGE" IS INDEFINITE ............................................................................... 1

     A.    The Term "Home Page" Is Subjective And Renders Claims Containing It Fatally Indefinite ................................................................................................ 1

          1.    Girafa's Only Named Inventor With A Technical Background Admits The Term "Home Page" Is Indefinite ........................................... 1

          2.    Other Fact Witnesses In This Case Confirm That "Home Page" Is Indefinite ................................................................................................. 3

          3.    Girafa's Other Evidence Confirms That "Home Page" Is Indefinite ........ 6

     B.    Girafa's Definition Of "Home Page" Is Also Indefinite ...................................... 10

III. "MOST REPRESENTATIVE IMAGE" IS INDEFINITE UNLESS IT IS LIMITED TO THE ALGORITHM IN THE '904 PATENT ........................................................... 12

IV. CONCLUSION ............................................................................................................. 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Bus Ass'n v. Slater*,
 231 F.3d 1 (D.C. Cir. 2000) .................................................................................. 10

*Bristol-Myers Squibb Co. v. Teva Pharms. USA, Inc.*,
 288 F. Supp. 2d 562 (S.D.N.Y. 2003) ..................................................................... 2

*Capcom Co. v. MKR Group, Inc.*,
 2008 U.S. Dist. LEXIS 83836 (N.D. Cal. October 10, 2008) .................................... 7

*Datamize, LLC v. Plumtree Software, Inc.*,
 417 F.3d 1342 (Fed. Cir. 2005) ............................................................. 2, 9, 10, 12

*Honeywell Int'l, Inc. v. U.S. Int'l Trade Comm'n*,
 341 F.3d 1332 (Fed. Cir. 2003) .............................................................................. 12

*Kinetic Concepts, Inc. v. Blue Sky Med. Group, Inc.*,
 554 F.3d 1010 (Fed. Cir. 2009) .............................................................................. 13

*Kopykake Enters., Inc. v. Lucks Co.*,
 264 F.3d 1377 (Fed. Cir. 2001) ................................................................................ 7

*Mossman v. Broderbund Software, Inc.*,
 No. 98-71244-DT, 1999 WL 696007 (E.D. Mich. May 18, 1999)............................ 2

*Nordwall v. Sec'y of Health & Human Servs.*,
 2008 U.S. Claims LEXIS 86, 2008 WL 857661 (Fed. Cl. 2008) .............................. 7

*Nystrom v. Trex Co., Inc.*,
 424 F.3d 1136 (Fed. Cir. 2005) .............................................................................. 13

*Old Town Canoe Co. v. Confluence Holdings Corp.*,
 448 F.3d 1309 (Fed. Cir. 2006) .............................................................................. 13

*PC Connector Solutions LLC v. SmartDisk Corp.*,
 406 F.3d 1359 (Fed. Cir. 2005) ............................................................................ 6, 7

*Phillips v. AWH Corp.*,
 415 F.3d 1303 (Fed. Cir. 2005) (*en banc*) ..................................................... 6, 7, 13

*Plant Genetic Sys, N.V. v. DeKalb Genetics Corp.*,
 315 F.3d 1335 (Fed. Cir. 2003) ................................................................................ 7

ii

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Schering Corp. v. Amgen Inc.*,
   222 F.3d 1347 (Fed. Cir. 2000) ............................................................... 7

*Smith & Nephew, Inc. v. Ethicon, Inc.*,
   276 F.3d 1304 (Fed. Cir. 2001) ............................................................... 2

*Talecris Biotherapeutics, Inc. v. Baxter Int'l, Inc.*,
   510 F. Supp. 2d 356 (D. Del. 2007) ................................................. 13, 14

*Warner-Lambert Co. v. Apotex Corp., et al.*,
   316 F.3d 1348 (Fed. Cir. 2003) ............................................................. 10

**Statutes**

Fed. R. Evid. § 901 ................................................................................. 8

## I.    INTRODUCTION

Girafa's '904 patent includes at least two terms that are subjective and insolubly ambiguous:   "Home page" and "most representative image."   As detailed in Defendants' Opening Brief, the indefiniteness of the claims that include these terms is evidenced by numerous sources including the testimony of Girafa's own inventors, the fact witnesses in this case, the reports and testimony of the experts including Girafa's expert, and the same dictionaries on which Girafa relies for its proposed constructions.   In its opposition, Girafa attempts to conjure up a question of fact by making a string of arguments quibbling with this wealth of evidence against it.   None of these arguments, however, creates a _genuine_ question of fact for a jury and partial summary judgment of invalidity should be granted.

