IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

GIRAFA.COM, INC.,                              )
                                               )
                Plaintiff,                     )
                                               )
        v.                                     ) Civ. No. 07-787-SLR
                                               )
IAC SEARCH & MEDIA, INC.,                      )
SNAP TECHNOLOGIES, INC.,                       )
YAHOO! INC. and                                )
SMARTDEVIL INC.,                               )
                                               )
                Defendants.                    )

---

Steven J. Balick, Esquire, John G. Day, Esquire, and Tiffany Geyer Lydon, Esquire, of Ashby & Geddes, Wilmington, Delaware. Counsel for Plaintiff. Of Counsel: William H. Mandir, Esquire, John F. Rabena, Esquire, Carl J. Pellegrini, Esquire, Chandran B. Iyer, Esquire, Trevor C. Hill, Esquire, and Ryan M. Corbett, Esquire, of Sughrue Mion, PLLC, Washington, D.C.

Arthur G. Connolly, III, Esquire, of Connolly, Bove, Lodge & Hutz, Wilmington, Delaware. Counsel for Defendant Snap Technologies, Inc. Of Counsel: Daniel M. Cislo, Esquire, and Mark D. Nielsen, Esquire, of Cislo & Thomas LLP, Santa Monica, California. Jeffrey L. Moyer, Esquire, and Anne Shea Gaza, Esquire, of Richards, Layton & Finger, Wilmington, Delaware. Counsel for Defendant IAC Search & Media, Inc. Of Counsel: Claude M. Stern, Esquire, of Quinn Emanuel Urquhart Oliver & Hedges, LLP, Redwood Shores, California, and Jennifer A. Kash, Esquire, and Alison Monahan, Esquire, of Quinn Emanuel Urquhart Oliver & Hedges, LLP, San Francisco, California. Jack B. Blumenfeld, Esquire, and Rodger D. Smith II, Esquire, of Morris, Nichols, Arsht & Tunnell LLP, Wilmington, Delaware. Counsel for Defendant Yahoo! Inc. Of Counsel: Douglas E. Lumish, Esquire, Yen P. Nguyen, Esquire, and Christy M. von der Ahe, Esquire, of Weil, Gotshal & Manges, LLP, Redwood Shores, California.

---

**MEMORANDUM OPINION**

Dated: September 15, 2009
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Plaintiff Girafa.com, Inc. ("Girafa" or "plaintiff") filed this suit against multiple defendants on December 5, 2007 alleging infringement of plaintiff's United States Patent No. 6,864,904 ("the '904 patent"). (D.I. 1) Remaining in the suit are defendants IAC Search & Media, Inc. ("IAC"), Snap Technologies, Inc. ("Snap"), Yahoo! Inc. ("Yahoo"), and Smartdevil Inc. ("Smartdevil") (collectively, "defendants").[1] Fact and expert discovery have closed, and trial is currently scheduled to commence October 5, 2009.

Pending before the court are: (1) defendants' joint motion for summary judgment of invalidity of the '904 patent under 35 U.S.C. § 103 (D.I. 320); (2) defendants' joint motion for partial summary judgment of invalidity under 35 U.S.C. § 112 (D.I. 313); (3) Snap's motion for summary judgment of noninfringement (D.I. 302); (4) Yahoo's motion for summary judgment of noninfringement (D.I. 316); (5) IAC's motion for summary judgment of noninfringement (D.I. 317); and (6) defendants' joint motion for leave to file a motion to strike (D.I. 325). The court has jurisdiction over these matters pursuant to 28 U.S.C. § 1338.

## II. BACKGROUND

### A. Technology at Issue

---

[1] Originally-named defendants Amazon Web Services LLC, Amazon.com, Inc., Alexa Internet, Inc., Exalead, Inc. and Exalead S.A. are no longer parties to this action. (D.I. 289; D.I. 421)

Smartdevil has defaulted in appearance (D.I. 67) and did not participate in the instant proceedings, nor is it a signatory to any of the pending motions. Because the disposition of defendants' joint motions redounds to Smartdevil's benefit or detriment, the court does not exclude Smartdevil from its use of the collective term "defendants."

The '904 patent describes a method and system for providing a preview thumbnail image of a web page. Web pages are a form of information received over the Internet. (*See* D.I. 369 at ¶ 35; D.I. 386 at 1-20) Some web pages are comprised of HyperText Markup Language ("HTML"), which is the predominant encoding for describing formatted text-based information . (D.I. 369 at ¶ 35) The HTML for a given web page can, *inter alia*, describe page content with formatting information, reference images that will be included in the web page, reference hyperlinks to other content, and execute programs. (*Id.*) Web pages and the items they reference are named using a Uniform Resource Locator ("URL"). (*Id.*)

Users view web pages using software called a "browser," which downloads web pages through the Internet. (*Id.* at ¶ 36) When users request a web page, the browser renders the page by drawing what is described in the HTML, downloads any embedded pictures and renders them when they arrive, and runs any executable programs in the HTML. (*Id.*)

