IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| GIRAFA.COM, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 07-787-SLR |
| | ) | |
| IAC SEARCH & MEDIA, INC., | ) | |
| SNAP TECHNOLOGIES, INC., | ) | |
| YAHOO! INC. and | ) | |
| SMARTDEVIL INC., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM ORDER**

At Wilmington this 15th day of September, 2009, having heard oral argument on, and having reviewed the papers submitted in connection with, the parties' proposed claim construction;

IT IS ORDERED that the disputed claim language of U.S. Patent No. 6,864,904 ("the '904 patent") shall be construed consistent with the tenets of claim construction set forth by the United States Court of Appeals for the Federal Circuit in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005), as follows:

1. "**Image server**": "A computer server that stores image files and provides them, via the internet, to one or more web browsers." This construction is consistent with the specification: Figs. 1 and 2; col. 10, ll. 8-12; col. 11, ll. 8-12.

2. "**A web server separated from said image server**": "A web server that is a separate computer from the image server." During prosecution, the examiner of the '904 patent rejected claims 9-10 as anticipated by Brown in view of its disclosure of a

proxy server with "functionality to construct [a] web page which contains HTML code or embed commands to the browser," that functions "as image server and web server." (D.I. 386, ex. 2 at JA165) In response, the applicants asserted that "Brown does not show or suggest using a separate web server and image server," whereas "[t]he system and method of the present invention . . . provide a separate web server and image server." (*Id.* at JA207) Thus, "a single image server [was provided to] capture and serve images of web pages from multiple web servers." (*Id.*) The applicants, therefore, characterized their invention narrowly in order to achieve patentability, and the court adopts this narrow construction under the doctrine of prosecution disclaimer. *See Seachange Int'l, Inc. v. C-COR Inc.*, 413 F.3d 1361, 1372-73 (Fed. Cir. 2005).

3. "**Visualization functionality**": "Hardware and/or software that produces a designed effect, that is, to download via the image server a thumbnail visual image which is associated with a given hyperlink." This construction is consistent with claims 43 and 44, as well as the specification: col. 2, ll. 6-10; col. 3, ll. 49-53; col. 5, ll. 58-65; col. 6, ll. 24-31.

4. "**At least partially concurrently**": "To some extent, occurring at the same time." No guidance in the intrinsic record is provided; the court's construction tracks the ordinary meaning of "concurrently" consistent with the evidence of record. (D.I. 387, ex. 130 (MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (10th ed. 1998))

5. "**Operative**": "Producing a designed effect." "Operative" is utilized in the specification to refer to a component achieving a specific result, *e.g.*, "operative to download" (col. 2, ll. 6-10; col. 3, ll. 35-40) or "operative to embed [commands]" (col. 6,

ll. 24-31). The claims also utilize "operative" to describe the visualization functionality as producing or providing a specific effect, e.g., "to embed commands to the web browser" (claims 13, 30, 35, 46) or "to delete executable content" (claim 34), as compared to merely being enabled to function (or as plaintiff asserts, "having the capability to" function).

6. "**Hyperlink**": "A connection from one web resource to another." This term is not limited to a connection between two different web pages. No specific guidance in the intrinsic record is provided. Extrinsic evidence indicates that, in 1999, HTML was understood as providing a link between web resources (including images, video clips, sound bites, programs, and documents) and not simply web pages. (D.I. 387, ex. 139 at JA5362)

7. "**Annotated web page**": "A web page modified by the addition of thumbnail visual images." This construction is consistent with claims 13, 14, 35 and 36, as well as the specification: Figs. 1 and 2; col. 5, ll. 59-65; col. 6, ll. 24-32.

8. "**Thumbnail visual image**": "A miniature image of a web page." The parties agree that a thumbnail image is a "miniature" image, and this construction is consistent with Figures 1 and 2 of the specification. The court finds no occasion to limit the term, as defendants suggest, to further require that the miniature image contain the "complete visual contents" of the web page. In addition, the provisional application (to which the '904 patent claims priority) included images comprising only a portion of the web page. (D.I. 386, ex. 3 at JA277, ex. 4 at JA285[1])

---

[1]Plaintiff did not cite to the original provisional application, which does not appear to be of record. In their responsive papers, defendants assert that the provisional

9. **"Trimming a path component based on the consideration of finding the most representative image of a given web page"**: "The trimming steps described by the algorithm identified in column 7 (ll. 17-62) is performed." The "most representative image" is, accordingly, "the image of the web page having the URL produced by the trimming steps described in column 7 (ll. 17-62)." As discussed by the court in detail in its memorandum opinion of the same date, this limitation would be indefinite unless limited to the one (and only) preferred algorithm disclosed in col. 7 and Fig. 5.

