IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GIRAFA.COM, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 07-787-SLR |
| | ) |
| IAC SEARCH & MEDIA, INC., | ) |
| SNAP TECHNOLOGIES, INC., | ) |
| YAHOO! INC. and | ) |
| SMARTDEVIL INC., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM ORDER**

At Wilmington this 25th day of September, 2009, having heard argument from counsel on the issues of claim construction, infringement and invalidity;

IT IS ORDERED that the court's memorandum order dated September 15, 2009 is hereby revised to reflect that the following limitation of U.S. Patent No. 6,864,904 ("the '904 patent") shall be construed consistent with the tenets of claim construction set forth by the United States Court of Appeals for the Federal Circuit in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005), as follows: **"Providing to a user a visual image of a web page" and "providing [to a user] a thumbnail visual image"** means "displaying to a user a thumbnail visual image."

During claim construction, the parties traversed different meanings of the term "providing" as it appears in the '904 patent claims. The court construed "providing" as "supplying." Upon additional review, however, the court believes that "providing" cannot be isolated from the remainder of the relevant phrase. The terms "providing to a user a

visual image or a web page" and "providing [to a user] a thumbnail visual image" require definition commensurate with the disclosure of the '904 patent.

The '904 patent discloses a web browser as being the mechanism by which an annotated web page is provided to a user. (*e.g.*, col. 2, ll. 19-24; Figs. 1 & 2; col. 5, ll. 48-50) "Providing to a user a visual image or a web page," therefore, contemplates the use of a web browser (and display screen).

More specifically, the specification provides that visualization functionality 103 "download[s]" "via the image server 104 from the image database 106 images of web pages referenced in hyperlinks" on the web page and then "provide[s] to a user, via the web browser 100," an annotated web page also displaying the thumbnail visual images. (col. 5, ll. 59-65 (describing Fig. 1); *see also* col. 6, ll. 24-31 (describing Fig. 2)) In one embodiment (Fig. 1), the visualization functionality (itself) "download[s]" the images; in another (Fig. 2), the visualization functionality sends commands to the web browser which "download[s]" the images via the image server. (*Id.*) The images are generally stored in the image database prior to retrieval; the patent teaches, however, that the image server may also "store" the images before they are "provid[ed]" to a user. (*See, e.g.*, claim 1 (image server "stores and provides" the thumbnails; col. 11, l. 8 (image server has at least 1 GB of its own memory)) It is unclear from the specification for how long the image server may "store" the image before it is "provid[ed]" to the user. The claims require that the thumbnail is "provided" "at least partially concurrently" with the original web page, thereby contemplating that the image server may hold the image for

some amount of time prior to relaying it to the user via the web browser.[1]

Upon further study, it is the court's conclusion that the invention is directed to the (at least partially concurrent) display of images to the user, as compared to the (at least partially concurrent) rendering of images for a user's (perhaps future) viewing.  The invention is consistently described as a methodology for "displaying" information for a user's benefit.  (*See, e.g.,* col. 1, l. 14; col. 1, ll. 39-41)  The claims are drawn to the user's vantage point ("presenting internet information to a user"), as compared to describing the underlying system by which images are (concurrently) rendered by the web server and image server (via the web browser) for viewing.  The term "providing [to a user] a thumbnail visual image" is construed, therefore, as "displaying to a user a thumbnail visual image."

IT IS FURTHER ORDERED that the court's memorandum opinion issued September 15, 2009 is amended as follows, with respect to the validity of claims 1 and 18:

By its claim construction order of the same date, the court construed "home page" as "**the** top-level entry point of a web-site."  Its rationale in narrowing the claims to, essentially, **one** top level domain was in part due to the claims' use of the phrase "**the** home page," in contrast to the specification's reference to "home pages" (*see, e.g.,* col. 2, ll. 10-11).  That is, the claims' use of the article "the" preceding "home page" (*i.e.* "the home page") implies that any objective definition must identify just one page.  Upon

---

[1]The web browser receives HTML and, essentially, translates a web page for viewing.  (col. 5, ll. 43-53)  There is no indication that the web browser has any storage capabilities.

further review, the court does not alter its construction.