## II.    "HOME PAGE" IS INDEFINITE

### A.    The Term "Home Page" Is Subjective And Renders Claims Containing It Fatally Indefinite

#### 1.    Girafa's Only Named Inventor With A Technical Background Admits The Term "Home Page" Is Indefinite

As explained in Defendants' opening brief and their opening claim construction brief, named inventor Yuval Yarom—the only inventor with a technical background[1]—conceded in plain terms that he did not know of any accepted or "good" definition of "home page," and that he would have to "guess" at the meaning of the term:

Q.    What is the accepted definition of "home page"?

A.    **I do not know**.

---

[1]    Mr. Yarom held an undergraduate and masters degree in computer science at the time he joined Girafa, and is currently studying for a Ph.D. in the field.  JA-110 [Yarom 11/12/08 Dep.] at 38:7-40:6.  Mr. Yarom is the only one of the three inventors Dr. Myers identified as being one of ordinary skill in the art.  JA-105 [Myers 4/20/09 Dep.] at 48:11-21.

Q. You don't know?

A. **I would have to ask many users to get the response to what home page is or will have to make a guess**.

Q. So you're saying that the term "home page" is[n't, sic] a term of art in the computer science field?

A. I wouldn't say that it is a term of art, but I say -- I would say that **I'm yet to see a good definition of this term in the -- in this field of computer science**.

JA-110[2] [Yarom 11/12/2008 Dep.] at 222:5-17; *see also id.* at 219:9-220:9.

This testimony, in and of itself, establishes the indefiniteness of the term "home page" as a matter of law.  *See Mossman v. Broderbund Software, Inc*., No. 98-71244-DT, 1999 WL 696007 (E.D. Mich. May 18, 1999) (holding indefinite the phrase "readily follow" for a reading program that involved highlighting of words on a screen where inventor testified that to obtain meaning of whether highlighting was "readily followable," one would have to conduct empirical surveys to determine the speed at which different readers read), cited with approval by *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1350 (Fed. Cir. 2005).

Surprisingly, Girafa never addresses this compelling testimony in its opposition—indeed, it never even mentions it.[3]  It also ignores the testimony from a second named inventor, Eldad Barnoon, admitting that he did not know what a home page is.  JA-101 [Barnoon 12/04/2008 Dep.] at 67:19-20 ("Q.  What's a home page?  A.  I don't know.").

---

[2]    Citations to "JA" in this brief are to the Joint Appendix previously submitted by the parties with their opening claim construction briefs.  Also, emphases in quotations are supplied by Defendants unless otherwise noted.

[3]    Girafa's opposition also does not dispute that inventors' admissions against interest are relevant evidence of indefiniteness.  *See Smith & Nephew, Inc. v. Ethicon, Inc.*, 276 F.3d 1304, 1309-10 (Fed. Cir. 2001) (relying in part on inventor deposition testimony); *Bristol-Myers Squibb Co. v. Teva Pharms. USA, Inc.*, 288 F. Supp. 2d 562, 586 (S.D.N.Y. 2003) ("The testimony of the inventors against interest in this case is relevant and persuasive to inform the court's claim construction.").

It speaks volumes that Girafa could not respond to the concessions by its own inventors that "home page" is not a term with a concrete meaning in the field.

### 2. Other Fact Witnesses In This Case Confirm That "Home Page" Is Indefinite

In their motion, Defendants' cited the testimony of several fact witnesses who, like Mr. Yarom, explained that "home page" has no clear meaning in the field and is subjective:

> Todd Sampson (Yahoo! Engineer): "'Home page' has many, many meanings in the industry as an industry professional." JA-109 [Sampson 1/8/2009 Dep.] at 21:25-22:2.

> Patrice Bertin (Exalead Engineer): "[T]here are a lot of -- many different definitions for the term 'home page.'" JA-102 [Bertin 12/11/2009 Dep.] at 36:7-8.

> Stephen Hood (Yahoo! Engineer): "[I]t's subjective." JA-103 [Hood 1/7/2009 Dep.] at 49:19-22.

In its opposition, Girafa fails to offer any testimony from any witness saying that there was a standard, well-known meaning for the term "home page." Instead, it tries to recast the depositions in this case to argue that the witnesses actually testified in support of Girafa's position. *See* D.I. 364 [Girafa Opp'n Br.] at 6-7. This argument bears no weight because, when read in its full context, the testimony on which Girafa relies squarely contradicts Girafa's position and supports Defendants' contentions.

For example, Girafa relies on a truncated excerpt from Mr. Sampson's deposition to suggest that "home page" has a "typical" definition as "the uppermost page on a site." *Id.* at 6 (citing JA-10 [Sampson 1/8/09 Dep.] at 22:3-11). The full testimony makes clear, however, that Mr. Sampson recognizes there are "many, many meanings" for the term "home page":

> Q. I'm just trying to get a sense of what your understanding is of the term "home page."