Users may request a web page to view in the browser by entering a web page's URL into the browser or may search the Internet for web pages by using Internet search engine software. Internet search engines typically provide users with a list of hyperlinks and a brief description of the corresponding web pages. (D.I. 242 at 3) Users may then load the web pages from the list by activating the hyperlinks (*i.e.*, by using a mouse to click on the hyperlink). (*See* D.I. 371 at 234-35) Systems and methodologies also exist that enable users to preview a web page's contents in the form of a thumbnail visual image of a web page corresponding to a URL retrieved by the Internet search

2

engine. (D.I. 242 at 6; D.I. 323, ex. A at ¶¶ 42-78)

## B. The '904 Patent

The '904 patent is entitled "Framework for Providing Visual Context to WWW Hyperlinks." It was filed as U.S. Patent Application No. 09/708,191 ("the '191 application") on November 8, 2000 and issued on March 8, 2005, listing Shirli Ran, Eldad Barnoon, and Yuval Yarom as inventors and Girafa.com, Inc. as the assignee. Priority was claimed to U.S. Provisional Application No. 60/169,328, filed December 6, 1999 ("the '328 provisional application"). The '904 patent has several independent claims,[2] as detailed below.

### 1. Method claims

Claim 1 of the '904 patent describes a method for displaying an image of a web page to a user containing at least one hyperlink and, concurrently, displaying a thumbnail preview image of a web page to which the hyperlink corresponds. Claim 1 reads as follows:

> 1. A method for presenting Internet information to a user comprising: **providing to a user** a visual image of a web page containing at least one hyperlink; and **at least partially concurrently providing a thumbnail visual image** of the home page of at least one web site which is represented by said at least one hyperlink via the Internet by employing an image server that **stores and provides** said thumbnail visual image.

(emphasis added) Claim 35 also contemplates a method of providing visual images to a user. Claim 35 additionally requires a separate image server to store thumbnail

---

[2]It is unclear to the court precisely which claims are asserted against each of defendants' accused products. Plaintiff asserts at least independent claims 1, 16, 18, 33, 35, and 46 against Yahoo and Snap. (D.I. 363 at 5; D.I. 365 at 4) Plaintiff specifies that it asserts claims 1, 4, 5, 7, 12, 13, 15, 16, 17, 18, 21, 22, 24, 29, 30, 32, 33, 34, 35, 38, 39, 41, 44, 45, 46, 49, 50, 52, 55, and 56 against IAC. (D.I. 366 at 1)

images, as follows:

> 35. A method for presenting Internet information to a user comprising: **providing to a user** a visual image of a web page containing at least one hyperlink; and **at least partially concurrently providing a thumbnail visual image** of another web page of at least one web site which is represented by said at least one hyperlink via the Internet **by employing an image server** that stores and provides said thumbnail visual image, said providing a thumbnail visual image comprising **employing a web browser** which interfaces via the Internet with a web server, **separated** from said image server, **including visualization functionality,** said visualization functionality being operative to embed commands to the web browser to download, via said image server, thumbnail visual images of web pages which represent hyperlinks contained in the web page and to provide to a user, via the web browser, an annotated web page.

(emphasis added)

Claim 16 claims a method for generating an image server database, and

includes the step of populating the image server with thumbnail images. More

specifically, a "multiplicity of downloaders" operate simultaneously to retrieve web

pages, while a "thumbnail generator" provides and shrinks the retrieved pages prior to

supplying them to the image server:

> 16. A method for generating an image server database of thumbnail visual images of web pages, the method comprising:
> receiving a list of URLs corresponding to said web pages, the thumbnail visual images of which it is desired to supply to said image server database; operating a **multiplicity of downloaders simultaneously** to retrieve from the Internet, web pages and embedded objects corresponding to URLs from said list; causing a **thumbnail generator to render retrieved web pages** retrieved simultaneously by said multiplicity of downloaders; and causing said thumbnail generator to shrink said rendered images of said retrieved web pages and supply them to said image server database.

(emphasis added)

### 2. System claims

The '904 patent contains three independent system claims. Claims 18 and 46

4

recite systems for presenting internet information to a user, and claim 33 recites a system for generating an image server database. Claim 18, similar to method claim 1, provides a system having two functionalities: one corresponding to "providing to a user a visual image of a web page containing at least one hyperlink," and the other (operative "at least partially concurrently with said first functionality") for providing a "thumbnail visual image of the home page of at least one web site which is represented by said at least one hyperlink via the Internet by employing an image server that stores and provides said thumbnail visual image."[3]

Independent claim 46 is similar to method claim 35, but instead defines a system having several functionalities: "providing to a user a visual image of a web page containing at least one hyperlink," and "operative at least partially concurrently with said first functionality for providing a thumbnail visual image of another web page of at least one web site which is represented by said at least one hyperlink . . . by employing an image server that stores and provides said thumbnail visual image." The second functionality is said to "compris[e] [a] third functionality" employing a separate web browser which interfaces via the internet with a web server, "including visualization

_____

[3]Claim 18 reads in full:

18. A system for presenting Internet information to a user comprising: first functionality providing to a user a visual image of a web page containing at least one hyperlink; and second functionality operative at least partially concurrently with said first functionality for providing a thumbnail visual image of the home page of at least one web site which is represented by said at least one hyperlink via the Internet by employing an image server that stores and provides said thumbnail visual image.