10. **"Home page or homepage"**: "The top-level entry point of a web-site." The court notes that the inventors were inconsistent in their use of the term. While claims 1 and 18 describe "the homepage," the specification refers to multiple "homepages" (col. 2, ll. 12-13 & 25; col. 3, ll. 55). As discussed more thoroughly in the court's memorandum opinion of the same date, the parties do not genuinely dispute that the algorithm identified in column 7 results in an URL corresponding to the web site's "home page," as construed above.

11. **"Thumbnail visual image of another web page of at least one web site which is represented by said at least one hyperlink"**: "The thumbnail visual image is of a web page represented by a hyperlink, but is of a different web page than referenced by the hyperlink."[2] Plaintiff's suggestion that the thumbnail may be an

---

application does not support the '904 patent, and note that the images in the provisional application were omitted from the '904 specification in any event. (D.I. 379 at 21) Defendants do not specifically dispute that the images in the provisional were less than complete web pages. (*Id.*)

[2]The court's construction is consistent with the parties' stipulation that "thumbnail visual image of the home page of at least one web site which is represented by at least one hyperlink" means "the thumbnail visual image is of a home page represented by a

4

image of the target web page is inconsistent with the syntax of the limitation.

12. "**Multiplicity**": "A large number." This construction is consistent with: (1) the ordinary, dictionary definition of the term (D.I. 387, ex. 132 (THE CONCISE OXFORD DICTIONARY OF CURRENT ENGLISH (9th ed. 1995) ("a great number")), ex. 133 (OXFORD DICTIONARY OF ENGLISH (2nd ed. 2006) ("a large number or variety")); (2) the specification at col. 8, ll. 25-27 ("an order of magnitude"); and (3) the specification's separate use of "multiplicity" (see col. 8, ll. 4-13) and "plurality" (see claims 6 and 16).[3]

13. "**Downloader**": "A computer that retrieves web pages and embedded objects from the internet." This construction is consistent with claim 16 and the specification: col. 2, ll. 45-55. Although in preferred embodiments downloaders may store web pages and embedded objects for later use, storage is not required by the claim language. Storage may occur in an "image server database" instead.

14. "**Providing**": "Supplying." The crux of the invention is presenting information (via thumbnail images) to the user, not simply transmitting these images.[4] (See Abstract ("A method and system for **presenting** internet information to a user . . ."); col. 1, ll. 10-15 ("The present invention relates to internet methodologies and systems generally and more particularly to systems and methodologies for **displaying** information received over the internet.")). Neither is Yahoo's advocated definition of

---

hyperlink, but is of a different web page than referenced by the hyperlink." (D.I. 299 at 5)

[3]Plaintiff advocated a definition of "more than one," a definition more consistent with "plurality."

[4]At oral argument, Snap argued that the image server is "transmitting" the thumbnail visual image to the browser for rendering and display.

5

"displaying" correct; the drafters specifically used that term to impart information regarding the location of the visual image (versus the supply of that image). (*Compare* claim 1 *with* claims 2-4) Further, an image server ("that stores and provides said thumbnail visual image") cannot "display" images itself, but it can "supply" them. (*See, e.g.*, claim 1) Finally, the drafters consistently referred to providing web pages or visual images "via the internet" or "over the internet," indicating that content moves over the internet from a remote server to a user's computer. (*See* claims 1, 8, 12, 18, 25, 29, 35, 46; col. 2, ll. 5 & 17; col. 3, ll. 33 & 45-46; col. 5, l. 47; col. 6, ll. 2 & 6) This is further indication that "providing" implicates the "supply" (or movement) of information, in contrast to simply the "display" or "making available" of information as plaintiff suggests.

_____
United States District Judge