In its memorandum opinion, the court rejected defendants' indefiniteness challenge to the '904 patent, based on the fact that the algorithm (trimming steps) described in columns 6 and 7 of the '904 patent achieved "the most representative image" of a web page; defendants suggested that the court construe "home page" as "the web page having the URL produced by the trimming steps described in columns 6 and 7" of the '904 patent. (D.I. 331 at 19-20) Because defendants were able to point to a definition for the term, the court found that "home page" was not so "insolubly ambiguous" as to completely foreclose construction and compel a finding of invalidity based upon indefiniteness.

It has since come to the court's attention that, although the algorithm may result in "a" home page (or top level entry site), the algorithm described in column 7 will not result in "**the** top-level entry point" of the web site, or the single, highest-most entry level point.[2] Moreover, aside from the algorithm, the specification does not define (or specifically exemplify) "home page," let alone define "**the** home page" disclosed in the claims. As explained in the court's prior opinion, the parties do not genuinely dispute that the term "home page" was generally understood in the art at the time the application leading to the '904 patent was filed. However, plaintiff concedes that a web site may have more than one "home page" and the evidence indicates that no universal definition existed at the time for "**the** home page."

---

[2]The algorithm and "home page" concepts are not inconsistent, but the algorithm results in a broader range of domains than would qualify as "the home page" under the court's construction.

The law requires that the '904 patent provide some yardstick against which potential infringers may measure their activities.  In view of the foregoing, there is no "objective anchor" that exists for "**the** home page" as used in the claims.  See *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1350 (Fed. Cir. 2005).  That the court was able to define the term does not alter this conclusion.  See *Halliburton Energy Svcs.*, 514 F.3d at 1251 ("Even if a claim term's definition can be reduced to words, the claim is still indefinite if a person of ordinary skill in the art cannot translate the definition into meaningfully precise claim scope.").  The court concludes, therefore, that claims 1 and 18 are invalid for indefiniteness.

IT IS FURTHER ORDERED that a final pretrial conference shall be conducted on **Tuesday, September 29, 2009 at 4:30 p.m.** in courtroom 6B, 6th floor, Boggs Federal Building, 844 King Street, Wilmington, Delaware.  At that time, the parties shall be prepared to discuss any issues remaining for trial, particularly with respect to the issue of infringement by those accused software products that do not cause a preview image to be displayed automatically, that is, requiring a user to "mouse-over" or click on a hyperlink in order for a preview image to appear.[3]  Because "providing [to a user] a thumbnail visual image" has now been construed as "displaying" that image, infringement by these products necessarily requires multiple parties' participation.  That is, defendants perform at least one step of the claimed methods, while the users must facilitate at least the "providing" step by their own actions.  The law of divided infringement, in these instances, does prohibit infringement by defendants.  See

---

[3]Snap's Snap Classic; post-August 4, 2008 Snap Enhanced; Snap Shots Browser Add-On; and Snap Shots for Publishers/Bloggers; IACSAM's "Binoculars."

*Muniaction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1329 (Fed. Cir. 2008) (In circumstances where one party performs some of the claimed steps, and another entity performs other of the claimed steps, direct infringement will only lie "if one party exercises 'control or direction' over the entire process such that every step is attributable to the controlling party, *i.e.*, the 'mastermind.'") (citing *BMC Resources, Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1380-81 (Fed. Cir. 2007). The court will enter an order granting summary judgment of non-infringement as to these accused products upon their identification at the continued pretrial conference next week.[4]

_____
United States District Judge

---

[4] Given the court's limited time and resources, it will not consider defendants' remaining grounds for entry of summary judgment.