> **A. "Home page" has many, many meanings in the industry as an industry professional.**

> **Q.**     **What is your understanding?  Do you have a singular definition for a home page?**
>
> **A.**     **I don't have a singular definition for a home page. I also would say that there are multiple acceptable definitions of a home page.**
>
> Q.     What definition do you use the most, if there is such a thing?
>
> A.     **If there was a personal definition** that I had for it, it would be the uppermost page on a site.

JA-10 [Sampson 1/8/09 Dep.] at 21:3-22:11.

Likewise, in a passage cited by Girafa, D.I. 364 [Girafa Opp'n Br.] at 6, Mr. Bertin testified that there are "many different definitions" for "home page," and that "in general terms," <u>but not in "technical terms,"</u> he considered a home page to be "the page chosen by a number of pages or site as being the main page through which users arrive or change destination -- the central page."  JA-102 [Bertin 12/11/08 Dep.] at 36:6-19.  But, in the passages immediately following this—testimony not cited in Girafa's opposition—Mr. Bertin explained his answer and, again, underscored the lack of a single, concrete definition for "home page":

> Q.     And when you say "page chosen by a number of pages," can you clarify that, please?
>
> A.     **There is no universal usage of the address of the home page.  It depends completely on the software used to create the site and the preferences of that software and the choice of the creator of the site**.
>
> Q.     So is it your testimony that depending on the software that's used, the URL address of the home page could vary?
>
> A.     Exactly, yes.

*Id.* at 36:20-37:5.

Girafa also omits important testimony and takes Mr. Hood's deposition out of context by arguing he testified that "home <u>page</u>" is typically defined as the "main page of the site that users come to when they first come to it."  D.I. 364 [Girafa Opp'n Br.] at 6 (citing JA-103

[Hood 1/7/09 Dep.] at 49:13-15).  The full text of Mr. Hood's testimony makes clear that he was

not giving a "typical" definition, only a definition for a specific accused product—Delicious—

and that he confirmed that the term "home page" is subjective and without a common meaning

even within Yahoo!:

> Q.   And I'm just asking what your understanding [of "home page"] is.
>
> A.   Okay.  **When I refer to the home page of Delicious**, I refer to the main page of the site that users come to when they first come to it.
>
> …
>
> **Q.   Do you know if there's a definition that's used within Yahoo of home pages?**
>
> **A.   There isn't.  It's -- it's subjective.  It kind of depends on the site.**

JA-103 [Hood 1/7/09 Dep.] at 49:11-49:22.

The same is true for the other witnesses' testimony emphasized in Girafa's brief.

Girafa suggests that IACSAM's witness, Bruce Harris, testified that "home page" means "root

domain" as a standard definition.  D.I. 364 [Girafa Opp'n Br.] at 6.  Mr. Harris said nothing of

the sort.  On the contrary, Mr. Harris never attempted to define "home page" at all, but merely

noted that, if an image of a particular web page is not available there are times when the accused

IACSAM technology will display the phrase "Site Home Page" together with an with an image

of the Ask.com domain web page:  "If it doesn't—and it may not because we don't have images

for everything—then it may show a scaled image of the root domain of that. …  So if, for

example, that it was www.ask.com/images, then let's say that we didn't have a, an image for that

particular page, then we would just show an image for www.ask.com.  And then there's also a

little graphic item that I think says site home page."  Girafa Ex. 9 [Harris Dep.] at 51:22-52:7.

Similarly, the testimony of Snap engineer Michael Agostino cannot fairly be read to suggest that those of ordinary skill in the art apply a known meaning to the term "home page" as the first page" as Girafa urges.  D.I. 364 [Girafa Opp'n Br.] at 6.  Indeed, Mr. Agostino gave three different meanings for the term when he stated "[a] home page is typically what people think of as the first page **or** what they might reach by clicking on a logo at the upper left-hand corner **or** clicking on a link that says 'home[.]'"  JA-7 [Agostino 12/10/08 Dep.] at 207:10-15.  Mr. Agostino also noted that "a home page and a root page aren't necessarily the same thing." *Id.*

Finally, Girafa's contention that Defendants' briefs and expert reports support its position is incorrect.  D.I. 364 [Girafa Opp'n Br.] at 6-7.  All of the Defendants jointly brought this motion for partial summary judgment, and the Defendants' experts agree that the term "home page" is indefinite.  *See, e.g.*, JA-145 [Greenberg Expert Report on Non-Infringement], ¶ 34; JA-146 [Bederson Expert Report on Non-Infringement] at 29:1-32:8.

In sum, Girafa cannot point to a shred of testimony in this case that supports its argument that the term "home page" had a "typical" meaning to those of ordinary skill in the art in 1999 and 2000.  Rather, the witnesses in this case—including Girafa's own named inventors—have all agreed that there is no one common meaning for "home page."  In the end, as the testimony set forth above shows, there are many different meanings of "home page" and whether a given page is a "home page" is ultimately a subjective question.