5

functionality."[4] Finally, claim 33 is similar to method claim 16, providing instead a

system for generating an image server database comprising "a multiplicity of

downloaders" to simultaneously retrieve images from the internet and a "thumbnail

generator" to render, shrink and supply the web pages.[5]

## III. STANDARD OF REVIEW

A court shall grant summary judgment only if "the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any,

show that there is no genuine issue as to any material fact and that the moving party is

---

[4]Claim 46 reads in full:

46. A system for presenting Internet information to a user comprising: first
functionality providing to a user a visual image of a web page containing at least
one hyperlink; and second functionality operative at least partially concurrently
with said first functionality for providing a thumbnail visual image of another web
page of at least one web site which is represented by said at least one hyperlink
via the Internet by employing an image server that stores and provides said
thumbnail visual image, said second functionality comprising third functionality
employing a web browser which interfaces via the Internet with a web server,
separated from said image server, including visualization functionality, said
visualization functionality being operative to embed commands to the web
browser to download, via said image server, thumbnail visual images of web
pages which represent hyperlinks contained in the web page and to provide to a
user, via the web browser, an annotated web page.

[5]Claim 33 reads in full:

33. A system for generating an image server database of thumbnail visual
images of web pages, the system comprising: a multiplicity of downloaders, each
receiving at least one URL from a list of URLs corresponding to said web pages,
the thumbnail visual images of which it is desired to supply to said image server
database, and simultaneously retrieving from the Internet web pages and
embedded objects corresponding to said at least one URL; and at least one
thumbnail generator operative to render the web pages, shrink said rendered
images of the web pages and supply said rendered images to said image server
database.

6

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## IV. DISCUSSION

### A. Indefiniteness

Defendants move for partial summary judgment that claims 1, 4, 7, 12-15, 18,

7

21-24, 29-31, 42, 44, 53, and 55 of the '904 patent are invalid under 35 U.S.C. § 112, ¶

2. Section 112, ¶ 2 provides that "the specification shall conclude with one or more

claims particularly pointing out and distinctly claiming the subject matter which the

applicant regards as his invention." "A determination of claim indefiniteness is a legal

conclusion that is drawn from the court's performance of its duty as the construer of

patent claims." *Personalized Media Comm., LLC v. Int'l Trade Com'n*, 161 F.3d 696,

705 (Fed. Cir. 1998).

> Determining whether a claim is definite requires an analysis of whether one
> skilled in the art would understand the bounds of the claim when read in light of
> the specification . . . If the claims read in light of the specification reasonably
> apprise those skilled in the art of the scope of the invention, § 112 demands no
> more.

*Id.* (citing *Miles Lab., Inc. v. Shandon, Inc.*, 997 F.2d 870, 875 (Fed. Cir. 1993)).

Defendants assert that the '904 patent is invalid because "home page" and "the

most representative image" as used in the claims are subjective terms that are not

defined in the specification. Several witnesses, including Yuval Yarum, a named

inventor of the '904 patent, have testified that there is no universal definition of "home

page." (D.I. 315, ex. C at 222:5-22 (Yarum) ("I have yet to see a good definition of this

term"; "[l]t is hard to point a finger" at the understanding of what a home page is); *id.*,

ex. E at 49:13-50:3 (home page is a "main page" of a site; Yahoo has no definition for

"home page," as "it's subjective" and "depends on the site"); *id.*, ex. F at 21:25-22:16

("'[h]ome page' has many, many meanings in the industry"; "there are multiple

acceptable definitions of a home page," including "the uppermost page on a site"); *id.*,

ex. G at 36:3-37:5 ("home page" is generally a "main" or "central" page; the URL of the

home page may vary based on the software utilized)) Web site creators use different

8

software to create web sites and have the ability to designate a particular page as the "home page." (*Id.*, ex. C at 497:3-4 (Yarom) ("it depends on the application it is used for"); *id.*, ex. J at 263:19-22) The testimony of plaintiff's expert, Brad Myers, suggested that the determination of which page is a site's home page requires context, *i.e.*, a review of the entire site. (*Id.*, ex. S at 79:1-80:3) Plaintiff does not dispute that a web site may have more than one "home page."[6] (D.I. 364 at 12)

Plaintiff's evidence with respect to the "most representative image" is scant, at best. Plaintiff cites only to testimony that defendants' experts understand what claims 44 and 55 cover (D.I. 363 at 18-20); there is no proffer regarding the understanding by persons of ordinary skill in the art in 1999.