### 3.	Girafa's Other Evidence Confirms That "Home Page" Is Indefinite

Girafa relies on a handful of documents, dictionaries, and web pages to argue that there is a known meaning to "home page."  D.I. 364 [Girafa Opp'n Br.] at 7.  None of this evidence establishes a genuine question of material fact that should preclude summary judgment.

First, Girafa relies on two Yahoo! documents that include the phrase "home page." *Id.* at 7 (citing Girafa Ex. 18 [YH-001874 ] (GirA-279) and Girafa Ex. 21 [005513] (GirA-286)). This is of no moment. Defendants do not deny that the term "home page" is frequently used including within their own companies. This has <u>nothing</u> to do with whether the term has a concrete definition that can be applied as opposed to being subjective and insolubly ambiguous. Furthermore, it has no relationship to the context of the '904 patent. *See PC Connector Solutions LLC v. SmartDisk Corp.*, 406 F.3d 1359, 1363 (Fed. Cir. 2005) ("A claim cannot have different meanings at different times; its meaning must be interpreted as of its effective filing date."); *see also Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (*en banc*). Neither cited Yahoo! document sets forth any definition for "home page," much less a standard, known definition for the term.

Second, Girafa relies on an IACSAM document that refers to a "new attribute" to its technology which is "used to indicate an image that is not an exact match for the given URL, but is instead the root or home page for the site." D.I. 364 [Girafa Opp'n Br.] at 7 (quoting Ex. 19 [IAC0000542] (GirA-280-284)). This document is, at best, ambiguous, but appears to state that the new "<PreviewUrl>" element indicates an image is <u>either</u> the root <u>or</u> the home page, not that "root" and "home page" are synonyms. Girafa Ex. 19 [IAC0000542] (GirA-280-284 ("the root <u>**or**</u> home page for the site.")). In any event, this document from 2007 falls far short of evidencing a known meaning for the term "home page" in 1999 or 2000: It is specific to the Binoculars feature in 2007 and says nothing about how a person of ordinary skill in the art would understand the phrase "home page" divorced from the Binoculars product in 1999 or at any other time. *Cf. Plant Genetic Sys, N.V. v. DeKalb Genetics Corp.*, 315 F.3d 1335, 1345 (Fed. Cir. 2003) ("'[W]hen a claim term understood to have a narrow meaning when the application is filed

later acquires a broader definition, the literal scope of the term is limited to what it was understood to mean at the time of filing.") (citing *Kopykake Enters., Inc. v. Lucks Co.*, 264 F.3d 1377, 1383 (Fed. Cir. 2001)); *Schering Corp. v. Amgen Inc.*, 222 F.3d 1347, 1353-54 (Fed. Cir. 2000)); *see PC Connector*, 406 F.3d at 1363; *see also Phillips*, 415 F.3d at 1313.

Third, Girafa cites to two "online sources" that it says demonstrate a known meaning for "home page." D.I. 364 [Girafa Opp'n Br.] at 8-9. The first of these "sources" is a page from the Wikipedia.org website. *Id.* (citing Girafa Ex. 13A at GirA-256). As an initial matter, because its contents can be altered or edited by anybody indiscriminately, Wikipedia has been criticized by courts as an unreliable source. *See, e.g.*, *Nordwall v. Sec'y of Health & Human Servs.*, 2008 U.S. Claims LEXIS 86, 2008 WL 857661, at *7 n.6 (Fed. Cl. 2008) ("Wikipedia may not be a reliable source of information"); *Capcom Co. v. MKR Group, Inc.*, 2008 U.S. Dist. LEXIS 83836, * 11 (N.D. Cal. October 10, 2008) (finding Wikipedia "inappropriate for judicial notice"). Also, the Wikipedia page appears to be a current one and so is of little value in determining the meaning of "home page" nine years ago. Moreover, the Wikipedia entry on which Girafa relies again gives <u>multiple definitions</u> for "home page," including the primary definition which bears no resemblance to the definition urged by Girafa in this case. Girafa Ex. 13A at GirA-256 ("The homepage (often written as home page) is the URL or local file that automatically loads when a web browser starts or when the browser's 'home' button is pressed."). The secondary definitions in the Wikipedia page support <u>Defendants'</u> position that there are multiple, different meanings for the term. *Id.* (defining "home page" variably as "the front page, webserver directory index, or main web page" and also as "websites that attempt to be a start page").