The question at bar is whether "home page" and "most representative image" are **purely** subjective terms, or whether there exists some definition or meaning to those of ordinary skill in the art. *See Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1350 (Fed. Cir. 2005) ("Some objective standard must be provided in order to allow the public to determine the scope of the claimed invention."). Notwithstanding the difficulty in propounding a universal definition, there is undisputably a general understanding of a "home page" in the art. (See D.I. 322, ex. A at ¶ 91 ("At the time of the patent, a home page was generally considered to be the entry page into a collection of related internal web pages. A home page normally identified the collection and contained links to

<hr>

[6]Defining "home page" as " a main page" or "a front page" as plaintiff suggests simply replaces a partially subjective term with another subjective term. *See Halliburton Energy Servs., Inc. v. M-I, LLC*, 456 F. Supp. 2d 811, 817-18 (E.D. Tex. 2006), *aff'd*, 514 F.3d 1244 (Fed. Cir. 2008). Moreover, the claims' use of the article "the" preceding "home page" (*i.e.* "the home page") implies that any objective definition must identify just one page.

9

sub-parts or sections of that collection.")) Despite the inventors' emphasis on the "home pages" of the linked-to pages as an inventive feature, the examiner of the '904 patent did not issue a rejection based upon indefiniteness.[7] Defendants concede that "it is sufficient to note that the basic concept of a home page was well-known in the art, even if 'the home page' of any given URL could not be objectively identified with any degree of certainty." (D.I. 331 at 8, fn.7) Defendants recognize that "columns 6 and 7 of the specification contain a detailed description of how to 'trim' a path component to be used by the image server in an effort to achieve the 'most representative image,'" and that "this passage of the specification discusses the 'home page.'"[8] (*Id.* at 20) Defendants suggest that, if the court finds the term definite, it construe "home page" as "the web page having the URL produced by the trimming steps described in columns 6 and 7" of the '904 patent. (*Id.* at 19) Similarly, defendants suggest that the court construe "the most representative image" as "the image of the web page having the URL produced by the trimming steps described in columns 6 and 7." (*Id.*)

Plaintiff does not point to specific evidence regarding the understanding of persons of ordinary skill in the art in 1999. However, defendants' ability to proffer

---

[7]During prosecution, claims 1 and 21 were amended to require that thumbnails of "the home pages of the linked pages" were displayed, in order to overcome prior art (Brown and U.S. Patent No. 6,613,100 to Miller). (D.I. 370, ex. B at GIR3942) The examiner's reasons for allowance subsequently stated that "[p]rior art references do not anticipate or suggest the limitation 'providing a thumbnail visual image of the home page . . .' in combination with the other claim limitations in claims 1 and 21. (*Id.* at GIR3947)

[8]Dr. Myers cited the same passage of the specification as support for his construction of "home page" as a "main or front page of a web site." (D.I. 315, ex. M at ¶ 49)

10

definitions for the terms is telling; neither term is so "insolubly ambiguous" as to completely foreclose construction.[9]  *See Xerox Corp. v. 3Com Corp.*, 458 F.3d 1310, 1323 (Fed. Cir. 2006); *but see Halliburton Energy Svcs.*, 514 F.3d at 1251 ("Even if a claim term's definition can be reduced to words, the claim is still indefinite if a person of ordinary skill in the art cannot translate the definition into meaningfully precise claim scope.").  The court finds defendants' definitions adequately resolve the ambiguity of the claim terms.  That is, the trimming steps described in column 7 (ll. 17-62) provide objectively measurable benchmarks against which potential infringers may measure their activities.

Finally, having determined that some "objective anchor" exists for each claim term, *Datamize*, 417 F.3d at 1350, the court addresses plaintiff's argument that the claims should not be limited so as to read on the "preferred embodiment[s]" described in the patents.[10]  (D.I. 364 at 20-22)  The court construes the claims to preserve validity because it concludes, after reviewing the limited intrinsic record and the limited extrinsic evidence before it, that the claims are still ambiguous. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1327 (Fed. Cir. 2005) (en banc) ("[W]e have limited the maxim [of construing a claim to preserve its validity] to cases in which 'the court concludes, after applying all the available tools of claim construction, that the claim is still ambiguous.'")

---

[9]The court contrasts *Datamize*, in which the Federal Circuit affirmed the district court's finding that the term "aesthetically pleasing" was "hopelessly indefinite," and subject to "unrestrained, subjective opinion."  417 F.3d at 1347.

[10]Plaintiff does not (and cannot) identify any other definitions or examples within the specification that shed light on the terms at issue, despite the fact that the algorithm described in Figure 5 is called a "preferred algorithm."  '904 patent, col.7, ll. 20-22.

(quoting *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 911 (Fed. Cir. 2004)). The present case is an example of the rare situation in which resort to the validity maxim is appropriate. Defendants' motion for summary judgment of invalidity based on indefiniteness is denied.

## B. Obviousness

The court turns next to defendants' motion that the '904 patent is invalid under 35 U.S.C. § 103. There are no fewer than eleven asserted prior art references, as described below.[11]

1. U.S. Patent No. 7,177,948, entitled "Method and apparatus for enhancing online searching" (hereinafter, "Kraft"), was filed November 18, 1999 and issued February 13, 2007.