Next, Girafa cites to two pages from a web site apparently owned or edited by a third party named Adam Costello.  These pages also appear to have been generated in 2008 and so are not reliable evidence of the meaning of "home page" from nearly a decade earlier.  The pages also have never been authenticated and are not admissible or properly before the court as evidence.[4]  Fed. R. Evid. § 901.  Nonetheless, when read in their entirety, these pages support Defendants' position.  Specifically, Mr. Costello describes two types of web pages that are "vastly different in form and purpose" but that are "for some strange reason" both referred to as "home pages."  Girafa Ex. 13B (GirA258) (describing as "home pages" both (a) web pages that are found by clicking a "home button" which "would take you back to a particular page of your choosing (or your sysadmin's default choice)" and (b) a "general introductory web page").  Here again, the evidence shows that, far from having a known, discernable meaning" on its face, "home page" is a deeply ambiguous term.

Finally, Girafa refers to two dictionary definitions to conclude that "one skilled in the art could use these characteristics to determine whether a web page is a home page."  D.I. 364 [Girafa Opp'n Br.] at 9.  As explained in Defendants' opening brief and in their claim construction briefing, these definitions further illustrate the ambiguity of the term "home page" by focusing their definitions on the subjective "intent" of the page.  *See, e.g.*, JA-120 [AMERICAN HERITAGE DICTIONARY (3rd ed. 1992)] at 865 ("The file available for access at a World Wide Web site intended chiefly to greet visitors, provide information about the site, and direct them to other sites with more or related information."); JA-121 [MICROSOFT COMPUTER DICTIONARY (5th ed. 2002)] at 255 ("home page[:] A document intended to serve as a starting point in a hypertext

---

[4]     Based on the web pages, Girafa asserts that Mr. Costello is an engineer with Google, which is not a party to this action.  D.I. 364 [Girafa Opp'n Br.] at 8.  Mr. Costello was never deposed and has not provided a declaration in this case, so his identity or the circumstances under which he may have prepared these web pages are unknown.

system, especially the World Wide Web").  Notably, Girafa does not deny that these definitions establish the subjective nature of the term "home page," but merely argues in conclusory terms that "the intended functions of a home page have no bearing on whether one skilled in the art would be able to discern the meaning of 'home page.'"  Girafa Opp'n Br. at 9.  This makes no sense:  That the dictionary definitions of "home page" rely on the subjective intentions of the page is compelling evidence that the term is indefinite.  *Datamize*, 417 F.3d at 1350 ("The scope of claim language cannot depend solely on the unrestrained, subjective opinion of a particular individual purportedly practicing the invention. … Some objective standard must be provided in order to allow the public to determine the scope of the claimed invention.").

**B.      Girafa's Definition Of "Home Page" Is Also Indefinite**

Girafa's proposed construction, "a main or front page of a website," only adds additional ambiguity to the term.  Whereas the patent consistently refers to "the home page," Girafa now attempts to broaden the claims to cover "a main or front page," *i.e.*, more than one "home page" for a given hyperlink.  This is consistent with Dr. Myers' expert opinion, that there is *no limit* to the number of potential "home pages" a given website might have:

Q.      There could be more than one main or front page?

A.      Sure.

Q.      And is there any limit to the number of main or front pages to a website?

A.      No.

JA-106 [Myers 4/21/09 Dep.] at 130:2-7; *see also id.* at 129:20-22 ("Q.  So are you saying there's only one main or front page for each website, then.  A.  No."); JA-105 [Myers 4/20/09 Dep.] at 72:18-19 ("I think my construction allows for multiple home pages.").  The '904 patent uses "the home page" consistently, and Girafa should not be allowed to rewrite the claims to

cover "a home page," i.e., *any page* that one skilled in the art might subjectively consider to be the "main or front" page of a website.[5]   The distinction between "a" and "the" is well established.   *See, e.g.*, *Warner-Lambert Co. v. Apotex Corp., et al.*, 316 F.3d 1348, 1356 (Fed. Cir. 2003) (quoting *Am. Bus Ass'n v. Slater*, 231 F.3d 1, 4-5 (D.C. Cir. 2000) ("It is a rule of law well established that the definite article 'the' particularizes the subject which it precedes.   It is a word of limitation as opposed to the indefinite or generalizing force of 'a' or 'an.'")).

Girafa attempts to sidle around its revision of "the home page" into any number of home pages based purely on the passages from Mr. Agostino's deposition testimony discussed above.  D.I. 364 [Girafa Opp'n Br.] at 10.  But Mr. Agostino did not testify about the meaning of the phrase "the home page" and whether it would encompass multiple different home pages.  He also was not asked in these passages about Girafa's '904 patent and is not testifying about the meaning of the phrase in the patent claims.   Instead, Mr. Agostino's testimony relates to a hypothetical set of web pages and, as discussed above, ultimately supports Defendants' position by giving three different definitions of a home page.  JA-7 [Agostino 12/10/08 Dep.] at 207:10-15.