2. U.S. Patent No. 6,356,908, entitled "Automatic web page thumbnail generation" (hereinafter, "Brown"), was filed July 30, 1999 and issued March 12, 2002. Brown was of record during the prosecution of the '904 patent and is listed on the face of the '904 patent.[12]

3. U.S. Patent No. 6,058,417, entitled "Information presentation and management in an online trading environment" (hereinafter, "Hess"), was filed October 23, 1998 and issued May 2, 2000.

---

[11]Additional products and references are mentioned in defendants' papers. The court has confined its review to the primary references focused on by defendants at oral argument.

[12]Defendants do not have the "added burden of overcoming the deference that is due" to the PTO in considering Brown to the extent Brown is asserted in combinations with prior art not of record during prosecution. *See American Hoist & Derrick Co. v. Sowa & Sonw, Inc.*, 725 F.2d 1350, 1359 (Fed. Cir. 1984).

12

4. An article, entitled "Visual preview for link traversal on the World Wide Web" authored by Theodorich Kopetzky et. al. (hereinafter, "Kopetzky"), was published in the Computer Networks journal in 1999.[13] (D.I. 332, ex. BB)

5. A paper, entitled "Web Representation with Dynamic Thumbnails" by Stefan Schmid et. al (hereinafter, "Schmid"), is asserted to be prior art by defendants. The paper heading indicates its association with the Department of Distributed Systems of the University of Ulm in Germany. (D.I. 322, ex. AA)

6. The Akamai FreeFlow content delivery system was launched by Akamai Technologies, Inc. of Cambridge, Massachusetts in mid-1999 (hereinafter, "the Akamai system"). Defendants provide three sources of information regarding the Akamai system: a press release dated June 2, 1999 (D.I. 332, ex. Q); a corporate publication (*id.*, ex. S); and the abstract of U.S. Patent No. 6,108,703 to Leighton et al. (hereinafter, "Leighton"). (D.I. 331 at 15-16) Defendants do not assert any particular publication independently.

7. Defendants assert that the CNN Interactive SiteSeer website (hereinafter, "SiteSeer"), in combination with other asserted art, renders the '904 patent obvious. Two screenshots of the SiteSeer website are provided, discussed *infra*.

8. An article, entitled "ImageRover: A Content-Based Image Browser for the World Wide Web" by Stan Sclaroff et al. of the Computer Science Department of Boston University (hereinafter, "Sclaroff"), states that it "Appear[ed] in Proc. IEEE Workshop on Content-based Access of Image and Video Libraries, 6/97." (D.I. 332, ex.

---

[13]Computer Networks 31 (1999) at 1525-1532. The specific date of Kopetzky is unclear, however, plaintiff does not contest that Kopetzky is statutory prior art.

V) Defendants assert that the ImageRover system described therein, as compared to the article itself, renders the '904 patent obvious in the asserted combinations.

9. An article, entitled "WebSeer: An Image Search Engine for the World Wide Web" by Charles Frankel et al. of the University of Chicago's Computer Science Department (hereinafter, "Frankel"), is dated August 1, 1996. (D.I. 332, ex. U) Defendants assert that the WebSeer system described therein, as compared to the article itself, renders the '904 patent obvious in the asserted combinations.

10. The DoubleClick system, as described in a September 22, 1999 article entitled "An Advertising Power, but Just What does DoubleClick do?" by Randall Rothenberg (D.I. 322, ex. N),[14] is also asserted prior art.

11. An article, entitled "Constructing, Organizing, and Visualizing Collections of Topically Related Web Resources" by Loren Terveen et al. of AT&T Labs (hereinafter, "Terveen"). Terveen appears to have been published in "ACM Transactions on Computer-Human Interaction, Vol. 6, No. 1, March 1999, Pages 67-94," according to that document. (D.I. 332, ex. I)

Defendants' arguments in support for their motion for summary judgment of obviousness regarding the independent claims can be summarized as follows. Claims 1 and 18 are rendered obvious by: (a) Brown; (b) by Brown in combination with SiteSeer; (c) or Brown or SiteSeer in combination with Kraft, Schmid or Kopetzky.[15]

---

[14]The article was published by the New York Times on the Web in its "Special Section" for "E-Commerce." The URL was http://partners.nytimes.com/library/tech/99/09/biztech/technology/22roth.html.

[15]The court has utilized defendants' (undocketed) oral argument presentation slides to assist in its determination of the issues at bar which was, at times, unclear

Claims 35 and 46 are rendered obvious by Brown, Kraft, Schmid or Kopetzky in combination with DoubleClick or the Akamai system. Claims 16 and 33 are rendered obvious by Hess, Frankel, or Scarloff modified to provide thumbnail web images.[16]

The court pauses at this juncture to address the propriety of defendants' motion. Patents are, of course, presumed valid. The grant of summary judgment of obviousness based upon a combination of prior art references is certainly a rare occurrence, especially where plaintiff has retained its own validity expert. The more references asserted in a proffered combination, the more attenuated is the argument that no factual question with respect to the motivation to combine the references (or the reasonable expectation of success from such a combination) exists under such circumstances. The fact that defendants have submitted literally hundreds of pages of briefs and exhibits[17] in connection with the motion at bar belies a contrary notion.