Girafa also responds that "the disclosure of such objective guidelines is irrelevant in light of the fact that 'the basic concept of a home page was well known in the art.'"  D.I. 364 [Girafa Opp'n Br.] at 9.  Girafa offers no authority for its contention that the subjective nature of a definition is "irrelevant" or that any term for which a "basic concept" was known is somehow immune from being found indefinite.  Of course, the law says otherwise.  *Datamize*, 417 F.3d at

---

[5]     Girafa also ignores the opinions in Dr. Greenberg's expert report that the "main" and "front" pages of a website are undefined, subjective, and not necessarily co-extensive, JA-145 [Greenberg Expert Report on Non-Infringement], ¶36, and in Dr. Bederson's report that one person's "main" page may be another person's secondary or tertiary page, JA-146 [Bederson Expert Report on Non-Infringement] at 31:24-32:2.

1350 ("The scope of claim language cannot depend solely on the unrestrained, subjective opinion of a particular individual purportedly practicing the invention").

In short, Girafa has put forth no evidence that creates a genuine issue of material fact about whether the "home page" limitation in the '904 patent is invalid. Consequently, summary judgment in favor of Defendants is warranted.

## III.   "MOST REPRESENTATIVE IMAGE" IS INDEFINITE UNLESS IT IS LIMITED TO THE ALGORITHM IN THE '904 PATENT

As detailed in Defendants' opening brief, "the most representative image of a given web page" is inherently subjective, and, consequently, indefinite. *Datamize*, 417 F.3d at 1350 ("The scope of claim language cannot depend solely on the unrestrained, subjective opinion of a particular individual purportedly practicing the invention. … Some objective standard must be provided in order to allow the public to determine the scope of the claimed invention."). The broader phrase on which Girafa focuses—"trimming a path component based on the consideration of finding the most representative image of a given web page"—is even *less* clear.

Girafa contends that these disputed phrases are not indefinite because the '904 patent and its file history "provide examples of how to determine the most representative image." D.I. 364 [Girafa Opp'n Br.] at 19-20. But, knowing that none of the accused Defendants employ the disclosed algorithm, Girafa objects to the pertinent claims being limited to the only exemplar algorithm given in the patent. *Id*. at 20-22. In this way, Girafa seeks to "have its cake and eat it too" by expanding its claims to cover anything that it may later contend is a "most representative page" despite the inherent subjectivity in the term, and yet avoid the invalidity of its claims that use this term. Girafa's position finds no support in the evidence or the law.

Girafa first contends that Defendants' invalidity expert Dr. Greenberg and Snap's expert Dr. Robins both admitted that "they understand what is covered by claims 44 and 55, which contain the phrase 'most representative image'" and so those claims are not indefinite. *Id.* at 18.   Girafa exaggerates the import of this testimony.   In the passage that precedes the testimony Girafa cites, Dr. Greenberg could not have been more clear:

> Q.      So it's my understanding that you are of the opinion that
>         Claims 44 and 55 of the '904 patent are indefinite.
>
> A.      Yes, I am.

Girafa Ex. 12 [Greenberg Dep.] at 391:18-21.   Instead of asking Dr. Greenberg or Dr. Robins directly whether a person of ordinary skill in the art would be able to determine the bounds of the claims using the term "most representative image of a given web page," Girafa instead asked only vague questions about whether they "understand" the claims in broad terms. *Id.* at 392:15-19; Girafa Ex. 10 [Robins Dep.] at 379:19-380:10.   Girafa never asked what the witnesses' understanding was, and whether it included the alternative that the claims were indefinite or limited to the sole algorithm in the patent for locating a "most representative image."   Because it is superficial and does not address the relevant legal issue, the testimony on which Girafa relies should not be credited and cannot reasonably create a genuine question of fact that precludes summary judgment.

Girafa then argues that the term "most representative image" is not indefinite under the *Datamize* or *Honeywell* decisions because, unlike here, in those cases the patents-in-suit did not include examples of the indefinite terms ("aesthetically pleasing" and a required sample preparation method respectively).   D.I. 364 [Girafa Opp'n Br.] at 18-19.   It is true that the *Datamize* and *Honeywell* decisions did note the lack of examples by which the disputed terms could be defined in the written description of the patents-in-suit.   Neither decision held or even

suggested, however, that the mere existence of any example would automatically save an insolubly ambiguous term from indefiniteness. Rather, in *Datamize*, the Federal Circuit held that, where a claim term would "depend on an undefined standard" and "the written description does not provide any reasonable, definite construction of 'aesthetically pleasing,'" the term is indefinite. *Datamize*, 417 F.3d at 1352. Similarly, the Federal Circuit in *Honeywell* did not rely purely on the lack of an example, but found the claims to be insolubly ambiguous only "[a]fter reviewing the entire record regarding claim construction." *Honeywell Int'l, Inc. v. U.S. Int'l Trade Comm'n*, 341 F.3d 1332, 1340 (Fed. Cir. 2003). As explained in Defendants' motion, the record for the '904 patent overwhelmingly establishes that the phrase "most representative image" is wholly subjective and insolubly ambiguous.