Notwithstanding, the court has reviewed the motion papers and determined that summary judgment is not appropriate on this record. The court briefly illuminates its reasoning below.

## 1. Combinations with Schmid and SiteSeer

Factual questions exist with respect to the prior art status of Schmid. Schmid's

from defendants' moving papers.

[16]In view of the trial time allotted, and the number of discrete combinations alleged, it is highly unlikely that defendants plan to present each of these theories to the jury.

[17]Ironically (considering the subject matter of this case), many of the papers submitted to the court on CDs (to assist its review of the papers) were not searchable, nor did they contain hyperlinks to exhibits.

heading indicates its association with the Department of Distributed Systems of the University of Ulm in Germany, however, the paper is undated. (D.I. 322, ex. AA) Plaintiff has asserted that defendants have not met their burden to demonstrate that Schmid is prior art. Neither party filed a motion for summary judgment independently addressing Schmid's prior art status, and neither party has devoted a notable amount of briefing to the issue in connection with the current motion. Nevertheless, it is defendants' burden, at the outset, to put forward a prima facie case of invalidity. *See PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1305 (Fed. Cir. 2008). Defendants did not set forth evidence establishing Schmid's applicability as prior art in its opening papers (D.I. 331) or address plaintiff's argument in its reply papers (D.I. 405).

Defendants put forward two screenshots as working examples of SiteSeer. The first is dated December 19, 1996, and contains an article entitled "Hey you, Deep Pockets. Do you know who you're helping?" regarding the Better Business Bureau ("BBB") (hereinafter, the "BBB article"). (D.I. 332, ex. F) The BBB article provides a hyperlink (corresponding to www.bbb.org/reports/charity.html) alongside an image[18] of a BBB webpage. According to defendants, the image depicts the BBB's home page, signified by "The Better Business Bureau" heading and logo and "Welcome to the BBB . . ." text. (D.I. 405 at 11, citing D.I. 407 at ¶ 6 (stating that the image is "an image of the

---

[18]Plaintiff does not appear to contest that the image is a "thumbnail." (D.I. 367 at 20)

16

BBB website" found at www.bbb.org)[19]) Plaintiff's expert, Brad Myers, is unable to reproduce the image defendants characterize as the BBB homepage; a different image appears in the web archives dated prior to 2001, suggesting that defendants' example is not the home page. (D.I. 368 at ¶¶ 16-17) A question of fact exists with respect to the disclosure of the BBB article and, therefore, the disclosure of SiteSeer.

The second example of SiteSeer is a screenshot of an article entitled "Site-Seer: The DOJ v. Microsoft" dated January 10, 2008 (hereinafter, the "Microsoft article"). The Microsoft article contains a hyperlink to a Microsoft web site (www.microsoft.com/corpinfo) alongside a thumbnail image corresponding with Microsoft's home page (www.microsoft.com).[20] According to Myers, the thumbnail image in this instance is of the target page itself; there is no indication that the thumbnail is associated with the link to the internal Microsoft web page. (D.I. 328 at ¶¶ 60-61) Myers' testimony illuminates that factual questions exist with respect to the disclosure by SiteSeer.

### 2. All elements present

Plaintiff has adduced evidence that cited prior art does not disclose several of the claimed limitations. With respect to claims 1 and 18, defendants claim that Brown and/or SiteSeer disclose substituting thumbnail images of home pages for target (rather than linked-to) webpages. (D.I 331 at 8-13) As discussed above, a question of fact

---

[19]Defendants rely on the declaration of Kristin Lemmerman, who initiated the SiteSeer project for CNN in 1996, which was executed in July 2009 – thirteen years after BBB article was put together.

[20](D.I. 328, ex. C at 210:9-14)

exists with respect to the disclosure of the BBB article. Dr. Myers asserts that the Microsoft article does not make obvious substituting a thumbnail image of a home page for the linked-to page because in that example, the linked-to page (www.microsoft.com) and the home page (www.microsoft.com) are the same. (D.I. 370, ex. 4 at ¶ 60) Dr. Myers' testimony demonstrates an issue of fact regarding whether a person of ordinary skill in the art, viewing the Microsoft article, would have appreciated or recognized a substitution of a thumbnail image of a home page.

Brown discloses that, "[i]n another embodiment of the pop-up thumbnails" disclosed for linked-to webpages, "an icon representing the domain of that link could be generated and displayed next to the text representing that link," for example, a "Yahoo" logo for a domain associated with Yahoo. By its order of the same date, the court has construed "home page" as the "top level entry point page of a web-site," which (in some cases) is synonymous with a domain name.²¹ In Myers' opinion, the "use of icons [as disclosed in Brown] is nothing like substituting of the home page of [a] web site for the target page" insofar as "Brown describes having a single, fixed image of a logo for a domain, rather than a calculated and generated home page as described by the '904 patent." (D.I. 370, ex. 4 at ¶ 24) Defendants point out that, at his deposition, Dr. Myers stated that "it's reasonable to say that a thumbnail that serves as a way to get another web page would be an icon."²² (D.I. 328, ex. B at 91:14-16) Whether Brown discloses

²¹See gen. http://en.wikipedia.org/wiki/domain_name.