Girafa's focus on the lack of examples in *Datamize* and *Honeywell* is inconsistent with its position that the '904 patent should not be limited to the sole algorithm set forth in the intrinsic evidence purporting to give an example of finding a "most representative image." If, as urged by Girafa, the '904 patent is distinguishable from those cases because it has an example that purportedly gives bounds to the scope of the claims, then it only stands to reason that the claims should be limited to that algorithm. The specification explicitly states that the algorithm determines "the most representative image of a given web page," JA-1 ['904 patent] at 7:18-22, and both Girafa's expert and co-inventor Yuval Yarom agree that the disclosed algorithm implements the functionality the inventors considered necessary to determine "the most representative image" for a given URL. JA-105 [Myers 4/20/09 Dep.] at 259:16-20; JA-111 [Yarom 11/13/08 Dep.] at 515:15-20. Consequently, if there is to be any definite scope to these

claims, it can only be found by the result of this algorithm.  Otherwise, this claim term must be found indefinite.[6]

Toward this same end, Girafa cites this Court's decision in *Talecris Biotherapeutics, Inc. v.* Baxter *Int'l., Inc.*, 510 F. Supp. 2d 356 (D. Del. 2007).  D.I. 364 [Girafa Opp'n Br.] at 19-20.   In that case, the Court denied summary judgment of indefiniteness concerning the phrase "acceptable level suitable for intravenous administration."  *Talecris*, 510 F. Supp. 2d at 361.  As Girafa notes, the Court determined that "the claim in *Talecris* required only a relative measurement of ACA levels" as opposed to a numeric value.  *Id.*; *see also* D.I. 364 [Girafa Opp'n Br.] at 19.  Girafa then concludes, without explanation or analysis, that "[t]hat is exactly the situation here."  D.I. 364 [Girafa Opp'n Br.] at 19.  But the facts in *Talecris* are very different from the facts in this case.  Here, we have a phrase—"most representative image"—that a plethora of evidence, including the admissions of Girafa's own inventor, establishes to be:  (1) purely subjective; and (2) a function of who is deciding whether a given web page is more or less representative than another web page.  In *Talecris*, on the other hand, the Court found that whether the claimed ACA levels were at an "acceptable level" was something that <u>could be measured objectively</u>, as conceded by Baxter's infringement expert who admitted in deposition that the FDA's release limits "are indicative of what the regulatory authority and manufacturer have agreed are ***acceptable*** to give a human patient, for release of a particular product, and that everyone in his field would know as much."  *Talecris*, 510 F. Supp.

---

[6]     Girafa's argument that limiting the claims to the disclosed algorithm would improperly read in an example from the specification is easily dispatched.  Numerous cases since the Federal Circuit's decision in *Phillips* have limited claims to the embodiments set forth only in the written description when it was clear that those embodiments were properly part of the claims even though not explicitly claimed.  *See, e.g.*, *Kinetic Concepts, Inc. v. Blue Sky Med. Group, Inc.*, 554 F.3d 1010, 1018-19 (Fed. Cir. 2009); *Old Town Canoe Co. v. Confluence Holdings Corp.*, 448 F.3d 1309, 1318 (Fed. Cir. 2006); *Nystrom v. Trex Co., Inc.*, 424 F.3d 1136, 1142, 1144 (Fed. Cir. 2005).

2d at 361 (emphasis in original).  Here, Defendants' experts admit nothing of the kind, and there is <u>no</u> evidence to establish any objective measure for the "most representative image" other than perhaps the exemplar algorithm in the '904 patent.  The Court's holding in *Talecris*, consequently, does not apply.

In sum, the '904 patent provides only a single example of an algorithm for determining the "most representative image of a given web page."  Girafa contends that this one example saves this phrase from being insolubly ambiguous, yet that it should not be used to limit the claims.  Girafa cannot have it both ways:  Either the claims are insolubly ambiguous for failing to provide an objective basis to determine the most representative image of a web page, or the claims should be limited only to that algorithm.

## IV.    CONCLUSION

For the foregoing reasons, Defendants respectfully asks the Court to grant partial summary judgment of invalidity for claims 1, 4, 7, 12-15, 18, 21-24, 29-31, 42, 44, 53, and 55 of the '904 patent.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ Rodger D. Smith II
_____
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 351-9291
jblumenfeld@mnat.com
rsmith@mnat.com

*Attorneys for Defendant Yahoo! Inc.*

RICHARDS, LAYTON & FINGER P.A.