²²This testimony was given in the context of a debate regarding the relative sizes of thumbnails and icons. It is not clear that Myers was equating the two terms outside of this context, nor whether this opinion would change in view of the court's present construction of "thumbnail visual image" as a "miniature image of a web page."

18

to a person of ordinary skill in the art that a thumbnail image of a home page, rather than an "icon," may be substituted for an image corresponding to the linked-to page is an issue to be fleshed out at trial.

### 3. Motivation to combine and reasonable expectation of success

This case appears no different from others in which competing experts proffer differing opinions regarding the motivation to combine. Defendants' evidence in support of a motivation to combine is primarily contained in one paragraph of their expert's report. (See D.I. 331 at 20-22; D.I. 405 at 12, 16) Saul Greenberg, Ph.D., opines that "market forces and trends combined to make the claimed invention obvious" as a matter of law. (D.I. 323 at ¶ 205) More specifically, Dr. Greenberg states that a person of ordinary skill in the art in the late 1990s, seeking to provide a practical system of thumbnail preview images to a user, would have encountered "limited bandwidth" and "high cost of electronic storage space" constraints, and would have been faced with "the question of how to collect, maintain, and serve thumbnail preview images to a variety of client web sites." (Id. at ¶ 206) The obvious solution to the collection problem, in his opinion, was a web crawler, as disclosed by Terveen, Hess, and Frankel's WebSeer, because such a web crawler "would employ multiple downloaders for efficiency in light of bandwidth constraints." The use of a server would have been an obvious solution to the storage and transmission problem. A specialized image server, such as that of the Akamai system and DoubleClick, would be recognized as providing "maximal flexibility." (Id.) A person of ordinary skill seeking to save on storage costs would have had an option to either reduce the size and resolution of the

images (described by Kopetzky) or reduce the quantity of images, and would have "naturally" moved on to the latter option.[23] (*Id.*) Finally, Dr. Greenberg states that, "in light of references such as those including a homepage that does not link to itself, (e.g., [Benderson-1, Benderson-2, Cockburn-1, and [[Brown]], it would have been obvious (and "particularly simple") to substitute a common preview image for an interior page preview image.[24] (*Id.*)

Notably, Dr. Greenberg's declaration contrasts with defendants' papers and presentation materials, which do not focus on Terveen, "Benderson" or "Cockburn." Terveen is mentioned only cursorily in defendants' opening papers. (D.I. 331 at 8, n.7 & 22) It is not apparent that the "Benderson" or "Cockburn" references are cited in defendants' motion papers.[25] It would appear from the record that Dr. Greenberg's declaration regarding motivation to combine does not align with, and cannot support, defendants' arguments at bar, which include references not addressed by Dr. Greenberg. Even assuming Dr. Greenberg's declaration provided clear and convincing evidence of a motivation to combine the references in the manner claimed, and iterated a reasonable expectation of success resulting from such combination (findings not justified on the limited discussion provided), summary judgment would not be

---

[23]The rationale for this is not made clear, in view of the prior statement that Kopetzky taught that small images would adequately save server space.

[24]Defendants state in their motion papers, without evidentiary support, that this solution appeared in a prior art product called "Twirlix." (D.I. 331 at 22; D.I. 332, ex. Z)

[25]"Cockburn-1" apparently references a document describing "WebView," a system created by Greenberg and other collaborators. It is not clear whether (and where) the "Benderson" documents are referenced in Greenberg's expert report.

20

appropriate on the combinations asserted by defendants.

The court further notes that Dr. Myers will testify in rebuttal to Dr. Greenberg at trial, presenting issues of fact regarding the motivation to combine the asserted references. (D.I. 328, ex. H at pp. 29-37) Defendants' argument that Myers failed to specifically rebut the select paragraph of Dr. Greenberg's declaration is unavailing. Myers opined that the references (forming the crux of defendants' obviousness arguments, e.g., Kraft, Brown, Kopetzky, Schmid, DoubleClick, Akamai, Hess, Frankel and Sclaroff) taught away from the claimed invention, or would not have been utilized by persons of ordinary skill in the art seeking to solve the problem addressed by the patents. (*Id.*)

## 4. Motivation to modify Hess, Frankel, or Scarloff

Finally, with respect to their arguments regarding claims 16 and 33, the court notes that defendants have not proffered a motivation to modify Hess, Frankel, or Scarloff.[26] The parties do not dispute that these references disclose downloading images **from** web pages into databases. (D.I. 328, ex. H at ¶¶ 69, 77, 86) The issue is whether it would have been obvious to modify any reference to generate and store a

---

[26]The Federal Circuit has explained that,

in appropriate circumstances, a single prior art reference can render a claim obvious. However, there must be a showing of a suggestion or motivation to modify the teachings of that reference to the claimed invention in order to support the obviousness conclusion. This suggestion or motivation may be derived from the prior art reference itself, . . . , from the knowledge of one of ordinary skill in the art, or from the nature of the problem to be solved.

*SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1356 (Fed.Cir.2000) (internal citations omitted).