/s/ Anne Shea Gaza
_____
Jeffrey L. Moyer (# 3309)
Anne Shea Gaza(# 4093)
One Rodney Square
920 N. King Street
Wilmington, DE 19801
(302) 651-7539
moyer@rlf.com
gaza@rlf.com

*Attorneys for Defendant*
*IAC Search & Media, Inc.*

Of Counsel:
Douglas E. Lumish
Yen P. Nguyen
Christy M. von der Ahe
WEIL, GOTSHAL & MANGES, LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
doug.lumish@weil.com
titi.nguyen@weil.com
christy.vonderahe@weil.com


CONNOLLY, BOVE, LODGE & HUTZ LLP

*/s/ Arthur G. Connolly, III*
_____
Arthur G. Connolly, III (#2667)
1007 N. Orange St.
PO Box 2207
Wilmington, DE 19899
(302) 658-9141
aconnollyIII@cblh.com

*Attorneys for Defendant*
*Snap Technologies, Inc.*

Of Counsel :
Daniel M. Cislo
Mark D. Nielsen
CISLO & THOMAS LLP
1333 2nd Street, Suite 500
Santa Monica, CA 90401
dan@cislo.com
mnielsen@cislo.com
July 20, 2009

3029114

Of Counsel:
Claude M. Stern
QUINN EMANUEL URQUHART OLIVER &
HEDGES, LLP
555 Twin Dolphin Dr., Suite 560
Redwood Shores, CA 94065
claudestern@quinnemanuel.com

Jennifer A. Kash
Alison Monahan
QUINN EMANUEL URQUHART OLIVER &
HEDGES, LLP
50 California Street 22nd Floor
San Francisco, CA 94111
jenniferkash@quinnemanuel.com
alisonmonahan@quinnemanuel.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 20, 2009, I caused the foregoing to be electronically

filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to:

Steven J. Balick, Esquire
John G. Day, Esquire
Tiffany Geyer Lydon, Esquire
ASHBY & GEDDES

Thomas C. Grimm, Esquire
MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Arthur G. Connolly, III, Esquire
CONNOLLY BOVE LODGE & HUTZ LLP

Jeffrey L. Moyer, Esquire
Anne Shea Gaza, Esquire
RICHARDS, LAYTON & FINGER, P.A.

I further certify that I caused to be served copies of the foregoing document on

July 20, 2009, upon the following in the manner indicated:

Steven J. Balick, Esquire                                             *VIA ELECTRONIC MAIL*
John G. Day, Esquire
Tiffany Geyer Lydon, Esquire
ASHBY & GEDDES
500 Delaware Avenue – 8th Floor
Wilmington, DE  19801
*Counsel for Plaintiff*

William H. Mandir, Esquire                                          *VIA ELECTRONIC MAIL*
John F. Rabena, Esquire
Chid S. Iyer, Esquire
SUGHRUE MION, PLLC
2100 Pennsylvania Avenue, N.W.
Washington, DC  20037
*Counsel for Plaintiff*

Thomas C. Grimm, Esquire  
MORRIS, NICHOLS, ARSHT & TUNNELL LLP  
1201 North Market Street  
Wilmington, DE  19801  
*Counsel for Exalead, Inc. and Exalead S.A.*

*VIA ELECTRONIC MAIL*

Harold V. Johnson, Esquire  
BRINKS HOFER GILSON & LIONE  
NBC Tower, Suite 3600  
455 North Cityfront Plaza Drive  
Chicago, IL  60611-5599  
*Counsel for Exalead, Inc. and Exalead S.A.*

*VIA ELECTRONIC MAIL*

Arthur G. Connolly, III, Esquire  
CONNOLLY BOVE LODGE & HUTZ LLP  
1007 North Orange Street  
Wilmington, DE  19801  
*Counsel for Snap Technologies, Inc.*

*VIA ELECTRONIC MAIL*

Daniel M. Cislo, Esquire  
Mark D. Nielsen, Esquire  
Kelly W. Cunningham, Esquire  
CISLO & THOMAS LLP  
1333 2nd Street – Suite 500  
Santa Monica, CA  90401  
*Counsel for Snap Technologies, Inc.*

*VIA ELECTRONIC MAIL*

Jeffrey L. Moyer, Esquire  
Anne Shea Gaza, Esquire  
RICHARDS, LAYTON & FINGER, P.A.  
One Rodney Square  
920 North King Street  
Wilmington, DE  19801  
*Counsel for IAC Search & Media, Inc.*

*VIA ELECTRONIC MAIL*

Claude M. Stern, Esquire  
Jennifer A. Kash, Esquire  
Antonio Sistos, Esquire  
QUINN EMANUEL URQUHART OLIVER  
  & HEDGES LLP  
50 California Street – 22nd Floor  
San Francisco, CA  94111  
*Counsel IAC Search & Media, Inc.*

*VIA ELECTRONIC MAIL*

*/s/ Rodger D. Smith II*  
Rodger D. Smith II (#3778)