21

thumbnail image of the home page itself. Defendants cite no expert opinion in support

for their arguments that this change would have been "minor" in view of one statement

in Frankel that WebSeer "download[s] both HTML pages and images," and that

adapting Hess or Sclaroff would have had "predictable results." (D.I. 331 at 31-32; D.I.

405 at 17[27]) Defendants have not adduced a specific motivation to modify Frankel,

Hess or Sclaroff to provide the claimed inventions, and summary judgment of

obviousness is inappropriate.

## C. Divided Infringement

To infringe a process patent, each and every step of a claimed process must be

performed. In circumstances where one party performs some of the claimed steps, and

another entity performs other of the claimed steps, direct infringement will only lie "if

one party exercises 'control or direction' over the entire process such that every step is

attributable to the controlling party, *i.e.*, the 'mastermind.'" *Muniaction, Inc. v. Thomson

Corp.*, 532 F.3d 1318, 1329 (Fed. Cir. 2008) (citing *BMC Resources, Inc. v.

Paymentech, L.P.*, 498 F.3d 1373, 1380-81 (Fed. Cir. 2007)). This "control or direction"

standard is "satisfied in situations where the law would traditionally hold the accused

direct infringer vicariously liable for the acts committed by another party that are

required to complete performance of a claimed method." *Id.* (citation omitted). If such

evidence is lacking, the court will not "unilaterally restructure the claim or the standards

for joint infringement to remedy [ ] ill-conceived claims" requiring multiple parties to

---

[27]In their reply papers, defendants cite again to the single paragraph in
Greenberg's declaration, which does not address a motivation to modify Frankel, Hess
or Sclaroff.

22

perform different acts within one claim. *BMC*, 498 F.3d at 1381 (citation omitted).

Yahoo asserts that defendants should be granted summary judgment of noninfringement because they do not supply the web browser required to display thumbnail visual images, nor do they direct the actions of the users. (D.I. 318 at 1, 9-20) Plaintiff does not dispute that components outside of the code supplied by defendants are necessary for a user to view a web page and view thumbnail images of a web page. (D.I. 365 at 16) It reasons that, just as a browser is needed to render the web page supplied, "hundreds of other components" such as a monitor, drivers for hardware, a microprocessor, and even electricity are also required; the presence of these components do not necessitate "active participation" by multiple entities in carrying out the steps of the method claims. (*Id.* at 16-20)

The question raised by Yahoo's motion is whether the '904 patent requires two individuals or entities to complete all of the claimed steps, or whether infringement of the method claims entails performance of these steps by one party (namely, defendants[28]). The method steps required by claim 1 and 35[29] are as follows:

- providing **to a user** a visual image of a web page containing at least one hyperlink; and

- at least partially concurrently providing **[to a user]** a thumbnail visual

---

[28]The independent method claims, claims 1 and 35, both describe methods "for presenting internet information to a user," and are not capable of being infringed by the user himself.

[29]The parties dispute whether divided infringement applies only to method claims or applies to system claims. Insofar as system claims 18 and 46 mirror method claims 1 and 35, and Yahoo advocates the same noninfringement arguments with respect to all asserted claims, the court's rationale would apply to both sets of claims and it need not resolve the issue.

23

image of the home page of at least one web site which is represented by said at least one hyperlink via the Internet by employing an image server that stores and provides said thumbnail visual image.

In connection with providing a thumbnail image, claim 35 also requires

- employing a web browser which interfaces via the Internet with a web server, separated from said image server, including visualization functionality[.]

There is no genuine dispute that defendants make available all of the code necessary for a user to view a web page and thumbnail images of a web page. Where a web browser is installed on a user's computer, the accused products utilize that browser to provide visual images of web pages.[30] The software's utilization of a (separately-installed) web browser does not implicate action by an additional party within the meaning of *BMC* or *Muniaction*.[31] There is no indication that the user must complete any of the claimed steps; Yahoo itself asserts that the user "does nothing other than view the web pages." (D.I. 318 at 14) Yahoo's motion for summary judgment of non-infringement (D.I. 316) is denied on this ground.[32]

---

[30]It is the court's understanding that a web browser is always required to view information on the internet. Accordingly, there is no "user" per the claims who does not have a web "browser."

[31]In *BMC*, the invention was directed to a method for processing debit transactions without a PIN over the telephone. Defendant marketed PIN-less debit services by providing data to debit networks. It was undisputed that other entities, namely, defendant's customers and financial institutions, were required to practice each step of the claimed methods. 498 F.3d at 1378. In *Muniaction*, the claims at issue were drawn to electronic methods for conducting online auctions of financial instruments. The parties in that case did not dispute that at least the "inputting" step of claim 1 was completed by a bidder, while the remainder of the steps must be performed by the auctioneer's system. 532 F.3d at 1328-29.

[32]The court addresses defendants' remaining noninfringement arguments (D.I. 302, 316, 317) in its order of the same date.

**V. CONCLUSION**

For the foregoing reasons, defendants' joint motions for summary judgment of invalidity (D.I. 313, 320) are denied. An appropriate order shall issue.